| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK | <u>**NOT FOR PUBLICATION**</u> |

-----------------------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 11 |
| NORTHWEST AIRLINES CORPORATION, et al., | Case No. 05-17930 (ALG) |
| Debtors. | Jointly Administered |

-----------------------------------------------------------------------x

## MEMORANDUM OF OPINION

APPEARANCES:

CHARLES E. TULIN, ESQ.
Counsel for Movant
 By: Charles E. Tulin, Esq.
529 W. Third Avenue
Anchorage, Alaska 99501

GOLENBOCK, EISEMAN, ASSOR, BELL & PESKOE, LLP
Counsel for Respondent
 By: Douglas L. Furth, Esq.
437 Madison Avenue
New York, New York 10022

**ALLAN L. GROPPER**
**UNITED STATES BANKRUPTCY JUDGE**

  Before the Court is a motion styled by the movant, Airline Support, Inc. ("Airline Support"), as a motion for reconsideration of the Court's decision made on the record on December 14, 2006 denying Airline Support's Motion for Leave to Late File and Objection to Transfer Agreement. The motion for reconsideration reargues the Court's oral decision and seeks entry of an order providing for different relief. For the reasons set forth below, both the original motion and the motion for reconsideration are denied.

1

**Background**

Airline Support, an Alaskan corporation, was an unsecured creditor of the above-captioned debtors (collectively, the "Debtors") and was listed on the Schedules of Assets and Liabilities (the "Schedules") of Northwest Airlines, Inc. as having a $62,071.00 claim (the "Claim"). ASM Capital L.P. and ASM Capital II, L.P. (together "ASM") are New York-based firms that invest in the claims of unsecured creditors in domestic bankruptcy cases. (Opp'n of ASM, pg. 2).

ASM sent a letter, dated May 15, 2006 (the "Letter"), along with a copy of a form assignment agreement (the "Agreement"), to Airline Support's corporate headquarters in Anchorage, Alaska, the mailing address listed on the Debtors' Schedules. The Letter and the Agreement offered to purchase the Claim for a price of $19,862.72. A copy of the Agreement was attached to the Letter. The Letter instructed Airline Support to either fax or mail an executed copy of the Agreement to ASM if Airline Support were interested in selling the Claim. When Airline Support's Anchorage office received the Letter and the Agreement, one of its employees apparently forwarded the Agreement to an Airline Support employee in Atlanta, Georgia.[1] This employee signed the Agreement, which she sent to ASM's Boston office, along with a letter that stated that the Claim against the Debtors was actually in the amount of $71,404.00, not $62,071.00 as scheduled. After executing the Agreement, ASM filed a proof of claim against the Debtors in the amount of $71,404.00, which was numbered 3640. (Opp'n of ASM, pg. 4). The proof of claim was based on services provided by Airline Support.

---

[1] Airline Support refers to the employee, Katie Land, as a "bookkeeper." Ms. Land executed the Agreement in the capacity of "Account Manager" of Airline Support. (Opp'n of ASM, pg.4, n. 1; Ex. B). The Agreement provided, among other things, "the individuals whose signatures appear below hereby expressly represent that they have the authority to bind the party for which they sign this agreement." (Opp'n of ASM, pg. 3).

2

ASM entered a notice of transfer on the Court's docket on June 26, 2006.  On August 2, 2006, pursuant to Bankruptcy Rule 3001(e)(2), a notice of transfer of the Claim was sent to Airline Support's Anchorage office.  (Opp'n of ASM, pg. 5).  The notice confirmed that the Claim had been transferred and that Airline Support had until August 22, 2006 to object to the transfer.  More than a month later, after the stated deadline, on September 29, 2006, Airline Support filed a motion objecting to the transfer and seeking leave to file its objection beyond the due date provided for in the Bankruptcy Rules.

## Discussion

Airline Support moves the Court to reconsider its oral decision entered on the record on December 14, 2006, in which the Court refused to grant the relief requested, without prejudice to Airline Support's rights (if any) under non-bankruptcy law.  Based on the language and intent of Fed. R. Bankr. P. 3001(e)(2), as well as the uncontested facts of this matter, the Court hereafter elaborates on the reasons for and adheres to its prior ruling.

A.   *Bankruptcy Rule 3001(e)(2)*

Rule 3001(e)(2) instructs the Bankruptcy Court to recognize a transferee as claim holder in place of the transferor if a timely objection has not been filed:

> The clerk shall immediately notify the alleged transferor by mail of the filing of the evidence of transfer and that objection thereto, *if any*, must be filed within 20 days of the mailing of the notice or within any additional time allowed by the court. . . If a *timely objection* is not filed by the alleged transferor, the transferee shall be substituted for the transferor. (emphasis added)

That part of Rule 3001(e)(2) that directs the clerk to substitute the name of the transferee for that of the transferor in the absence of a timely objection from the transferor is "mandatory."  *Viking Assocs., L.L.C. v. Drewes* (*In re Olson*), 120 F.3d 98, 102 (8th Cir. 1997).  An amendment to Rule 3001(e)(2) in 1991 made it clear that the Bankruptcy Court was to play a limited role in

3

claim transfer disputes. Prior to the 1991 amendment, bankruptcy courts had more freedom to "monitor the manner in which claims [were] transferred or assigned." *See, e.g.*, *In re Ionosphere Clubs, Inc*. 119 B.R. 440, 443 (Bankr. S.D.N.Y. 1990), superseded by Rule 3001(e)(2). The pre-amended version of Rule 3001(e) required a "hearing on notice" before a transfer was completed, and not until after finding that a claim had been "unconditionally transferred" could the court enter an order substituting the transferee for the original claimant. *Id.* The amended version of Rule 3001(e)(2) eliminates the "hearing on notice" requirement, unless an objection is filed. *Id.*[2]

As explained by *Viking*, the purpose of amending Rule 3001(e)(2) was "to limit the court's role to the adjudication of disputes regarding transfers of claims . . . [but not to] affect any remedies otherwise available outside of bankruptcy." *Id.*, citing Advisory Committee Note, 1991 amendments. The Court of Appeals further stated that the issue of claim ownership is a "contractual dispute" unrelated to the claim's validity or priority. *Id.* at 100. Similarly, here, the dispute between the parties is a contract dispute, and one that does not involve bankruptcy issues such as the claim's validity or priority. No obvious reason is given as to why it should be determined in this bankruptcy case at all. *See also Official Comm. of Unsecured Creditors v. Stern (In re SPM Mfg. Corp.)*, 984 F.2d 1305, 1314, stating that under the amended Rule 3001(e)(2), a court cannot "disapprove" a transfer based on its terms.

Airline Support relies on the clause in Rule 3001(e)(2) "or within any additional time allowed by the court" as support for its argument that the Court has discretion to permit Airline Support to file an objection to the transfer by which ASM replaced Airline Support as holder of the Claim. Any discretion that a court might have to extend time in connection with an objection

---

[2] The amended version of Rule 3001(e)(2) also eliminates the requirement that claims be transferred "unconditionally." *See In re Ionosphere Clubs, Inc.*, 119 B.R. 440, 444 (Bankr. S.D.N.Y. 1990).

4

to the transfer of a claim must be read in light of the full language of the rule as well as its purpose. *See Things Remembered Inc. v. Petrarca*, 516 U.S. 124, 135 (1995). As the *Viking* Court held, Rule 3001(e)(2), as amended, was intended to sever bankruptcy courts from claim transfer disputes unless a timely objection is filed. *Viking*, 120 F.3d at 100. Moreover, the transfer process was designed to be straightforward and final. Any extensions of time could accordingly be granted only on an extremely strong showing of excusable neglect and of prejudice from a court's failure to grant relief. For the reasons set forth below, Airline Support has failed to make such a showing.

B.  *Airline Support's "Excusable Neglect" Argument*

Airline Support further moves for reconsideration on the ground that its failure to file a timely objection was the result of "excusable neglect" under Fed. R. Bankr. P. 9006(b)(1). (Obj. to Transfer, pg. 7). Rule 9006(b)(1) provides that, with exceptions not applicable here, "the court for cause shown may at any time in its discretion . . . on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect." Airline Support relies on *Pioneer Inv. Services Co. v. Brunswick Assocs. Ltd.*, 507 U.S. 380 (1993), which involved a creditor who failed to file a proof of claim prior to the deadline therefor. In *Pioneer*, the creditor was late because his lawyer "assured him that no bar date had been set and there was no urgency in filing proofs of claim." *Pioneer*, 507 U.S. 380 at 385. In addition, the only notice of the bar date that the creditor received was incorporated in a document entitled "Notice for Meeting of Creditors," and the Court held that such a notice would not have put a person "without extensive experience in bankruptcy on notice" of an absolute deadline. *Id.* at 386.

5

The *Pioneer* factors are not present here. Airline Support filed its motion objecting to the transfer on September 29, 2006, 38 days after the time to object had expired and after receiving unambiguous notice of the deadline for filing objections. (Opp'n of ASM, pg. 5). In any event, as the Second Circuit has held, under *Pioneer*, only in unusual instances would "inadvertence, ignorance of the rules, or mistakes construing the rules . . . constitute 'excusable' neglect." *Midland Cogeneration Venture Ltd. P'ship v. Enron Corp., (In re Enron Corp.)*, 419 F.3d 115, 122 (2d Cir. 2005), citing *Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 368 (2d Cir. 2003), *cert. denied*, 540 U.S. 1105 (2004). The Court of Appeals explained that to prevail on an "excusable neglect" argument, the four factors set forth in *Pioneer* must balance in favor of the movant: i) the danger of prejudice to the debtor, ii) the length of the delay and its potential impact on judicial proceedings, iii) the reason for the delay, and iv) whether the movant acted in good faith. *Id.* at 122, citing *Pioneer*, 507 U.S. at 395. The most significant of the four factors and the one that the courts most carefully examine is the "reason for the delay." *Id.* at 126. Other circuits have also emphasized that the "reason for the delay" is the most significant factor. *Id.*, citing *United States v. Torres*, 372 F.3d 1159, 1162-63 (10th Cir. 2004); *Lowry v. McDonnell Douglas Corp.*, 211 F.3d 457, 463 (8th Cir. 2000); *see also Gretchen's of Minn., Inc. v. Highland House, Inc., (In re Interco, Inc.)*, 186 F.3d 1032, 1034 (8th Cir. 1999).

Airline Support's reasons to justify its delay in objecting to the claim transfer are insubstantial. Airline Support does not argue that the Notice of Transfer was improperly sent to the Anchorage address or that its arrival was not timely. Moreover, it is undisputed that ASM notified Airline Support of the exact date, August 22, 2006, by which an objection to transfer would have to be filed. Airline Support states that the notice of transfer may have taken approximately seven days to arrive in Atlanta by mail, (Tr. of R. at 21-22), but it still had time to

6

file an objection.  Moreover, it cannot properly ground its excusable neglect argument on the fact that it conducted an investigation and tried to resolve the issue by good-faith negotiations.  (Obj. to Transfer, pg. 6).  All of this can be done after a filing is first made and rights are preserved.  Because Airline Support has not satisfied the most significant factor under *Pioneer*, Airline Support has not demonstrated "excusable neglect."

Moreover, the consequences of refusing to allow Airline Support to file a late objection to transfer are not fatal to its position, or even detrimental.  The Court's denial of its motion was without prejudice and thus remitted Airline Support to its State court rights and remedies.  As noted above, this is where the dispute, which is entirely tangential to the bankruptcy case, should be resolved.  *See also* 28 U.S.C. § 1334(c)(1), which states that "nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11."  As the Second Circuit has observed, 1334(c) was intended to codify judicial abstention doctrines "in order to insure that the jurisdiction of the bankruptcy court is exercised only when appropriate to the expeditious disposition of bankruptcy cases."  *Coker v. Pan American World Airways, Inc. (In re Pan American Corp.)*, 950 F.2d 839, 845-46 (2d Cir. 1991), citing  H.R. Rep. No. 595, 95th Cong., 1st Sess., at 51 (1977).  No reason has been given why the debtors and other parties to this large and complex bankruptcy case should even have to monitor this private dispute.[3]

---

[3] ASM asserts that an adjudication of the transfer agreement would constitute a core proceeding over which the Bankruptcy Court has jurisdiction. (Mtn. for Reconsideration, pg. 2).  Be that as it may, unlike non-core proceedings for which abstention is mandatory when a party makes a timely motion, abstention from core proceedings is not only "permissive" and left to the bankruptcy court's discretion, but may be raised by the court *sua sponte*.  *Luan Inv. v. Franklin 145 Corp.*  (*In re Petrie Retail, Inc.*), 304 F.3d 223, 232 (2d Cir. 2002).  There may be cases in which a bankruptcy court should determine a dispute relating to the transfer of a claim, but this is not one of them.

7

**Conclusion**

For the reasons stated above, the Court denies Airline Support's motion for reconsideration and adheres to its prior decision, denying Airline Support's Motion without prejudice to its State court rights. ASM should settle an order on three days' notice.

Dated: New York, New York
February 9, 2007

                                             _/s/ Allan L. Gropper_____
                                             UNITED STATES BANKRUPTCY JUDGE