**Hearing Date and Time: To Be Determined**
**Response Deadline: To Be Determined**

Bruce R. Zirinsky (BZ 2990)
Gregory M. Petrick (GP 2175)
CADWALADER, WICKERSHAM & TAFT LLP
Attorneys for Debtors and Debtors In Possession
One World Financial Center
New York, New York  10281
Telephone:  (212) 504-6000
Facsimile:  (212) 504-6666

- and -

Mark C. Ellenberg (ME 6927)
CADWALADER, WICKERSHAM & TAFT LLP
1201 F Street N.W., Suite 1100
Washington, DC  20004
Telephone:  (202) 862-2200
Facsimile:  (202) 862-2400

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x

| | |
|---|---|
| **In re:** | : **Chapter 11** |
| | : |
| **NORTHWEST AIRLINES CORPORATION, et al.,** | : **Case No. 05-17930 (ALG)** |
| | : |
| **Debtors.** | : **Jointly Administered** |

-------------------------------------------------------------------x

**MOTION OF THE DEBTORS FOR (I) AN ORDER IMPOSING CIVIL CONTEMPT SANCTIONS ON THE AD HOC COMMITTEE AND AWARDING ATTORNEYS' FEES AND COSTS TO THE DEBTORS, (II) A PROTECTIVE ORDER PURSUANT TO RULES 26(c) AND 45(c)(3) OF THE FEDERAL RULES OF CIVIL PROCEDURE, AND (III) AN ORDER COMPELLING THE AD HOC COMMITTEE TO FILE A <u>VERIFIED STATEMENT PURSUANT TO BANKRUPTCY RULE 2019(A)</u>**

Northwest Airlines Corporation ("NWA Corp.") and its debtor affiliates ("Northwest" or the "Debtors"),[1] as and for their Motion (the "Motion") for (i) an order imposing

---

[1]    In addition to NWA Corp., the Northwest Debtors consist of: NWA Fuel Services Corporation ("NFS"), Northwest Airlines Holdings Corporation ("Holdings"), NWA Inc. ("NWA Inc."), Northwest Aerospace Training Corp. ("NATCO"), Northwest Airlines, Inc. ("Northwest Airlines"), MLT Inc. ("MLT"), Compass Airlines, Inc. f/k/a Northwest Airlines Cargo, Inc. ("Compass"), NWA Retail Sales

civil contempt sanctions on the Ad Hoc Committee as a result of their improper and blatant

disregard of this Court's explicit orders staying discovery with respect to the Ad Hoc

Committee's motion for appointment of an equity committee (the "Ad Hoc Committee Motion"),

and awarding attorneys' fees and costs to the Debtors, (ii) a protective order pursuant to Rule

26(c) of the Federal Rules of Civil Procedure, made applicable herein pursuant to Rule 7026 of

the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and pursuant to Federal

Rule 45(c)(3), made applicable herein pursuant to Bankruptcy Rule 9016, limiting the nature and

scope of discovery the Ad Hoc Committee may seek in regard to its Motion and quashing the

subpoenas served by the Ad Hoc Committee on third parties, (iii) an order compelling the Ad

Hoc Committee to file a verified statement pursuant to Bankruptcy Rule 2019(a), and (iv) any

other relief this Court deems just and proper, respectfully represent as follows:

## PRELIMINARY STATEMENT

     1.     In a blatant and willful disregard of this Court's explicit rulings, on two

separate occasions, that no discovery in connection with the Ad Hoc Committee's Motion

commence until <u>after</u> the Debtors file their Disclosure Statement on February 15, 2007, the Ad

Hoc Committee has recently served subpoenas requesting both documents and deposition

testimony on nine third parties, including the Creditors Committee; the Debtors' financial

advisor, Seabury Group LLC; Delta Air Lines; The Blackstone Group, financial advisor to Delta

Air Lines; American Airlines; Continental Airlines Inc.; UAL Corporation; Lehman Brothers

Inc.; and Deutsche Bank Securities Inc. (collectively, the "Discovery Parties"). The Ad Hoc

Committee also has recently sent letters to the Debtors requesting a laundry list of documents

relating to issues beyond the scope of the hearing on the Ad Hoc Committee Motion, as well as

---

Inc. ("NWA Retail"), Montana Enterprises, Inc. ("Montana"), NW Red Baron LLC ("Red Baron"),
Aircraft Foreign Sales, Inc. ("Foreign Sales") NWA Worldclub, Inc. ("WorldClub") and NWA Aircraft
Finance, Inc. ("Aircraft Finance").

the depositions of several senior executives of the Debtors, none of whom will be testifying at the hearing.

2.      These actions by the Ad Hoc Committee clearly violate this Court's two separate rulings staying discovery relating to the Ad Hoc Committee Motion, and in particular, the Court's ruling that the appropriate scope of discovery be determined _after_ the Court and the Ad Hoc Committee have had the opportunity to consider the information contained in the Disclosure Statement filed by the Debtors on February 15, 2007.  Given the broad and far overreaching discovery the Ad Hoc Committee is seeking from the Debtors and the Discovery Parties, it is clear that the Ad Hoc Committee is determined to try to disrupt and delay the reorganization process through improper discovery tactics.

3.      It is no surprise that the Debtors will need to devote substantial time and resources to prepare and file their Disclosure Statement by the February 15, 2007 deadline set by this Court.  The work required to accurately prepare and file the Disclosure Statement is immense, and if the Debtors are diverted from this task, their ability to meet the February 15 deadline will be impaired.

4.      Accordingly, the Debtors respectfully request that this Court issue (i) an order imposing civil contempt sanctions on the Ad Hoc Committee as a result of its improper and blatant disregard of this Court's explicit orders staying discovery with respect to the Ad Hoc Committee Motion, and award attorneys' fees and costs to the Debtors and (ii) a protective order pursuant to Rules 26(c) and 45(c)(3) of the Federal Rules of Civil Procedure, limiting the nature and scope of discovery the Ad Hoc Committee may seek in regard to its Motion and quashing the notices of depositions and accompanying subpoenas served by the Ad Hoc Committee on the Discovery Parties.

5.      In addition, as described below, the Ad Hoc Committee has not complied with the requirements of Bankruptcy Rule 2019(a).  Accordingly, the Debtors also request that the Court issue an order compelling the Ad Hoc Committee to file a verified statement in accordance with the requirements of Rule 2019(a).

## JURISDICTION

6.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

7.      On September 14, 2005 (the "Petition Date"), each of the Debtors filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code.[2]  Each Debtor is continuing to operate its business and manage its properties as a debtor in possession pursuant to section 1107(a) of the Bankruptcy Code.

8.      On September 20, 2005, pursuant to section 1102 of the Bankruptcy Code, the United States Trustee appointed a statutory committee of unsecured creditors (the "Creditors Committee").   On November 17, 2005, the United States Trustee appointed a statutory committee of retired employees.  No trustee or examiner has been appointed in these chapter 11 cases.

9.      On or about November 22, 2006, Owl Creek Asset Management L.P. ("Owl Creek") filed a Schedule 13-D with the Securities and Exchange Commission (the "SEC").  See Schedule 13-D (attached hereto as Exhibit A).  The 13-D indicates that the first time Owl Creek purchased shares of Northwest was November 15, 2006, the day of U.S.

---

[2] NWA Aircraft Finance, Inc. filed its petition on September 31, 2005.

Airway's announcement of its intention to acquire Delta Air Lines out of bankruptcy. Upon information and belief, the Northwest shares held by the other members of the Ad Hoc Committee were also acquired after the November 15 U.S. Airways announcement.

10.    On or about November 22, 2006, Owl Creek and Smith Management LLC ("Smith Management") requested that the United States Trustee appoint an official equity committee in the Debtors' chapter 11 cases. By letters dated December 11, 2006, the Debtors and the Creditors Committee opposed the request.

11.    By letter dated December 21, 2006, the United States Trustee denied Owl Creek and Smith Management's request to form an official equity committee.

12.    On January 11, 2007, the Ad Hoc Committee filed a motion with this Court for an order compelling the United States Trustee to appoint an official committee of equity security holders (the "Ad Hoc Committee Motion").

13.    On January 12, 2007, this Court entered an order extending the time within which the Debtors may file their Disclosure Statement until February 15, 2007, without prejudice to the Debtors seeking additional extensions thereof.

14.    On January 17, 2007, the Ad Hoc Committee sent the Debtors a proposed discovery schedule, draft interrogatories and draft document requests in connection with the Ad Hoc Committee Motion.

15.    By letter dated January 23, 2007, the Debtors requested that the Court stay all discovery until after the Debtors filed their Disclosure Statement. That same day, this Court held a discovery conference on the Ad Hoc Committee Motion. At that conference, the Court recognized the critical juncture these chapter 11 cases have now reached and stayed all discovery in connection with the Ad Hoc Committee Motion until after the Debtors had filed their Disclosure Statement on February 15, 2007.

16.    Also on January 23, 2007, the Debtors filed a Form 8-K with the SEC. The 8-K reported that the Debtors estimate the aggregate dollar amount of unsecured claims that will eventually be allowed against them to be in the range of $8.75 to $9.5 billion. <u>See</u> Northwest Airlines Corp. Form 8-K (attached hereto as Exhibit B).

17.    Despite the fact that the Debtors had informed the Court at the January 23 discovery conference that they would be filing an 8-K to correct certain public misperceptions, counsel for the Ad Hoc Committee used the filing as an opportunity to request discovery already denied by this Court. <u>See</u> Letter from Daniel Goldberg to Judge Gropper dated January 24, 2007 (attached hereto as Exhibit C). A telephonic conference with the Court was held on January 30, 2007, at which the Court again denied the Ad Hoc Committee's request for discovery of the Debtors and the Creditors Committee.

18.    By letter dated February 7, 2007, counsel for the Ad Hoc Committee requested discovery on a wide variety of topics relating to the Debtors' business plans and financial information. <u>See</u> Letter from Daniel Goldberg to Gregory Petrick and Brett Miller dated February 7, 2007 (attached hereto as Exhibit D). Specifically, the Ad Hoc Committee requested documents regarding:

- "Business plans postdating the petition date, including the operating and financial assumptions behind such plans", including documents reflecting "(a) <u>operating statistics</u> (both mainline and regional), including ASM, RPM, load factor, departures, block hours, flight hours, and aircraft utilization; (b) <u>aircraft assumptions</u>, including fleet composition over time, projected changes to first class/economy seat counts, projected leased vs. owned, projected lease costs per aircraft type, projected acquisition cost of new aircraft, sale-leaseback assumptions and pre-delivery payment detail; (c) <u>financial assumptions</u>, including PRASM, RASM, cargo revenue assumptions, fuel (assumed cost per gallon and consumption), employee cost by group per block hour and ASM, aircraft maintenance assumptions (cost per block hour, departure, etc.), projected financial agreements with regional partners (cost-plus, prorate, etc.) and taxes (current NOL level and projected tax rates); and (d) <u>financing assumptions</u>, including financing for new aircraft by type (I, IV, rate, term, paydown period), pre-

delivery payment financial assumptions, other secured debt assumptions, unsecured debt assumptions (including any potential convertibles)."

- "Actual operating and financial results for the Debtors by month for 2006/2007 in comparable format, including consolidated and consolidating financial statements or compilations, including those for Compass."

- "Exit financing proposals in any form (i.e., rights offering) and debt capacity analyses."

- "All valuation and solvency analyses of the Debtors, on both a consolidated and debtor-by-debtor basis, including valuations of the Debtors' operating business, NOL, golden share in Continental Airlines, Northwest's Pacific routes, Northwest Airlines Cargo, the WorldPerks plan, hard asset appraisals (i.e., aircraft), and non-core/non-operating assets."

- "All communications concerning merger, acquisition (or other business combination) proposals or summaries of such discussions."

- "Board minutes relating to the hiring of Evercore, Evercore's pitch materials, strategic alternative analyses, and documents reflecting any discussions between Evercore and potential buyers or other counterparties to a transaction with the Debtors."

- "All financial, operational and business forecasts for the Debtors for 2007 through whatever date the Debtors have such forecasts."

- "Documents sufficient to identify compensation for senior management, both historical and proposed for the post emergence period, including base salary, bonus, equity compensation, and the structure for any performance incentives."

- "All data supporting the Debtors' estimate of claim amounts, or liabilities subject to compromise, specifically including the data, if any, supporting the change from the pre-petition debt reported at the Section 1113 hearing."

- "Data underlying the inter-company claims, including the $384 million inter-company claim owed to Northwest Airlines Corporation."

- "As to the Debtors' January 23, 2007 Form 8-K filing, all documents reflecting (i) the basis for making the filing, (ii) the timing for the filing, (iii) when the Debtors' [sic] came to their conclusion for the allowed claims numbers reflected in the 8-K, and (iv) the underlying analysis supporting the Debtors' conclusion as to the allowed claims numbers."

19.     In an attempt to camouflage their violation of the Court's ruling, the discovery request is caveated with the proviso that the information only needs to be produced to the extent it is not included in the Disclosure Statement.

20.     That same day, the Ad Hoc Committee served document subpoenas and notices of depositions on the Discovery Parties. (Copies of the subpoenas and notices of depositions are attached hereto as Exhibit E).  The subpoenas request  the Discovery Parties to produce documents and deposition testimony concerning "all Valuations of the Debtors, including their businesses, assets, and liabilities, including drafts and materials underlying such Valuations," and "each transaction or potential transaction, merger, consolidation, sale or any other business combination between the Debtors and any other entity (including Delta Air Lines)."

21.     By letter dated February 8, 2007, counsel for the Ad Hoc Committee submitted a proposed discovery schedule to the Debtors.  See Letter from Daniel Goldberg to Gregory Petrick and Brett Miller dated February 8, 2007 (attached hereto as Exhibit F).  The schedule required the Debtors to, among other things, respond to document and interrogatory requests by February 20, 2007, and produce the Chief Executive Office and Chief Financial Officer of the Debtors for a deposition on February 22.

22.     That same day, as a result of the Ad Hoc Committee' letters and subpoenas and blatant disregard of this Court's discovery stay, the Debtors informed the Court via letter of the Ad Hoc Committee's improper discovery requests.  See Letter from Bruce Zirinsky to Judge Gropper dated February 8, 2007 (attached hereto, without attachments, as Exhibit G).

23.     On February 9, 2007, counsel for the Debtors conferred with counsel for the Ad Hoc Committee to request that (i) the subpoenas and notices of deposition to the

Discovery Parties be withdrawn, (ii) the depositions in connection with the Ad Hoc Committee

Motion be confined to witnesses each party identifies as an individual who will or may testify at

the evidentiary hearing, (iii) document discovery be deferred until the Ad Hoc Committee

reviews the Disclosure Statement information.    Counsel for the Ad Hoc Committee was

unwilling to withdraw the subpoenas and notices of deposition to the Discovery Parties or

otherwise agree to the limitations suggested.    Unable to resolve this matter with the Ad Hoc

Committee, the Debtors filed this Motion.

## ARGUMENT

**I.     THE COURT SHOULD IMPOSE CIVIL CONTEMPT SANCTIONS ON THE AD HOC COMMITTEE AS A RESULT OF ITS BLATANT VIOLATION OF THE COURT'S ORDERS STAYING DISCOVERY, AND AWARD ATTORNEYS' FEES TO THE DEBTORS**

24.     Rule 37 of the Federal Rules of Civil Procedure, made applicable herein

pursuant to Rule 7037 of the Federal Rules of Bankruptcy Procedure, permits a court to sanction

a party that fails to obey a discovery order.  Fed. R. Civ. P. 37.  Significantly, Rule 37 sanctions

may be imposed for failure to comply with any kind of discovery order, not just an order issued

under Rule 37.  See Daval Steel Products v. M/V Fakredine, 951 F.2d 1357, 1363 (2d Cir.

1991); see also Update Art, Inc. v. Modiin Publishing, Ltd., 843 F.2d 67, 73 (2d Cir. 1988)

(compliance with discovery orders "necessary to the integrity of our judicial process").  A court

may treat a failure to obey a discovery order as contempt of court and, thus, award the other

party reasonable expenses, including attorney's fees.  Fed. R. Civ. P. 37(b)(2)(D).  In addition, a

federal court may impose sanctions on a party who engages in discovery misconduct under its

inherent power to manage its own affairs.  See Residential Funding Corp. v. DeGeorge Fin.

Corp., 306 F.3d 99, 107 (2d Cir. 2002); DLC Mgmt. Corp. v. Town of Hyde Park, 163 F.3d

124, 135 (2d Cir. 1998); Bartel v. Eastern Airlines, Inc., 133 F.3d 906, 1998 U.S. App. LEXIS

71, at *5 (2d Cir.), <u>cert</u>. <u>denied</u>, 525 U.S. 867 (1998) ("Bankruptcy courts have the power to impose civil contempt sanctions."); <u>In re World Parts, LLC</u>, 291 B.R. 248, 253 (Bankr. W.D.N.Y. 2003) (same).

25.    A federal court's inherent power to hold a party in civil contempt may be exercised when "(1) the order the party allegedly failed to comply with is clear and unambiguous, (2) the proof of non-compliance is clear and convincing, and (3) the party has not diligently attempted in a reasonable manner to comply." <u>Balaber-Strauss v. Markowitz (In re Frankel)</u>, 192 B.R. 623, 628 (Bankr. S.D.N.Y. 1996) (quoting <u>New York State National Organization for Women v. Terry</u>, 886 F.2d 1339, 1351 (2d Cir. 1989), <u>cert</u>. <u>denied</u>, 495 U.S. 947 (1990)).  Once the breach of a court order has been demonstrated, the burden shifts to the breaching party to establish as an affirmative defense that he was incapable of compliance, through no fault of his own and despite diligent efforts to comply.  <u>Id</u>.  A finding of contempt is appropriate here because all three elements are easily satisfied.

26.    First, this Court's two separate oral orders clearly and unambiguously prohibited the Ad Hoc Committee from commencing discovery in connection with its motion until <u>after</u> the Debtors filed their Disclosure Statement on February 15, 2007.   Second, the seven subpoenas served by the Ad Hoc Committee on the Discovery Parties, including the Creditors Committee, is clear and convincing proof of non-compliance of the Court's orders. Indeed, the Court explicitly rejected the Ad Hoc Committee's request to serve discovery on the Creditors Committee.   Third, the Ad Hoc Committee's improper service of this third party discovery just a few days after this Court's second order prohibiting such discovery clearly and conclusively demonstrates that the Ad Hoc Committee has not diligently attempted to comply with this Court's orders.  If the Ad Hoc Equity Committee truly believed that it needed to serve such third party discovery now because it would have insufficient time to engage in third party

discovery between the filing of the Debtors' Disclosure Statement and the hearing on the Ad

Hoc Committee Motion, the proper course of action would have been to ask the Court to

continue the hearing to a later date or request some other form of relief, not to act in willful

contravention of this Court's orders.  <u>Shady Records, Inc. v. Source Enters.</u>, 351 F. Supp. 2d 64,

70 n.8 (S.D.N.Y. 2004) ("it is well established that even if the initial order was overbroad or

subject to modification on appeal or reargument, the remedy of the party to whom the order is

addressed is to seek such modification, not to violate the order").

27.     Accordingly, given the Ad Hoc Committee's clearly improper and

unjustified conduct and blatant disregard of this Court's orders staying discovery, the Court

should impose civil contempt sanctions on the Ad Hoc Equity Committee and require the Ad

Hoc Committee to pay the Debtors' attorneys' fees and costs for filing this motion.[3]

## II.    THE COURT SHOULD ISSUE A PROTECTIVE ORDER AND QUASH THE SUBPOENAS SERVED ON THE DISCOVERY PARTIES

### 1.    The Subpoenas Served On The Discovery Parties Should Be Quashed Because They Seek Irrelevant Information And Subject Third Parties To Undue Burden

28.     Fed. R. Civ. P. 45(c)(3)(A)(iv) provides that the court shall quash or

modify a subpoena if it "subjects a person to undue burden."  Whether a subpoena imposes an

undue burden "depends upon such factors as relevance, the need of the party for the documents,

the breadth of the document, the time period covered by it, the particularity with which the

documents are described and the burden imposed."  <u>Concord Boat Corp. v. Brunswick Corp.</u>,

169 F.R.D. 44, 49 (S.D.N.Y. 1996) (citations and internal quotations omitted).  Courts also

consider "whether the information can be obtained from other, more convenient sources."  <u>Cash</u>

---

[3] <u>See</u> <u>Shady Records, Inc.</u>, 351 F. Supp. 2d at 72 (awarding costs of enforcement, including reasonable attorneys' fees incurred in making contempt motion); <u>Bank of New York v. Meridian Biao Bank Tanzania Ltd. (In re Treco & Hamilton)</u>, Nos. 95-44326, 00-8137, 96-44240, 2001 WL 1566709, at *8 (Bankr. S.D.N.Y. Dec. 10, 2001) (awarding attorneys' fees for willful disobedience of the court's order).

Today of Texas v. Greenberg, No. Civ A 02-MC-77-GMS, 2002 WL 31414138, *4 (D. Del.

Oct. 23, 2002) (citations omitted).[4]

29.    Significantly, "[t]he party issuing the subpoena must demonstrate that the

information sought is relevant and material to the allegations and claims at issue in the

proceedings." Night Hawk Ltd. v. Briarpatch Ltd., L.P., 2003 U.S. Dist. LEXIS 23179, *23

(S.D.N.Y. 2003).    The issues that will be before the Court with respect to the Ad Hoc

Committee Motion are whether (i) there is a substantial likelihood that equity holders will

receive a meaningful distribution under strict application of the absolute priority rule; and (ii)

the equity holders are unable to represent their interests in these cases without an official

committee.    See In re Williams Commc'ns. Group, Inc., 281 B.R. 216, 223 (Bankr. S.D.N.Y.

2002).    The documents and deposition testimony sought in the subpoenas issued by the Ad Hoc

Committee go well beyond these issues and would subject the Discovery Parties to an undue

and unnecessary burden.

30.    An undue burden is generally found when a subpoena is facially

overbroad.    Concord Boat Corp., 169 F.R.D. at 50.    In Concord Boat Corp., a party that was

suing Brunswick Corporation ("Brunswick") served a subpoena on Merrill Lynch, seeking,

---

[4] The Debtors have standing to move to quash a subpoena issued on the Discovery Parties. Courts permit
a party whose "legitimate interests" are affected by a third party subpoena to quash that subpoena. U.S. v.
Nektalov, No. S2 03 Cr. 828 (PKL), 2004 U.S. Dist. LEXIS 13127, at *2 (S.D.N.Y. July 13, 2004).
Courts consider several factors in determining whether or not a party's interest is "legitimate," including
protecting a privilege or "proprietary interest" in the material being subpoenaed. Id. at *3. In this regard,
courts have held that any matters which may be deemed "confidential" are considered "proprietary" for
the purpose of determining standing in quashing a subpoena. See Funai Elec. Co. v. Orion Elec. Co., 2002
U.S. Dist. LEXIS 20509, at *3-4 (S.D.N.Y. 2002). Moreover, Courts have granted a party's motion to
quash a subpoena on a third party. See, e.g., Sidari v. Orleans County, No. 95-CV-7250(S), 2000 U.S.
Dist. LEXIS 15123, at *12-14 (W.D.N.Y. March 31, 2000) (granting defendants' motion to quash
plaintiff's subpoena on third party doctors for their examination records). Here, the documents and
information being sought by the Ad Hoc Committee are confidential, proprietary information of the
Debtors. The Ad Hoc Committee also seeks information from the Debtors' financial advisors. Such
information clearly concerns the "legitimate interests" of the Debtors and, therefore, the Debtors have
standing to move to quash the production of such information.

among other materials, "[a]ll documents relating to Brunswick's financial condition, including all of Brunswick's balance sheets, income statements, statements of cash flow, and related workpapers, compilations, reviews or opinions with respect thereto," and "[a]ll documents relating to any actual, potential, and/or hypothetical merger(s), acquisition(s), consolidation(s), spin-off(s), or business unit sale(s) involving Brunswick." 169 F.R.D. at 50.  The court found that the subpoena was "overbroad on its face" and quashed the subpoena. Id.

31.     The subpoenas issued here by the Ad Hoc Committee are similar to those at issue in Concord Boat Corp., and are likewise overbroad on their face.  Specifically, the subpoenas request documents and deposition testimony relating to "[a]ll valuations of the Debtors, including their businesses, assets, and liabilities, including drafts and materials underlying such Valuations."  (See, e.g., Deutsche Bank Securities, Inc. Subpoena at 6.)  The subpoenas also request information concerning "each transaction or potential transaction, merger, consolidation, sale or any other business combination between the Debtors and any other entity."  Id.  In addition to being grossly overbroad and nonspecific, such information is simply irrelevant or immaterial to the Court's ability to decide the Ad Hoc Committee Motion.  To the extent it is material, the Ad Hoc Committee can obtain such information from the Debtors and, thus, there is no reason or justification to unduly burden the Discovery Parties with responding to such discovery demands.

32.     Moreover, if the discovery of the Discovery Parties proceeds, the Debtors will be required to participate in document review and deposition discovery in various locations around the country in a very short period of time and at critical stages of the Debtors cases.  This discovery is truly aimed at the Debtors, and their participation is critical.  It is will be very burdensome to for the Debtors to go through this unnecessary work.

**2.      The Subpoenas Should Be Quashed Because They Fail To Provide
The Discovery Parties With A Reasonable Time For Compliance**

33.      Pursuant to Fed. R. Civ. P. 45(c)(3)(A)(i), subpoenas can be quashed for failing "to allow reasonable time for compliance."  The subpoenas issued by the Ad Hoc Committee demand production of massive quantities of documents by 9:30 a.m. on February 16, 2007, giving third parties only six business days to comply.  This is clearly an unreasonable request.

34.      Indeed, courts routinely quash subpoenas when, as here, a party was given only a very limited time for compliance, particularly when a party was required to produce a large quantity of documents.  See Martin v. Knox County, No. 3:06-CV-278, 2006 WL 2770983 (E.D. Tenn. Sept. 25, 2006) (quashing subpoena that required production of documents within three business days); McClendon v. Telohio Credit Union, No. 2:05-CV-1160, 2006 WL 2380601 (S.D. Ohio Aug. 14, 2006) (stating that six days is an unreasonable time to comply; "[a]lthough the Rule does not specify exactly what a reasonable time is, Rule 45(c)(2)(B) appears to set a presumptive time of 14 days after service to respond"); Anderson v. Shell Oil, Nos. 93-2235, 93-4051 and 94-1896, 1996 WL 280792 (E.D. La. May 24, 1996) (holding that seven days notice in subpoena was unreasonable).  Because the subpoenas fail to afford the Discovery Parties with a reasonable amount of time to respond they should be quashed.

**III.    THE COURT SHOULD ISSUE A PROTECTIVE ORDER AND LIMIT THE NATURE AND SCOPE OF DISCOVERY OBTAINED BY THE AD HOC COMMITTEE**

35.      This Court also has broad discretion to limit the nature and scope of discovery the Ad Hoc Committee may seek from the Debtors or other third parties pursuant to Rule 26(c) of the Federal Rules of Civil Procedure.  Rule 26(c) provides that "the court . . . may make any order that justice requires to protect a party or person from . . . undue burden or

expense, including one or more of the following: (1) that the disclosure or discovery not be had; (2) that the disclosure or discovery may be had only on specified terms and conditions, including a designation of the time or place; (3) that the discovery may be had only by a method of discovery other than selected by the party seeking discovery; (4) that certain maters not be inquired into, or that the scope of the disclosure or discovery, be limited to certain matters . . . ." Fed. R. Civ. P. 26(c).

36.    Indeed, Bankruptcy Courts "possess[] wide latitude, under  Fed. R. Civ. P. 26 and Bankruptcy Rules 7026 and 9014, to issue protective orders for the purpose of protecting a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  In re Wright, 220 B.R. 543, 544 (Bankr. S.D.N.Y. 1998) (citing Fed. R. Civ. P. 26(c)).   A party seeking a protective order has the burden of showing that good cause exists for the issuance of that order.  See In re Subpoena Issued to Dennis Friedman, 350 F.3d 65, 69 (2d Cir. 2003) (citing Fed. R. Civ. P. 26(c)(1), (3)); see also In re Texaco Inc., 84 B.R. 14, 17 (Bankr. S.D.N.Y. 1988).  Further, "restrictions on discovery may be broader where a non-party is the target of discovery to protect such third parties from unnecessary harassment, inconvenience, expense or disclosure of confidential information."  In re Cando Diamond Corp., 26 B.R. 847, 849 (Bankr. S.D.N.Y. 1983) ("Courts have issued protective orders limiting the scope of discovery when the information sought was not relevant to the issues in the action . . . .") (citations omitted).

37.    As set forth above, in addition to the subpoenas served on the Discovery Parties, the Ad Hoc Committee also is seeking inappropriate and extremely overbroad discovery from the Debtors.  Indeed, the Ad Hoc Committee has provided the Debtors with a laundry list of document requests, almost all of which are irrelevant to the issues relating to the Ad Hoc Committee Motion.  Indeed, the Ad Hoc Committee's discovery requests on the Debtor, as well

as on the Discovery Parties, demonstrate a wholesale disregard for the Court's prior rulings and

a misguided attempt to turn the hearing on the Ad Hoc Committee Motion into a full-blown

confirmation plan hearing.  This is simply inappropriate and should be not be permitted.

38.    As this Court is aware, the decision to appoint an equity committee

involves a narrow summary proceeding meant solely to determine the value of such

appointment and not to determine a full and final valuation of the Debtors.  In re Delphi,

shareholders of the debtor sought the appointment of an official equity committee.  During the

hearing on this motion, Judge Drain explained the limited nature of the court's proper

determination:

> I believe that . . . a full-blown valuation at this time is not what is
> called for in connection with a motion for the appointment of an
> equity committee.  As Judge Lifland made quite clear in Williams,
> this is a summary proceeding.  The valuation that the Court
> performs in connection with the proceeding is not binding in any
> respect on any party with respect to any future valuation of the
> debtor or its assets, including, most importantly of course, a
> valuation for chapter 11 plan confirmation purposes.
>
> There's an obvious reason for that.  It's tied into both the strengths
> of Congressional policy in permitting equity committees to be
> appointed under the proper circumstances as well as the potential
> for abuse of that right; that is, on the one hand, its unfair to impose
> the burden of a full-scale valuation on public shareholders in all
> circumstances, although the burden may be increased in certain
> circumstances.  It is also unfair to the debtor and other parties
> whose money is very clearly at risk in the bankruptcy case, namely
> the creditors, and in this case the workers, of, in essence, causing
> the motion for the appointment of an equity committee to take over
> the entire case so that under the rubric of "valuation" the movant
> for an equity committee can use all of the cost and delay leverage
> that an equity committee might have even before the equity
> committee is appointed, to engage the parties in litigation on the
> merits of the key issues in the case.

(Transcript of Section 1102(a)(2) Evidentiary Hearing Before the Honorable Robert D. Drain

Unites States Bankruptcy Judge, March 22, 2006 at pp. 167-68) (emphasis added) (citing In re

<u>Williams Commc'ns Group, Inc.</u>, 281 B.R. at 221 (in determining whether to appoint an equity committee, the court stated that "[v]aluation is a proper issue for confirmation, and . . . this Court has not made a valuation, nor is one necessary at this stage.").

39.     Thus, the only discovery that the Ad Hoc Committee needs and should be permitted to obtain from the Debtors – not third parties – is discovery relating to the information on valuation set forth within the Disclosure Statement it will file on February 15.  Discovery relating to any other issues, including prior valuations or hypothetical strategic transactions the Debtors may have considered, is simply irrelevant and unnecessary for the Court to make a ruling on the Ad Hoc Committee Motion.

40.     Additionally, because the hearing on the Ad Hoc Committee Motion is a summary proceeding, depositions should be limited to those experts and other witnesses who will actually be called at the hearing on the Ad Hoc Committee Motion.   The Ad Hoc Committee seeks to take the depositions of the Discovery Parties, the CEO and CFO of the Debtors, and numerous other third parties.  As none of them will be providing testimony at the hearing on the Ad Hoc Committee Motion, there is simply no need or justification for such depositions.

41.     Accordingly, the Court should issue a protective order limiting the Ad Hoc Committee's discovery to the specific valuations set forth within the Disclosure Statement it will file on February 15 and the underlying assumptions provided therein.  The Court should also limit depositions to only those individuals who will be testifying at the hearing.

## IV. THE AD HOC COMMITTEE SHOULD BE COMPELLED TO COMPLY WITH ITS DISCLOSURE OBLIGATIONS UNDER BANKRUPTCY RULE 2019(A)

42.    The law firm of Kasowitz, Benson, Torres & Friedman LLP ("Kasowitz") was retained as counsel to the Ad Hoc Committee.  On January 11, 2007, Kasowitz filed its notice of appearance in the Debtors' cases on behalf of the Ad Hoc Committee.  On January 19, 2007, pursuant to Bankruptcy Rule 2019(a), Kasowitz filed its Verified Amended Statement of Kasowitz, Benson, Torres & Friedman LLP in connection with its representation as attorneys for the Ad Hoc Committee  (the "2019 Statement").  Kasowitz attached its engagement letter with the Ad Hoc Committee to the 2019 Statement, whereby the individual members of the Ad Hoc Committee agreed to retain Kasowitz as counsel to the Ad Hoc Committee, and agreed that Kasowitz would not be acting as counsel to the individual members separately.

43.    Thereafter, the Debtors discussed with Kasowitz the need for further disclosures by Kasowitz in order to correct deficiencies in its 2019 Statement.  Kasowitz agreed to provide such disclosures consensually, but, to date, the Debtors have not received the information, and Kasowitz has not filed a statement amending the 2019 Statement.  Even if Kasowitz were to comply with its obligations under Rule 2019, it does not excuse the obligation of the Ad Hoc Committee to file a disclosure statement pursuant to Rule 2019(a).

44.    Rule 2019(a) provides, in relevant part, that:

[E]very entity or committee . . . representing more than one creditor or equity security holder . . . shall file a verified statement setting forth

(1) the name and address of the creditor or equity security holder;

(2) the nature and amount of the claim or interest and the time of acquisition thereof unless it is alleged to have been acquired more than one year prior to the filing of the petition;

(3) . . . in the case of a committee, the name or names of the entity or entities at whose instance, directly or indirectly, the employment was arranged or the committee was organized or agreed to act; and

(4) with reference to the time of . . . the organization or formation of the committee . . . the amounts of claims or interests owned by . . . the members of the committee . . . the times when acquired, the amounts paid therefor, and any sales or other disposition thereof.

Fed. R. Bankr. P. 2019(a) (emphasis added).

45.     It is beyond dispute that any entity or committee to which Rule 2019(a) applies must file a verified statement.  See Fed. R. Bankr. P. 2019(a) ("[E]very . . . committee representing more than one creditor or equity security holder . . . shall file a verified statement . . . .") (emphasis added).

46.     As an unofficial committee, the rule contemplates that the Ad Hoc Committee will file a Rule 2019 statement.  See Fed. R. Bankr. P. 2019(a) (excepting committees appointed pursuant to sections 1102 or 1114 of the Bankruptcy Code, but not other committees); see also Alan N. Resnick & Henry J. Sommer, 9 Collier on Bankruptcy ¶ 2019.02 (15th ed. rev. 2006) ("[T]he Code contemplates the possibility of unofficial committees.  Any such unofficial committee must comply with Rule 2019 by its terms.") (quoted in In re Oklahoma P.A.C. First Ltd. P'Ship, 122 B.R. 387, 391 (Bankr. D. Ariz. 1990)).  In this regard, the Ad Hoc Committee has held itself out to be a committee in the Debtors' bankruptcy cases. For example, the notice of appearance entered by Kasowitz on January 11, 2007, is on behalf of the members of the Ad Hoc Committee as a committee.  Similarly, the Kasowitz engagement letter is between the law firm and the members of the Ad Hoc Committee, specifically as a committee, and not between the members in their individual institutional capacities.  The motion to appoint an equity committee and the discovery disputes also are all raised in the name of the Ad Hoc Committee.  As such, the Ad Hoc Committee is a committee to which Rule 2019(a) applies because it represents multiple equity security holders.  There is no basis to

exempt the Ad Hoc Committee from filing a statement, as it is required to do, pursuant to Rule 2019(a).

47.    The need for the Ad Hoc Committee to satisfy its disclosure obligations under Rule 2019(a) is particularly critical in this case.   The Ad Hoc Committee remains a mystery to the Debtors and to all the other constituencies in the Debtors' cases, yet it seeks to make an impact at this late stage of the Debtors' reorganization.   Without the proper disclosures, the Court should refuse to allow the Ad Hoc Committee to continue to cause serious delays to the Debtors' reorganization efforts, and operate outside of the Bankruptcy Code and the Bankruptcy Rules.

48.    Upon a determination that an entity or committee has failed to comply with Rule 2019(a), the Court may refuse to allow the entity or committee to be heard further in the case.   Fed. R. Bankr. P. 2019(b).   In this case, the Ad Hoc Committee has failed to comply fully with the requirements of Rule 2019(a).    Accordingly, the Debtors seek an order compelling the Ad Hoc Committee to file a verified statement pursuant to Rule 2019(a) setting forth all the information required thereunder.   Moreover, the Court should refuse to further hear the Ad Hoc Committee and strike the Ad Hoc Committee's request for the appointment of an official committee of equity security holders, and the discovery requests in connection therewith.

## WAIVER OF MEMORANDUM OF LAW

49.    This Motion does not raise any novel issues of law and is otherwise supported by citations to authorities.   Accordingly, the Debtors respectfully request that the Court waive the requirement contained in Rule 9013-1(b) of the Local Bankruptcy Rules for the Southern District that a separate memorandum of law be submitted.

## NOTICE

50.     Notice of this Motion has been given to (i) the parties in interest listed on the Master Service List (as defined in the Court's Order establishing notice procedures and a master service list, dated September 15, 2005); and (ii) counsel to the Ad Hoc Committee.  In light of the nature of the relief requested, the Debtors submit that no further notice need be given.

## NO PRIOR APPLICATION

51.     No previous application for the relief sought herein has been made to this or to any other court.

WHEREFORE, the Debtors respectfully request that this Court issue (i) an order imposing civil contempt sanctions on the Ad Hoc Committee as a result of its improper and blatant disregard of this Court's explicit orders staying discovery with respect to the Ad Hoc Committee Motion, and awarding attorneys' fees and costs to the Debtors, (ii) a protective order pursuant to Rules 26(c) and 45(c)(3) of the Federal Rules of Civil Procedure, limiting the nature and scope of discovery the Ad Hoc Committee may seek in regard to its Motion and quashing the notices of depositions and accompanying subpoenas served by the Ad Hoc Committee on the Discovery Parties, (iii) an order compelling the Ad Hoc Committee to file a verified statement pursuant to Bankruptcy Rule 2019(a), and (iv) any other relief this Court deems just and proper.

Dated:    New York, New York
          February 9, 2007

                                   CADWALADER, WICKERSHAM & TAFT LLP


                                   */s/ Bruce R. Zirinsky* _____
                                   Bruce R. Zirinsky (BZ 2990)
                                   Gregory M. Petrick (GP 2175)
                                   One World Financial Center
                                   New York, New York  10281
                                   Telephone:  (212) 504-6000
                                   Facsimile:  (212) 504-6666

                                   - and -

                                   Mark C. Ellenberg (ME 6927)
                                   1201 F Street N.W., Suite 1100
                                   Washington, DC  20004
                                   Telephone:  (202) 862-2200
                                   Facsimile:  (202) 862-2400

                                   Attorneys for Debtors and
                                   Debtors In Possession