UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x

In re:            Chapter 11

NORTHWEST AIRLINES CORPORATION, et al.,  Case No. 05-17930 (ALG)

        Debtors.   Jointly Administered


----------------------------------------------------------------x


**MEMORANDUM OF OPINION AND ORDER**

A P P E A R A N C E S:

CADWALADER, WICKERSHAM & TAFT LLP
Counsel for the Debtors
 By: Bruce R. Zirinsky, Esq.
   Gregory M. Petrick, Esq.
One World Financial Center
New York, New York 10281
 By: Mark C. Ellenberg, Esq.
1201 F Street N.W.
Suite 1100
Washington, DC 20004

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
Counsel for the Ad Hoc Committee of Equity Security Holders
 By: David S. Rosner, Esq.
   Daniel P. Goldberg, Esq.
   Andrew K. Glenn, Esq.
   Alycia Regan Benenati, Esq.
1633 Broadway
New York, New York 10019

OTTERBOURG, STEINDLER, HOUSTON & ROSEN, P.C.
Counsel for the Official Committee of Unsecured Creditors
 By: Scott Hazan, Esq.
250 Park Avenue
New York, New York 10169

**ALLAN L. GROPPER**
**UNITED STATES BANKRUPTCY JUDGE**

Debtors Northwest Airlines Corporation *et al*. ("Debtors") have moved to require an *ad hoc* committee of equity security holders (the "Committee") to supplement a statement pursuant to Bankruptcy Rule 2019 filed by counsel for the Committee.  Debtors argue that the current 2019 statement is inadequate in that it fails to disclose "the amounts of claims or interests owned by the members of the committee, the times when acquired, the amounts paid therefor, and any sales or other disposition thereof," as required by Rule 2019.  For the reasons set forth hereafter, Debtors' motion is granted.

The Committee

The Committee first appeared in the above-captioned proceedings by a notice of appearance dated January 11, 2007.  The notice of appearance was filed by the law firm of Kasowitz, Benson, Torres & Friedman LLP ("KBT&F") on behalf of "the Ad Hoc Committee of Equity Security Holders," comprised of certain institutions holding common stock issued by Northwest Airlines Corp…."  In a pleading dated January 16, 2007, KBT&F filed the "Verified Statement of Kasowitz, Benson, Torres & Friedman LLP Pursuant to Bankruptcy Rule 2019(a)."  The statement contains the following information:  KBT&F appears "on behalf of the Ad Hoc Committee of Equity Security Holders…;" it identifies the 11 members of the Committee; discloses that, "[t]he members of the Ad Hoc Equity Committee own, in the aggregate, 16,195,200 shares of common stock of Northwest and claims against the Debtors in the aggregate amount of $164.7 million" and that, "[s]ome of the shares of common stock and some of the claims were acquired by the members of the Ad Hoc Equity Committee after the commencement of the Cases;" states that KBT&F has been retained as "counsel to the Ad Hoc Equity

2

Committee in the Cases pursuant to an engagement letter in the form annexed as Exhibit B hereto;" and states that KBT&F does not own any claims against or interests in the Debtors and that the members of the Committee are responsible for the firm's fees "subject to their right to have the Debtors reimburse KBT&F's fees and disbursements and other expenses by order of the Court."

The engagement letter attached to the 2019 Statement confirms the agreement of the signatory "to become a member of the Ad-hoc Committee of Equity Holders in connection with the Northwest bankruptcy cases."  It further states that in consideration of the firm's "provision of services to the Committee," the members of the Committee agree to pay the Firm, on a *pro rata* basis, for its services and that in addition thereto, "the Committee may, at the culmination of the matters for which the Firm has been engaged, pay to the Firm, at the Committee's sole discretion, a performance fee…."  The *pro rata* obligation of each member of the Committee to pay fees is based on its individual holdings of Northwest common stock as of December 26, 2006, divided by the total holdings of the Committee, subject to periodic revision.  By an amendment to the Rule 2019 statement, dated January 19, 2007, KBT&F disclosed that there were now 13 Committee members with an aggregate of "19,065,644 shares of common stock of Northwest and claims against the debtors in the aggregate amount of $264,287,500."

Bankruptcy Rule 2019

Rule 2019(a) provides, in relevant part:

In a chapter 9 municipality or chapter 11 reorganization case, except with respect to a committee appointed pursuant to § 1102 or 1114 of the Code [an official committee], every entity or committee representing more than one creditor or equity security holder . . . shall file a verified statement setting forth

(1) the name and address of the creditor or equity security holder;

3

(2) the nature and amount of the claim or interest and the time of acquisition thereof unless it is alleged to have been acquired more than one year prior to the filing of the petition;

(3) . . . in the case of a committee, the name or names of the entity or entities at whose instance, directly or indirectly, the employment was arranged or the committee was organized or agreed to act; and

(4) with reference to the time of . . . the organization or formation of the committee . . . the amounts of claims or interests owned by . . . the members of the committee . . . the times when acquired, the amounts paid therefor, and any sales or other disposition thereof.

By its plain terms, the Rule requires disclosure of "the amounts of claims or interests owned by the members of the committee, the times when acquired, the amounts paid therefor, and any sales or other disposition thereof." The statement filed by KBT&F on behalf of the Committee fails to disclose this information and is insufficient on its face.

The Committee's only substantive argument in response is that Bankruptcy Rule 2019 applies, by virtue of its lead-in clause, only to "every entity or committee representing more than one creditor or equity security holder." KBT&F contends that no member of the Committee represents any party other than itself, that only KBT&F as counsel represents "more than one creditor or equity security holder," and that KBT&F does not have any claims or interests in the Debtors or anything to disclose. However, the Rule cannot be so blithely avoided. KBT&F's clients appeared in these Chapter 11 cases as a "Committee." Their notice of appearance was as a committee, and it is the "Ad Hoc Committee" that has moved for the appointment of an official shareholders' committee and has been actively litigating discovery issues in numerous hearings and conferences before the Court. Counsel was retained by the "Committee" and is compensated by the "Committee" on the basis of work performed for the Committee (and not each individual member). The law firm does not purport to represent the separate

4

interests of any Committee member;  it takes its instructions from the Committee as a

whole and represents one entity for purposes of the Rule.

There may be cases where a law firm represents several individual clients and is

the only entity required to file a Rule 2019 statement, on its own behalf.  That appears to

have been the case in *In re CF Holding Corp.*, 145 B.R. 124 (Bankr. D. Conn. 1992),

relied on by the Committee.  There, a firm represented multiple creditors, and the Court

distinguished the case before it from the situation where a group had been formed.  It

quoted from *Wilson v. Valley Electric Membership Corp.*, 141 B.R., 309, 314 (E.D.La.

1992), where Judge Sear, chairman of the Advisory Committee at the time the

Bankruptcy Rules were amended in 1986, commented in *dicta*, "Rule 2019 more

appropriately seems to apply to the formal organization of a group of creditors holding

similar claims, who have elected to consolidate their collection efforts…."  That is

exactly the situation in this case, except that here there are shareholders rather than

creditors.  Where an *ad hoc* committee has appeared as such, the committee is required to

provide the information plainly required by Rule 2019 on behalf of each of its members.

*Ad hoc* or unofficial committees play an important role in reorganization cases.

By appearing as a "committee" of shareholders, the members purport to speak for a group

and implicitly ask the court and other parties to give their positions a degree of credibility

appropriate to a unified group with large holdings.  Moreover, the Bankruptcy Code

specifically provides for the possibility of the grant of compensation to "a committee

representing creditors or equity security holders other than a committee appointed under

section 1102 of this title [an official committee], in making a substantial contribution in a

case under chapter 9 or 11 of this title."  11 U.S.C. § 503(b)(3)(D).  A committee

purporting to speak for a group obviously has a better chance of meeting the "substantial

contribution" test than an individual, as a single creditor or shareholder is often met with

the argument that it was merely acting in its own self-interest and was not making a

"substantial contribution" for purposes of § 503(b)(3).  *See In re Richton Int'l Corp.*, 15

B.R. 854, 855-56 (Bankr. S.D.N.Y. 1981) ("Those services which are provided solely for

the client-as-creditor . . . are not compensable.")[1]

Unofficial committees have long been active in reorganization cases, and the

influential study in the 1930's by Professor (later Justice) William O. Douglas for the

Securities and Exchange Commission centered on perceived abuses by unofficial

committees in equity receiverships and other corporate reorganizations.  *See* Report on

the Study and Investigation of the Work, Activities, Personnel and Functions of

Protective and Reorganization Committees (1937).  The four-volume SEC report led

directly to the adoption of Chapter X and Rule 10-211 thereunder, which provided for

disclosure of the "personnel and activities of those acting in a representative capacity" in

order to help foster fair and equitable plans free from deception and overreaching.  13A

King *et al.*, *Collier on Bankruptcy*, ¶ 10-211.04 (14th ed. 1976).  Although they made

many other changes to the law and rules relating to reorganizations, the drafters of the

1978 Bankruptcy Code and the rules thereunder retained the substance of former Rule

10-211 in Bankruptcy Rule 2019 as "a comprehensive regulation of representation in

chapter 9 and chapter 11 reorganization cases."  Advisory Committee Note to Bankruptcy

Rule 2019; *see also* Report of the Commission on Bankruptcy Laws of the United States,

H.R.Doc. No. 137, 93d Cong., 1st Sess. 242-43 (1973).  The Rule is long-standing, and

there is no basis for failure to apply it as written.  Although the Committee argues that the

---

[1]  Counsel for an unofficial committee is also entitled to seek reimbursement.  11 U.S.C. § 503(b)(4).  It is this section on which KBT&F was presumably relying when it reserved its rights, in its retention letter, to have the Debtors reimburse its fees.

Rule has been frequently ignored or watered down, there is no shortage of cases applying it. *See In re Okla. P.A.C. First Ltd. P'ship*, 122 B.R. 387, 391 (Bankr. D. Ariz. 1990), quoting *Collier on Bankruptcy*: "The Code contemplates that there will be unofficial committees. Any such unofficial committee must comply with Rule 2019 by its terms…."; *see also Baron & Budd P.C. v. Unsecured Asbestos Claimants Comm.*, 321 B.R. 147, 166 (D. N.J. 2005); *In re Ionosphere Clubs, Inc.*, 101 B.R. 844, 852 (Bankr. S.D.N.Y. 1989); *In re Keene*, 205 B.R. 690 (Bankr. S.D.N.Y. 1997); *In re Kaiser Aluminum Corp.*, 327 B.R. 554, 558 (D. Del. 2005).

Based on the issue before the Court, the Debtors' motion is granted. The Committee is required to comply with Bankruptcy Rule 2019 and file an amended statement within three business days.

IT IS SO ORDERED.

Dated:  New York, New York
            February 26, 2007

                                        */s/ Allan L. Gropper*                        
                                        UNITED STATES BANKRUPTCY JUDGE

7