UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
In re:                                                                          Chapter 11

NORTHWEST AIRLINES CORPORATION, et al.,    Case No. 05-17930 (ALG)

                                                    Debtors.          Jointly Administered
-----------------------------------------------------------------x

**MEMORANDUM OF OPINION AND ORDER**

A P P E A R A N C E S:

CADWALADER, WICKERSHAM & TAFT LLP
Counsel for the Debtors
  By:  Bruce R. Zirinsky, Esq.
       Gregory M. Petrick, Esq.
One World Financial Center
New York, New York 10281
  By:  Mark C. Ellenberg, Esq.
1201 F Street N.W.
Suite 1100
Washington, DC 20004

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
Counsel for the Ad Hoc Committee of Equity Security Holders
  By:  David S. Rosner, Esq.
       Daniel P. Goldberg, Esq.
       Andrew K. Glenn, Esq.
       Scott H. Bernstein, Esq.
1633 Broadway
New York, New York 10019

LEVINE SULLIVAN KOCH & SCHULZ, LLP
Counsel for Intervenor Bloomberg News
  By:  David A. Schulz, Esq.
       Nicole Auerbach, Esq.
321 West 44th Street
Suite 510
New York, New York 10036

OTTERBOURG, STEINDLER, HOUSTON & ROSEN, P.C.
Counsel for the Official Committee of Unsecured Creditors
  By:  Scott Hazan, Esq.
       Brett H. Miller, Esq.
       Lorenzo Marinuzzi, Esq.
250 Park Avenue
New York, New York 10169

OFFICE OF THE UNITED STATES TRUSTEE
  By: Brian S. Masumoto, Esq.
33 Whitehall Street
21st Floor
New York, New York 10004

**ALLAN L. GROPPER**
**UNITED STATES BANKRUPTCY JUDGE**

By order entered February 26, 2007, the Court, on motion of debtors Northwest Airlines Corporation *et al*. (the "Debtors"), required an *ad hoc* committee of equity security holders that had appeared in these chapter 11 cases (the "Committee") to comply with the plain requirements of Bankruptcy Rule 2019 and file an amended Rule 2019 statement. The Committee has moved for an order that would permit the amended statement to be filed under seal, to be available only to the Court and the U.S. Trustee. The Committee proposes to seal that part of the information required by Rule 2019 that discloses the specifics of the purchases and sales of the Debtors' securities made by Committee members. The motion is opposed by the Debtors, by the official creditors' committee, and by Bloomberg News ("Bloomberg"), which moved to intervene.[1]

The Committee's motion is based on §107(b) of the Bankruptcy Code, which provides:

---

[1] Bloomberg states that its motion is "an effort to ensure that the public has a full and accurate understanding of the events occurring in this Chapter 11 proceeding, including the motivations and interests of the players who seek to control an important public company." (Memorandum of Law, p. 1) The parties have consented to the intervention.

2

>On request of a party in interest, the bankruptcy court shall, and on the bankruptcy court's own motion, the bankruptcy court may –
>
>(1) protect an entity with respect to a trade secret or confidential research, development, or commercial information….[2]

In *In re Orion Pictures Corp.*, 21 F.3d 24, 27 (2d Cir. 1994), the debtor sought to seal confidential commercial information consisting of the terms of a promotional agreement between the debtor and a major customer that the Court found would give competitors, who sought to make the information public, a direct competitive advantage. The Second Circuit held that under §107(b) protection is available if an interested party could show "that the information it sought to seal was 'confidential' and 'commercial' in nature." *Id.*

The Second Circuit nevertheless recognized in *Orion* that §107(b) creates an exception to the general principle that "[i]n most cases, a judge must carefully and skeptically review sealing requests to insure that there really is an extraordinary circumstance or compelling need." *Id.* Moreover, as provided in §107(a) of the Bankruptcy Code, it is a basic tenet of our jurisprudence that court records are public and "open to examination by an entity at reasonable times without charge." 11 U.S.C. §107(a); *see, e.g., Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006) (discussing Constitutional and common law rights of access to documents filed in court.)[3] Moreover, the Circuit Court in *Orion* narrowly defined the term "commercial" as used in §107(b) as "information which would cause 'an unfair advantage to competitors by

---

[2] Bankruptcy Rule 9018 similarly provides that "the court may make an order which justice requires (1) to protect the estate or any entity in respect of a trade secret or other confidential research, development, or commercial information …."

[3] Indeed, it has been held that the policy interest in favor of public access "is at its zenith where issues concerning the integrity and transparency of bankruptcy proceedings are involved." *In re Food Mgmt. Group, LLC*, 2007 WL 458022, at *6 (Bankr. S.D.N.Y. Feb. 13, 2007); *see also Gitto v. Worcester Telegram & Gazette Corp. (In re Gitto Global Corp.)*, 422 F.3d 1, 7 (1st Cir. 2005), quoting *Ferm v. United States Trustee (In re Crawford)*, 194 F.3d 954, 960 (9th Cir. 1999) (unrestricted access to bankruptcy records "fosters confidence among creditors regarding the fairness of the bankruptcy system.").

3

providing them information as to the commercial operations of the debtor.'" 21 F.3d at 27, quoting *Ad Hoc Protective Comm. for 10-1/2% Debenture Holders v. Itel Corp. (In re Itel Corp.)*, 17 B.R. 942, 944 (B.A.P. 9th Cir. 1982).[4]

In its initial papers, the Committee tried to bring itself within the construction of "commercial" in *Orion* by contending that the information it seeks to seal would allow competitors of the funds that make up the Committee to discern the members' "investment strategies." This improbable contention was unsupported by the affidavits filed on behalf of the Committee by three of its members, and counsel at oral argument conceded that the "trading strategies" of his clients are not at issue. There is thus no basis for the contention that §107(b), as construed in *Orion,* mandates that the information required by Rule 2019 be sealed on request. The issue is not, as the Committee would have it, that §107(b) as a statute trumps the requirements of Bankruptcy Rule 2019. The Court's duty instead is to enforce Bankruptcy Rule 2019 in a manner consistent with protecting the legitimate rights of the parties and the public interest, keeping in mind that §107(b) provides a broader mandate in favor of sealing documents than applies in non-bankruptcy cases.[5]

In deciding the instant motion with due concern for the above interests, we start with the fact that Bankruptcy Rule 2019 is a disclosure rule. As discussed in the Court's

---

[4] In *Itel*, the Court rejected the proposition that information was "commercial" within the meaning of §107(b) merely because it related to business affairs. This is consistent with the holdings of other courts in bankruptcy and non-bankruptcy contexts. *See, e.g., In re Handy Andy Home Improvement Centers, Inc.*, 199 B.R. 376, 382 (Bankr. N.D. Ill. 1996) ("A document does not contain commercial information merely because it is used in a commercial industry. Commercial information is information which would give a competitor an unfair advantage."); *Diamond State Ins. Co. v. Rebel Oil Co., Inc.*, 157 F.R.D. 691, 697 (D. Nev. 1994) (motion to quash a subpoena under F.R. Civ. P. 45(c)(3)(B)(i)) ("Confidential commercial information is information which, if disclosed, would cause substantial economic harm to the competitive position of the entity from whom the information was obtained.")

[5] Even if there were a conflict between §107(b) and Rule 2019, the Court's duty would be to reconcile them, if possible. *See In re Henderson*, 197 B.R. 147, 155 (Bankr. N.D. Ala. 1996) ("Rules and statutes, however, should be interpreted, if possible, to be in harmony.") (internal citations omitted); *see also Pittsburgh & Lake Erie R.R. Co. v. Ry. Labor Executives' Ass'n*, 491 U.S. 490, 510 (1989).

4

memorandum of February 26, 2007, it requires unofficial committees that play a significant public role in reorganization proceedings and enjoy a level of credibility and influence consonant with group status to file a statement containing certain information. The direct antecedent of Rule 2019 was Rule 10-211 under former Chapter X of the Bankruptcy Act, which was adopted following an exhaustive SEC Report on the Study and Investigation of the Work, Activities, Personnel and Functions of Protective and Reorganization Committees (1937) (hereafter, the "SEC Report"). Among other things, the SEC Report warned of possible conflicts of interest by outside as well as inside financial interests, finding that "these conflicts permeate the entire protective committee system. Their elimination is as essential towards making the outside groups effective and responsible as it is towards eliminating the abuses of the insiders." *SEC Report*, Part I at 880.[6] As one step toward this end the Commission recommended that persons who represent more than 12 creditors or stockholders (including committees) be required to file with the court a sworn statement containing the information now required by Rule 2019.[7] The Report also recommended that "[a]ttorneys who appear in the proceedings should be required to furnish similar information respecting their clients." The SEC specifically found that the foregoing information "will provide a routine method of advising the court *and all parties in interest* of the actual economic interest of all persons participating in the proceedings." Recommendation 9, *SEC Report*, Part I at 902 (emphasis added.) The SEC Report thus contemplated public dissemination of the

---

[6] The Report further found that "the conflicts which do exist" in the outside groups "are in fact made the more obnoxious if these groups operate under the guise of independent committees, for security holders are induced more readily to believe that in the hands of these self-styled independents their cause will be honestly and rigorously served." *SEC Report* at 880. For a thorough discussion of the SEC study, as well as the view that conditions might not have been as bad as the SEC Report suggested, see David A. Skeel, Jr., *Debt's Dominion: A History of Bankruptcy Law in America*, ch. 4 (2001).

[7] The Rule as actually adopted and as now formulated is not limited to groups of 12 or more.

5

information, and there is no reason to assume that the drafters believed that the goals of the Rule could be achieved if the required information were filed secretly.

Much has changed in reorganization practice since the 1930's, but the disclosure required by what is now Bankruptcy Rule 2019 is substantially the same. The facts of this case illustrate why public disclosure is still needed.

As noted above, there is no support in the record for the Committee's initial contention that it has sought to protect its members' "investment strategies." The affidavits filed on this motion by representatives of three of the Committee members disclose why they want to keep the data confidential. There, the Committee representatives identify the damage that would allegedly result from public disclosure of the information required by Bankruptcy Rule 2019 as follows:

> Obviously the circumstances could and do vary greatly, but it clearly would damage our bargaining position and give our counterparties an unfair advantage if they were to know our basis or acquisition cost of the assets we were trying to sell. Just as car dealers do not disclose to customers their actual acquisition cost of their cars, and builders do not disclose to potential home buyers their actual cost to build homes, we do not disclose to potential counterparties our basis in our investments . . .
> *See. e.g.,* Decl. of Daniel Krueger, p. 3.

The Committee members do not advance their position when they compare themselves to car or real estate salesmen. It bears recalling that this Committee purports to control 27 percent of the outstanding stock of the Debtors and that it has repeatedly asked the Court to give credibility to its claims that the Debtors' equity has substantial value, that the Debtors' management has wrongfully undervalued the equity, and that it intends to mount a contest as to the valuation of these Debtors. By acting as a group, the members of this shareholders' Committee subordinated to the requirements of Rule 2019 their interest in keeping private the prices at which they individually purchased or sold

6

the Debtors' securities. This is not unfair because their negotiating decisions as a Committee should be based on the interests of the entire shareholders' group, not their individual financial advantage. Their counsel admitted at oral argument of this motion that in negotiations between a committee and other parties in interest, the question is whether a tranche is being treated fairly, not the price at which individual members might be induced to sell. If that is so, and it should be, it cannot harm the legitimate interests of members of an *ad hoc* committee to put pricing information on the table.[8]

In any event, any interest that individual Committee members may have in keeping this information confidential is overridden by the interests that Rule 2019 seeks to protect. Rule 2019 protects other members of the group – here, the shareholders – and informs them where a committee is coming from by requiring full disclosure of the securities held by members of the committee and the respective purchases and sales. This Committee contends that it did not take on any fiduciary responsibility to the shareholders as a group when it appeared in these cases. Assuming, *arguendo,* for purposes of this motion that the Committee does not act as a fiduciary, Rule 2019 is based on the premise that the other shareholders have a right to information as to Committee member purchases and sales so that they make an informed decision whether this Committee will represent their interests or whether they should consider forming a more broadly-based committee of their own. It also gives all parties a better ability to

---

[8] It has also been held (in a different context) that preserving leverage is not usually an interest that would justify sealing court records. *See Geltzer v. Andersen Worldwide, S.C.*, 2007 WL 273526 (S.D.N.Y. Jan. 30, 2007) ("There is no discernable public interest, or interest of the bankruptcy estates, in preserving [the defendant's] 'leverage' as against other parties . . . ."); *In re Alterra Healthcare Corp.*, 353 B.R. 66, 76 (Bankr. D. Del. 2006) (an order that sealed certain information was vacated; the Court, in response to the contention that disclosure would help litigants against the debtor said, "[a]n unfair advantage to a tort claimant of a debtor, however, does not create an unfair advantage to its market competitors.")

7

gauge the credibility of an important group that has chosen to appear in a bankruptcy case and play a major role.

  The utility to other shareholders of information as to the purchases and sales made by members of this Committee is underscored by two facts of record.  First, it has been disclosed that Committee members own a very significant amount of debt, as well as stock.  Rule 2019 is based on the premise that other shareholders have a right to know whether the debt purchases were made at the same time as the purchases of stock, a fact that might raise questions as to divided loyalties.  Second, each of the three representative Committee members admits in his declaration that he might decide to sell out at any time.  *See, e.g.,* the declaration of Daniel Krueger, where it is stated, "[a]lso, we or other members of the Ad Hoc Equity Committee may desire to sell our respective claims to third parties at some point, or make some other similar deal with someone who currently is not an interest holder in this case.  Disclosure of our acquisition cost likewise will prejudice our ability to sell or negotiate such a deal with third parties."  (¶ 7)  The possibility that members of an *ad hoc* committee will sell and leave a group without a representative is exactly why there are disclosures required under Rule 2019.  Rule 2019 gives other members of the class the right to know where their champions are coming from.  Granting the motion to seal would scuttle the Rule.

8

The motion to seal is denied. An amended Rule 2019 Statement as required by this Court's order of February 26, 2007, should be filed on the Court's docket as soon as feasible and in any event within three business days from the date of this order.

IT IS SO ORDERED.

Dated: New York, New York
       March 9, 2007

>       */s/ Allan L. Gropper*
> UNITED STATES BANKRUPTCY JUDGE