UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------------------x

In re:

NORTHWEST AIRLINES CORPORATION,
NWA FUEL SERVICES CORPORATION,
NORTHWEST AIRLINES HOLDINGS CORPORATION,
NWA INC.,
NORTHWEST AEROSPACE TRAINING CORPORATION,
NORTHWEST AIRLINES, INC.,
NWA AIRCRAFT FINANCE, INC.,
MLT INC.,
COMPASS AIRLINES, INC. F/K/A NORTHWEST AIRLINES
CARGO, INC.,
NWA RETAIL SALES INC.,
MONTANA ENTERPRISES, INC.,
AIRCRAFT FOREIGN SALES, INC.,
NW RED BARON LLC, AND
NWA WORLDCLUB, INC.

                                        Debtors.

--------------------------------------------------------------------------x

Chapter 11

Case No. 05-17930 (ALG)

Jointly Administered

**DEBTORS' FIRST AMENDED JOINT AND CONSOLIDATED PLAN OF
REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

Bruce R. Zirinsky (BZ 2990)
CADWALADER, WICKERSHAM & TAFT
LLP
One World Financial Center
New York, New York 10281
Telephone: (212) 504-6000
Facsimile: (212) 504-6666

Mark C. Ellenberg (ME 6927)
CADWALADER, WICKERSHAM & TAFT
LLP
1201 F St. N.W., Suite 1100
Washington, DC 20004
Telephone: (202) 862-2200
Facsimile: (202) 862-2400

Dated: March 30, 2007

**TABLE OF CONTENTS**

Page

SECTION 1.      DEFINITIONS ............................................................................................... 1

    1.1     1110(a) Aircraft Secured Claim ............................................................ 1
    1.2     A330 Financing Indentures ................................................................. 1
    1.3     Administrative Expense Claim ........................................................... 2
    1.4     Administrative Expense Claim Bar Date ........................................... 2
    1.5     Aircraft Equipment ............................................................................. 2
    1.6     Aircraft Secured Claim ....................................................................... 2
    1.7     Allocation Fraction ............................................................................. 2
    1.8     Allowed ................................................................................................ 2
    1.9     Amended Bylaws ................................................................................. 2
    1.10    Amended Certificate of Incorporation ................................................ 2
    1.11    Bankruptcy Code ................................................................................. 3
    1.12    Bankruptcy Court ................................................................................ 3
    1.13    Bankruptcy Rules ................................................................................ 3
    1.14    Bar Date Order .................................................................................... 3
    1.15    Business Day ........................................................................................ 3
    1.16    Cash ..................................................................................................... 3
    1.17    Catch-up Distribution ......................................................................... 3
    1.18    Chapter 11 Cases ................................................................................. 3
    1.19    Claim ................................................................................................... 3
    1.20    Claims Agent ....................................................................................... 3
    1.21    Claims Objection Deadline ................................................................. 3
    1.22    Class .................................................................................................... 3
    1.23    Commencement Date ........................................................................... 3
    1.24    Common Stock Interests ...................................................................... 3
    1.25    Confirmation Date ............................................................................... 3
    1.26    Confirmation Order ............................................................................. 4
    1.27    Consolidated Debtor ........................................................................... 4
    1.28    Consolidated Debtors .......................................................................... 4
    1.29    Convenience Class Claim .................................................................... 4
    1.30    Convenience Class Election ................................................................ 4
    1.31    Creditors Committee ........................................................................... 4
    1.32    Debtor .................................................................................................. 4
    1.33    Debtors ................................................................................................ 4
    1.34    Deficiency Claim ................................................................................. 4
    1.35    DIP Claim ........................................................................................... 4
    1.36    DIP Credit and Exit Facility Agreement ............................................ 4
    1.37    Disbursing Agent ................................................................................ 5
    1.38    Disclosure Statement .......................................................................... 5
    1.39    Disputed Claim ................................................................................... 5
    1.40    Distribution Record Date .................................................................... 5
    1.41    Distribution Reserve ........................................................................... 5
    1.42    Downstream Mergers .......................................................................... 5
    1.43    Effective Date ..................................................................................... 5
    1.44    Eligible Holder .................................................................................... 5

1.45      Employee-Related Agreements.................................................................................5
1.46      Equity Interest..........................................................................................................5
1.47      Equity Interests in Debtors Other than NWA Corp. ..................................................5
1.48      Excess Primary Exercise ...........................................................................................5
1.49      Excluded Allowed Administrative Expense Claims ...................................................5
1.50      Exercising Claimant..................................................................................................6
1.51      Exit Facility..............................................................................................................6
1.52      Final Distribution Date .............................................................................................6
1.53      Final Order ...............................................................................................................6
1.54      General Unsecured Claim ..........................................................................................6
1.55      Holdings...................................................................................................................6
1.56      Indentures.................................................................................................................6
1.57      Indenture Trustee .....................................................................................................7
1.58      Insured Claim ...........................................................................................................7
1.59      Intercompany Claim..................................................................................................7
1.60      ISDA Master Agreements ..........................................................................................7
1.61      JPM ISDA Master Agreement ...................................................................................7
1.62      Management Claim ...................................................................................................7
1.63      Management Equity Plan ...........................................................................................7
1.64      N301US and N303US Aircraft Secured Claim...........................................................7
1.65      New Common Stock ..................................................................................................7
1.66      New Common Stock For Distribution to Creditors .....................................................7
1.67      New Common Stock For Distribution to Creditors with a Guaranty............................8
1.68      New Common Stock For Distribution Pursuant to Rights Offering ............................8
1.69      New Common Stock For Purchased Shares ...............................................................8
1.70      New Common Stock Reserved for Issuance to Management .......................................8
1.71      NOLs........................................................................................................................8
1.72      Non-Consolidated Debtors.........................................................................................8
1.73      Non-Contract Employee Compensation Program........................................................8
1.74      Non-Debtor Affiliates ...............................................................................................8
1.75      Northwest Airlines ....................................................................................................8
1.76      NW 2006-1 and 2006-2 Trust Indentures ..................................................................8
1.77      NWA Corp. ...............................................................................................................9
1.78      NWA Corp. Preferred Shares ....................................................................................9
1.79      Old NWA Corp. Common Shares...............................................................................9
1.80      Other Secured Claim.................................................................................................9
1.81      Periodic Distribution Date ........................................................................................9
1.82      Plan .........................................................................................................................9
1.83      Post-Effective Date Committee ..................................................................................9
1.84      Postpetition Aircraft Purchase and Lease Obligations................................................9
1.85      Priority Non-Tax Claim ............................................................................................9
1.86      Priority Tax Claim ....................................................................................................9
1.87      Professional Claim ...................................................................................................9
1.88      Pro Rata...................................................................................................................9
1.89      Released Party ........................................................................................................10
1.90      Reorganized Debtor ...............................................................................................10
1.91      Reorganized Northwest Airlines ..............................................................................10
1.92      Reorganized NWA Corp. .........................................................................................10
1.93      Restructured Aircraft Secured Claim ......................................................................10
1.94      Retiree Committee ..................................................................................................10
1.95      Rights Offering ......................................................................................................10

| 1.96 | Rights Offering Expiration Date | 10 |
|---|---|---|
| 1.97 | Rights Offering Pro Rata Share | 10 |
| 1.98 | Rights Offering Sponsor | 10 |
| 1.99 | Rights Offering Sponsor Agreement | 10 |
| 1.100 | Schedules | 11 |
| 1.101 | Secured Claim | 11 |
| 1.102 | Securities Act | 11 |
| 1.103 | Settlement Procedures Order | 11 |
| 1.104 | Solicitation Procedures Motion | 11 |
| 1.105 | Subordinated Claim | 11 |
| 1.106 | Subscription Agent | 11 |
| 1.107 | Subscription Commencement Date | 11 |
| 1.108 | Subscription Form | 11 |
| 1.109 | Subscription Purchase Price | 11 |
| 1.110 | Subscription Rights | 11 |
| 1.111 | Subscription Rights Record Date | 12 |
| 1.112 | Ultimate Purchasers | 12 |

**SECTION 2.  ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY TAX CLAIMS ... 12**

| 2.1 | Administrative Expense Claims and Bar Date. | 12 |
|---|---|---|
| 2.2 | Postpetition Aircraft Purchase and Lease Obligations. | 13 |
| 2.3 | Priority Tax Claims. | 13 |
| 2.4 | DIP Claims. | 13 |
| 2.5 | Claims Arising Under the Rights Offering Sponsor Agreement | 13 |
| 2.6 | Satisfaction of Exit Conditions Under A330 Financing Indentures. | 13 |
| 2.7 | Satisfaction of Conditions Under ISDA Master Agreements. | 14 |

**SECTION 3.  CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS ... 14**

| 3.1 | Consolidated Debtors Classes | 14 |
|---|---|---|
| 3.2 | NWA Fuel Services Corporation Classes | 15 |
| 3.3 | Northwest Aerospace Training Corporation Classes | 15 |
| 3.4 | MLT Inc. Classes | 16 |
| 3.5 | Compass Airlines, Inc. f/k/a  Northwest Airlines Cargo, Inc. Classes | 16 |
| 3.6 | NWA Retail Sales Inc. Classes | 16 |
| 3.7 | Montana Enterprises, Inc. Classes | 17 |
| 3.8 | NW Red Baron LLC Classes | 17 |
| 3.9 | Aircraft Foreign Sales, Inc. Classes | 17 |
| 3.10 | NWA Worldclub, Inc. Classes | 18 |
| 3.11 | NWA Aircraft Finance, Inc. Classes | 18 |

**SECTION 4.  TREATMENT OF CLAIMS AND EQUITY INTERESTS ... 18**

| 4.1 | Priority Non-Tax Claims | 18 |
|---|---|---|
| 4.2 | 1110(a) Aircraft Secured Claims | 19 |
| 4.3 | Restructured Aircraft Secured Claims | 19 |
| 4.4 | N301US and N303US Aircraft Secured Claims | 19 |
| 4.5 | Other Secured Claims | 20 |
| 4.6 | General Unsecured Claims | 20 |
| 4.7 | Convenience Class Claims | 21 |

| | 4.8 | Intercompany Claims | 21 |
| | 4.9 | Equity Interests in Debtors Other than NWA Corp. | 21 |
| | 4.10 | Preferred Stock Interests in NWA Corp. | 21 |
| | 4.11 | Common Stock Interests in NWA Corp | 21 |

| SECTION 5. | | MEANS FOR IMPLEMENTATION | 21 |

| | 5.1 | Substantive Consolidation. | 21 |
| | 5.2 | Exit Financing. | 22 |
| | 5.3 | Authorization of New Common Stock. | 22 |
| | 5.4 | Rights Offering and Purchased Shares. | 23 |
| | 5.5 | Private Equity Investment | 23 |
| | 5.6 | Listing of New Common Stock. | 23 |
| | 5.7 | Restrictions on the Transfer of New Common Stock to Protect NOLs. | 23 |
| | 5.8 | Management Equity Plan. | 23 |
| | 5.9 | Non-Contract Employee Compensation Program. | 24 |
| | 5.10 | Cancellation of Existing Securities and Agreements. | 24 |
| | 5.11 | Indenture Trustee Fees. | 24 |
| | 5.12 | Board of Directors. | 25 |
| | 5.13 | Officers. | 25 |
| | 5.14 | Continued Corporate Existence and Vesting of Assets in the Reorganized Debtors. | 25 |
| | 5.15 | Restructuring Transactions. | 25 |
| | 5.16 | Certificate of Incorporation. | 25 |

| SECTION 6. | | DISTRIBUTIONS | 26 |

| | 6.1 | Distribution Record Date. | 26 |
| | 6.2 | Date of Distributions. | 26 |
| | 6.3 | Postpetition Interest on Claims. | 26 |
| | 6.4 | Initial Distributions. | 27 |
| | 6.5 | Subsequent Distributions. | 27 |
| | 6.6 | Distribution Reserve. | 27 |
| | 6.7 | Disbursing Agent. | 28 |
| | 6.8 | Rights and Powers of Disbursing Agent. | 28 |
| | 6.9 | Surrender of Instruments. | 28 |
| | 6.10 | Delivery of Distributions. | 29 |
| | 6.11 | Manner of Payment Under Plan. | 29 |
| | 6.12 | Fractional Shares. | 30 |
| | 6.13 | Setoffs. | 30 |
| | 6.14 | Distributions after the Effective Date. | 30 |
| | 6.15 | Allocation of Plan Distributions Between Principal and Interest. | 30 |
| | 6.16 | Withholding and Reporting Requirements. | 30 |
| | 6.17 | Time Bar to Cash Payments. | 31 |

| SECTION 7. | | PROCEDURES FOR DISPUTED CLAIMS | 31 |

| | 7.1 | Objection to Claims. | 31 |
| | 7.2 | Payments and Distributions with Respect to Disputed Claims. | 31 |
| | 7.3 | Preservation of Insurance. | 32 |
| | 7.4 | Retiree Medical Benefit Claims. | 32 |

| 7.5 | Estimation of Claims and Equity Interests. | 32 |
| 7.6 | No Recourse. | 32 |
| 7.7 | Preservation of Rights to Settle Claims. | 32 |

| SECTION 8. | EXECUTORY CONTRACTS AND UNEXPIRED LEASES | 33 |
| --- | --- | --- |
| 8.1 | General Treatment. | 33 |
| 8.2 | Restructured Collective Bargaining Agreements. | 33 |
| 8.3 | Management Agreements. | 33 |
| 8.4 | Employee-Related Agreements. | 33 |
| 8.5 | Customer Programs. | 34 |
| 8.6 | Cure of Defaults. | 34 |
| 8.7 | Approval of Assumption and Rejection of Executory Contracts and Unexpired Leases. | 34 |
| 8.8 | Rejection Claims. | 34 |
| 8.9 | Survival of the Debtors' Indemnification Obligations. | 34 |
| 8.10 | Insurance Policies. | 35 |

| SECTION 9. | THE RIGHTS OFFERING | 35 |
| --- | --- | --- |
| 9.1 | Subscription Rights. | 35 |
| 9.2 | Subscription Period. | 35 |
| 9.3 | Exercise of Subscription Rights. | 35 |
| 9.4 | Oversubscription Rights. | 36 |
| 9.5 | Undersubscription. | 36 |
| 9.6 | The Purchased Shares. | 37 |
| 9.7 | Transfer of Subscription Rights; Election Irrevocable. | 37 |
| 9.8 | Distribution of New Common Stock. | 37 |
| 9.9 | No Interest. | 37 |
| 9.10 | Fractional Rights. | 37 |
| 9.11 | Validity of Exercise of Subscription Rights. | 37 |
| 9.12 | Use of Proceeds. | 38 |
| 9.13 | Limitation on Acquisition of Shares. | 38 |

| SECTION 10. | CONDITIONS PRECEDENT TO EFFECTIVE DATE | 39 |
| --- | --- | --- |
| 10.1 | Conditions to Effective Date. | 39 |
| 10.2 | Waiver of Conditions. | 39 |

| SECTION 11. | EFFECT OF CONFIRMATION | 39 |
| --- | --- | --- |
| 11.1 | Vesting of Assets. | 39 |
| 11.2 | Discharge of Claims against the Debtors and Cancellation of Equity Interests in NWA Corp. | 39 |
| 11.3 | Binding Effect. | 40 |
| 11.4 | Term of Injunctions or Stays. | 40 |
| 11.5 | Injunction Against Interference with Plan. | 40 |
| 11.6 | Exculpation. | 40 |
| 11.7 | Retention of Causes of Action/Reservation of Rights. | 41 |
| 11.8 | Release by Debtors. | 41 |
| 11.9 | Release of Released Parties by Other Released Parties. | 41 |

SECTION 12.     CLAIMS ALLOWED BY THE PLAN ......................................................................... 42

    12.1    Management Claim. ...................................................................................... 42

SECTION 13.     RETENTION OF JURISDICTION ............................................................................. 42

SECTION 14.     MISCELLANEOUS PROVISIONS ........................................................................... 43

    14.1    Payment of Statutory Fees. ......................................................................... 43
    14.2    Committees. ................................................................................................ 44
    14.3    Substantial Consummation. ......................................................................... 44
    14.4    Exemption from Transfer Taxes. ................................................................. 44
    14.5    Section 1145 Exemption. ............................................................................ 44
    14.6    Amendments. .............................................................................................. 45
    14.7    Revocation or Withdrawal of Plan. ............................................................ 45
    14.8    Cramdown. .................................................................................................. 45
    14.9    Severability. ................................................................................................ 45
    14.10   Request for Expedited Determination of Taxes. ......................................... 46
    14.11   Courts of Competent Jurisdiction. .............................................................. 46
    14.12   Governing Law. .......................................................................................... 46
    14.13   Time. ........................................................................................................... 46
    14.14   Headings. .................................................................................................... 46
    14.15   Exhibits. ...................................................................................................... 46
    14.16   Notices. ....................................................................................................... 46

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------- x

In re: :

NORTHWEST AIRLINES CORPORATION, :
NWA FUEL SERVICES CORPORATION, :
NORTHWEST AIRLINES HOLDINGS CORPORATION, :
NWA INC., :
NORTHWEST AEROSPACE TRAINING CORPORATION, :
NORTHWEST AIRLINES, INC., :
NWA AIRCRAFT FINANCE, INC., :
MLT INC., :
COMPASS AIRLINES, INC. F/K/A NORTHWEST AIRLINES :
CARGO, INC., :
NWA RETAIL SALES INC., :
MONTANA ENTERPRISES, INC., :
AIRCRAFT FOREIGN SALES, INC., :
NW RED BARON LLC, AND :
NWA WORLDCLUB, INC. :
:
                                    Debtors. :
:
---------------------------------------------------------------------- x

Chapter 11

Case No. 05-17930 (ALG)

Jointly Administered

**DEBTORS' FIRST AMENDED JOINT AND CONSOLIDATED PLAN**
**OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

Northwest Airlines Corporation, NWA Fuel Services Corporation, Northwest Airlines
Holdings Corporation, NWA Inc., Northwest Airlines, Inc., Northwest Aerospace Training Corporation,
MLT Inc., Compass Airlines, Inc. f/k/a Northwest Airlines Cargo, Inc., NWA Retail Sales Inc., Montana
Enterprises, Inc., NW Red Baron LLC, Aircraft Foreign Sales, Inc., NWA Worldclub, Inc., and NWA
Aircraft Finance, Inc., the debtors, propose the following joint and consolidated plan of reorganization
pursuant to section 1121(a) of title 11 of the United States Code:

## SECTION 1.    DEFINITIONS

In this Plan, the following definitions shall apply:

**1.1    1110(a) Aircraft Secured Claim** means an Aircraft Secured Claim relating to
Aircraft Equipment as to which the Debtors agreed under section 1110(a) of the Bankruptcy Code to
perform all obligations under the applicable loan agreements.

**1.2    A330 Financing Indentures** means the NW 2006-1 and 2006-2 Trust
Indentures providing for the refinancing of certain Secured Obligations relating to A330 Aircraft

Equipment, authorized by the Bankruptcy Court in Final Orders dated November 21, 2006 and December 21, 2006.

**1.3     Administrative Expense Claim** means any right to payment, whether secured or unsecured, constituting a cost or expense of administration of any of the Chapter 11 Cases under sections 503(b), 507(a)(1) and 1114(e) of the Bankruptcy Code, including, without limitation, any actual and necessary costs and expenses of preserving the Debtors' estates, any actual and necessary costs and expenses of operating the Debtors' businesses, any indebtedness or obligations incurred or assumed by the Debtors, as debtors in possession, during the Chapter 11 Cases including, without limitation, for the acquisition or lease of property or an interest in property or the rendition of services, and any allowances of compensation and reimbursement of expenses to the extent allowed by Final Order under section 330 or 503 of the Bankruptcy Code.

**1.4     Administrative Expense Claim Bar Date** means the date that is sixty calendar days after the Effective Date.

**1.5     Aircraft Equipment** means an aircraft, airframe, aircraft engine, propeller, appliance or spare part (and includes all records and documents relating to such equipment that are required, under the terms of the security agreement, lease, or conditional sale contract, to be surrendered or returned in connection with the surrender or return of such equipment) that is leased to, subject to a security interest granted by or conditionally sold to, one of the Debtors.

**1.6     Aircraft Secured Claim** means a Claim that is secured by a valid, duly perfected, non-avoidable security interest in the interest of a Debtor in Aircraft Equipment, to the extent of the value, as of the Effective Date or such other date as is established by the Bankruptcy Court, of such Claimholder's interest in the applicable Debtor's interest in such Aircraft Equipment, as determined by a Final Order of the Bankruptcy Court pursuant to section 506(a) of the Bankruptcy Code or as otherwise agreed upon in writing by the Debtors and the Claimholder.

**1.7     Allocation Fraction** means, with respect to a holder of an Allowed Class 1D Claim with respect to which there is a guaranty by one or more of the Consolidated Debtors of a direct or indirect obligation of another Consolidated Debtor, a fraction, the numerator of which shall be the amount of such holder's Allowed Class 1D Claim with respect to which there is a guaranty, and the denominator of which shall be the aggregate amount of all Allowed Class 1D Claims with respect to which there are guarantees by another Consolidated Debtor.

**1.8     Allowed** means, with respect to a Claim, (i) any Claim against any Debtor which has been listed by such Debtor in the Schedules, as such Schedules may be amended by the Debtors from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary proof of claim has been filed, (ii) any timely filed, liquidated, non-contingent Claim as to which the time for objection permitted by the Plan has expired and no objection has been interposed, or (iii) any Claim expressly allowed by a Final Order or by agreement pursuant to the Settlement Procedures Order.

**1.9     Amended Bylaws** means the Bylaws of Reorganized NWA Corp. as restated, substantially in the form as will be set forth in a plan supplement.

**1.10     Amended Certificate of Incorporation** means the Certificate of Incorporation of Reorganized NWA Corp., as restated, substantially in the form as will be set forth in a plan supplement.

**1.11  Bankruptcy Code** means title 11 of the United States Code, as applicable to the Chapter 11 Cases.

**1.12  Bankruptcy Court** means the United States Bankruptcy Court for the Southern District of New York.

**1.13  Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, applicable to the Chapter 11 Cases, and any Local Rules of the Bankruptcy Court.

**1.14  Bar Date Order** means the Final Order dated May 19, 2006, as amended May 22, 2006 (Docket Nos. 2594 & 2607), and any orders supplementing such Order, establishing the last date for filing proofs of claim against the Debtors' estates.

**1.15  Business Day** means any day other than a Saturday, a Sunday, or any other day on which banking institutions in New York, New York are required or authorized to close by law or executive order.

**1.16  Cash** means legal tender of the United States of America.

**1.17  Catch-up Distribution** means with respect to each holder of an Allowed Claim in Class 1D that was previously a Disputed Claim, the aggregate number of shares of New Common Stock For Distribution to Creditors that such holder would have received if its Claim had been an Allowed Claim on the Effective Date and each applicable Periodic Distribution Date, together with such other consideration that would have been received as if the Claim had been Allowed as of the Effective Date and any subsequent Periodic Distribution Dates.

**1.18  Chapter 11 Cases** means the jointly administered cases under chapter 11 of the Bankruptcy Code commenced by the Debtors in the United States District Court for the Southern District of New York and styled *In re Northwest Airlines Corp., et al., Case No. 05-17930 (ALG)*, (Jointly Administered).

**1.19  Claim** has the meaning set forth in section 101 of the Bankruptcy Code.

**1.20  Claims Agent** means Bankruptcy Services, LLC, which is located at 757 Third Avenue, Third Floor, New York, New York 10017 and was retained as the Debtors' claims, balloting and noticing agent in the Chapter 11 Cases pursuant to Bankruptcy Court Order dated November 16, 2005.

**1.21  Claims Objection Deadline** has the meaning set forth in Section 7.1 of the Plan.

**1.22  Class** means any group of Claims or Equity Interests classified by the Plan pursuant to section 1122(a)(1) of the Bankruptcy Code.

**1.23  Commencement Date** means September 14, 2005, with respect to all of the Debtors other than NWA Aircraft Finance, Inc., and with respect to NWA Aircraft Finance, Inc. means September 30, 2005.

**1.24  Common Stock Interests** means Equity Interests in NWA Corp. represented by Old NWA Corp. Common Shares.

**1.25  Confirmation Date** means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order.

**1.26 Confirmation Order** means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

**1.27 Consolidated Debtor** means, individually, any of NWA Corp., Holdings, NWA Inc. and Northwest Airlines.

**1.28 Consolidated Debtors** means, collectively, NWA Corp., Holdings, NWA Inc. and Northwest Airlines.

**1.29 Convenience Class Claim** means a Claim, excluding a Claim for principal and interest based on a note issued under any indenture or municipal bond financing, against any of the Consolidated Debtors that otherwise would be a General Unsecured Claim that is (a) for $20,000 or less, or (b) for more than $20,000 if the holder of such Claim has agreed to reduce the amount of the Claim to $20,000 by making the Convenience Class Election on the Ballot provided for voting on this Plan within the time fixed by the Bankruptcy Court for completing and returning such Ballot.

**1.30 Convenience Class Election** means the election pursuant to which the holder of a General Unsecured Claim, excluding a Claim for principal and interest based on a note issued under any indenture or municipal bond financing, against any Consolidated Debtor in an amount greater than $20,000 timely elects to have its Claim reduced to $20,000 and treated as a Convenience Class Claim.

**1.31 Creditors Committee** means the statutory committee of unsecured creditors appointed in the Chapter 11 Cases, as constituted from time to time.

**1.32 Debtor** means, individually, any of NWA Corp., NWA Fuel Services Corporation, Holdings, NWA Inc., Northwest Airlines, Northwest Aerospace Training Corporation, MLT Inc., Compass Airlines, Inc. f/k/a Northwest Airlines Cargo, Inc., NWA Retail Sales Inc., Montana Enterprises, Inc., NW Red Baron LLC, Aircraft Foreign Sales, Inc., NWA Worldclub, Inc., and NWA Aircraft Finance, Inc.

**1.33 Debtors** means, collectively, each Debtor.

**1.34 Deficiency Claim** means that portion of a Claim secured by a lien on property in which the estate has an interest that is determined, pursuant to Section 506(a) of the Code or through agreement, to exceed the value of the claimant's interest in such property.

**1.35 DIP Claim** means the Administrative Expense Claim arising under the DIP Credit and Exit Facility Agreement.

**1.36 DIP Credit and Exit Facility Agreement** means that certain Super Priority Debtor in Possession and Exit Credit and Guarantee Agreement dated as of August 21, 2006, among Northwest Airlines as Borrower, NWA Corp, Northwest Airlines Holdings Corporation and NWA Inc., as Guarantors, and Citicorp USA Inc., as Administrative Agent, JP Morgan Chase Bank, N.A. as Syndication Agent, Deutsche Bank Trust Company Americas, as Documentation Agent, Morgan Stanley Senior Funding Inc., as Co-Syndication Agent, Calyon New York Branch, as Co-Documentation Agent, U.S. Bank National Association, as Agent, Citigroup Global Markets Inc. and J.P. Morgan Securities Inc., as Joint Lead Arrangers and Joint Book Runners for the Exit Facilities, Morgan Stanley Senior Funding Inc., as Co-Arranger and Calyon New York Branch, as Co-Arranger and the several lenders from time to time parties thereto.

**1.37** **Disbursing Agent** means any entity (including any applicable Debtor if it acts in such capacity) in its capacity as a disbursing agent under Section 6.7 hereof.

**1.38** **Disclosure Statement** means the disclosure statement with respect to the Debtors' First Amended Joint and Consolidated Plan of Reorganization Under Chapter 11 of the Bankruptcy Code.

**1.39** **Disputed Claim** means any Claim that is not an allowed claim.

**1.40** **Distribution Record Date** means, except with respect to securities to be cancelled under the Plan, which are governed by Section 6.9 of the Plan, the date fixed as the "Distribution Record Date" by order of the Bankruptcy Court approving the Solicitation Procedures Motion.

**1.41** **Distribution Reserve** means the reserve created pursuant to Section 6.6 of this Plan to hold property (including New Common Stock) for distribution to holders of General Unsecured Claims pending resolution of Disputed Claims.

**1.42** **Downstream Mergers** means the mergers provided for in Section 5.15 of the Plan.

**1.43** **Effective Date** means a Business Day on or after the Confirmation Date selected by the Debtors on which (i) no stay of the Confirmation Order is in effect (ii) the conditions to the effectiveness of the Plan specified in Section 10 hereof have been satisfied or waived and (iii) the Debtors commence consummation of the Plan.

**1.44** **Eligible Holder** means a holder of an Allowed Claim in Class 1D entitled to participate in the Rights Offering pursuant to the Debtors' Solicitation Procedures Motion.

**1.45** **Employee-Related Agreements** means those agreements between any of the Debtors and any of its employees or any entity acting on behalf of its employees.

**1.46** **Equity Interest** means the interest of any holder of an equity security of any Debtor represented by any issued and outstanding shares of common or preferred stock or other instrument evidencing a present ownership interest in any Debtor, whether or not transferable, or any option, warrant or right, contractual or otherwise, to acquire any such interest.

**1.47** **Equity Interests in Debtors Other than NWA Corp.** means, collectively, Equity Interests in Consolidated Debtors Other than NWA Corp., Equity Interests in NWA Fuel Services Corporation, Equity Interests in Northwest Aerospace Training Corporation, Equity Interests in MLT Inc., Equity Interests in Compass Airlines, Inc. f/k/a Northwest Airlines Cargo, Inc., Equity Interests in NWA Retail Sales Inc., Equity Interests in Montana Enterprises, Inc., Equity Interests in NW Red Baron LLC, Equity Interests in Aircraft Foreign Sales, Inc. and Equity Interests in NWA Worldclub, Inc.

**1.48** **Excess Primary Exercise** means, with respect to the exercise of Subscription Rights, the occurrence of the following event: the number of shares to be purchased upon exercise of Subscription Rights that have otherwise been validly and effectively exercised pursuant to primary exercise exceeds the number of shares available for purchase pursuant to the Rights Offering.

**1.49** **Excluded Allowed Administrative Expense Claims** means Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the Debtors, as debtors in possession, or liabilities arising under loans or advances to or incurred by the

Debtors, Postpetition Aircraft Purchase and Lease Obligations, or liabilities arising under the Rights Offering Sponsor Agreement and the registration rights agreement being entered into in connection therewith.

**1.50  Exercising Claimant** means each Eligible Holder of an Allowed Claim in Class 1D that exercises its rights to subscribe to purchase shares of New Common Stock For Distribution Pursuant to Rights Offering.

**1.51  Exit Facility** means the credit facility that will provide liquidity to the Reorganized Debtors.

**1.52  Final Distribution Date** means the date which is ninety days after all Disputed Claims have been resolved by Final Order.

**1.53  Final Order** means an order or judgment that has not been reversed, vacated or stayed and as to which (i) the time to appeal, to petition for a writ of *certiorari* or to move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for a writ of *certiorari* or motion for a new trial, reargument or rehearing shall then be pending, or (ii) if an appeal, writ of *certiorari*, new trial, reargument or rehearing thereof has been sought, such order or judgment shall have been affirmed by the highest court to which such order was appealed, or the petition for a writ of *certiorari* shall have been denied, or a new trial, reargument or rehearing shall have been denied or resulted in no modification of such order or judgment, and the time to take any further appeal, to petition for a writ of *certiorari* or to move for a new trial, reargument or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed relating to such order shall not cause such order to not be a Final Order.

**1.54  General Unsecured Claim** means a Claim against a Debtor that is not an Administrative Expense Claim, a Priority Tax Claim, a Priority Non-Tax Claim, an 1110(a) Aircraft Secured Claim, a Restructured Aircraft Secured Claim, an N301US and N303US Aircraft Secured Claim, an Other Secured Claim, an Insured Claim, an Intercompany Claim, or a Convenience Class Claim.  For the avoidance of doubt, the term General Unsecured Claim includes Deficiency Claims.

**1.55  Holdings** means Northwest Airlines Holdings Corporation, a Delaware corporation.

**1.56  Indentures** means, individually and collectively, (A) the Indenture (as supplemented) dated as of March 1, 1997 among Northwest Airlines, Holdings and U.S. Bank National Association, N.A. as successor to State Street Bank as Trustee, under which Northwest Airlines issued the following series of notes: (i) 10% Notes due 2009 in the aggregate principal amount of $300,000,000, (ii) 9.875% Notes due 2007 in the aggregate principal amount of $300,000,000, (iii) 8.875% Notes due 2006 in the aggregate principal amount of $300,000,000, (iv) 9.5% Notes due 2039 in the aggregate principal amount of $143,000,000, (v) 7.875% Notes due 2008 in the aggregate principal amount of $200,000,000 and (vi) 8.70% Notes due 2007 in the aggregate principal amount of $100,000,000; (B) the Indenture dated as of May 20, 2003 among NWA Corp., Northwest Airlines and U.S. Bank National Association, N.A. as Trustee, under which NWA Corp. issued the 6.625% Senior Convertible Notes due 2023 in the aggregate principal amount of $150,000,000; and (C) the Indenture dated as of November 4, 2003, among NWA Corp., Northwest Airlines and U.S. Bank National Association as Trustee, under which NWA Corp. issued 7.625% Convertible Senior Notes due 2023 in the aggregate principal amount of $225,000,000, and all documents and instruments relating thereto as such may have been amended, modified, supplemented or restated from time to time prior to the Commencement Date.

**1.57  Indenture Trustee** means any of (A) HSBC Bank USA, National Association, as Successor Trustee, with respect to notes issued under the Indenture (as supplemented) dated as of March 1, 1997 among Northwest Airlines, Holdings and U.S. Bank National Association, N.A. as successor to State Street Bank as Trustee; (B) U.S. Bank National Association or U.S. Bank Trust National Association (including any and all of its affiliates) as Indenture Trustee, Pass-Through Trustee, Subordination Agent, Owner Trustee, Security Trustee, Collateral Trustee or other trust capacity.; (C) Law Debenture Company of New York as Successor Trustee to U.S. Bank National Association with respect to the Indenture dated as of November 4, 2003, under which NWA Corp. issued 7.625% Convertible Senior Notes, and the Indenture dated as of May 20, 2003 under which NWA Corp. issued 6.625% Senior Convertible Notes.

**1.58  Insured Claim** means any Claim as to which there is valid and enforceable insurance coverage in an amount sufficient to fully satisfy and discharge such claim.

**1.59  Intercompany Claim** means any General Unsecured Claim held by a Debtor and/or Non-Debtor Affiliate against another Debtor and/or Non-Debtor Affiliate.

**1.60  ISDA Master Agreements** means those agreements entered into by the Debtors using the industry standard form of master agreement developed by the International Swaps and Derivatives Association to govern "over-the-counter" derivative transactions.

**1.61  JPM ISDA Master Agreement** means that certain ISDA Master Agreement made and entered into by and between JPMorgan Chase Bank, N.A. and Northwest Airlines, as amended from time to time, including by that First Amendment to 2002 ISDA Master Agreement, dated October 4, 2006.

**1.62  Management Claim** means Claim No. 11196 against Northwest Airlines, Inc., filed in the amount of not less than $129,096,917.00, on behalf of current salaried employees of the Debtors in order to preserve such salaried employees' rights with respect to, as applicable, (a) such salaried employees' compensation and benefit reductions agreed to as part of the 2004 Bridge Agreement reached between the Debtors and their pilots union, the Airline Pilots Association, International, and (b) such salaried employees' compensation and benefit reductions agreed to as part of the section 1113 negotiation process in these Chapter 11 Cases, calculated in the same manner as the claims granted to the unions who agreed to and ratified modified collective bargaining agreements.

**1.63  Management Equity Plan** means the management equity plan for certain employees of Reorganized Debtors, to be set forth in a plan supplement to be filed with the Bankruptcy Court not less than 20 days before the Voting Deadline.

**1.64  N301US and N303US Aircraft Secured Claim** means the respective Aircraft Secured Claim relating to either the airframe bearing FAA Registration tail number N301US and related Aircraft Equipment or the airframe bearing FAA Registration tail number N303US and related Aircraft Equipment.

**1.65  New Common Stock** means the new shares of common stock of Reorganized NWA Corp., having a par value of 1 cent per share, to be authorized and issued pursuant to the Plan and the Amended Certificate of Incorporation.

**1.66  New Common Stock For Distribution to Creditors** means the portion of the New Common Stock to be distributed to holders of Allowed Class 1D Claims against the Consolidated Debtors and which shall equal 225,788,536 shares of the New Common Stock.

**1.67   New Common Stock For Distribution to Creditors with a Guaranty** means the 8,622,772 shares of the New Common Stock to be distributed to holders of Allowed Class 1D Claims against the Consolidated Debtors, which holders also hold guarantees of such claims by one or more of the other Consolidated Debtors.

**1.68   New Common Stock For Distribution Pursuant to Rights Offering** means the 23,611,111 shares of the New Common Stock made available for purchase pursuant to the Rights Offering, as set forth in Section 9 of the Plan.

**1.69   New Common Stock For Purchased Shares** means the 4,166,667 shares of the New Common Stock purchased by the Rights Offering Sponsor, as set forth in Section 9.6 of the Plan.

**1.70   New Common Stock Reserved for Issuance to Management** means 21,333,248 shares of New Common Stock to be reserved for issuance under the Management Equity Plan.

**1.71   NOLs** means Net Operating Losses, as that term is used in Section 382 of the Internal Revenue Code.

**1.72   Non-Consolidated Debtors** means, collectively, NWA Fuel Services Corporation, Northwest Aerospace Training Corporation, MLT Inc., Compass Airlines, Inc. f/k/a Northwest Airlines Cargo, Inc., NWA Retail Sales Inc., Montana Enterprises, Inc., NW Red Baron LLC, Aircraft Foreign Sales, Inc., NWA Worldclub, Inc., and NWA Aircraft Finance, Inc.

**1.73   Non-Contract Employee Compensation Program** means the compensation program for domestic salaried and international employees.

**1.74   Non-Debtor Affiliates** means Northwest Airlines Charitable Foundation, Cardinal Insurance Co., Tomisato Shoji Hotel Business, Wings Finance Y.K., Win Win L.P., NWA Real Estate Holding Company LLC, Margoon Holding B.V.

**1.75   Northwest Airlines** means Northwest Airlines, Inc., a Minnesota corporation.

**1.76   NW 2006-1 and 2006-2 Trust Indentures** means (i) the Trust Indenture and Security Agreement [NW 2006-1 N851NW], dated as of December 22, 2006, among Northwest Airlines, Wells Fargo Bank Northwest, National Association, as Collateral Agent, Citibank, N.A., as Series A Administrative Agent, and Citibank, N.A., as Series B Administrative Agent (the "Agents"), (ii) the Trust Indenture and Security Agreement [NW 2006-1 N852NW], dated as of December 22, 2006, among Northwest Airlines and the Agents, (iii) the Trust Indenture and Security Agreement [NW 2006-1 N856NW], dated as of December 22, 2006, among Northwest and the Agents, (iv) the Trust Indenture and Security Agreement [NW 2006-1 N857NW], dated as of December 22, 2006, among Northwest Airlines and the Agents, (v) the Trust Indenture and Security Agreement [NW 2006-1 N860NW], dated as of December 22, 2006, among Northwest Airlines and the Agents, (vi) the Trust Indenture and Security Agreement [NW 2006-1 N861NW], dated as of December 22, 2006, among Northwest Airlines and the Agents, (vii) the Trust Indenture and Security Agreement [NW 2006-1 N806NW], dated as of December 22, 2006, among Northwest Airlines and the Agents, (viii) the Trust Indenture and Security Agreement [NW 2006-1 N807NW], dated as of December 22, 2006, among Northwest and the Agents, (ix) the Trust Indenture and Security Agreement [NW 2006-1 N812NW], dated as of December 22, 2006, among Northwest Airlines and the Agents, (x) the Trust Indenture and Security Agreement [NW 2006-1 N371NB], dated as of December 22, 2006, among Northwest Airlines and the Agents, (xi) the Trust Indenture and Security Agreement [NW 2006-1 N377NW], dated as of December 22, 2006, among Northwest and the Agents, (xii) the Trust Indenture and Security Agreement [NW 2006-1 N813NW],

dated as of December 22, 2006, among Northwest Airlines and the Agents, and (xiii) the Trust Indenture and Security Agreement [NW 2006-2 N853NW], dated as of December 22, 2006, among Northwest Airlines and the Agents, in each case as it may from time to time be supplemented or amended as provided therein, including supplementing by a Trust Indenture Supplement pursuant thereto.

1.77 **NWA Corp.** means Northwest Airlines Corporation, a Delaware corporation.

1.78 **NWA Corp. Preferred Shares** means any and all shares of NWA Corp. preferred stock issued and outstanding on the Commencement Date.

1.79 **Old NWA Corp. Common Shares** means any and all shares of NWA Corp. common stock issued and outstanding on the Commencement Date.

1.80 **Other Secured Claim** means a Secured Claim against a Debtor that is not a Restructured Aircraft Secured Claim, an 1110(a) Aircraft Secured Claim, an N301US and N303US Aircraft Secured Claim or a Priority Tax Claim.

1.81 **Periodic Distribution Date** means the first (1st) Business Day that is after the close of one (1) full calendar quarter following the date of the initial Effective Date distributions, and, thereafter, on the first (1st) Business Day following the close of each full calendar quarter thereafter; *provided, however*, if the initial Effective Date distribution falls within the first 45 days of a quarter, then the first post-Effective Date Periodic Distribution Date will be on the first Business Day following the close of such quarter.

1.82 **Plan** means this joint and consolidated plan of reorganization, including the exhibits and appendices hereto, as the same may be amended or modified from time to time in accordance with the provisions of the Bankruptcy Code and the terms hereof.

1.83 **Post-Effective Date Committee** means the committee formed pursuant to section 14.2 of the Plan.

1.84 **Postpetition Aircraft Purchase and Lease Obligations** means those certain obligations arising pursuant to (a) postpetition agreements regarding Aircraft Equipment to be purchased by a Debtor and (b) postpetition agreements to restructure prepetition agreements relating to the purchase or lease of Aircraft Equipment by a Debtor; provided, however, that obligations under such postpetition agreements shall only be Postpetition Aircraft Purchase and Lease Obligations to the extent such agreements expressly state that obligations are to be obligations of the Reorganized Debtor; and provided further that each such postpetition agreement shall have been approved by a Final Order of the Bankruptcy Court prior to the Effective Date.

1.85 **Priority Non-Tax Claim** means any Claim entitled to priority in payment as specified in section 507(a)(3), (4), (5), (6), (7) or (9) of the Bankruptcy Code.

1.86 **Priority Tax Claim** means any Claim, whether secured or unsecured, entitled to priority under sections 502(i) and 507(a)(8) of the Bankruptcy Code.

1.87 **Professional Claim** means a claim filed by any of the professionals retained in these Chapter 11 Cases pursuant to the Bankruptcy Code, Bankruptcy Rules, or an order of the Bankruptcy Court.

1.88 **Pro Rata** means, with respect to an Allowed Claim, the ratio of the amount of the Allowed Claim to the total amount of all Allowed Claims in the same Class.

**1.89   Released Party** means each of (a) the Debtors and the Reorganized Debtors, (b) the Creditors Committee, (c) any statutory committee, the members thereof appointed in the Chapter 11 Cases in their capacities as such, (d) the Rights Offering Sponsor, (e) the Ultimate Purchasers, (f) the Air Line Pilots Association, International and the Northwest Airlines Master Executive Council of the Air Line Pilots Association, International, (g) the International Association of Machinists and Aerospace Workers, District 143, (h) the Aircraft Technical Support Association, (i) the Northwest Airlines Meteorology Association, (j) the Transport Workers Union of America, (k) Aircraft Mechanics Fraternal Association, (l) any Indenture Trustee, and (m) trustees of employee benefit plans, and with respect to each of the above, their current or former members, officers, directors, committee members, employees, advisors, attorneys, accountants, actuaries, investment bankers, consultants, agents and other representatives.

**1.90   Reorganized Debtor** means each Debtor on or after the Effective Date.

**1.91   Reorganized Northwest Airlines** means Northwest Airlines, Inc., on and after the Effective Date.

**1.92   Reorganized NWA Corp.** means Northwest Airlines Corporation, on and after the Effective Date.

**1.93   Restructured Aircraft Secured Claim** means an Aircraft Secured Claim as to which the Debtors and the claimants have agreed to a reduced and restructured Claim and as to which the Bankruptcy Court has entered a Final Order approving such agreement.

**1.94   Retiree Committee** means the statutory committee of retired employees appointed in the Chapter 11 Cases, as constituted from time to time.

**1.95   Rights Offering** means the offering to Eligible Holders of Allowed Claims in Class 1D to subscribe to purchase shares of New Common Stock For Distribution Pursuant to Rights Offering.

**1.96   Rights Offering Expiration Date** means the final date by which an Eligible Holder of an Allowed Class 1D Claim may elect to subscribe to the Rights Offering, which is approximately 28 days after the Subscription Commencement Date.

**1.97   Rights Offering Pro Rata Share** means, with respect to an Eligible Holder, the ratio of the amount of such Eligible Holder's Allowed Claim for purposes of participating in the Rights Offering to the total amount of all Allowed Claims for purposes of participating in the Rights Offering as of the Subscription Rights Record Date (without adjustment for any Allowed Claims of those Eligible Holders who become an Eligible Holder after such date in accordance with the Solicitation Procedures Motion).

**1.98   Rights Offering Sponsor** means J.P. Morgan Securities Inc.

**1.99   Rights Offering Sponsor Agreement** means the agreement between the Rights Offering Sponsor and the Debtors under which the Rights Offering Sponsor commits to purchase all the shares of New Common Stock For Distribution Pursuant to Rights Offering that are allotted to but not purchased by holders of Claims in the Rights Offering and 4,166,667 shares of New Common Stock. The form of the Rights Offering Sponsor Agreement is attached as Exhibit A to the Plan.

**1.100 Schedules** means the schedules of assets and liabilities under section 521 of the Bankruptcy Code, Bankruptcy Rule 1007 and the Official Bankruptcy Forms of the Bankruptcy Rules, as such schedules have been or may be supplemented or amended from time to time.

**1.101 Secured Claim** means a Claim (i) that is secured by a valid, duly perfected, non-avoidable security interest in the interest of a Debtor in property that is not Aircraft Equipment, to the extent of the value, as of the Effective Date or such other date as is established by the Bankruptcy Court, of such Claimholder's interest in the applicable Debtor's interest in such property, as determined by a Final Order of the Bankruptcy Court pursuant to section 506(a) of the Bankruptcy Code or as otherwise agreed upon in writing by the Debtors and the Claimholder or (ii) that is secured by the amount of any valid, non-avoidable rights of setoff of the holder thereof under section 553 of the Bankruptcy Code.

**1.102 Securities Act** means the Securities Act of 1933, as amended, 15 U.S.C. § 77a, *et seq*., and all rules or regulations promulgated thereunder.

**1.103 Settlement Procedures Order** means the Final Order dated September 13, 2006 (Docket No. 3546), establishing procedures for the Debtors to settle Claims filed against the estates.

**1.104 Solicitation Procedures Motion** means the Debtors' Motion For An Order Approving (I) An Ex- Parte Order (A) Scheduling Hearing To Consider Approval Of Disclosure Statement And Approving Notice Procedures; (B) Scheduling Hearing On Plan Confirmation And Approving Notice Procedures; And (C) Establishing Deadline For Motions To Estimate For Purposes Of Rights Offering Participation; (II) An Order On Notice (A) Approving Disclosure Statement; (B) Establishing Solicitation Procedures; And (C) Fixing Distribution Record Date; And (III) An Order On Notice (A) Establishing Procedures For Participation In Rights Offering; And (B) Approving Subscription Form.

**1.105 Subordinated Claim** means any Claim against a Debtor, whether secured or unsecured, for any fine, penalty, forfeiture, attorneys' fees (to the extent that such attorneys' fees are punitive in nature), multiple, exemplary or punitive damages, or for any other amount that does not represent compensation for actual pecuniary loss suffered by the holder of such Claim, and all claims against any of the Debtors of the type described in section 510(b) of the Bankruptcy Code.

**1.106 Subscription Agent** means the person engaged by the Debtors to administer the Rights Offering.

**1.107 Subscription Commencement Date** means a Business Day approved by the Bankruptcy Court, pursuant to the Debtors' Solicitation Procedures Motion, on which the Rights Offering will commence.

**1.108 Subscription Form** means the form to be used by a valid holder of Subscription Rights to exercise such Subscription Rights.

**1.109 Subscription Purchase Price** means the purchase price set forth in the Subscription Form that each Eligible Holder of an Allowed Claim in Class 1D must pay in order to exercise its Subscription Rights and purchase the New Common Stock For Distribution Pursuant to Rights Offering pursuant to, and in accordance with, Section 9 hereof.

**1.110 Subscription Rights** means the rights to purchase the shares of New Common Stock For Distribution Pursuant to Rights Offering.

**1.111 Subscription Rights Record Date**  means a Business Day approved by the Bankruptcy Court pursuant to the Debtors' Solicitation Procedures Motion on which the Eligible Holders of Class 1D Claims entitled to subscribe to the Rights Offering shall be determined.

**1.112 Ultimate Purchasers** means those parties with which the Rights Offering Sponsor has entered into a syndication agreement, pursuant to which such parties have agreed to purchase from the Rights Offering Sponsor or Reorganized NWA Corp. certain unsubscribed shares purchased by the Rights Offering Sponsor and Purchased Shares purchased by the Rights Offering Sponsor.

**SECTION 2.**     **ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY TAX CLAIMS**

**2.1**     *Administrative Expense Claims and Bar Date*.

Except to the extent that a holder of an Allowed Administrative Expense Claim agrees to a different treatment, or as otherwise provided for in the Plan, the Debtors shall pay each Allowed Administrative Expense Claim in full and in Cash on, or as soon thereafter as is reasonably practicable, the later of the Effective Date and the first Business Day after the date that is thirty (30) calendar days after the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim; provided, however, that the Excluded Allowed Administrative Expense Claims may be paid by the Debtors in the ordinary course of business and without the necessity to file a proof of claim, consistent with past practice and in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to such transactions.

A notice setting forth the Administrative Expense Claim Bar Date will be (i) filed on the Bankruptcy Court's docket and (ii) posted on the Debtors' case information website at http://www.nwa-restructuring.com/. Further notice of the Administrative Expense Claim Bar Date will be provided as may be directed by the Bankruptcy Court. All requests for payment of an Administrative Expense Claim that accrued on or before the Effective Date other than the Excluded Allowed Administrative Expense Claims must be filed with the Claims Agent and served on counsel for the Debtors by the Administrative Claim Bar Date. Except as to Excluded Allowed Administrative Expense Claims, any requests for payment of Administrative Expense Claims that are not properly filed and served by the Administrative Expense Claim Bar Date shall not appear on the register of claims maintained by the Claims Agent and shall be disallowed automatically without the need for any objection from the Debtors or the Reorganized Debtors or any action by the Bankruptcy Court.

The Reorganized Debtors, in their sole and absolute discretion, may settle Administrative Expense Claims in the ordinary course of business without further Bankruptcy Court approval. The Debtors shall have the right to object to any Administrative Expense Claim within 180 days after the Claims Objection Deadline, subject to extensions from time to time by the Bankruptcy Court, with the consent of the Post-Effective Date Committee. Unless the Debtors or the Reorganized Debtors object to a timely-filed and properly served Administrative Expense Claim, such Administrative Expense Claim shall be deemed allowed in the amount requested. In the event that the Debtors or the Reorganized Debtors object to an Administrative Expense Claim the parties may confer to try to reach a settlement and, failing that, the Bankruptcy Court shall determine whether such Administrative Expense Claim should be allowed and, if so, in what amount.

**2.2**     *Postpetition Aircraft Purchase and Lease Obligations*.

The Postpetition Aircraft Purchase and Lease Obligations will become obligations of the Reorganized Debtors or their successors, if applicable, on the Effective Date. The foregoing sentence will

be specifically limited with respect to each Postpetition Aircraft Purchase and Lease Obligation by the express terms of the agreement pursuant to which such Postpetition Aircraft Purchase and Lease Obligation arises, and nothing contained in the Plan, the Disclosure Statement for the Plan or the Confirmation Order will be deemed to limit or otherwise affect the terms thereof. The Final Orders approving Postpetition Aircraft Purchase and Lease Obligations are set forth in Schedule 2.2.

### 2.3 *Priority Tax Claims*.

Unless otherwise agreed with a holder of an Allowed Priority Tax Claim, the Debtors, in their sole discretion, may choose whether Allowed Priority Tax Claims will be paid in cash either: (1) in an aggregate amount equal to such Allowed Priority Tax Claim, together with interest from the Effective Date at a fixed annual rate equal to five percent (5%) over a period not exceeding six (6) years after the date of assessment of such Allowed Priority Tax Claim; or (2) in full on, or as soon thereafter as is reasonably practicable, the later of the Effective Date and the first Business Day after the date that is thirty (30) calendar days after the date such Priority Tax Claim becomes an Allowed Priority Tax Claim. The Debtors reserve the right to prepay, without penalty, at any time under option (1) above.

### 2.4 *DIP Claims*.

In the event the Debtors elect to convert the DIP Credit and Exit Facility Agreement into an Exit Facility, the Reorganized Debtors shall assume all obligations under the DIP Credit and Exit Facility Agreement, and the liens on the collateral securing the DIP Credit and Exit Facility Agreement will remain in place and survive against the Reorganized Debtors, in accordance with the terms and conditions of the DIP Credit and Exit Facility Agreement.

In the event the Debtors do not elect to convert the DIP Credit and Exit Facility Agreement into an Exit Facility, on the Effective Date, the Debtors shall pay or arrange for the payment of all amounts outstanding under the DIP Credit and Exit Facility Agreement. Once such payment has been made, these agreements and any agreements or instrument related thereto shall be deemed terminated and Citicorp USA Inc., as Administrative Agent, and the lenders thereunder shall take all reasonable action to remove promptly and confirm the removal of any liens on the collateral of the Debtors securing the DIP Credit and Exit Facility Agreement.

### 2.5 *Claims Arising Under the Rights Offering Sponsor Agreement*

The Reorganized Debtors (or their successors) shall assume all obligations under the Rights Offering Sponsor Agreement and the registration rights agreement being entered into in connection therewith, and such obligations will survive against the Reorganized Debtors (or their successors), in accordance with the terms and conditions of the Rights Offering Sponsor Agreement and the registration rights agreement being entered into in connection therewith.

### 2.6 *Satisfaction of Exit Conditions Under A330 Financing Indentures*.

The Secured Obligations under the A330 Financing Indentures will become obligations of the Reorganized Northwest Airlines or its successor, if applicable, on the Effective Date, and the security interests in the collateral securing the respective Secured Obligations will remain in place and continue to survive against the Reorganized Northwest Airlines.

### 2.7 *Satisfaction of Conditions Under ISDA Master Agreements*. The obligations under all ISDA Master Agreements entered into by the Debtors, specifically including the JPM ISDA Master Agreement, will become obligations of the Reorganized Northwest Airlines or its successor, if

applicable, on the Effective Date, and Reorganized Northwest Airlines shall continue to pay all obligations thereunder in accordance with the agreements.

## SECTION 3.     CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

This Plan constitutes a separate chapter 11 plan of reorganization for each Non-Consolidated Debtor. This Plan also constitutes a single chapter 11 plan of reorganization for the Consolidated Debtors, which will be substantively consolidated for the purposes of voting, distribution and Plan confirmation. Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of classes of Claims against and Equity Interests in the Consolidated Debtors and in each of the Non-Consolidated Debtors.

**3.1**    *Consolidated Debtors Classes*: Claims against and Equity Interests in the Consolidated Debtors are classified as follows:

(a)     *Class 1A Priority Non-Tax Claims*: This Class consists of Priority Non-Tax Claims against the Consolidated Debtors. Claims in this Class are unimpaired and not entitled to vote.

(b)     *Class 1B-1 1110(a) Aircraft Secured Claims*: This Class includes Aircraft Secured Claims against the Consolidated Debtors relating to Aircraft Equipment as to which the Debtors agreed under section 1110(a) of the Bankruptcy Code to perform all obligations under the applicable loan agreements. Claims in this Class are unimpaired and not entitled to vote.

(c)     *Class 1B-2 Restructured Aircraft Secured Claims*: The Claims in this Class consist of Restructured Aircraft Secured Claims against the Consolidated Debtors as to which the Debtors have agreed to treatment as a Postpetition Aircraft Purchase and Lease Obligation. Claims in this Class are unimpaired and not entitled to vote.

(d)     *Class 1B-3 N301US and N303US Aircraft Secured Claims*: The Claims in this Class consist of Aircraft Secured Claims against the Consolidated Debtors relating to airframes bearing FAA Registration numbers N301US and N303US and related Aircraft Equipment. Claims in this Class are unimpaired and not entitled to vote.

(e)     *Class 1C Other Secured Claims*: This Class consists of Secured Claims against the Consolidated Debtors other than those described in 3.1(b), (c) and (d). Claims in this Class are unimpaired and not entitled to vote.

(f)     *Class 1D General Unsecured Claims*: This Class consists of General Unsecured Claims against the Consolidated Debtors. Claims in this Class are impaired and entitled to vote.

(g)     *Class 1E Convenience Class Claims*: This Class consists of Convenience Class Claims against the Consolidated Debtors. Claims in this Class are impaired and entitled to vote.

(h)     *Class 1F Intercompany Claims*: This Class consists of Intercompany Claims of the Non-Consolidated Debtors and the Non-Debtor Affiliates against the Consolidated Debtors. Claims in this Class are impaired and entitled to vote.

(i)     *Class 1G Equity Interests in Consolidated Debtors Other than NWA Corp.*: This Class consists of Equity Interests in the Consolidated Debtors other than NWA Corp. Claims in this Class are unimpaired and not entitled to vote.

(j)     *Class 1H Preferred Stock Interests in NWA Corp.*: This Class consists of Equity Interests represented by NWA Corp. Preferred Shares.  Interests in this Class are impaired and deemed to reject the Plan.

(k)     *Class 1I Common Stock Interests in NWA Corp.*: This Class consists of Equity Interests represented by Old NWA Corp. Common Shares.  Interests in this Class are impaired and deemed to reject the Plan.

**3.2     *NWA Fuel Services Corporation Classes***: Claims against and Equity Interests in NWA Fuel Services Corporation are classified as follows:

(a)     *Class 2A Priority Non-Tax Claims*:  This Class consists of Priority Non-Tax Claims against NWA Fuel Services Corporation.  Claims in this Class are unimpaired and not entitled to vote.

(b)     *Class 2B General Unsecured Claims*: This Class consists of General Unsecured Claims against NWA Fuel Services Corporation.  Claims in this Class are impaired and entitled to vote.

(c)     *Class 2C Intercompany Claims*: This Class consists of Intercompany Claims against NWA Fuel Services Corporation.  Claims in this Class are impaired and entitled to vote.

(d)     *Class 2D Equity Interests in NWA Fuel Services Corporation*: This Class consists of all Equity Interests in NWA Fuel Services Corporation.  Equity Interests in this Class are unimpaired and not entitled to vote.

**3.3     *Northwest Aerospace Training Corporation Classes***: Claims against and Equity Interests in Northwest Aerospace Training Corporation are classified as follows:

(a)     *Class 3A Priority Non-Tax Claims*:  This Class consists of Priority Non-Tax Claims against Northwest Aerospace Training Corporation.  Claims in this Class are unimpaired and not entitled to vote.

(b)     *Class 3B Other Secured Claims*: This Class consists of miscellaneous Secured Claims against Northwest Aerospace Training Corporation.  Claims in this Class are unimpaired and not entitled to vote.

(c)     *Class 3C General Unsecured Claims*: This Class consists of General Unsecured Claims against Northwest Aerospace Training Corporation.  Claims in this Class are impaired and entitled to vote.

(d)     *Class 3D Intercompany Claims*: This Class consists of Intercompany Claims against Northwest Aerospace Training Corporation.  Claims in this Class are impaired and entitled to vote.

(e)    *Class 3E Equity Interests in Northwest Aerospace Training Corporation:* This Class consists of all Equity Interests in Northwest Aerospace Training Corporation. Equity Interests in this Class are unimpaired and not entitled to vote.

**3.4    *MLT Inc. Classes***: Claims against and Equity Interests in MLT Inc. are classified as follows:

(a)    *Class 4A Priority Non-Tax Claims*:  This Class consists of Priority Non-Tax Claims against MLT Inc.  Claims in this Class are unimpaired and not entitled to vote.

(b)    *Class 4B General Unsecured Claims*: This Class consists of General Unsecured Claims against MLT Inc.  Claims in this Class are impaired and entitled to vote.

(c)    *Class 4C Intercompany Claims*: This Class consists of Intercompany Claims against MLT Inc.  Claims in this Class are impaired and entitled to vote.

(d)    *Class 4D Equity Interests in MLT Inc.*: This Class consists of all Equity Interests in MLT Inc.  Equity Interests in this Class are unimpaired and not entitled to vote.

**3.5    *Compass Airlines, Inc. f/k/a  Northwest Airlines Cargo, Inc. Classes***: Claims against and Equity Interests in Compass Airlines, Inc. f/k/a Northwest Airlines Cargo, Inc. are classified as follows:

(a)    *Class 5A Priority Non-Tax Claims*:  This Class consists of Priority Non-Tax Claims against Compass Airlines, Inc. f/k/a Northwest Airlines Cargo, Inc.  Claims in this Class are unimpaired and not entitled to vote.

(b)    *Class 5B General Unsecured Claims*: This Class consists of General Unsecured Claims against Compass Airlines, Inc. f/k/a Northwest Airlines Cargo, Inc.  Claims in this Class are impaired and entitled to vote.

(c)    *Class 5C Equity Interests in Compass Airlines, Inc. f/k/a Northwest Airlines Cargo, Inc.*:  This Class consists of all Equity Interests in Compass Airlines, Inc. f/k/a Northwest Airlines Cargo, Inc.  Equity Interests in this Class are unimpaired and not entitled to vote.

**3.6    *NWA Retail Sales Inc. Classes***: Claims against and Equity Interests in NWA Retail Sales Inc. are classified as follows:

(a)    *Class 6A Priority Non-Tax Claims*:  This Class consists of Priority Non-Tax Claims against NWA Retail Sales Inc.  Claims in this Class are unimpaired and not entitled to vote.

(b)    *Class 6B General Unsecured Claims*: This Class consists of General Unsecured Claims against NWA Retail Sales Inc.  Claims in this Class are impaired and entitled to vote.

(c)    *Class 6C Intercompany Claims*: This Class consists of Intercompany Claims against NWA Retail Sales Inc.  Claims in this Class are impaired and entitled to vote.

(d)    *Class 6D Equity Interests in NWA Retail Sales Inc.*: This Class consists of all Equity Interests in NWA Retail Sales Inc.  Equity Interests in this Class are unimpaired and not entitled to vote.

**3.7**    *Montana Enterprises, Inc. Classes*: Claims against and Equity Interests in Montana Enterprises, Inc. are classified as follows:

(a)    *Class 7A Priority Non-Tax Claims*:  This Class consists of Priority Non-Tax Claims against Montana Enterprises, Inc.  Claims in this Class are unimpaired and not entitled to vote.

(b)    *Class 7B General Unsecured Claims*: This Class consists of General Unsecured Claims against Montana Enterprises, Inc.  Claims in this Class are impaired and entitled to vote.

(c)    *Class 7C Equity Interests in Montana Enterprises, Inc.*: This Class consists of all Equity Interests in Montana Enterprises, Inc.  Equity Interests in this Class are unimpaired and not entitled to vote.

**3.8**    *NW Red Baron LLC Classes*: Claims against and Equity Interests in NW Red Baron LLC are classified as follows:

(a)    *Class 8A Priority Non-Tax Claims*:  This Class consists of Priority Non-Tax Claims against NW Red Baron LLC.  Claims in this Class are unimpaired and not entitled to vote.

(b)    *Class 8B General Unsecured Claims*:  This Class consists of General Unsecured Claims against NW Red Baron LLC.  Claims in this Class are impaired and entitled to vote.

(c)    *Class 8C Equity Interests in NW Red Baron LLC*:  This Class consists of all Equity Interests in NW Red Baron LLC.  Equity Interests in this Class are unimpaired and not entitled to vote.

**3.9**    *Aircraft Foreign Sales, Inc. Classes*: Claims against and Equity Interests in Aircraft Foreign Sales, Inc. are classified as follows:

(a)    *Class 9A Priority Non-Tax Claims*:  This Class consists of Priority Non-Tax Claims against Aircraft Foreign Sales, Inc.   Claims in this Class are unimpaired and not entitled to vote.

(b)    *Class 9B General Unsecured Claims*: This Class consists of General Unsecured Claims against Aircraft Foreign Sales, Inc.  Claims in this Class are impaired and entitled to vote.

(c)    *Class 9C Intercompany Claims*: This Class consists of Intercompany Claims against Aircraft Foreign Sales, Inc.  Claims in this Class are impaired and entitled to vote.

(d)    *Class 9D Equity Interests in Aircraft Foreign Sales, Inc.*: This Class consists of all Equity Interests in Aircraft Foreign Sales, Inc.  Equity Interests in this Class are unimpaired and not entitled to vote.

**3.10**  *NWA Worldclub, Inc. Classes*: Claims against and Equity Interests in NWA Worldclub, Inc. are classified as follows:

(a)  *Class 10A Priority Non-Tax Claims*:  This Class consists of Priority Non-Tax Claims against NWA Worldclub, Inc.  Claims in this Class are unimpaired and not entitled to vote.

(b)  *Class 10B General Unsecured Claims*: This Class consists of General Unsecured Claims against NWA Worldclub, Inc.  Claims in this Class are impaired and entitled to vote.

(c)  *Class 10C Equity Interests in NWA Worldclub, Inc.*: This Class consists of all Equity Interests in NWA Worldclub, Inc.  Equity Interests in this Class are unimpaired and not entitled to vote.

**3.11**  *NWA Aircraft Finance, Inc. Classes*:  Claims against and Equity Interests in NWA Aircraft Finance, Inc. are classified as follows:

(a)  *Class 11A Priority Non-Tax Claims*:  This Class consists of Priority Non-Tax Claims against NWA Aircraft Finance, Inc.  Claims in this Class are unimpaired and not entitled to vote.

(b)  *Class 11B General Unsecured Claims*:  This Class consists of General Unsecured Claims against NWA Aircraft Finance, Inc.  Claims in this Class are impaired and entitled to vote.

(c)  *Class 11C Intercompany Claims*:  This Class consists of Intercompany Claims against NWA Aircraft Finance, Inc.  Claims in this Class are impaired and entitled to vote.

(d)  *Class 11D Equity Interests in NWA Aircraft Finance, Inc.*:  This Class consists of all Equity Interests in NWA Aircraft Finance, Inc.  Equity Interests in this Class are unimpaired and not entitled to vote.

## SECTION 4.    TREATMENT OF CLAIMS AND EQUITY INTERESTS

**4.1**  *Priority Non-Tax Claims (Class 1A, 2A, 3A, 4A, 5A, 6A, 7A, 8A, 9A, 10A, 11A) (Unimpaired/Not Entitled to Vote)*

Except to the extent that a holder of an Allowed Priority Non-Tax Claim against any of the Debtors has agreed to a different treatment of such Claim, each such holder of an Allowed Priority Non-Tax Claim shall receive, in full settlement, satisfaction, release and discharge of such Claim, Cash in an amount equal to such Claim, on or as soon as reasonably practicable after the later of (i) the Effective Date, (ii) the date such Claim becomes Allowed, and (iii) the date for payment provided by any agreement or understanding between the parties.

**4.2**  *1110(a) Aircraft Secured Claims (Class 1B-1) (Unimpaired/Not Entitled to Vote)*

This Class includes Aircraft Secured Claims relating to Aircraft Equipment as to which the Debtors agreed under section 1110(a) of the Bankruptcy Code to perform all obligations under the

applicable loan agreements. The Claims in this class are set forth in Schedule 4.2 to the Plan. In full settlement, satisfaction, release and discharge of such Claims, the maturity of such Claims will be reinstated as such maturity existed before default in accordance with section 1124(2)(B) of the Bankruptcy Code and paid in accordance with the terms of the applicable loan agreements. The Claimants will retain their security interests on the Aircraft Equipment which secure their respective claims.

Such payments as are necessary to bring the reinstated obligations current shall be made on the Effective Date, or as soon thereafter as reasonably practicable. Any dispute with respect to amounts payable under the reinstated debt, including, without limitation, disputes as to default interest, fees and expenses, will be determined by the Bankruptcy Court, and the amounts payable, if any, as so determined, shall be made promptly after the determination by the Bankruptcy Court.

### 4.3  *Restructured Aircraft Secured Claims (Class 1B-2) (Unimpaired/Not Entitled to Vote)*

The Claims in this Class consist of Aircraft Secured Claims as to which the Debtors and the claimants have agreed to a reduced and restructured Claim and as to which the Bankruptcy Court has entered a Final Order approving such agreement. The Claims in this Class are set forth in Schedule 4.3 to the Plan. In full settlement, satisfaction, release and discharge of such Claims and in accordance with section 1124(2) of the Bankruptcy Code, the Claims in this Class will be treated in accordance with the applicable restructuring agreement and the Final Order that approved such agreement and are unimpaired by the Plan.

### 4.4  *N301US and N303US Aircraft Secured Claims (Class 1B-3) (Unimpaired/Not Entitled to Vote)*

The Claims in this Class consist of Aircraft Secured Claims relating to airframes bearing FAA Registration numbers N301US and N303US and related Aircraft Equipment. On the Effective Date, or as soon as reasonably practicable thereafter, in accordance with section 1124(2) of the Bankruptcy Code and in full settlement, satisfaction, release and discharge of such Claims, the maturity of such Claims with respect to N301US and N303US will be reinstated as such maturity existed before default, cure any such default that occurred before or after the commencement of the case under this title, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code; and pay the balance of the Claims in accordance with the terms of the applicable loan agreements. The claimants will retain their respective security interests on the Aircraft Equipment securing the Claims.

Such payments as are necessary to bring the reinstated obligations current shall be made on the Effective Date, or as soon thereafter as reasonably practicable. Any dispute with respect to amounts payable under the reinstated debt, including, without limitation, disputes as to default interest, fees and expenses, will be determined by the Bankruptcy Court, and the amounts payable, if any, as so determined, shall be made promptly after the determination by the Bankruptcy Court.

### 4.5  *Other Secured Claims (Class 1C, 3B) (Unimpaired/Not Entitled to Vote)*

The Claims in this Class and the treatment of each Claim is set forth in Schedule 4.5 to the Plan.

### 4.6  *General Unsecured Claims*

#### (a)  *General Unsecured Claims – Consolidated Debtors (Class 1D) (Impaired/Entitled to Vote)*

On the Effective Date, or as soon as reasonably practicable thereafter, each holder of an Allowed General Unsecured Claim against the Consolidated Debtors shall receive, in full settlement, satisfaction, release and discharge of its Claim, (i) its Pro Rata share of the New Common Stock For Distribution to Creditors; and (ii) if the Eligible Holder elected to participate in the Rights Offering, the right to purchase its Rights Offering Pro Rata Share of the New Common Stock For Distribution Pursuant to Rights Offering.

Except as otherwise provided in the Plan, the substantive consolidation of the Consolidated Debtors will eliminate any guarantees by any Consolidated Debtor of the direct or indirect obligation of another Consolidated Debtor; provided, however, each holder of an Allowed Class 1D Claim who also holds a guaranty from one or more Consolidated Debtors related to such claim will receive, in addition to the distribution prescribed in the immediately preceding paragraph, as compensation for the impact of the consolidation, its share of the New Common Stock For Distribution to Creditors With a Guaranty, determined by multiplying the number of shares of New Common Stock For Distribution to Creditors With a Guaranty by the Allocation Fraction for such holder. If a direct or indirect obligation of Northwest Airlines was guaranteed by more than one of the other Consolidated Debtors, the holder will be treated as if it had only a single guaranty.

To the extent that a General Unsecured Claim against the Consolidated Debtors is a Subordinated Claim, the holder will not receive a distribution of either New Common Stock For Distributions to Creditors or New Common Stock For Distribution Pursuant to Rights Offering, unless and until each holder of an Allowed Claim in 1D that possesses a senior right to payment receives New Common Stock For Distributions to Creditors of a value equal to its Allowed Claim amount, plus any applicable interest thereon.

Pursuant to the Convenience Class Election, a holder of a General Unsecured Claim of $20,000 or more may elect to have such Claim treated as a Convenience Class Claim by making the Convenience Class Election on the Ballot provided for voting on the Plan within the time fixed by the Bankruptcy Court for completing and returning such Ballot. By making such Convenience Class Election, a holder of a General Unsecured Claim of $20,000 or more is agreeing to accept $20,000 in Cash in full satisfaction, discharge and release of such Claim.

*(b)* *General Unsecured Claim – Non-Consolidated Debtors (Class 2B, 3C, 4B, 5B, 6B, 7B, 8B, 9B, 10B, 11B) (Impaired/Entitled to Vote)*

On the Effective Date, or as soon as reasonably practicable thereafter, each holder of an Allowed General Unsecured Claim in Classes 2B, 3C, 4B, 5B, 6B, 7B, 8B, 9B, 10B and 11B shall receive, in full settlement, satisfaction, release and discharge of its Claim, full payment in Cash in the amount of the Allowed Claim.

To the extent that a holder of an Allowed General Unsecured Claim in Classes 2B, 3C, 4B, 5B, 6B, 7B, 8B, 9B, 10B and 11B filed a proof of claim on the same debt against a Consolidated Debtor, the proof of Claim against the Consolidated Debtor is deemed expunged without further action by any party.

**4.7** *Convenience Class Claims (Class 1E) (Impaired/Entitled to Vote)*

On the Effective Date, or as soon as reasonably practicable thereafter, each holder of an Allowed Convenience Class Claim in Class 1E shall receive in full settlement, satisfaction, release and discharge of its Claim, full payment in Cash in the amount of the Allowed Claim.

On the Effective Date, if the holder of a General Unsecured Claim of $20,000 or more has made the Convenience Class Election on the Ballot provided for voting on the Plan within the time

fixed by the Bankruptcy Court for completing and returning such Ballot, then the Holder will accept $20,000 in Cash in full satisfaction, discharge and release of such Claim.

**4.8** *Intercompany Claims (Class 1F, 2C, 3D, 4C, 6C, 9C, 11C) (Impaired/Entitled to Vote)*

Each holder of an Intercompany Claim in Classes 1F, 2C, 3D, 4C, 6C, 9C, 11C shall receive, in full settlement, satisfaction, release and discharge of each Claim, $1.00 on the Effective Date or as soon as reasonably practicable thereafter.

**4.9** *Equity Interests in Debtors Other than NWA Corp. (Class 1G, 2D, 3E, 4D, 5C, 6D, 7C, 8C, 9D, 10C, 11D) (Unimpaired/Not Entitled to Vote)*

All Equity Interests in Classes 1G, 2D, 3E, 4D, 5C, 6D, 7C, 8C, 9D, 10C and 11D shall be unimpaired under the Plan.

**4.10** *Preferred Stock Interests in NWA Corp.* (Class 1H) (Impaired/Deemed to Reject)

All Preferred Stock Interests shall be deemed cancelled as of the Effective Date, and each holder of a Preferred Stock Interest shall neither receive nor retain any property on account of such Preferred Stock Interest under the Plan.

**4.11** *Common Stock Interests in NWA Corp (Class 1I) (Impaired/Deemed to Reject)*

All Common Stock Interests shall be deemed cancelled as of the Effective Date, and each holder of a Common Stock Interest shall neither receive nor retain any property or interest in property on account of such Common Stock Interest under the Plan.

## SECTION 5.  MEANS FOR IMPLEMENTATION

**5.1** *Substantive Consolidation*.

The Consolidated Debtors are substantively consolidated for all purposes and actions associated with consummation of the Plan, including, without limitation, for purposes of voting and confirmation.  On and after the Effective Date, (a) all assets and liabilities of the Consolidated Debtors shall be treated as though they were merged into the Northwest Airlines estate solely for purposes of the Plan, (b) no distributions shall be made under the Plan on account of Equity Interests between and among any of the Consolidated Debtors, (c) for all purposes associated with Confirmation, including, without limitation, for purposes of tallying acceptances and rejections of the Plan, the estates of the Consolidated Debtors shall be deemed to be one consolidated estate for Northwest Airlines, and (d) each and every Claim filed or to be filed in the Chapter 11 Cases of the Consolidated Debtors, shall be deemed filed against the Consolidated Debtors, and shall be Claims against and obligations of the Consolidated Debtors.  As a result of the consolidation, any guaranty by one or more Consolidated Debtors of the obligations of another Consolidated Debtor will be eliminated except as it relates to guarantees arising under the secured aircraft financings described in Section 2.2, Section 4.2, Section 4.3 and Section 4.4 of the Plan or any guarantees related to leases which are assumed, but, as prescribed above in Section 4, each holder of an Allowed Unsecured Claim against a Consolidated Debtor who also has a guaranty from another Consolidated Debtor shall be compensated for the elimination of the guaranty, such that the substantive consolidation will not result in unfair treatment to creditors who relied on guarantees.

Substantive consolidation shall not affect: (a) the legal and organizational structure of the Consolidated Debtors; (b) pre and post-Commencement Date guarantees, liens, and security interests that are required to be maintained (i) pursuant to any Postpetition Aircraft Purchase and Lease Obligation, (ii) under the Bankruptcy Code or in connection with contracts or leases that were entered into during the Chapter 11 Cases or executory contracts or unexpired leases that have been or will be assumed, or (iii) pursuant to the Plan; (c) Intercompany Claims and Equity Interests between and among the Consolidated Debtors; and (d) distributions from any insurance policies or proceeds of such policies.

In the event that the Bankruptcy Court does not order substantive consolidation of the Consolidated Debtors, then: (a) nothing in the Plan or the Disclosure Statement shall constitute or be deemed to constitute an admission that one of the Debtors is subject to or liable for any Claim against any other Debtor; (b) Claims against multiple Debtors shall be treated as separate Claims with respect to each Debtor's estate for all purposes (including, without limitation, distributions and voting), and such Claims shall be administered as provided in the Plan; and (c) the Debtors shall not, nor shall they be required to, resolicit votes with respect to the Plan, nor will the failure of the Bankruptcy Court to approve substantive consolidation of the Consolidated Debtors materially alter the economics of the distributions set forth in the Plan. In the event that the Bankruptcy Court does not order substantive consolidation, the Plan shall be deemed to provide for fourteen subplans of reorganization. A vote to accept the Plan shall also be deemed a vote to accept a separate plan for each of the Consolidated Debtors against whom you hold your claim in the event that the Bankruptcy Court denies approval of the substantive consolidation of the Consolidated Debtors; provided that the treatment of the claim being voted would not be materially different in the absence of substantive consolidation.

### 5.2    *Exit Financing*.

On the Effective Date, the Reorganized Debtors shall either convert the DIP Credit and Exit Facility Agreement into the Exit Facility or elect an alternative Exit Facility; *provided, however,* that the Debtors will consult with the Creditors Committee in advance of a decision to elect an alternative to the DIP Credit and Exit Facility Agreement. In the event the Debtors elect an alternative Exit Facility, confirmation of the Plan shall constitute an approval of the transactions contemplated thereby and of all actions to be taken, undertakings to be made and obligations to be incurred by the Reorganized Debtors in connection therewith, including the continued pledging of Pacific Routes as collateral, and the payment of all interest, principal amortization, fees, indemnities and expenses provided for therein. The Exit Facility may be used for any purpose permitted by the Exit Facility, including the funding of obligations under the Plan, such as the payment of Administrative Expense Claims and the satisfaction of ongoing working capital requirements.

### 5.3    *Authorization of New Common Stock*.

Confirmation of the Plan shall be an authorization for the Reorganized NWA Corp. to issue the New Common Stock, without the need for any further corporate action.

### 5.4    *Rights Offering and Purchased Shares*.

The Debtors shall raise additional capital through the Rights Offering, which will be conducted in accordance with Section 9 of this Plan, and the sale of the Purchased Shares.

### 5.5    *Private Equity Investment*

The Debtors retain the right to raise $150 million in private equity investment upon terms and conditions to be approved by the Bankruptcy Court upon notice and a hearing.

### 5.6 *Listing of New Common Stock*.

Reorganized NWA Corp. shall use commercially reasonable efforts to cause the New Common Stock to be listed on a national securities exchange or a qualifying interdealer quotation system.

### 5.7 *Restrictions on the Transfer of New Common Stock to Protect NOLs*.

To reduce the risk of adverse federal income tax consequences after the Effective Date resulting from an ownership change (as defined in section 382 of the Internal Revenue Code), the Amended Certificate of Incorporation will restrict the transfer of the New Common Stock without the consent of the Board for 2 years after the Effective Date, subject to extension for up to 3 additional years if the Board of Directors of Reorganized NWA Corp. determines in its reasonable discretion that such restrictions are necessary to preserve the value of the Debtors' NOLs. These restrictions generally will provide that any attempted transfer of New Common Stock prior to the expiration of the term of the transfer restrictions will be prohibited and void if such transfer would cause the transferee's ownership interest in Reorganized NWA Corp., as determined for the purposes of section 382 of the Internal Revenue Code, to increase to 4.95% or above, including an increase in a transferee's ownership interest from 4.95% or above to a greater ownership interest, except as may be otherwise agreed to by the Board of Directors of Reorganized NWA Corp. or required by law with respect to certain qualified plans. Absent a contrary decision by the Debtors, in consultation with the Creditors Committee, the Amended Certificate of Incorporation will also contain similar provisions restricting the ability of persons who are 5% shareholders for the purposes of section 382 of the Internal Revenue Code to dispose of their shares without the consent of the Board of Directors of Reorganized NWA Corp. during the term of the transfer restrictions. The transfer restrictions will not apply (x) to certain transactions approved by the Board of Directors of Reorganized NWA Corp., including, but not limited to, a merger or consolidation, in which all holders of New Common Stock receive, or are offered the same opportunity to receive, cash or other consideration for all such New Common Stock, and upon the consummation of which the acquirer will own at least a majority of the outstanding shares of New Common Stock; and (y) to the extent set forth in the Rights Offering Sponsor Agreement, to the Rights Offering Sponsor or Ultimate Purchasers.

### 5.8 *Management Equity Plan*.

The Debtors shall adopt the Management Equity Plan. The solicitation of votes on the Plan shall be deemed a solicitation of the holders of New Common Stock for approval of the Management Equity Plan. Entry of the order confirming the Plan shall constitute such approval, and the order confirming the Plan shall so provide.

The Management Equity Plan will become effective as of the Effective Date and will remain in effect as long as any awards remain outstanding. No award may be granted under the Management Equity Plan after the tenth anniversary of the Effective Date, but the term of any award may extend beyond that date. The board of directors reserves the right to terminate the Management Equity Plan at any time without prejudice in any adverse way to the holders of any awards then outstanding. The aggregate number of shares of common stock of NWA Corp. reserved for issuance under the Management Equity Plan is 21,333,248, as may be adjusted for any stock dividend, stock split, recapitalization, reorganization, merger or other subdivision or combination of the common stock.

The shares to be reserved for issuance under the Management Equity Plan include 15,228,248 shares covered by awards expected to be granted in connection with NWA Corp.'s emergence from bankruptcy and additional shares to remain available for future awards granted pursuant to the Management Equity Plan. This amount includes awards covering a total of 13,598,889 shares of common stock to be granted to approximately 400 salaried employees of Northwest Airlines at the director, managing director and officer levels, of which approximately 60% will be granted in the form of

restricted stock and restricted stock units and approximately 40% will be granted in the form of non-qualified stock options, and awards covering a total of 1,629,359 shares of common stock to be granted to approximately 4,800 salaried employees below the director level, which will be granted in the form of restricted stock units.

### 5.9    *Non-Contract Employee Compensation Program*.

The Debtors shall adopt the Non-Contract Employee Compensation Program.  The solicitation of votes on the Plan shall be deemed a solicitation of the holders of New Common Stock for approval of the Non-Contract Employee Compensation Program.  Entry of the order confirming the Plan shall constitute such approval, and the order confirming the Plan shall so provide.

The Non-Contract Employee Compensation Program will consist, in total, of an award of $77.4 million of which 40% will be paid in cash and 60% in stock.  With regard to the cash portion of the program, amounts are payable upon emergence to employees below the director level.  Employees who leave within 12 months of emergence will be required to repay such amounts.  In addition the 1,629,359 shares of New Common Stock to be issued under the Non-Contract Employee Compensation Program will in actuality be issued under the Management Equity Plan described above.  These shares will be restricted stock units with one year vesting issued at emergence for domestic employee or phantom units with one year vesting for international employees.

### 5.10    *Cancellation of Existing Securities and Agreements*.

Except for purposes of evidencing a right to distribution under the Plan or as otherwise provided hereunder, on the Effective Date, all the agreements and other documents evidencing any Claims or rights of any holder of a Claim against the Debtors, including all indentures and notes evidencing such Claims and any options or warrants to purchase Equity Interests or any other capital stock of the Debtors, shall be canceled; provided, however, that the Indentures shall continue in effect solely for the purposes of allowing the Indenture Trustee to make any distributions on account of holders of Claims in those classes pursuant to the Plan and to perform such other necessary administrative functions with respect thereto.  The provisions of Section 5.10 shall not cancel any indentures, bonds, securities or instruments issued by parties that are not Debtors.

### 5.11    *Indenture Trustee Fees*.

The Debtors shall pay the reasonable fees and expenses under the Indentures in Cash on the Effective Date, as agreed to by the parties or as other ordered by the Bankruptcy Court, subject to each Indenture Trustee's reservation of their rights under applicable law to maintain any rights or liens it may have for fees, costs and expenses under the Indentures.

### 5.12    *Board of Directors*.

The Board of Directors of each of the Reorganized Debtors shall be chosen jointly by the Debtors and the Creditors Committee, and the members shall consist initially of the individuals to be listed in a plan supplement.

### 5.13    *Officers*.

The officers of the Debtors immediately prior to the Effective Date shall serve as the officers of the Reorganized Debtors on and after the Effective Date and in accordance with any employment and severance agreements with the Reorganized Debtors and applicable non-bankruptcy law.

**5.14** *Continued Corporate Existence and Vesting of Assets in the Reorganized Debtors.*

Except as provided herein, each Debtor will, as a Reorganized Debtor, continue to exist after the Effective Date as a separate corporate entity, with all the powers of a corporation under applicable law and without prejudice to any right to alter or terminate such existence (whether by merger, dissolution or otherwise) under applicable state law.

**5.15** *Restructuring Transactions.*

On the Effective Date, but subsequent to the cancellation and discharge of all Claims, (i) Holdings will merge into NWA Inc., with NWA Inc. being the surviving entity, and (ii) thereafter, NWA Inc. will merge into Northwest Airlines, with Northwest Airlines being the surviving entity.

In addition to the Downstream Mergers, on or as of the Effective Date or as soon thereafter as practicable, within the discretion of the Debtors, and without further motion to or order of the Bankruptcy Court, the Debtors may, notwithstanding any other transactions described in this Section 5.15, (i) merge, dissolve, transfer assets, or otherwise consolidate any of the Debtors in furtherance of the Plan or (ii) engage in any other transaction in furtherance of the Plan, in consultation with the Post-Effective Date Committee; provided, however that the Debtors shall have no obligation to consult with the Creditors Committee or Post-Effective Date Committee with respect to the Downstream Mergers. Any such transaction may be effected on or subsequent to the Effective Date without any further action by the stockholders or directors of any of the Debtors, or the Reorganized Debtors.

**5.16** *Certificate of Incorporation.*

Reorganized NWA Corp. shall file the Amended Certificate of Incorporation and an amended certificate of incorporation for each of the other Reorganized Debtors that are corporations, with the appropriate office of each Reorganized Debtor's state of incorporation on the Effective Date. The Amended Certificate of Incorporation and the certificates of incorporation for each of the Reorganized Debtors that are corporations shall prohibit the issuance of nonvoting equity securities, subject to further amendment of such certificates of incorporation as permitted by applicable law. The Amended Bylaws shall be deemed adopted by the board of directors of Reorganized NWA Corp. as of the Effective Date. All partnership and limited liability company agreements to which any of the Debtors are parties shall be treated in accordance with Section 8.1 hereof.

## SECTION 6.    DISTRIBUTIONS

**6.1** *Distribution Record Date.*

As of the close of business on the Distribution Record Date, the various transfer registries for each of the Classes of Claims or Equity Interests as maintained by the Debtors, or their respective agents, shall be deemed closed and there shall be no further changes in the recordholders of any of the Claims or Equity Interests, except with regard to securities cancelled under the Plan, which shall be governed by section 6.9 of the Plan. The Debtors shall have no obligation to recognize any transfer of any Claims or Equity Interest occurring on or after the Distribution Record Date. The Debtors shall be entitled to recognize and deal for all purposes hereunder only with those recordholders stated in the transfer ledgers as of the close of business on the Distribution Record Date, to the extent applicable. If a Claim, other than one based on a publicly traded note, bond, or debenture, as set forth in Bankruptcy Rule 3001(e), is transferred twenty (20) or fewer days before the Distribution Record Date, the Distribution Agent shall make distributions to the transferee only if the transfer form, duly filed with the Bankruptcy

Court prior to the Distribution Record Date, contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.

Any and all distributions made by or at the direction of indenture trustees (including the Indenture Trustees) to holders of General Unsecured Claims shall not be made to holders of Allowed General Unsecured Claims as of the Distribution Record Date but rather shall be effectuated through a mandatory exchange of the notes for distributions under this Plan as soon as reasonably practicable after the Effective Date in accordance with the applicable Indenture and the procedures of the Depository Trust Company or its nominee, Cede & Co. The provisions of this paragraph shall apply to distributions made by or at the direction of indenture trustees to holders of General Unsecured Claims under all other indentures and applicable municipal bond finanings pursuant to which the Debtors have indirect payment obligations through special facilities leases; provided, that the record date for distributions to beneficial holders will be determined in accordance with the applicable indentures (and without regard to the Distribution Record Date). The provisions of this paragraph shall not apply to any distribution being made on account of any of the Debtors' aircraft equipment financing transactions.

### 6.2  *Date of Distributions*.

Except as otherwise provided herein, any distributions and deliveries to be made hereunder shall be made on the Effective Date or as soon thereafter as is practicable. In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

### 6.3  *Postpetition Interest on Claims*.

Unless expressly provided in the Plan, the Confirmation Order or any contract, instrument, release, settlement or other agreement entered into in connection with the Plan, or required by applicable bankruptcy law (including the fair and equitable rule), postpetition interest shall not accrue on or after the Commencement Date on account of any Claim. The provisions of this section shall not apply to interest on bonds or other securities or instruments issued by parties that are not Debtors.

### 6.4  *Initial Distributions*.

On the Effective Date, or as soon as reasonably practicable thereafter, the Disbursing Agent will distribute to the applicable agent and/or recordholder for the individual holders of the applicable Allowed Claims the New Common Stock For Distribution to Creditors allocable to Class 1D and the New Common Stock For Distribution Pursuant to Rights Offering purchased pursuant to the exercise of Subscription Rights. For the purpose of calculating the amount of New Common Stock For Distribution to Creditors to be initially distributed to holders of Allowed Claims in Class 1D all Disputed Claims (excluding Subordinated Claims) in such class will be treated as though such Claims will be Allowed Claims in the amounts asserted, or as estimated by the Bankruptcy Court, as applicable.

If, prior to a Periodic Distribution Date, a Disputed Claim is allowed as provided for under the Plan in an amount that is less than the amount utilized by the Disbursing Agent, the excess New Common Stock for Distribution to Creditors that was reserved by the Disbursing Agent on account of such Claim will be distributed to holders of Allowed Class 1D Claims on a Pro Rata basis, on a subsequent Periodic Distribution Date as described in Section 6.5 of the Plan. If a Disputed Claim is disallowed subsequent to the Effective Date, then the creditors within the class will receive Pro Rata, on a

subsequent Periodic Distribution Date, the Catch-up Distribution that the holder of the Disputed Claim would have received if the claim had become an Allowed Claim.

### 6.5 *Subsequent Distributions*.

On the applicable Periodic Distribution Date, the Disbursing Agent will distribute to the applicable agent and/or recordholder for the individual holders of the applicable Allowed Claims, the New Common Stock For Distribution to Creditors allocable to Class 1D, until such time as all Disputed Claims have been resolved; *provided, however*, if the initial Effective Date distribution falls within the first 45 days of a quarter, then the first post-Effective Date Periodic Distribution Date will be on the first Business Day following the close of such quarter. On an applicable Periodic Distribution Date, as determined by the Debtors, a holder of an Allowed Claim that ceased being a Disputed Claim subsequent to the Effective Date will receive a Catch-up Distribution. The Disbursing Agent may, in its sole discretion, establish a record date prior to each Periodic Distribution Date, such that only Claims Allowed as of the record date will participate in the distribution. Notwithstanding the foregoing, the Debtors reserve the right, in consultation with the Post-Effective Date Committee, to the extent they determine a distribution on any Periodic Distribution Date is uneconomical or unfeasible, or is otherwise unadvisable, to postpone a quarterly distribution until the next appropriate Periodic Distribution Date.

### 6.6 *Distribution Reserve*.

For the purpose of calculating the Distribution Reserve, all Disputed Claims (excluding Subordinated Claims) in Class 1D will be treated as though such Claims will be Allowed Claims in the amounts asserted, or as estimated by the Bankruptcy Court, as applicable. The Disbursing Agent also shall place in the Distribution Reserve any dividends, payments, or other distributions made on account of, as well as any obligations arising from, the property initially withheld in the Distribution Reserve, to the extent that such property continues to be withheld in the Distribution Reserve at the time such distributions are made or such obligations arise. The holder of a Claim shall not be entitled to receive or recover any amount in excess of the amount provided in the Distribution Reserve to pay such Claim. The Disbursing Agent shall be deemed to have voted any New Common Stock held in the Distribution Reserve in the same proportion as all shares of New Common Stock that are not held in the Distribution Reserve.

### 6.7 *Disbursing Agent*.

All distributions under the Plan (other than distributions described in the next sentences) shall be made by the applicable Debtors as Disbursing Agent or such other entity designated by the applicable Debtor as a Disbursing Agent on or after the Effective Date. Citicorp USA Inc. shall be the Disbursing Agent for all DIP Claims arising under the DIP Credit and Exit Facility Agreement.

The Indenture Trustees shall be the Disbursing Agent for all General Unsecured Claims arising under the Indentures with respect to the distribution of the New Common Stock for Distribution to Creditors. Any and all distributions made by or at the direction of indenture trustees (including the Indenture Trustees) to holders of General Unsecured Claims shall not be made to holders of Allowed General Unsecured Claims as of the Distribution Record Date but rather shall be effectuated through a mandatory exchange of the notes for distributions under this Plan as soon as reasonably practicable after the Effective Date in accordance with the applicable Indenture and the procedures of the Depository Trust Company or its nominee, Cede & Co. The provisions of this paragraph shall apply to distributions made by or at the direction of indenture trustees to holders of General Unsecured Claims under all other indentures and applicable municipal bond financings pursuant to which the Debtors have indirect payment obligations through special facilities leases; provided, that the record date for distributions to

beneficial holders will be determined in accordance with the applicable indentures (and without regard to the Distribution Record Date). The provisions of this paragraph shall not apply to any distribution being made on account of any of the Debtors' aircraft equipment financing transactions.

A Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court, and, in the event that a Disbursing Agent is so otherwise ordered, all cash and expenses of procuring any such bond or surety shall be borne by the applicable Debtor.

### 6.8    *Rights and Powers of Disbursing Agent*.

(a)     *Powers of the Disbursing Agent.*  The Disbursing Agent shall be empowered to (i) effect all actions and execute all agreements, instruments and other documents necessary to perform its duties under the Plan, (ii) make all distributions contemplated hereby, (iii) employ professionals to represent it with respect to its responsibilities, and (iv) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

(b)     *Expenses Incurred on or after the Effective Date.*  Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and expenses incurred by the Disbursing Agent on or after the Effective Date (including, without limitation, taxes) and any reasonable compensation and expense reimbursement claims (including, without limitation, reasonable attorney fees and expenses) made by the Disbursing Agent shall be paid in Cash by the Reorganized Debtors.

### 6.9    *Surrender of Instruments*.

As a condition to receiving any distribution under the Plan, each holder of a certificated instrument or note must surrender such instrument or note held by it to the Disbursing Agent or its designee, unless such certificated instrument or note is being reinstated or is unimpaired under the Plan. Any holder of such instrument or note that fails to (i) surrender such instrument or note, or (ii) execute and deliver an affidavit of loss and/or indemnity reasonably satisfactory to the Disbursing Agent and furnish a bond in form, substance and amount reasonably satisfactory to the Disbursing Agent before the first anniversary of the Effective Date, shall be deemed to have forfeited all rights and Claims and may not participate in any distribution under the Plan. Any distribution so forfeited shall be distributed pro rata to the members of the Class. Except as otherwise required by the terms of the applicable transaction documents, the provisions of this Section shall not apply to notes or instruments issued by parties that are not Debtors.

### 6.10    *Delivery of Distributions*.

Subject to Bankruptcy Rule 9010, all distributions to any holder of an Allowed Claim that is not a Disputed Claim, except the holders of DIP Claims (if applicable) and General Unsecured Claims arising under the Indentures shall be made at the address of such holder as set forth on the Schedules filed with the Bankruptcy Court or on the books and records of the Debtors or their agents or in a letter of transmittal unless the Debtors have been notified in writing of a change of address, including, without limitation, by the filing of a proof of claim or interest by such holder that contains an address for such holder different from the address reflected on such Schedules for such holder. All distributions to any holder of a DIP Claim (if applicable) shall be made to Citicorp USA, Inc., as Administrative Agent under the DIP Credit and Exit Facility Agreement.

Distributions of New Common Stock for Distribution to Creditors and New Common Stock For Distribution to Creditors with a Guaranty to holders of General Unsecured Claims arising under the Indentures shall be made to the applicable Indenture Trustee who shall make distributions pursuant to the terms of the appropriate Indenture. Any distribution to an Indenture Trustee shall be deemed a distribution to the respective holder of a General Unsecured Claim arising under the Indentures. The provisions of this paragraph shall apply to distributions of New Common Stock for Distribution to Creditors and New Common Stock For Distribution to Creditors with a Guaranty made by or at the direction of indenture trustees to holders of General Unsecured Claims under all other indentures and applicable municipal bond financings pursuant to which the Debtors have indirect payment obligations through special facilities leases. All such distributions will be distributed to the applicable trustee and in no event will the Debtors make any payments directly to beneficial holders. The provisions of this paragraph shall not apply to any distribution being made on account of any of the Debtors' aircraft equipment financing transactions.

In the event that any distribution to any holder is returned as undeliverable, the Disbursing Agent shall use reasonable efforts to determine the current address of such holder, but no distribution to such holder shall be made unless and until the Disbursing Agent has determined the then current address of such holder, at which time such distribution shall be made to such holder without interest; provided, however, that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one year from the Effective Date. After such date, all unclaimed property shall revert to the applicable Class, and the claim of any other holder to such property or interest in property shall be discharged and forever barred.

## 6.11   *Manner of Payment Under Plan*.

(a)     All distributions of Cash and New Common Stock to the creditors of each of the Debtors under the Plan shall be made by, or on behalf of, the applicable Reorganized Debtor. Any distributions that revert to any Class or are otherwise cancelled (such as to the extent any distributions have not been claimed within one year or are cancelled pursuant to Section 6.10 hereof) shall revest solely in the applicable Class.

(b)     At the option of the Debtors, any Cash payment to be made hereunder may be made by a check or wire transfer or as otherwise required or provided in applicable agreements.

## 6.12   *Fractional Shares*.

No fractional shares of New Common Stock or Cash in lieu thereof, will be distributed. For purposes of all distributions other than the distribution on the Final Distribution Date, fractional shares of New Common Stock will be carried forward to the next applicable Periodic Distribution Date. On the Final Distribution Date, fractional shares of New Common Stock will be rounded up or down to the nearest whole number or zero, as applicable.

## 6.13   *Setoffs*.

The Debtors may, but shall not be required to, set off against any Claim (for purposes of determining the Allowed amount of such Claim on which distribution shall be made), any claims of any nature whatsoever that the Debtors may have against the holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors of any such Claims the Debtors may have against the holder of such Claim.

**6.14**  *Distributions after the Effective Date*.

Distributions made after the Effective Date to holders of Allowed Claims that are Disputed Claims as of the Effective Date shall be deemed to have been made on the Effective Date. No interest shall accrue or be payable on such Claims or any distributions.

**6.15**  *Allocation of Plan Distributions Between Principal and Interest*.

To the extent that any Allowed Claim entitled to a distribution under the Plan is comprised of indebtedness and accrued but unpaid interest thereon, such distribution shall be allocated to the principal amount (as determined for federal income tax purposes) of the Claim first, and then to accrued but unpaid interest. Except as otherwise required by the terms of the applicable transaction documents, the provisions of this Section shall not apply to bonds or other securities or instruments issued by parties that are not Debtors.

**6.16**  *Withholding and Reporting Requirements*.

In connection with the Plan and all instruments issued in connection therewith and distributed thereon, the applicable Debtor shall comply with all applicable withholding and reporting requirements imposed by any federal, state or local taxing authority, and all distributions under the Plan shall be subject to any such withholding or reporting requirements. Notwithstanding any provision in the Plan to the contrary, each Debtor, each Reorganized Debtor and the Disbursing Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including, without limitation, liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes or establishing any other mechanisms the Debtors believe are reasonable and appropriate, including requiring claimholders to submit appropriate tax withholding certifications.

The Debtors reserve the right to allocate and distribute all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support and other spousal awards, liens and similar encumbrances

**6.17**  *Time Bar to Cash Payments*.

Checks issued by the Reorganized Debtors in respect of Allowed Claims shall be null and void if not presented for payment within sixty (60) days after the date of issuance thereof. Requests for reissuance of any check shall be made to the applicable Reorganized Debtor by the holder of the Allowed Claim to whom such check originally was issued. Any Claim in respect of such a voided check shall be made on or before thirty (30) days after the expiration of the sixty day period following the date of issuance of such check. After such date, all funds held on account of such voided check shall, in the discretion of the applicable Reorganized Debtor, be used to satisfy the costs of administering and fully consummating the Plan or become property of the applicable Reorganized Debtor, and the holder of any such Allowed Claim shall not be entitled to any other or further distribution under the on account of such Allowed Claim.

## SECTION 7.  PROCEDURES FOR DISPUTED CLAIMS

**7.1**  *Objection to Claims*.

The Debtors and the Reorganized Debtors shall be entitled to object to Claims. Any objections to Claims shall be served and filed on or before one hundred eighty (180) days after the

Effective Date (unless such day is not a Business Day, in which case such deadline shall be the next Business Day thereafter), as the same may be extended from time to time by the Bankruptcy Court, with the consent of the Post-Effective Date Committee, or as otherwise ordered by the Bankruptcy Court.

### 7.2 *Payments and Distributions with Respect to Disputed Claims*.

(a) *General.* Notwithstanding any other provision hereof, if any portion of a Claim is a Disputed Claim, no payment or distribution provided hereunder shall be made on account of such Claim unless and until such Claim becomes an Allowed Claim that is not a Disputed Claim.

(b) *Insured Claims.* All prepetition Insured Claims not previously allowed by Final Order are Disputed Claims. Any Insured Claim determined and liquidated shall be deemed a Claim against the applicable Debtor in such liquidated amount and satisfied in accordance with the Plan *provided, however,* that such claim shall be paid from the insurance proceeds available to satisfy such liquidated amount. Nothing contained in this Section 7.2 impairs the Debtors' and the Reorganized Debtors' right to seek estimation of any and all claims in a court or courts of competent jurisdiction or constitute or be deemed a waiver of any Claim, right or cause of action that any Debtor may have against any person in connection with or arising out of any Insured Claim.

### 7.3 *Preservation of Insurance*.

Nothing in the Plan, including the discharge and release of the Debtors as provided in the Plan, shall diminish or impair the enforceability of any insurance policies that may cover Claims against any Debtor.

### 7.4 *Retiree Medical Benefit Claims*.

Following the Effective Date of the Plan, the Reorganized Debtors shall timely pay, without modification, all retiree benefits, as defined in section 1114 of the Bankruptcy Code, except to the extent that the Bankruptcy Court may have ordered otherwise.

### 7.5 *Estimation of Claims and Equity Interests*.

The Debtors and the Reorganized Debtors may at any time request that the Bankruptcy Court estimate any contingent, unliquidated or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether the Debtor previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim including, without limitation, during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent, unliquidated or Disputed Claim, the amount so estimated shall constitute either the allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtors or the Reorganized Debtors may pursue supplementary proceedings to object to the allowance of such Claim. All of the aforementioned objection, estimation and resolution procedures are intended to be cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn or otherwise resolved by any mechanism approved by the Bankruptcy Court.

### 7.6 *No Recourse*.

No holder of any Disputed Claim that becomes an Allowed Claim in any applicable Class shall have recourse against the Disbursing Agent, the Debtors, the Reorganized Debtors or any other holder of an Allowed Claim or any of their respective professional consultants, advisors, officers, directors or members or their successors or assigns, or any of their respective property, if the Cash or Plan Securities allocated to such Class and not previously distributed are insufficient to provide a distribution to such holder in the same proportion to that received by other holders of Allowed Claims in such Class. However, nothing in the Plan shall modify any right of a holder of a Claim under section 502(j) of the Bankruptcy Code.

### 7.7 *Preservation of Rights to Settle Claims*.

In accordance with section 1123(b) of the Bankruptcy Code, the Debtors and the Reorganized Debtors shall retain and may enforce, sue on, settle, or compromise (or decline to do any of the foregoing) all Claims, rights, causes of action, suits and proceedings, whether in law or in equity, whether known or unknown, that the Debtors or their estates may hold against any person or entity, without the necessity for Bankruptcy Court approval under Bankruptcy Rule 9019.

The Debtors' rights to settle Claims against the Debtors' estates shall continue to be governed by the Settlement Procedures Order.

## SECTION 8.    EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 8.1 *General Treatment*.

All executory contracts and unexpired leases to which any of the Debtors are parties shall be deemed automatically assumed on the Effective Date except for an executory contract or unexpired lease that (i) has already been assumed or rejected pursuant to Final Order of the Bankruptcy Court, (ii) specifically designated as a contract or lease to be rejected on the Schedule of Rejected Contracts and Leases to be included in a plan supplement, (iii) is the subject of a separate motion to assume or reject filed under section 365 of the Bankruptcy Code by the Debtors prior to the Confirmation Date, or (iv) is an option or warrant to purchase common stock of any of the Debtors or right to convert any Equity Interest into common stock of any of the Debtors or to the extent such option, warrant, or conversion right is determined not to be an Equity Interest. The Schedule of Rejected Contracts and Leases shall be filed by the Debtors three business days prior to the Voting Deadline, subject to their right to amend such Schedule at any time prior to the Confirmation Date. Notwithstanding anything in the foregoing to the contrary, with respect to any contract or lease which is subject to litigation or proceeding in which the characterization of an executory contract is an issue and that is pending as of the commencement of the Confirmation Hearing, the Debtors shall have 30 days after the entry of a Final Order resolving the litigation or proceeding to assume or reject such contract or lease.

For purposes hereof, each executory contract and unexpired lease that relates to the use or occupancy of real property shall include all (x) modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such executory contract or unexpired lease and (y) all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, powers, uses, usufructs, reciprocal easement agreements, vault, tunnel or bridge agreements or franchises, and any other interests in real estate or rights in rem relating to such premises.

### 8.2    *Restructured Collective Bargaining Agreements*.

The restructured collective bargaining agreements set forth on Schedule 8.2 to the Plan shall be deemed automatically assumed on the Effective Date.

### 8.3    *Management Agreements*.

The management agreements set forth on Schedule 8.3 to the Plan shall be deemed automatically assumed on the Effective Date.

### 8.4    *Employee-Related Agreements*.

To the extent any Employee-Related Agreement as to which any of the Debtors is a party is an executory contract, such Employee-Related Agreement shall be deemed automatically assumed on the Effective Date in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, subject to the Debtors' right to make future modifications under any Employee-Related Agreement, unless such Employee-Related Agreement (i) shall have been previously assumed by the Debtors by Final Order of the Bankruptcy Court, (ii) is the subject of a motion to assume pending on or before the Effective Date, or (iii) is otherwise assumed pursuant to the terms of the Plan.

### 8.5    *Customer Programs*.

Except as otherwise provided in the Plan, the Debtors and the Reorganized Debtors, in their sole and absolute discretion, may honor, in the ordinary course of business, all of the Debtors' customer and loyalty programs, travel credit programs, charter sales program, leisure sales programs, barter arrangements, corporate incentive programs and cargo programs, as such programs may be amended from time to time, and all Proofs of Claim filed on account of any benefits under such programs shall be deemed withdrawn, disallowed, and forever barred from assertion automatically and without any further notice to or action, order, or approval of the Bankruptcy Court.

### 8.6    *Cure of Defaults*.

Except to the extent that different treatment has been agreed to by the non-Debtor party or parties to any executory contract or unexpired lease to be assumed pursuant to Sections 8.1, 8.2, 8.3 and 8.4 hereof, the Debtors shall, pursuant to the provisions of sections 1123(a)(5)(G) and 1123(b)(2) of the Bankruptcy Code and consistent with the requirements of section 365 of the Bankruptcy Code, within thirty (30) days after the Confirmation Date, file and serve a pleading with the Bankruptcy Court listing the cure amounts of all executory contracts or unexpired leases to be assumed.  The parties to such executory contracts or unexpired leases to be assumed by the Debtor shall have fifteen (15) days from service to object to the cure amounts listed by the Debtors.  If there are any objections filed, and not otherwise resolved, the Bankruptcy Court shall hold a hearing.

### 8.7    *Approval of Assumption and Rejection of Executory Contracts and Unexpired Leases*.

Subject to achievement of the Effective Date, entry of the Confirmation Order shall constitute the approval, pursuant to section 365(a) of the Bankruptcy Code, of the assumption or rejection of any executory contracts and unexpired leases to be assumed or rejected under the Plan.

### 8.8    *Rejection Claims.*

In the event that the rejection of an executory contract or unexpired lease by any of the Debtors pursuant to the Plan results in damages to the other party or parties to such contract or lease, a claim for such damages, if not heretofore evidenced by a filed proof of claim, shall be forever barred and shall not be enforceable against the Debtors, or their respective properties or interests in property as agents, successors or assigns, unless a proof of claim is filed with the Bankruptcy Court and served upon counsel for the Debtors on or before the applicable date as set forth in the Bar Date Order.

### 8.9    *Survival of the Debtors' Indemnification Obligations.*

Any obligations of the Debtors pursuant to their corporate charters and bylaws or agreements entered into any time prior to the Effective Date, to indemnify past and current directors, officers, agents, trustees of employee benefit plans and/or employees with respect to all present and future actions, suits, and proceedings against the Debtors or such directors, officers, agents, trustees of employee benefit plans, and/or employees, based upon any act or omission by such individuals shall not be discharged or impaired by confirmation of the Plan. Such obligations shall be deemed and treated as executory contracts to be assumed by the Debtors pursuant to the Plan and shall continue as obligations of the Reorganized Debtors.

### 8.10    *Insurance Policies.*

All insurance policies pursuant to which the Debtors have any obligations in effect on the date of the Confirmation Order shall be deemed and treated as executory contracts pursuant to the Plan and are hereby automatically assumed on the Effective Date by the respective Debtors and Reorganized Debtors and shall continue in full force and effect. All insurance policies shall revest in the Reorganized Debtors.

The Debtors and the Reorganized Debtors shall continue to honor their obligations (1) under applicable worker's compensation laws in states in which the Reorganized Debtors operate; and (2) the Debtors' written contracts, agreements, agreements of indemnity, self-insurer workers' compensation bonds, policies, programs and plans for workers' compensation and insurance. All Proofs of Claim on account of workers' compensation shall be deemed satisfied and automatically expunged without any further notice to or action, order or approval of the Bankruptcy Court; provided, however, that nothing in the Plan shall limit, diminish, or otherwise deter the Debtors' or Reorganized Debtors' defenses, claims, Causes of Action or other rights under applicable non-bankruptcy law with respect to any such contracts, agreements, policies, programs and plans.

## SECTION 9.    THE RIGHTS OFFERING

### 9.1    *Subscription Rights.*

Pursuant to the Rights Offering, each Eligible Holder of an Allowed Class 1D Claim as of the Subscription Rights Record Date and any holder of a Class 1D Claim which subsequently becomes an Eligible Holder pursuant to the Solicitation Procedures Motion will be offered Subscription Rights to purchase up to its Rights Offering Pro Rata Share of 23,611,111 shares of New Common Stock for Distribution Pursuant to Rights Offering at the Subscription Purchase Price of $27.00 per Share. The closing date of the Rights Offering shall be the Effective Date of the Plan. If the Rights Offering is not consummated by June 30, 2007, the Rights Offering Sponsor Agreement is terminable, and, if terminated, the Rights Offering Sponsor shall have no further obligations thereunder.

**9.2** *Subscription Period*.

The Rights Offering will commence on the Subscription Commencement Date and will end on the Rights Offering Expiration Date.

**9.3** *Exercise of Subscription Rights*.

In order to exercise the Subscription Rights, each Eligible Holder of an Allowed Claim in Class 1D must (a) return a duly completed Subscription Form to the Subscription Agent so that such form is received by the Subscription Agent on or before the Rights Offering Expiration Date; and (b) pay an amount equal to the full Subscription Purchase Price of the number of shares of New Common Stock elected to be purchased by such Eligible Holder by wire transfer or bank or cashier's check delivered to the Subscription Agent with the Subscription Form on or before the Rights Offering Expiration Date, or, in the case of securities held through a bank or brokerage firm, send the Subscription Form to the bank or brokerage firm (or follow such firm's directions with respect to submitting subscription instructions to the firm) with enough time for the bank or brokerage firm to effect the subscription through The Depository Trust Company on or before the Rights Offering Expiration Date. If the Subscription Agent for any reason does not receive from a given Eligible Holder both a timely and duly completed Subscription Form and timely payment of such holder's Subscription Purchase Price, such Eligible Holder will be deemed to have relinquished and waived its right to participate in the Rights Offering.

**9.4** *Oversubscription Rights*.

The Subscription Form will permit each Eligible Holder of an Allowed Class 1D Claim to subscribe for additional shares of New Common Stock at the Subscription Purchase Price up to an amount equal to 200% of the Eligible Holder's Rights Offering Pro Rata Share of the shares of New Common Stock for Distribution Pursuant to Rights Offering. Eligible Holders electing to subscribe for additional shares must indicate the amount of shares in the appropriate place on the Subscription Form and pay for such additional shares in the same manner as the shares purchased pursuant to the Subscription Rights. All exercises of Subscription Rights will be subject to proration in the event that the total number of shares sought to be purchased upon exercise of the Subscription Rights, including any oversubscriptions, exceeds the number of shares available for purchase pursuant to the Rights Offering, as follows:

(a) In the event of an Excess Primary Exercise, the number of Subscription Rights that shall be deemed to have been validly and effectively exercised by each exercising Eligible Holder of Subscription Rights (assuming that all other requirements for validly and effective exercise shall have been satisfied) shall be determined by (i) multiplying the total number of shares available pursuant to the Rights Offering by a fraction, the numerator of which shall be such exercising Eligible Holder's Allowed Claim for purposes of participating in the Rights Offering and the denominator of which shall be the total amount of all Allowed Claims for purposes of participating in the Rights Offering of all exercising Eligible Holders (for the denominator, with adjustment for any Allowed Claims of those Eligible Holders who become an Eligible Holder after the Subscription Rights Record Date in accordance with the Solicitation Procedures Motion), and (ii) eliminating any resulting fractions by rounding down to the next whole number, to the extent necessary;

(b) If the number of shares sought to be purchased upon exercise of Subscription Rights that have otherwise been validly and effectively exercised, including any oversubscriptions, exceeds the number of shares available for purchase pursuant to the Rights Offering other than as a result of an Excess Primary Exercise, (i) all Subscription Rights that have otherwise been validly and effectively exercised pursuant to primary exercise shall be deemed to have been validly and effectively exercised; and (ii) the

number of Subscription Rights that shall be deemed to have been validly and effectively exercised by any Eligible Holder of Subscription Rights pursuant to an oversubscription (assuming that all other requirements for valid and effective exercise shall have been satisfied) shall be determined by (1) multiplying the aggregate number of shares available for purchase under Subscription Rights that were not validly and effectively exercised pursuant to primary exercises by a fraction, the numerator of which shall be the number of Subscription Rights exercised by such Eligible Holder pursuant to an oversubscription and the denominator of which shall be the number of oversubscription Subscription Rights exercised by all Eligible Holders exercising oversubscription Subscription Rights; and (2) eliminating any resulting fractions by rounding down to the next whole number, to the extent necessary.

**9.5** *Undersubscription.*

In the event that all the New Common Stock reserved for the Rights Offering is not purchased by creditors with Subscription Rights or by creditors who have exercised their oversubscription rights, the Rights Offering Sponsor will purchase on the closing date of the Rights Offering, for the Subscription Purchase Price per share, a number of shares of New Common Stock equal to the number of shares of New Common Stock for Distribution Pursuant to Rights Offering minus the number of shares of New Common Stock for Distribution Pursuant to Rights Offering subscribed for on or before the Rights Offering Expiration Date, including shares subscribed for pursuant to oversubscription rights.

Pursuant to the Rights Offering Sponsor Agreement, the Ultimate Purchasers and the Rights Offering Sponsor have entered into a syndication agreement, pursuant to which the Ultimate Purchasers will agree to purchase from the Rights Offering Sponsor certain unsubscribed shares and Purchased Shares purchased by the Rights Offering Sponsor.

**9.6** *The Purchased Shares.*

In addition to its purchase of the shares not subscribed for in the Rights Offering pursuant to Section 9.5 hereof, the Rights Offering Sponsor will purchase on the closing date of the Rights Offering, for the Subscription Purchase Price per share, 4,166,667 additional shares of New Common Stock.

**9.7** *Transfer of Subscription Rights; Election Irrevocable.*

Except as otherwise agreed by express written consent of the Debtors, the Subscription Rights may only be sold, transferred, or assigned in connection with a sale, transfer or assignment of the underlying Allowed Class 1D Claim to the same recipient. For purposes of distribution of the New Common Stock For Distribution Pursuant to Rights Offering, the Debtors are not required to recognize any such sale, transfer or assignment occurring after the Subscription Rights Record Date. Once a holder of Subscription Rights has properly exercised its Subscription Rights, such exercise will be irrevocable. The Rights Offering Record Date shall be that date established by order of the Bankruptcy Court approving the Solicitation Procedures Motion.

**9.8** *Distribution of New Common Stock.*

On, or as soon as practicable after the Effective Date, the Disbursing Agent shall distribute the New Common Stock For Distribution Pursuant to Rights Offering purchased by the Exercising Claimants.

**9.9** *No Interest*.

In the event the Subscription Purchase Price is returned in whole or in part to the Exercising Claimant no interest shall be paid on the returned amount.

**9.10** *Fractional Rights*.

No Fractional Subscription Rights will be issued. The number of shares of New Common Stock available for purchase by Exercising Claimants will be rounded down to the nearest share. Any shares of New Common Stock not subscribed as a result of such rounding will be pooled and made available for oversubscription, and, if necessary, purchased by the Rights Offering Sponsor.

**9.11** *Validity of Exercise of Subscription Rights*.

All questions concerning the timeliness, viability, form and eligibility of any exercise of Subscription Rights shall be determined by the Debtors, whose good faith determinations shall be final and binding. The Debtors, in their sole discretion reasonably exercised in good faith, may waive any defect or irregularity, or permit a defect or irregularity to be corrected within such times as the Debtors determine, or reject the purported exercise of any Subscription Rights. Subscription Forms shall be deemed not to have been received or accepted until all irregularities have been waived or used within such time as the Debtors determine in their sole discretion reasonably exercised in good faith. Neither the Debtors nor the Subscription Agent shall be under any duty to give notification of any defect or irregularity in connection with the submission of Subscription Forms or incur any liability for failure to give such notification.

**9.12** *Use of Proceeds*.

On the Effective Date, the proceeds received by Reorganized NWA Corp. from the Rights Offering shall be used for general corporate purposes.

**9.13** *Limitation on Acquisition of Shares*.

Unless the Debtors in consultation with the Creditors Committee agree to such acquisition, an Exercising Claimant may not acquire New Common Stock for Distribution Pursuant to Rights Offering if, and to the extent, as a result of such acquisition for the purposes of Section 382 of the Internal Revenue Code, any person or entity (i) who would not otherwise be treated as owning more than 4.95% of the New Common Stock outstanding at the time of delivery of New Common Stock for Distribution Pursuant to Rights Offering would be so treated as a result of such acquisition; or (ii) who would otherwise be treated as owning more than 4.95% of the New Common Stock outstanding at the time of delivery of New Common Stock for Distribution Pursuant to Rights Offering would be treated as owning a greater percentage of shares of New Common Stock as a result of such acquisition.

Notwithstanding the foregoing, in the event the Rights Offering Sponsor is obligated to purchase a number of shares which would cause its ownership interest in NWA Corp. (including the shares of New Common Stock, if any, received by the Rights Offering Sponsor, in any capacity, pursuant to the Plan), as determined for the purposes of Section 382 of the Internal Revenue Code, to exceed 4.95% of the total number of shares of New Common Stock to be outstanding on the Closing Date, NWA Corp. will either reduce the Rights Offering Sponsor's purchase obligation such that its ownership of New Common Stock would not exceed 4.95% or permit the Rights Offering Sponsor to purchase shares in excess of 4.95% to comply with its purchase obligation; <u>provided</u> that in the latter case, the board of

directors of NWA Corp. will waive all restrictions contemplated by Section 5.7 of the Plan on the Rights Offering Sponsor's ability to dispose of any unsubscribed shares owned by it.

In addition, in the event any Ultimate Purchaser is obligated under the Syndication Agreement to purchase a number of shares which could cause its ownership interest in the Company (including the shares of New Common Stock, if any, received by such Ultimate Purchaser, in any capacity, pursuant to the Amended Plan), as determined for the purposes of Section 382 of the Code, to exceed 4.95% of the total number of shares of New Common Stock to be outstanding on the Closing Date, the Board of Directors of the Company shall waive all restrictions, including those contemplated by Sections 5.7 and 9.13 of the Plan, on such Ultimate Purchaser's ability to dispose of a number of shares of New Common Stock equal to the number of ECA Shares owned by it.

The Subscription Purchase Price paid by an Exercising Claimant will be refunded, without interest, in each case as soon as reasonably practicable after the Effective Date, if and to the extent that any limitation specified in the Plan (including in this Section) or in Exhibit A to the Plan would operate to disallow acquisition of New Common Stock for Distribution Pursuant to Rights Offering by such Exercising Claimant.

## SECTION 10.    CONDITIONS PRECEDENT TO EFFECTIVE DATE

### 10.1   *Conditions to Effective Date*.

The following are conditions precedent to the Effective Date:

(a)    The Bankruptcy Court shall have entered the Confirmation Order in form and substance satisfactory to the Debtors;

(b)    No stay of the Confirmation Order shall then be in effect;

(c)    All documents, instruments and agreements, including, without limitation, the Exit Financing Agreements, in form and substance satisfactory to the Debtors, provided for under or necessary to implement the Plan shall have been executed and delivered by the parties thereto, unless such execution or delivery has been waived by the parties benefited thereby; and

(d)    The Rights Offering shall close concurrently with the occurrence of the Effective Date and the Rights Offering Sponsor shall have purchased concurrently with the occurrence of the Effective Date all remaining New Common Stock For Distribution Pursuant to Rights Offering and the Purchased Shares.

### 10.2   *Waiver of Conditions*.

The Debtors may waive the conditions to effectiveness of the Plan without leave of or notice to the Bankruptcy Court and without any formal action other than proceeding with confirmation of the Plan.

## SECTION 11.    EFFECT OF CONFIRMATION

### 11.1   *Vesting of Assets*.

Upon the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all property of the Debtor's bankruptcy estates and any property acquired by a Debtor or Reorganized Debtor

under the Plan shall vest in the Reorganized Debtors free and clear of all Claims, liens, encumbrances, charges and other interests, except as provided herein. On and after the Effective Date, each Reorganized Debtor may operate its business and may use, acquire or dispose of property and compromise or settle any claims without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan or the Confirmation Order. Without limiting the foregoing, each Reorganized Debtor may pay the charges that it incurs on or after the Effective Date for professionals' fees, disbursements, expenses or related support services (including fees relating to the preparation of professional fee applications) without application to, or approval of, the Bankruptcy Court

### 11.2 *Discharge of Claims against the Debtors and Cancellation of Equity Interests in NWA Corp.*

Except as otherwise provided herein or in the Confirmation Order, the rights afforded in the Plan and the payments and distributions to be made hereunder shall be in complete satisfaction of and shall discharge and terminate all Equity Interests in NWA Corp and all existing debts and Claims, of any kind, nature or description whatsoever against or in the Debtors or any of their assets or properties to the fullest extent permitted by section 1141 of the Bankruptcy Code. Except as provided in the Plan, on the Effective Date, all existing Equity Interests in NWA Corp. and Claims against the Debtors, including intercompany claims, shall be, and shall be deemed to be, satisfied, discharged and terminated, and all holders of Equity Interests in NWA Corp. and Claims against any of the Debtors shall be precluded and enjoined from asserting against the Reorganized Debtors, or any of their assets or properties, any other or further Equity Interest in NWA Corp. or Claim against any of the Debtors based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such holder has filed a proof of claim or proof of equity interest. Notwithstanding any provision of the Plan to the contrary, any valid setoff or recoupment rights held against any of the Debtors, shall not be affected by the Plan and shall be expressly preserved in the Confirmation Order.

### 11.3 *Binding Effect.*

Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code, on and after the Confirmation Date, and subject to the Effective Date, the provisions of the Plan shall bind any holder of a Claim against, or Equity Interest in, the Debtors and their respective successors and assigns, whether or not the Claim or Equity Interest of such holder is impaired under the Plan and whether or not such holder has accepted the Plan.

### 11.4 *Term of Injunctions or Stays.*

(a)  *General.* Unless otherwise provided herein, all injunctions or stays arising under section 105 or 362 of the Bankruptcy Code, any order entered during the Chapter 11 Cases under section 105 or 362 of the Bankruptcy Code or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in such order.

(b)  *Injunction Regarding Worthless Stock Deduction.* Unless otherwise ordered by the Bankruptcy Court, on and after the Confirmation Date, any "Fifty Percent Shareholder" within the meaning of section 382(g)(4)(D) of the Internal Revenue Code of 1986, as amended, shall be enjoined from claiming a worthless stock deduction with respect to any Equity Interest held by such shareholder for any taxable year of such shareholder ending prior to the Effective Date.

### 11.5   *Injunction Against Interference with Plan*.

Upon the entry of the Confirmation Order with respect to the Plan, all holders of Claims and Equity Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

### 11.6   *Exculpation*.

None of the Debtors nor any Released Party shall have or incur any liability to any holder of a Claim or Equity Interest for any act or omission (and in the case of any director, officer, agent or employee of any Debtor who was employed or otherwise serving in such capacity on the Confirmation Date, any claims against such Persons) in connection with, or arising out of, the Chapter 11 Cases, the formulation, preparation, negotiation, dissemination, implementation, administration, confirmation or consummation of any of the Plan, or the property to be distributed under the Plan, the disclosure statement concerning the Plan, any contract, employee pension or other benefit plan, instrument, release or other agreement of document created, modified, amended, terminated or entered into in connection with either the Plan or any agreement between the Debtors and any Released Party, or any other act taken or omitted to be taken in connection with the Company's bankruptcy, except for willful misconduct or gross negligence.

### 11.7   *Retention of Causes of Action/Reservation of Rights*.

(a)      Except as set forth in Sections 11.8 and 11.9 of the Plan, nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or the relinquishment of any rights or causes of action that the Debtors or the Reorganized Debtors may have or which the Reorganized Debtors may choose to assert on behalf of their respective estates under any provision of the Bankruptcy Code or any applicable nonbankruptcy law, including, without limitation, (i) any and all Claims against any person or entity, to the extent such person or entity asserts a cross-claim, counterclaim and/or claim for setoff which seeks affirmative relief against the Debtors, the Reorganized Debtors, their officers, directors, or representatives, and (ii) the turnover of any property of the Debtors' estate.

(b)      Except as set forth in Sections 11.8 and 11.9 of the Plan, nothing in the Plan or the Confirmation Order shall be deemed a waiver or relinquishment of any Claim, cause of action, right of setoff, or other legal or equitable defense which the Debtors had immediately prior to the Commencement Date, against or with respect to any Claims left unimpaired by the Plan, except for avoidance actions pursuant to section 547 of the Bankruptcy Code (provided, however, that the Debtors' right to object to any Claim pursuant to section 502(d) of the Bankruptcy Code is fully preserved, including but not limited to the right to object to any Claim of a recipient of a transfer that is avoidable under section 547 of the Bankruptcy Code).

### 11.8   *Release by Debtors*.

From and after the Effective Date, the Released Parties shall be released by each Debtor from any and all claims (as defined in section 101(5) of the Bankruptcy Code), obligations, suits, judgments, damages, rights, causes of action and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, that any Debtor is entitled to assert in its own right or on behalf of the holder of any Claim or Equity Interest or other Person, based in whole or in part upon any act or omission, transaction, agreement, event or occurrence taking place on or prior to the Effective Date in any way relating to any Debtor, the Chapter 11 Cases, the

formulation, preparation, negotiation, dissemination, implementation, administration, confirmation or consummation of any of the Plan, or the property to be distributed under the Plan, the disclosure statement concerning the Plan, any contract, employee pension or other benefit plan, instrument, release or other agreement or document created, modified, amended, terminated or entered into in connection with either the Plan or any agreement between the Debtors and any Released Party, or any other act taken or omitted to be taken in connection with the Debtors' bankruptcy, except for claims or causes of actions against any Released Party resulting from the willful misconduct or gross negligence of such Released Party. Notwithstanding anything in the foregoing to the contrary, the Debtors reserve all rights and provide no release with respect to any claims or defenses relating to any litigation by or against any Indenture Trustee that remains pending as of the Effective Date.

### 11.9 *Release of Released Parties by Other Released Parties*.

From and after the Effective Date, except with respect to distributions on account of Allowed Claims, if any, that any of the Released Parties may have against any of the Debtors' estates, or as otherwise provided in the Plan or Final Order of the Bankruptcy Court, the Released Parties shall release each other from any and all claims (as defined in section 101(5) of the Bankruptcy Code), obligations, suits, judgments, damages, rights, causes of action and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, that any Released Party is entitled to assert against any other Released Party, based in whole or in part upon any act or omission, transaction, agreement, event or occurrence taking place on or prior to the Effective Date in any way relating to any Debtor, the Chapter 11 Cases, the formulation, preparation, negotiation, dissemination, implementation, administration, confirmation or consummation of any of the Plan, or the property to be distributed under the Plan, the disclosure statement concerning the Plan, any contract, employee pension or other benefit plan, instrument, release or other agreement or document created, modified, amended, terminated or entered into in connection with either the Plan or any agreement between the Debtors and any Released Party, or any other act taken or omitted to be taken in connection with the Debtors' bankruptcy, except for claims or causes of actions against any Released Party resulting from the willful misconduct or gross negligence of such Released Party.

As of the Effective Date, each defined benefit pension plan sponsored by Northwest Airlines shall remain in full force and effect. Notwithstanding anything to the contrary contained in the Plan or the Disclosure Statement, no Released Party shall be discharged, exculpated, or released on any claim, now existing or hereafter arising, under the Employee Retirement Income Security Act of 1974, as amended, with respect to any such plan, and there shall be no injunction against the assertion of any such claim.

## SECTION 12.      CLAIMS ALLOWED BY THE PLAN

### 12.1 *Management Claim*.

The Management Claim will be withdrawn.

## SECTION 13.      RETENTION OF JURISDICTION

On and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising in, arising under, or related to the Chapter 11 Cases and the Plan for, among other things, the following purposes:

(a)      To hear and determine motions for the assumption or rejection of executory contracts or unexpired leases and the allowance of Claims resulting therefrom;

(b)     To determine any motion, adversary proceeding, application, contested matter, and other litigated matter pending on or commenced after the Confirmation Date;

(c)     To ensure that distributions to holders of Allowed Claims are accomplished as provided herein;

(d)     To hear and determine objections to Claims;

(e)     To consider Claims or the allowance, classification, priority, compromise, estimation or payment of any Claim, Administrative Expense Claim, Disputed Claim or Equity Interest;

(f)     To enter, implement or enforce such orders as may be appropriate in the event that the Confirmation Order is for any reason stayed, reversed, revoked, modified or vacated;

(g)     To issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person with the consummation, implementation or enforcement of the Plan, the Confirmation Order or any other order of the Bankruptcy Court;

(h)     To hear and determine any application to modify the Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in the Plan, the disclosure statement for the Plan, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(i)     To hear and determine all applications under sections 330, 331 and 503(b) of the Bankruptcy Code for awards of compensation for services rendered and reimbursement of expenses incurred prior to the Confirmation Date;

(j)     To hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan, the Confirmation Order, any transactions or payments contemplated hereby, or any agreement, instrument, or other document governing or relating to any of the foregoing;

(k)     To take any action and issue such orders as may be necessary to construe, enforce, implement, execute and consummate the Plan or to maintain the integrity of the Plan following consummation;

(l)     To hear any disputes arising out of, and to enforce, the order approving alternative dispute resolution procedures to resolve personal injury, employment litigation and similar Claims pursuant to section 105(a) of the Bankruptcy Code;

(m)     To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(n)     To hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code (including any requests for expedited determinations under section 505(b) of the Bankruptcy Code filed, or to be filed, with respect to tax returns for any and all taxable periods ending after the Commencement Date through, and including, the Final Distribution Date);

(o)     To hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code;

(p)     To recover all assets of any of the Debtors and property of the applicable Debtor's Estate, wherever located; and

(q)     To enter a final decree closing the Chapter 11 Cases.

## SECTION 14.     MISCELLANEOUS PROVISIONS

### 14.1     *Payment of Statutory Fees*.

On and after the Effective Date, and thereafter as may be required until entry of a final decree with respect to each of the Debtors, the Debtors shall pay all fees payable pursuant to section 1930 of Chapter 123 of Title 28 of the United States Code.

### 14.2     *Committees*.

Effective on the Effective Date, the Creditors' Committee, the Retiree Committee and any other committee appointed in the Chapter 11 Cases shall dissolve automatically, whereupon its members, professionals, and agents shall be released from any further duties and responsibilities in the Chapter 11 Cases and under the Bankruptcy Code, except with respect to applications for Professional Claims or reimbursement of expenses incurred as a member of the Creditors' Committee or the Retiree Committee, duties under the Settlement Procedures Order, and any motions or other actions seeking enforcement or implementation of the provisions of this Plan or the Confirmation Order or pending appeals of Orders entered in the Chapter 11 Cases.

On the Effective Date, there shall be formed a Post-Effective Date Committee with its duties limited to the oversight of certain actions of the Reorganized Debtors, which actions shall remain the sole responsibility of the Reorganized Debtors, including: (a) overseeing the General Unsecured Claims' reconciliation and settlement process conducted by or on behalf of the Reorganized Debtors pursuant to the Settlement Procedures Order; (b) overseeing (i) the establishment (including the determination of the amount of New Common Stock to be withheld) and (ii) the maintenance of the Distribution Reserve; (c) overseeing the distributions to the holders of General Unsecured Claims under this Plan; (d) appearing before and being heard by the Bankruptcy Court and other Courts of competent jurisdiction in connection with the above limited duties; and (e) such other matters as may be agreed upon between the Reorganized Debtors and the Post-Effective Date Committee or specified in this Plan. The Post-Effective Date Committee shall consist of not less than three nor more than five members to be appointed by the Creditors' Committee and may adopt by-laws governing its conduct. For so long as the claims reconciliation process shall continue, the Reorganized Debtors shall make regular reports to the Post-Effective Date Committee as and when the Reorganized Debtors and the Post-Effective Date Committee may reasonably agree upon. The Post-Effective Date Committee may employ, without further order of the Court, professionals to assist it in carrying out its duties as limited above, including any professionals retained in these Reorganization Cases, and the Reorganized Debtors shall pay the reasonable costs and expenses of the Post-Effective Date Committee, including reasonable professional fees, in the ordinary course without further order of the Court. In the event that, on the Effective Date, an objection to any Claim by the Creditors Committee is pending, the Post-Effective Date Committee shall have the right to continue prosecution of such objection.

### 14.3  *Substantial Consummation*.

On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

### 14.4  *Exemption from Transfer Taxes*.

Pursuant to section 1146(c) of the Bankruptcy Code, neither (i) the issuance transfer or exchange of any security under, in furtherance of, or in connection with, the Plan, including the issuance of the Plan Securities, nor (ii) the assignment or surrender of any lease or sublease, or the delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale or assignments executed in connection with any disposition of assets contemplated by the Plan (including real and personal property), shall be subject to any stamp, real estate transfer, mortgage recording sales, use or other similar tax.

### 14.5  *Section 1145 Exemption*.

Pursuant to section 1145 of the Bankruptcy Code, the offering, issuance and distribution of any securities contemplated by the Plan and any and all settlement agreements incorporated therein shall be exempt from, among other things, the registration requirements of Section 5 of the Securities Act and any state or local law requiring registration prior to the offering, issuance, distribution or sale of securities.  In addition, under section 1145 of the Bankruptcy Code, any securities contemplated by the Plan will be freely tradable by the recipients thereof, subject to (i) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in Section 2(a)(11) of the Securities Act, and compliance with any rules and regulations of the Securities and Exchange Commission, if any, applicable at the time of any future transfer of such securities or instruments; (ii) the restrictions, if any, on the transferability of such securities and instruments; and (iii) applicable regulatory approval.  Notwithstanding anything in the Plan to the contrary, in no event shall any grants of equity or options to acquire equity, under the Management Incentive Plan be made if such grant of equity or exercise of options would not qualify during any 12-month period for the "small issuance exception" in Treasury Regulation Section 1.382-3.

### 14.6  *Amendments*.

(a)  *Plan Modifications.*  The Plan may be amended, modified, or supplemented by the Debtors or the Reorganized Debtors in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law without additional disclosure pursuant to section 1125 of the Bankruptcy Code.  In addition, after the Confirmation Date, so long as such action does not materially adversely affect the treatment of holders of Claims or Equity Interests under the Plan, the Debtors may institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan or the Confirmation Order, with respect to such matters as may be necessary to carry out the purposes and effects of the Plan.

*Other Amendments.*  Prior to the Effective Date, the Debtors may make appropriate technical adjustments and modifications to the Plan without further order or approval of the Bankruptcy Court, provided that such technical adjustments and modifications do not adversely affect in a material way the treatment of holders of Claims or Equity Interests.

### 14.7  *Revocation or Withdrawal of Plan*.

The Debtors reserve the right to revoke or withdraw the Plan prior to the Effective Date. If the Debtors take such action, the Plan shall be deemed null and void.

### 14.8  *Cramdown*.

The Debtors request confirmation of the Plan under section 1129(b) of the Bankruptcy Code with respect to any Class that is deemed to have not accepted the Plan pursuant to section 1126(g) of the Bankruptcy Code. The Debtors reserve the right to (i) request confirmation of the Plan under section 1129(b) of the Bankruptcy Code with respect to any Class or Subclass that does not accept the Plan pursuant to section 1126 of the Bankruptcy Code and (ii) to modify the Plan to the extent, if any, that confirmation of the Plan under section 1129(b) of the Bankruptcy Code requires modification.

### 14.9  *Severability*.

If, prior to the entry of the Confirmation Order, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms of the Plan will remain in full force and effect and in no way will be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### 14.10  *Request for Expedited Determination of Taxes*.

The Debtors shall have the right to request an expedited determination under section 505(b) of the Bankruptcy Code with respect to tax returns filed, or to be filed, for any and all taxable periods ending after the Commencement Date through the Effective Date.

### 14.11  *Courts of Competent Jurisdiction*.

In the event the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of the Plan, such abstention, refusal or failure of jurisdiction shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

### 14.12  *Governing Law*.

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit hereto or a schedule to the Plan provides otherwise, the rights, duties and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the principles of conflict of laws thereof.

### 14.13  *Time*.

In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

**14.14** *Headings*.

Headings are used in the Plan for convenience and reference only and shall not constitute a part of the Plan for any other purpose.

**14.15** *Exhibits*.

All Exhibits and Schedules to the Plan are incorporated into and are a part of the Plan as if set forth in full herein.

**14.16** *Notices*.

To be effective, all notices, requests and demands to or upon the Debtors, or, as applicable, upon the Creditors Committee, shall be in writing and unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

Northwest Airlines Corporation
Attn:    Michael L. Miller, Esq.
2700 Lone Oak Parkway
Eagan, MN  55121

with copies to:

CADWALADER, WICKERSHAM & TAFT LLP
Attorneys for the Debtors and Debtors-In-Possession
One World Financial Center
New York, NY  10281
(212) 504-6000
Attn:  Bruce R. Zirinsky, Esq.

and

OTTERBOURG, STEINDLER, HOUSTON & ROSEN, P.C.
Attorneys for the Creditors Committee
230 Park Avenue
New York, NY  10169
(212) 661-9100
Attn: Scott L. Hazan, Esq.

_____

As of March 30, 2007

NORTHWEST AIRLINES CORPORATION


By: */s/ Michael L. Miller*_____
       Name:  Michael L. Miller
       Title:  Authorized Officer

NWA FUEL SERVICES CORPORATION


By: */s/ Michael L. Miller*
      Name:  Michael L. Miller
      Title:  Authorized Officer


NORTHWEST AIRLINES HOLDINGS
CORPORATION


By: */s/ Michael L. Miller*
      Name:  Michael L. Miller
      Title:  Authorized Officer


NWA INC.


By: */s/ Michael L. Miller*
      Name:  Michael L. Miller
      Title:  Authorized Officer


NORTHWEST AEROSPACE TRAINING
CORPORATION


By: */s/ Michael L. Miller*
      Name:  Michael L. Miller
      Title:  Authorized Officer


NORTHWEST AIRLINES, INC.


By: */s/ Michael L. Miller*
      Name:  Michael L. Miller
      Title:  Authorized Officer

NWA AIRCRAFT FINANCE, INC.


By: _/s/ Michael L. Miller_
      Name: Michael L. Miller
      Title: Authorized Officer


COMPASS AIRLINES, INC. f/k/a NORTHWEST
        AIRLINES CARGO, INC.


By: _/s/ Michael L. Miller_
      Name: Michael L. Miller
      Title: Authorized Officer


NWA RETAIL SALES INC.


By: _/s/ Michael L. Miller_
      Name: Michael L. Miller
      Title: Authorized Officer


AIRCRAFT FOREIGN SALES, INC.


By: _/s/ Michael L. Miller_
      Name: Michael L. Miller
      Title: Authorized Officer


MONTANA ENTERPRISES, INC.


By: _/s/ Michael L. Miller_
      Name: Michael L. Miller
      Title: Authorized Officer

NW RED BARON LLC


By: */s/ Michael L. Miller*
    Name:  Michael L. Miller
    Title:  Authorized Officer


NWA WORLDCLUB, INC.


By: */s/ Michael L. Miller*
    Name:  Michael L. Miller
    Title:  Authorized Officer


MLT INC.


By: */s/ Michael L. Miller*
    Name:  Michael L. Miller
    Title:  Authorized Officer