UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
In re:                                                              Chapter 11

NORTHWEST AIRLINES CORPORATION, et al.,                             Case No. 05-17930 (ALG)

                              Debtors.                              Jointly Administered

------------------------------------------------------------------x

# MEMORANDUM OF OPINION

A P P E A R A N C E S:

CADWALADER, WICKERSHAM & TAFT LLP
Counsel for the Debtors
    By:   Bruce R. Zirinsky, Esq.
          Gregory M. Petrick, Esq.
One World Financial Center
New York, New York 10281
    By:   Mark C. Ellenberg, Esq.
1201 F Street N.W.
Suite 1100
Washington, DC 20004

GUERRIERI, EDMOND, CLAYMAN & BARTOS, P.C.
Counsel for Association of Flight Attendants – CWA, AFL-CIO
    By:   Robert S. Clayman, Esq.
          Angela C. Serranzana, Esq.
1625 Massachusetts Avenue, N.W.
Suite 700
Washington, D.C.  20036

MEYER, SUOZZI ENGLISH & KLEIN, P.C.
Local Counsel for Association of Flight Attendants – CWA, AFL-CIO
    By:   Hanan B. Kolko, Esq.
1350 Broadway
Suite 501
New York, New York  10018

OTTERBOURG, STEINDLER, HOUSTON & ROSEN, P.C.
Counsel for the Official Committee of Unsecured Creditors
  By:  Scott Hazan, Esq.
        Brett H. Miller, Esq.
        Lorenzo Marinuzzi, Esq.
        Jordan A. Wishnew, Esq.
250 Park Avenue
New York, New York 10169

COHEN, WEISS & SIMON, LLP
Counsel for the Air Line Pilots Association
  By:  Thomas N. Ciantra, Esq.
330 West 42nd Street
New York, New York 10036

LOWENSTEIN SANDLER, P.C.
Counsel for the International Association of Machinists and Aerospace Workers
  By:  Ira M. Levee, Esq.
65 Livingston Avenue
Roseland, New Jersey 07068

**ALLAN L. GROPPER**
**UNITED STATES BANKRUPTCY JUDGE**

The Court has consolidated for decision two related motions. In the first, the Association of Flight Attendants – CWA, AFL-CIO ("AFA") has moved for relief from an order, dated July 5, 2006 (the "July 5 Order"), granting the application of Debtor Northwest Airlines Corporation ("Northwest" or the "Debtor") to reject its collective bargaining agreement with AFA. In the second motion, the Debtor is seeking to expunge two proofs of claim filed by AFA, each in the amount of $1.2 billion, and AFA has responded.[1] The Court recognizes the personal sacrifices of the flight attendants as a consequence of the concessions that have been required of them, and it also recognizes that the loyalty and professionalism of the flight attendants is critical to the Debtor's future. Nevertheless, for the reasons set forth hereafter, AFA's motion for relief from the

---

[1] The Debtor objected to proofs of claim numbered 11283 and 11295 filed by AFA. The claims seem to be identical and, like the parties, the Court will address both claims jointly in this opinion.

2

July 5 Order has no basis in law and must be denied.  The Debtor's motion to expunge the AFA proofs of claim must be granted, subject to the preservation of a claim for AFA in the event of ratification of a new collective bargaining agreement.

**Motion for Relief from the July 5 Order**

The AFA's motion for relief from the July 5 Order is based on the premise that the facts have changed since entry of the Order and the June 29, 2006 memorandum opinion on which it was based.[2]  AFA states, correctly, "[t]he Court's opinion was based upon an evidentiary record that was produced at hearings in January and February 2006" (Mem. of Law, p. 4), although it should be noted that the opinion also took into account subsequent developments through June 29th.  AFA then contends, based upon an affidavit of the financial advisor who testified on its behalf at the 2006 hearings, as well as newspaper and internet reports, that Northwest's financial condition has changed for the better in the months since the June 29, 2006 opinion and that, if a record were made today, the factors that went into the opinion would be different, and the Court would have to weigh a different set of equities in connection with the determination of a motion under § 1113 of the Bankruptcy Code.

Northwest questions whether there has been as substantial a change in circumstances as the union asserts.  It is also obvious that the grant of relief to AFA would result in similar motions by the other unions that entered into new collective bargaining agreements based on the threat of an adverse § 1113 ruling.  Relief granted to AFA and the other unions would likely reverse much, if not all, of the financial improvement on which AFA relies and defeat the very foundation of its motion.  That

---

[2] Familiarity with the June 29th opinion, *In re Northwest Airlines Corp.*, 346 B.R. 307 (Bankr. S.D.N.Y. 2006), is assumed.

3

alone substantially undermines the motion. Moreover, AFA does not explain why, if relief were available, a *de novo* § 1113 hearing would not be necessary. In any event, there is no need to contemplate a further hearing because, assuming that there was a change in the facts, there is no indication that a second § 1113 process is available under the statute.

We start with the plain words of § 1113. Acting pursuant to § 1113 of the Bankruptcy Code, the Debtor rejected the flight attendants' collective bargaining agreement ("CBA"). On March 29, 2007, the Second Circuit decided AFA's appeal from the District Court order that enjoined the union from strike or similar action pending further negotiations required under the Railway Labor Act ("RLA"). *Northwest Airlines Corp. v. Assn. of Flight Attendants – CWA, AFL–CIO (In re Northwest Airlines Corp.)*, ----F.3d ----, 2007 WL 926488 (2d Cir. March 29, 2007) (No. 06 4371 CV(L), 06 4468 CV(CON)). In that decision (hereinafter called the "Injunction Decision") the majority characterized the rejection of an airline's collective bargaining agreement under § 1113 as an abrogation of the agreement without a breach. The holding of the Circuit Court is that after abrogation the CBA "ceased to exist." *In re Northwest Airlines Corp.*, 2007 WL 926488, at *6. There is nothing to revive pursuant to the terms of § 1113, as construed by the Circuit.

Even under § 365 of the Bankruptcy Code, rejection constitutes a prepetition breach of contract that ordinarily frees both parties from the obligation to perform. 11 U.S.C. §§ 365(a),(g). Rejection under § 365, like abrogation under § 1113, is not a tentative step to be confirmed at a later stage of the bankruptcy case, but a final act that has immediate consequences. *See United Food & Commercial Workers Union v.*

4

*Almac's Inc.*, 90 F.3d 1, 6 (1st Cir. 1996). There is no indication in § 365 or § 1113 that a rejection order can be subject to reconsideration nine months after the contract has been rejected and the parties have changed their positions as a consequence.[3]

Moreover, although the possibility always exists that a debtor's financial condition may change, neither § 1113 nor § 365 requires a debtor to wait until the end of a Chapter 11 case to move to assume or reject. In fact, § 1113 contains strict limits on the time a court can keep a § 1113 motion under advisement, leading to the inference that debtors might seek labor contract relief early in a case. A debtor's right to seek reasonable § 1113 relief as a predicate to its ability to formulate a feasible plan would be undermined if either party could start the § 1113 process over again when economic conditions changed.

Section § 1114 of the Bankruptcy Code, providing for the modification of retiree benefits, was modeled on § 1113, and the two sections are often compared as well as contrasted. *See In re Ionosphere Clubs, Inc.*, 134 B.R. 515, 519-20 (Bankr. S.D.N.Y. 1991). It is significant that § 1114 provides for "modification" of retiree benefits, not assumption or rejection, and that § 1114 has a specific provision that, "[a]t any time after an order is entered providing for modification in the payment of retiree benefits, or at any time after an agreement modifying such benefits is made . . . the authorized representative may apply to the court for an order increasing those benefits . . . ." 11 U.S.C. § 1114(g). The omission of any such provision providing for reconsideration in § 1113 confirms that Congress intended abrogation under § 1113 to be a final step, not

---

[3] Assumption also has definite consequences, as the subsequent breach of an assumed contract gives rise to an administrative expense claim under §365(g)(2)(a). *See Nostas Assocs. v. Costich* (*In re Klein Sleep Prods.*), 78 F.3d 18, 26 (2d Cir. 1996). In *Klein Sleep* there is no suggestion that if economic conditions changed, a debtor could appeal to equitable considerations and get a second chance to reject an assumed contract *ab initio*.

5

subject to later modification. *See In re Ionosphere Clubs, Inc.*, 22 F.3d 403, 406-08 (2d Cir. 1994); *In re Roth AM, Inc.*, 975 F.2d 949, 954-58 (3d Cir. 1992); *see also Rodriguez v. United States*, 480 U.S. 522, 525 (1987) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.").

AFA contends that its motion is based on two subsections of Fed. R. Civ. P. 60(b), providing for relief from a judgment or order. Fed. R. Civ. P. 60, which applies in bankruptcy proceedings pursuant to Bankruptcy Rule 9024, provides, in pertinent part:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order or proceeding for the following reasons: . . . (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

Fed. R. Civ. P. 60(b). AFA relies in particular on Fed. R. Civ. P. 60(b)(5), pursuant to which a party can seek relief where "it is no longer equitable that the judgment should have prospective application." The union has not shown, however, that the July 5 Order authorizing the Debtor's rejection of the collective bargaining agreement is an order or judgment that has "prospective application." As the Court said in *Twelve John Does v. District of Columbia*, 841 F.2d 1133, 1138 (D.C. Cir. 1988), "[t]hat a court's action has continuing consequences, however, does not necessarily mean that it has 'prospective application' for the purposes of Rule 60(b)(5)." The July 5 Order does not require any further alteration or provide for any future supervision by the Court. As construed by the Circuit Court, it does not even require the Bankruptcy Court to determine the question of

6

rejection damages (as discussed below). It does not contain an injunction or incorporate a declaratory judgment or consent decree. It is not prospective for purposes of Rule 60(b)(5). *Kalamazoo River Study Group v. Rockwell Int'l Corp.*, 355 F.3d 574, 587 (6th Cir. 2004).

AFA also cites Fed. R. Civ. P. 60(b)(6), a catch-all provision that applies only where none of the other subsections of Rule 60 is applicable. *Thompson v. County of Franklin*, 127 F. Supp. 2d 145, 159 (N.D.N.Y. 2000). All the subsections of Rule 60 require a strong showing, and the Supreme Court has held that Rule 60(b)(6) applies only in "extraordinary" situations. *Ackermann v. United States*, 340 U.S. 193, 202 (1950). No court has held that a change in a debtor's financial performance, which is always a possibility, is an "extraordinary" circumstance that would justify revisiting a motion under § 1113. This is especially true where the change in financial performance is founded on labor concessions that would be largely undone if Rule 60(b) relief were granted.

Moreover, Rule 60(b) is an equitable provision. *See Velez v. Vassallo*, 203 F. Supp. 2d 312, 333 (S.D.N.Y. 2002). AFA appeals to equity in support of its motion. (AFA Mem. at 18.) AFA is not entitled to equitable relief for two reasons. First, in response to the July 5 Order and its members' failure to ratify a subsequent agreement, AFA threatened to engage in CHAOS labor action, "CHAOS" being an acronym for "Create Havoc Around Our System." CHAOS includes "mass walkouts for limited periods of time and pinpoint walkouts at certain airports or gates." *In re Northwest Airlines Corp.*, 2007 WL 926488, at *2. The Second Circuit has affirmed the District Court's injunction against the action, finding that the Debtor and AFA remain obligated

7

to bargain under the Railway Labor Act. Nevertheless, AFA has attempted to obtain a release from continued bargaining before the National Mediation Board ("NMB"), and as far as this Court is aware, it remains the union's policy to engage in CHAOS if it can and to damage the Debtor's business by unannounced disruptive activities designed to force the Debtor to agree to improved collective bargaining terms. The union should not appeal to equity for relief at the same time as it reserves the right to create CHAOS and possibly reverse all the improvements to Northwest's economic performance that have taken place during these chapter 11 proceedings. A party who seeks equity must do equity. *See Asbestosis Claimants v. U.S. Lines Reorganization Trust (In re United States Lines, Inc.)*, 318 F.3d 432, 437 (2d Cir. 2003).

Second, the union can share in any improvement in the Debtor's financial condition since the § 1113 hearings concluded last summer. The Debtor's proposal, which it was authorized to effectuate in accordance with the § 1113 procedures, provides for substantial profit sharing by AFA and its members. They will share in this manner in whatever better performance the Debtor may achieve. In addition, each of the unions that has agreed with the Debtor on a new collective bargaining agreement has received a large proof of claim, and these unions have (with Court approval) sold part of their claims and made a substantial cash distribution to their members. AFA's papers on its motion assert that as a result of improvements in the Debtor's financial situation, the value of a prepetition general unsecured claim in the Northwest bankruptcy is almost 100 cents on the dollar ("Last week, Northwest acknowledged that unsecured claims and bonds were trading at between 80 and 95 percent of value." AFA Mem. at 16.) Whether or not it proves correct that "unsecured creditors will make little or no contribution to Northwest's

8

reorganization," as AFA contends (*id.*), there seems little doubt its members can participate in the upside by ratifying a new collective bargaining agreement and agreeing on a proof of claim, as have the other unions.[4]

AFA also asserts it is entitled, in any event, to a proof of claim for the damages allegedly arising from the § 1113 rejection, and this brings us to the second dispute consolidated for decision, AFA's proofs of claim.

### **The AFA Proofs of Claim**

AFA has filed proofs of claim for the damages its members have allegedly suffered by virtue of the July 5 Order and the concessions found to be necessary under § 1113. The proofs of claim multiply by five years the annual concessions that the Debtor sought and add further components comprised of damages for the interim modifications to the collective bargaining agreement that were authorized on an emergency basis under § 1113(e) of the Bankruptcy Code, as well as assumed damages of $75,000 for each prepetition grievance.

Prior to the Injunction Decision cited above, the question of damages for a § 1113 rejection order was an open one in this Circuit. In briefing prior to that decision, Northwest contended that the proofs of claim should be expunged in their entirety on the ground that a claim for damages arising out of the rejection of a collective bargaining agreement is not provided for in § 1113. It contended that the only Second Circuit case on point merely observed that there is a "possibility" of a claim arising under a rejected collective bargaining agreement. *See Truck Drivers Local 807 v. Carey Transp. Inc.*, 816 F.2d 82, 93 (2d Cir. 1987). And it contended that if it is important, as discussed above,

---

[4] Northwest's papers include an analysis by a managing director in its Financial Planning & Analysis Group that the prototypical flight attendant would be able to recoup 82 to 97% of concessions required by the §1113 order as a result of profit sharing and the proof of claim offered by Northwest.

9

that § 1113 omits any mention of a right to amend a prior order of rejection, its omission of any provision for rejection damages should be considered equally significant.

AFA responded by citing the lead-in sentence to § 1113, which provides that a debtor in possession in a case such as this "may assume or reject a collective bargaining agreement only in accordance with the provisions of this section." It argued that Congress, in § 1113, provided certain procedures and substantive conditions for assuming or rejecting a collective bargaining agreement but accepted the premise that the underlying issue was assumption or rejection of a contract, citing *NLRB v. Bildisco & Bildisco*, 465 U.S. 513 (1984) and *Century Brass Products, Inc. v. Int'l Union (In re Century Brass Products, Inc.)*, 795 F.2d 265, 266 (2d Cir. 1986), *cert. denied*, 479 U.S. 949 (1986) (discussing legislative history of § 1113). As conceptualized by AFA, § 1113 added certain substantive and procedural requirements that must be followed in connection with the assumption or rejection of a labor contract but did not exclude collective bargaining agreements from the general provisions of § 365.

Whatever the merits of these contentions, the majority's analysis in the Injunction Decision expressly excludes the possibility of damages for the lawful rejection of a collective bargaining agreement pursuant to § 1113. The majority decision holds that "Northwest's rejection of its CBA after obtaining court authorization to do so under 11 U.S.C. § 1113 abrogated (without breaching) the existing collective-bargaining agreement between AFA and Northwest, which thereafter ceased to exist . . . ." *In re Northwest Airlines Corp.*, 2007 WL 926488, at *6. The majority stated that the Bankruptcy Code generally treats "rejection as a breach so that the non-debtor party will have a viable claim against the debtor . . . For reasons explained herein, we conclude that

10

§ 1113 is an exception to this general principle; a debtor who rejects a contract pursuant to that statutory authority abrogates rather than breaches the CBA at issue." *In re Northwest Airlines Corp.*, 2007 WL 926488, at *19, n.3. The Court expressly contrasted § 365 of the Bankruptcy Code, finding that "[r]ejection under § 365 thus leads to a legal fiction at odds with the text of (and impetus behind) § 1113," and "[w]e thus conclude that a bankruptcy court acting pursuant to § 1113 may authorize a debtor to abrogate its CBA, effectively shielding it from a charge of breach." *In re Northwest Airlines Corp.*, 2007 WL 926488, at *10.

Most tellingly, the Court excludes the possibility of damages in the following passage:

> If a carrier that rejected a CBA simultaneously breached that agreement and violated the RLA, the union would be correspondingly free to seek damages or strike, *results inconsistent with Congress' intent in passing § 1113*. (emphasis added)

*In re Northwest Airlines Corp.*, 2007 WL 926488, at *7. Significantly, the Court cited *In re Blue Diamond Coal Co.*, 147 B.R. 720, 732 (Bankr. E.D. Tenn. 1992), *aff'd* 160 B.R. 574, 576-77 (E.D. Tenn. 1993). That decision held that there is no claim for breach of a collective bargaining agreement in light of § 1113.

The parties also dispute whether damages for breach of a collective bargaining agreement are so inherently speculative and non-quantifiable that they should be disallowed as a claim for that reason. *Compare Schonfeld v. Hilliard*, 218 F.3d 164, 172 (2d Cir. 2000), *with In re Continental Airlines Corp.*, 901 F.2d 1259, 1264 (5th Cir. 1990) (a pre- § 1113 case). In light of the Injunction Decision there is no need to reach this issue, and the AFA proofs of claim must be disallowed insofar as they seek general rejection damages as a consequence of the July 5 Order under § 1113.

11

There remain three specific issues related to the proofs of claim. First, as noted above, AFA also seeks a claim for damages for the interim changes to the collective bargaining agreement that were put in place under § 1113(e).[5] AFA's predecessor consented to these modifications at the outset of the case but opposed an extension thereof, and modifications were later imposed over objection (although only for a short period). In light of the Injunction Decision, this branch of AFA's damages claim must, *a fortiori*, be disallowed. Even prior to that decision, the First Circuit concluded in the *Almac's* case that § 1113 does not provide for damages for modification of a collective bargaining agreement under § 1113(e) of the Bankruptcy Code. "Modification" is allowed on an interim basis pending "rejection" of the contract, and any ensuing damages cannot possibly be construed as "rejection damages." *Almac's*, 90 F.3d at 7.

AFA also seeks a "minimum" claim of $182 million and a claim in the amount of $75,000 for each prepetition grievance filed by a flight attendant. The claim for liquidated damages of $75,000 for each grievance is factually unsupported by AFA. Its demand for a base claim of $182 million is grounded on the Debtor's offer of March 1, 2006, which was the offer that this Court found was the Debtor's last offer that the union had rejected "without good cause" and that the Debtor could put in effect. 346 B.R. at 328. The Debtor filed a motion dated June 2, 2006, for approval of its then tentative agreement with the flight attendants' predecessor union, and it described the flight attendants' "Claim Treatment" as including an allowed general unsecured prepetition claim (non-voting) in the amount of $182 million that would be granted conditioned on assumption of the March 1 Agreement as an agreed collective bargaining agreement and

---

[5] Section 1113(e) of the Bankruptcy Code provides for interim modifications to a collective bargaining agreement on an emergency basis pending a final §1113 determination by the Court.

12

on the occurrence of a plan effective date. It was further stated that if Northwest agreed with any of the other unions that their prepetition grievance claims would "ride through" the Chapter 11 cases, any similarly situated flight attendant claims "shall ride through to the same extent." (Mot., Docket No. 2720 p. 10).[6]

The text of the rejected March 1 Agreement is not before the Court on the instant motions. Northwest contends that, strictly speaking, the March 1 Agreement did not contain an allowed claim for flight attendants, but that when the Air Line Pilots Association ("ALPA") secured an agreed claim for the pilots based on a negotiated formula in the ALPA March 3 Agreement, corresponding claims were entered and incorporated in the flight attendants' agreement through operation of the so-called "me too" clause. (Debtor's Reply Br. in Supp. of Objection to AFA Claim, p. 19, n. 9.) In any event, it seems clear that the allowance of a claim to the flight attendants was conditioned on the assumption of the March 1 Agreement as an agreed CBA and upon the occurrence of the effective date of a Northwest plan of reorganization.

Neither condition has been fulfilled. Northwest has made it clear to the Court that it is willing to agree to an allowed claim for the flight attendants of at least $182 million upon assumption of a ratified collective bargaining agreement. There is no basis, however, for the Court to allow such a claim in absence of an agreement. Indeed, it would be premature to allow such a claim in the face of the union's demand to be released from NMB bargaining so that it can commence a campaign of CHAOS. The Debtor has stated that it would seek the equitable disallowance of any claim of the union

---

[6] The motion for approval of the March 1 Agreement was withdrawn when the flight attendants failed to ratify the tentative agreement.

13

under such circumstances. *See Citicorp Venture Capital, Ltd. v. Comm. Of Creditors Holding Unsecured Claims*, 160 F.3d 982, 991, n. 7 (3d Cir. 1998).

Similarly, it would make good sense to treat the prepetition grievances of the flight attendants in the same manner as the grievance claims of the members of the Debtor's other unions, by allowing their claims to "ride through" the bankruptcy and be resolved and liquidated in the ordinary course. At this stage of the pleadings, however, the union has not even attempted to substantiate its claim of $75,000 in liquidated damages for each prepetition grievance.

The AFA proofs of claim must accordingly be disallowed. In the event the union, on a timely basis, reaches and its members ratify an agreement with the Debtor for a new CBA, AFA can file a request for reconsideration and seek a claim of at least $182 million and the non-impairment of its members' grievance claims. Section § 502(j) of the Bankruptcy Code preserves the right of a party to have the allowance or disallowance of a claim "reconsidered for cause." On such a motion the Court may allow or disallow a reconsidered claim "according to the equities of the case." *Lewith v. Irving Trust Co.*, 67 F.2d 855, 856 (2d Cir. 1933) (predecessor statute); *In re Enron, Inc.*, 326 B.R. 46, 50-51 (Bankr. S.D.N.Y. 2005); *see also* Bankruptcy Rule 3008. This avenue of relief will remain available to AFA for a period of time.

**<u>Conclusion</u>**

The AFA motion to modify the Court's July 5 Order is denied. The Debtor's objection to the AFA proofs of claim is sustained. The Debtor is directed to settle an order or orders on five days' notice.

Dated: New York, New York
       April 13, 2007

                                        */s/ Allan L. Gropper*
                                        UNITED STATES BANKRUPTCY JUDGE