| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK | **NOT FOR PUBLICATION** |

-----------------------------------------------------------------x
In re:                                                                                          Chapter 11

NORTHWEST AIRLINES CORPORATION, *et al.*,        Case No. 05-17930 (ALG)

                                Debtors.        Jointly Administered

-----------------------------------------------------------------x

## MEMORANDUM OF OPINION

A P P E A R A N C E S:

CADWALADER, WICKERSHAM & TAFT LLP
Counsel for the Debtors
  By:   Bruce R. Zirinsky, Esq.
          Gregory M. Petrick, Esq.
One World Financial Center
New York, New York 10281
  By:   Mark C. Ellenberg, Esq.
1201 F Street N.W.
Suite 1100
Washington, DC 20004

LAW OFFICES OF CURTIS V. TRINKO, LLP
Counsel for Claimants Bruce Cress, *et al*.
  By:   Curtis V. Trinko, Esq.
         Jeffrey B. Silverstein, Esq.
         Wai K. Chan, Esq.
16 West 46th Street
7th Floor
New York, New York 10036

LAW OFFICE OF ALFRED G. YATES JR., PC
Counsel for Claimants Bruce Cress, *et al*.
  By:   Alfred G. Yates, Jr., Esq.
         Gerald L. Rutledge, Esq.
519 Allegheny Building
Pittsburgh, Pennsylvania 15219

**ALLAN L. GROPPER**
**UNITED STATES BANKRUPTCY JUDGE**

Northwest Airlines Corporation *et al.* (the "Debtors") have objected to claims 11338 and 11339 (the "Claims"), filed by Bruce W. Cress, Peter Ochabauer, Walter Boulden, Mark A. Knudsen, Christopher J. Parkyn, Amanda R. Ochubauer and Bernard C. Larkin as alleged class action representatives of similar pensioners (collectively, the "Claimants").[1] The Debtors argue that the Claims are nullified by the Pension Protection Act of 2006, Pub. L. No. 109-280, 120 Stat. 780 (Aug. 17, 2006) (the "PPA"), and are also duplicative of other claims filed in the case. For the reasons set forth below, the Debtors' objection is sustained and the Claims are expunged.

The Claims are based upon deficiencies in the minimum funding required for three defined benefit pension plans (the "Plans") that Northwest Airlines Inc. ("NWA"), one of the Debtors, sponsors for certain of its employees.[2] The minimum funding standards are set by the Employment Retirement Income Security Act, 29 U.S.C. § 1001 et seq. (1974) ("ERISA").

The Plans were amended by NWA in September 14, 2005, the day of the Chapter 11 filing, to provide for the appointment of an independent fiduciary to pursue claims to recover minimum funding contributions due under ERISA. Fiduciary Counselors, Inc. ("Fiduciary Counselors") serves as the independent fiduciary of the Plans and is

---

[1] The Claimants are also plaintiffs in a purported class action currently before the United States District Court for the Southern District of New York, *Cress et al. v. Wilson et al.*, 06-CV2717 (JGK) (the "District Court Action"). The District Court Action has been brought against certain officers, directors and employees of the Debtors and is based upon alleged violations of ERISA arising from claimed funding deficiencies in the Plans (as defined below). The Debtors have not been named as parties to the District Court Action. The Claimants assert that the Claims have been filed on behalf of "themselves, the Pension Plans, and a proposed class of all other participants and beneficiaries of the Pension Plans, as those participants and beneficiaries are outlined and defined in an Amended Class Action Complaint." (Resp. at 2.)

[2] The Plans include the Northwest Airlines Pension Plan for Pilot Employees, the Northwest Airlines Pension Plan for Contract Employees, and the Northwest Airlines Pension Plan for Salaried Employees.

2

authorized to pursue such claims on behalf of the Plans. An agreement between Fiduciary Counselors and NWA, dated September 14, 2005, states that

> [t]he Independent Fiduciary shall exercise authority of the 'named fiduciary' on behalf of each Plan solely to pursue the Plan's claims, if any, to recover minimum funding contributions owed by the Company under section 302 of ERISA and section 412 of the [Internal Revenue] Code, in the event that the Company filed bankruptcy and fails to make any such required contribution when due.

(Debtors' Reply at 4.) Additionally, the operating documents for the Plans note that the independent fiduciary's

> sole function and responsibility shall be to pursue on behalf of the Plan, any claims to recover minimum funding contributions due under section 302 of ERISA or section 412 of the Internal Revenue Code that have not been paid.

(Debtors' Reply at 5.) Acting in its capacity as independent fiduciary of the Plans, Fiduciary Counselors filed claims 11200, 11372 and 11389 (the "Fiduciary Claims") on behalf of each of the applicable plans, for amounts due to each of the Plans under the ERISA minimum funding standards.[3]

The PPA, which was signed into law on August 17, 2006, amended ERISA with respect to deficiencies in the minimum funding required by that statute. Section 402 of the PPA amends the minimum funding standards under § 302 of ERISA in situations involving an "eligible plan" that is sponsored by a commercial passenger airline and that has been amended to freeze future benefit accruals. *See* PPA §§ 402(b)(1)(A),

---

[3] In each of its claims, Fiduciary Counselors states that it "has been unable to ascertain the exact amounts due and owing to the Plan." It goes on to estimate an amount for each claim "[b]ased on the most recent information available from the Debtors and the Plan's actuaries." Addenda to Claim No. 11200 at 4, Claim No. 11372 at 5, Claim No. 11389 at 4. Each claim goes on to state that the claim "is entitled to priority under Code §§ 503(b) and 507(a)(1) for post-petition contributions as ordinary business expenses, regardless of the total unpaid amount. In addition, all contributions due under collective bargaining agreements entered into by the employer are entitled to administrative priority under Code § 507(a)(1) until such agreements have been rejected or modified by the Court pursuant to Code § 1113. To the extent these claims are not priority claims under Code § 507(a)(1), they are entitled to priority under Code § 507(a)(5) as contributions arising during the 180 days immediately preceding the petition filing date." Addenda to Claim No. 11200 at 4, Claim No. 11372 at 5-6, Claim No. 11389 at 5.

3

402(c)(1)(A). Pursuant to § 402, a sponsor of an eligible plan can elect an alternative funding schedule that will restart the plan's funding standard account at a zero balance. Specifically, § 402(f)(1) of the PPA states "[a]ny charge or credit in the funding standard account under section 302 of [ERISA] or section 412 of [the IRC], and any prefunding balance or funding standard carryover balance under section 303 of [ERISA] or section 430 of [the IRC], as of the day before such first applicable plan year, shall be reduced to zero." The plan's frozen unfunded benefit liabilities are then amortized over a new 17-year period. PPA §§ 402(e),402(f)(1). The PPA further provides that upon such election, any funding deficiency is "deemed satisfied" as a matter of law. Section 402(f)(2) states, "[a]ny waived funding deficiency . . . shall be deemed satisfied as of the first day of the first applicable plan year and the amount of such waived funding deficiency shall be taken into account in determining the plan's unfounded liability under subsection (e)(3)(A)." On September 17, 2006, NWA filed a written election with the IRS for this option and made the first payment required under the PPA on January 15, 2007.

By the plain words of the statute, any funding deficiencies in the Plans have been satisfied as a matter of law through the Debtors' election under the PPA, and as a result no amounts are currently due under the ERISA funding requirements. The Claimants' principal response is that it is not feasible for the Debtors to meet the obligations imposed under the PPA. Claimants allege that there are $5.7 billion in pre-petition underfunded liabilities under the Plans, and that under the PPA election, the Debtors will be obligated to pay more than $335 million per year over the next 17 years, plus interest. Claimants argue that given the Debtors' financial history and past delinquencies in meeting the minimum funding requirements of ERISA, their ability to pay this amount is uncertain and a Chapter 11 plan is not likely to be feasible if it is contingent on satisfaction of the

4

funding requirements of the PPA. *See* 11 U.S.C. § 1129(a)(11) (the requirement that a Chapter 11 plan be feasible). Debtors correctly note that issues relating to § 1129(a) and feasibility are appropriately addressed at confirmation. The Claimants' argument with respect to the feasibility of the Debtors' plan has no bearing upon whether the PPA nullifies the Claims as a debt entitled to a distribution in the current Plan. Moreover, if the Claimants were paid in accordance with the Claims, they would either (i) be able to prevent NWA from making an effective election under the PPA (which they are not authorized to do), or (ii) be able to recover twice – once through their Claims and again through the payments that the Debtors have committed themselves to make on a going forward basis.

Claimants argue that nothing in the PPA's language or legislative history indicates that funding delinquencies are *per se* satisfied, as a matter of law, by virtue of a sponsor's election under the PPA. Claimants assert: "Far from 'zeroing out' the Debtors' obligations, the PPA requires Northwest to pay . . . ." (Resp. at 8-9.) They obviously ignore the words of the statute that provide that "any prefunding balance or funding standard carryover balance under section 303 of [ERISA] or section 430 of [the IRC], as of the day before such first applicable plan year, shall be reduced to zero" § 402(f)(1). The Pension Benefit Guaranty Corporation (the "PBGC")[4] and Fiduciary Counselors[5]

---

[4] Certain of the proofs of claim filed by the PBGC were based in part upon underfunding of the Plans. A stipulation entered into between the PBGC and the Debtors, and approved by the Court on February 5, 2007, resolves certain claims on the basis of the enactment of the PPA. The stipulation states with respect to claim number 9415, "as a result of the enactment of the Pension Protection Act of 2006, and Northwest's elections under section 402(a)(1) thereof made effective October 1, 2006, the unpaid Conditional Waivers Principal and Interest Amount is deemed satisfied as a matter of law . . . ." (Stip. At 5.) With respect to claims numbered 11043, 11046 and 11049, the stipulation states, "as a result of the enactment of the Pension Protection Act of 2006 and Northwest's elections under section 402(a)(1) thereof made in September 2006, no minimum funding contributions are currently due to any of the Plans." (Stip. at 6.)

[5] A stipulation entered into between Fiduciary Counselors and the Debtors, resolving the claims of Fiduciary Counselors, states that "as a result of the enactment of the Pension Protection Act of 2006, and Northwest's elections under section 402(a)(1) thereof made effective October 1, 2006, the Funding Waivers

5

have both been able to understand this plain language and have agreed to withdraw their claims relating to funding liabilities on the basis of the PPA. Furthermore, the Stipulation entered into with Fiduciary Counselors provides that its claims

> shall automatically be reinstated in full without prejudice as of August 16, 2006, and shall be deemed timely filed, if Northwest fails timely to make to the Plan to which that Claim pertains any minimum funding contributions required to be made to that Plan under section 402(e) of the PPA that come due to that Plan on or after January 12, 2007 and before the effective date of a plan of reorganization in these chapter 11 cases.

(Stip. at 7.) This eliminates any possibility that the interests of the Claimants will not be adequately protected pending confirmation of a plan.

In light of the foregoing it is not necessary to reach the Debtors' alternative contention that the Claims of the persons allegedly represented by Claimants are duplicative of the claims filed by Fiduciary Counselors. The Debtors' objection is granted. Counsel to the Debtors is directed to settle an order on three days' notice disallowing and expunging the Claims.

Dated: New York, New York
      May 1, 2007

                                                      */s/ Allan L. Gropper*
                                          UNITED STATES BANKRUPTCY JUDGE

---

Amounts are deemed satisfied as a matter of law and any funding deficiencies are reduced to a zero balance." (Stip. at 4.) Debtors' application to approve this stipulation was granted, without objection, by order entered April 27, 2007.

6