**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------x
In re:

                                                  Chapter 11

NORTHWEST AIRLINES CORPORATION, *et al.*,

                                                  Case No. 05-17930 (ALG)

                     Reorganized Debtors.
------------------------------------------------------------------x

## MEMORANDUM OF OPINION

A P P E A R A N C E S:

CADWALADER, WICKERSHAM & TAFT, LLP
Counsel for the Reorganized Debtors
  By:  Bruce R. Zirinsky, Esq.
        Gregory M. Petrick, Esq.
        Barry J. Dichter, Esq.
        Nathan A. Haynes, Esq.
        J. David Leamon, Esq.
One World Financial Center
New York, New York 10281

  By:  Mark C. Ellenberg, Esq.
1201 F Street N.W., Suite 1100
Washington, D.C. 20004

ZUCKERMAN SPAEDER LLP
Counsel for Penta Aviation LLC
  By:  Laura E. Neish, Esq.
1540 Broadway, Suite 1604
New York, New York 10036

  By:  Thomas G. Macauley, Esq.
        Virginia Whitehill Guldi, Esq.
919 Market Street, Suite 990
P.O. Box 1028
Wilmington, Delaware 19899

Sharon L. Corbett
Vice President and Counsel
Wilmington Trust Company
1100 North Market Street
Wilmington, Delaware 19890

MORRIS JAMES, LLP
Counsel for Wilmington Trust Company
  By:   Stephen M. Miller, Esq.
500 Delaware Avenue, Suite 1500
Wilmington, Delaware 19899

MILBANK, TWEED, HADLEY & MCCLOY LLP
Counsel for John Hancock Life Insurance Company, John Hancock Variable Life
Insurance Company, and Signature 4 Limited
   By:   Wilbur F. Foster, Jr., Esq.
         Risa M. Rosenberg, Esq.
1 Chase Manhattan Plaza
New York, New York 10005-1413

  By:   David S. Cohen, Esq.
1850 K Street, N.W., Suite 1100
Washington, D.C. 20006-2213


**ALLAN L. GROPPER**
**UNITED STATES BANKRUPTCY JUDGE**

   Before the Court is a dispute relating to claim number 7237, filed by

Wilmington Trust Company (the "Owner Trustee"), and claim number 8175, filed by

the Indenture Trustee (defined below) for the debt. The issue is whether the Owner

Trustee or the Indenture Trustee is the proper party to assert a claim for damages on

account of the Debtors' breach of an aircraft lease. For the reasons stated below, the

Owner Trustee's claim is the appropriate claim to be liquidated, even if the claim is

subject to the Indenture Trustee's lien.

**Facts**

Prior to the Debtors' bankruptcy, Northwest Airlines, Inc. ("NWA"), one of the Debtors, entered into a leveraged lease of a DC-10 aircraft registered as N211NW (the "Aircraft"). An owner trust (the "Owner Trust") was created to hold title to the Aircraft and to lease the Aircraft to NWA pursuant to a lease (the "Lease"), dated October 20, 1997. Penta Aviation LLC ("Penta") is the beneficiary of the Owner Trust and was in effect the beneficial owner of the Aircraft. Most of the purchase price was provided by lenders who received a first priority perfected security interest in the Aircraft, the Lease and certain other collateral under a Trust Indenture and Security Agreement, also dated October 20, 1997 (the "Indenture"). The lenders were represented by First Security Bank, N.A., a predecessor to Wells Fargo Bank Northwest, N.A. (the "Indenture Trustee"), and certificates were issued evidencing the indebtedness. The certificates were originally held by Merrill Lynch International and are currently held by John Hancock Life Insurance Company, John Hancock Variable Life Insurance Company and Signature 4 Limited (collectively, the "Lenders"). (For convenience, the Indenture Trustee and the Lenders are hereafter sometimes called the "Lenders" and the Owner Trustee and Penta are called the "Owner.")

On September 14, 2005, the Debtors filed for protection under chapter 11 of the Bankruptcy Code. NWA subsequently moved to reject the Lease and to abandon the Aircraft under §§ 365 and 544 of the Bankruptcy Code. The motion was approved pursuant to an order, dated October 12, 2005, and amended October 18, 2005 (the "Rejection and Abandonment Order"). Under the Rejection and

3

Abandonment Order, rejection of the Aircraft Lease and abandonment of the Aircraft was effective as of October 7, 2005.

On January 31, 2006, the Indenture Trustee, on behalf of the Lenders, sent the Owner Trustee, Penta and NWA a Notice (the "Acceleration Notice"). The Acceleration Notice recited that the Indenture Trustee had a security interest in, among other things, the Aircraft and the Lease, and it defined them as the "Collateral." It then stated, in relevant part:

> As a result of the Bankruptcy and pursuant to Section 17 of the lease, the Lease has automatically been deemed to be in default without further act, and as a result of the continuing Events of Default, the Indenture Trustee, acting upon instructions of the Holders and pursuant to Section 7.01(a) of the Indenture and Section 17(f) of the Lease, hereby terminates the Lease and reserves all of its rights and remedies under the Operative Documents and applicable law.
>
> As a result of such Events of Default and pursuant to Section 7.02(b) of the Indenture, the unpaid principal of all Outstanding Certificates, together with interest accrued and unpaid thereon, and all other amounts due thereunder, shall immediately become due and payable without presentment, demand, protest or further notice, all of which have been waived by the Owner Trustee under Section 7.02(b) of the Trust Indenture.
>
> The Indenture Trustee hereby further requests pursuant to Section 7.03(a) of the Indenture that the Owner Trustee execute and deliver such instruments of title and other documents as are necessary or advisable to enable the Indenture Trustee or its agent to obtain title to the Collateral.

Although the Acceleration Notice defined 'Collateral' as "the Aircraft, the Lease and all other contents of the Indenture Estate," it was very explicit in stating, in addition, "The Indenture Trustee hereby further notifies you that it intends to sell the Aircraft by public sale. The public sale will be held March 3, 2006, at 10:00 a.m. . . . ."

4

In February 2006, a Notice of Public Foreclosure Sale (the "Foreclosure Notice") was published in several aviation periodicals. The Notice stated, in relevant part:

> . . . Wells Fargo [the Indenture Trustee] will hold a public auction to offer for sale all of the N211NW Owner Trustee's estate, right, title and interest *in and to the following assets and properties* pledged by the N211NW Owner Trustee to the Secured Party under the Trust Indenture, including without limitation, all of the N211NW Owner Trustee's right, title and interest in and to the following (collectively, the "Collateral"):
>
> One (1) McDonnell Douglas DC-10-30 airframe, bearing manufacturer's serial number 46868 and United States registration mark N211NW (the "Airframe"), two (2) General Electric engines, each model number CF6-50C2 with manufacturer's serial numbers 517317 and 517111 and one (1) General Electric engine, model number CF6-50C with manufacturer's serial number 517171 (as such engines have been upgraded or modified from time to time, and together with any replacement engines, the "Engines"), and any and all related equipment, logs, records, and other materials in respect of the Airframe and the Engines that have been pledged to the Secured Party. (Joinder, Ex. D) (emphasis added).

No mention was made of the Lease or of a claim for damages for rejection or breach of the Lease.

The Stipulated Facts submitted by the parties state that on March 3, 2006, the Indenture Trustee held a public foreclosure sale of "Collateral" pursuant to Section 9-610 of the Uniform Commercial Code and that the Aircraft was sold at auction on March 3, 2006.[1] The Indenture Trustee credit bid a portion of the debt and was the winning bidder.[2]

An email exchange took place March 7-8, 2006 between the Indenture Trustee and Owner Trustee regarding delivery of (a) an FAA Bill of Sale, (b) a Warranty Bill

---

[1] The Stipulated Facts do not define the meaning of the term "Collateral" as used therein.
[2] The amount of the winning bid is not included in the parties' papers, but at a hearing held on September 25, 2007, counsel to the Lenders represented that the amount bid in was approximately $1.8 million.

5

of Sale, and (c) an FAA Lease Termination Agreement. The Owner Trustee, under an undated cover letter, subsequently sent the Indenture Trustee an executed FAA Bill of Sale and an executed counterpart of an FAA Lease Termination Agreement. The FAA Bill of Sale stated that the Owner Trustee "does . . . hereby sell, grant, transfer and deliver all rights, title, and interests in and to such aircraft . . ." The FAA Lease Termination Agreement (Ex. H to the Stipulated Facts) was dated February 8, 2006 and stated, in part:

> The undersigned hereby certify that the lease agreement . . . has terminated with respect to the [Aircraft] and the [Engines] and the Aircraft and the Engines are no longer subject to the terms thereof . . . . This Lease Termination Agreement itself does not release the parties from their rights and obligations pursuant to, and all of the terms and conditions of, the Lease. All rights, claims and causes of action of Lessor [the Owner Trustee] against Lessee [NWA] pursuant to or in connection with the Lease, specifically including, but without limitation, all claims of . . . [the Indenture Trustee] under the [Indenture] . . . with respect to Lessee's current case under Chapter 11 of the United States Bankruptcy Code . . . are hereby expressly reserved and remain preserved. This Lease Termination Agreement shall not be, or be deemed to be, an acknowledgement or admission by Lessor or Indenture Trustee of the release of Lessee from its obligations and liabilities under the Lease. *This Lease Termination Agreement is intended only to remove the Lease from the Aircraft Registry of the Federal Aviation Administration so that the Aircraft may be disposed, transferred or conveyed by Lessor or Indenture Trustee free from any encumbrance of the Lease*. (emphasis added).

In March, the Owner Trustee and NWA sent executed counterparts of the FAA Lease Termination Agreement to counsel for the Indenture Trustee. The Indenture Trustee, which had become the putative owner of the Aircraft by reason of its credit bid at the foreclosure sale on March 3, 2006, entered into an Aircraft Sale and Purchase Agreement with PICL Aviation IV, LLC ("PICL"), which purchased

6

the Aircraft for $2,125,000.[3] At some point in March 2006, the Owner Trustee also executed an original Bill of Sale, which stated that the Owner Trustee:

> . . . does hereby grant, convey, sell, transfer and deliver all of its right, title and interest in and to the following:
>
> That certain McDonnell Douglas DC-10-30 aircraft bearing manufacturer's serial number 46868 together with three (3) General Electric CF6-50C engines bearing manufacturer's serial numbers 517317, 517171 and 517111, and all avionics, appliances, components, parts, instruments, appurtenances, accessories, furnishings or other equipment of whatever nature incorporated therein, installed thereon or attached thereto (all the foregoing, collectively the "Aircraft"), and all logs, manuals, data, and inspection, modification and overhaul records related to the maintenance and operation of the Aircraft (such documentation, collectively, the "Aircraft Documentation").

The copy of the Bill of Sale attached to the pleadings is neither dated nor countersigned, and based on the accompanying cover letter, dated March 20, 2006, it appears to have been submitted to be held in escrow pending its release by the Owner Trustee. It appears uncontested that at some point the blanks in the Bill of Sale were filled in with the name PICL Aviation IV, LLC and the date March 23, 2006.

On August 9, 2006, the Owner Trustee filed claim number 7237 against NWA in the amount of $13,415,199 (the "Owner Trustee Claim"). On August 11, 2006, the Indenture Trustee filed claim number 8175 against NWA in the amount of $16,234,238.84 (the "Indenture Trustee Claim," and together, the "Claims").[4] Both Claims were for damages on account of NWA's breach of the Lease.

On January 10, 2007, Penta requested from the Indenture Trustee "an accounting of the unpaid indebtedness secured by the Collateral (such accounting to

---

[3] The amount is publicly disclosed in the Lenders' Supplement to the Record at p. 5.
[4] The Lenders also filed claim number 11474, which they concede will be "consolidated in its entirety with the Indenture Trustee's Claim." (Joinder, note 4.)

7

include information regarding the surplus or deficiency upon disposition of the Collateral) . . ." as provided for by the Acceleration Notice. (Joinder, Ex. F.) On February 2, 2007, the Indenture Trustee refused to comply with the request ''because the foreclosure sale of the Aircraft occurred on March 3, 2006 at which time all indebtedness was discharged. Accordingly, your request is untimely." (Joinder, Ex. G.)

In their Twenty-Fifth Omnibus (Tier II) Objection, dated March 15, 2007 (the "Objection"), the Debtors sought to expunge the Owner Trustee Claim as redundant of the Indenture Trustee Claim. On April 17, 2007, the Owner Trustee and Penta filed a response, asserting that the Owner Trustee is the proper party to assert a claim for damages for breach of the Lease, whether or not the Indenture Trustee has a lien on the proceeds of the Owner Trustee Claim. They assert the Indenture Trustee failed to foreclose on any asset other than the Aircraft, that there is no privity between NWA and the Indenture Trustee, and that, in any event, to the extent that the value of the Claim exceeds the remaining balance of the debt due to the Lenders, the Owner is certainly entitled to the excess distribution.

The Lenders filed a response, dated July 13, 2007, asserting that the Acceleration Notice gave notice of a public sale and the intent of the Indenture Trustee to obtain title to the "Collateral," that the Foreclosure Notice stated that "'all of the N211NW Owner Trustee's right, title and interest in and to the [Aircraft]" was sold at auction, and that "all claims against the Debtor under the Lease, other than the Excepted Payments, have been foreclosed on and belong absolutely to the Indenture

8

Trustee for the benefit of the Lenders, and are no longer collateral." (Joinder, ¶ 8.)[5] They assert that the language of the Acceleration Notice and Foreclosure Notice was adequate to notice and to effectuate a foreclosure on both the Aircraft and the damage claim for breach of the Lease. The Debtors have not taken a position with respect to the present dispute, but request that "this Court determine the proper party to assert the rejection damages claim against Northwest, so that the Reorganized Debtors may proceed to resolve a single claim for the alleged underlying liability." (Reply, p. 3.) The Debtors have reserved an amount sufficient to pay either of the Claims.

Several hearings were subsequently held before this Court, at which the Court made certain preliminary determinations, requested that the parties submit Stipulated Facts and also supplement the record as to the amounts claimed.

## **Discussion**

The issue herein is a narrow one – whether the Lenders or the Owner has a right to assert against the Debtors a claim for damages on account of NWA's breach of the Lease. The answer to this question depends on whether the Lenders have foreclosed out the Owner's interest in the Lease. Based on the facts of this matter, the Court finds that the Lenders have not foreclosed on their security interest in the Lease or its proceeds and that the Owner Trustee is entitled to assert a claim against the Debtors' estate. This does not mean that the Lenders or Indenture Trustee have lost their security interest in the Lease or its proceeds, only that they have not to date foreclosed on the Lease proceeds or the Lease damage claim against NWA.

---

[5] Excepted Payments are defined as including certain insurance claims and claims for tax indemnities separately provided by NWA. These claims are not at issue here.

9

The paper trail is absolutely clear on this point.  The Foreclosure Notice dated February 17, 2006, and quoted in pertinent part above, which provided public notice of a sale on March 6, 2006, was clear in its description of the "Collateral" that was proposed for sale:  "all of the N211NW Owner Trustee's estate, right, title and interest in and to the following assets and properties pledged by the N211NW Owner Trustee to the Secured Party under the Trust Indenture, including without limitation all of the N211NW Owner Trustee's right, title and interest in and to the following (collectively, the "Collateral"):  one (1) McDonnell Douglas DC-10-30 airplane [there follows a description of the plane]."  There was no mention whatsoever of the Lease or damages under the Lease.

The most that the Lenders and the Indenture Trustee can conjure up on the notice issue is that the Acceleration Notice defined "Collateral" by reference to the Indenture and Lease and that "Collateral" is defined in such notice as including "the Aircraft, the Lease and all other contents of the Indenture Estate."  (See the Lenders' Further Response, p. 3.)  Be that as it may, the Acceleration Notice was wholly in accord with the Foreclosure Notice by stating, "the Indenture Trustee further notifies you that it intends to sell *the Aircraft* by public sale.  The sale will be held March 3, 2006 . . ."  (Ex. F. to Stipulation of Facts, p. 2) (emphasis added).  Public notice of the sale confirmed that only the Aircraft was to be auctioned, and it used the term "Collateral" to include only the Aircraft.[6]

---

[6] It is not difficult to write a foreclosure notice that includes claims under a lease.  See, for example, the Notice of Public Foreclosure which appeared in the New York Times on November 15, 2007, at p. C2, which apparently related to an aircraft whose lease was rejected in the Delta Airlines chapter 11 case.  The notice states that a public auction will be held

> to offer for sale all of the Owner Trustee's estate, right, title and interest in and to the
> following assets and properties pledged by the Owner Trustee to the Secured Party under

10

Section 9-611 of the New York Uniform Commercial Code ("N.Y.U.C.C.") requires that ". . . a secured party that disposes of collateral under Section 9-610 shall send to the persons specified in subsection (c) [including the Owner] reasonable authenticated notification of disposition". N.Y.U.C.C. § 9-613(a) provides further, "The contents of a notification of disposition are sufficient if the notification: (1) describes the debtor and the secured party; (2) describes the collateral that is the subject of the intended disposition; (3) states the method of intended disposition; (4) states that the debtor is entitled to an accounting of the unpaid indebtedness and states the charge, if any, for an accounting; and (5) states the time and place of a public disposition or the time after which any other disposition is to be made." At a hearing held on September 25, 2007, the Court determined that the notices provided were not adequate to provide notice to the Owner—or to a third party bidder—that the sale encompassed, in addition to the Aircraft, damages against NWA for breach of the Lease. The Court reiterates that finding. While the Acceleration Notice requests that the Owner Trustee deliver instruments of title to obtain title to the "Collateral," it also makes it clear that the intended foreclosure sale refers only to the Aircraft. There is no indication in the record that the Owner Trustee ever delivered instruments specifically conveying title to the Lease. The Foreclosure Notices also did not

---

the Trust Indenture, including without limitation, all of each respective Owner Trustee's right, title and interest in and to the following: (1) One (1) Boeing Model 767-332 airframe . . . , two (2) General Electric CF6-80A2 aircraft engines . . . , and any and all related equipment, logs, records, and other materials in respect of the Airframe and the Engines (together with the Airframe and the Engines, the "Aircraft"), subject to the rights and obligations of the parties under (a) the Lease Agreement . . . ; and (2) *All unsecured pre-petition damage claims of the Owner Trustee against the Lessee in connection with the Lease in that certain bankruptcy proceeding, In re: Delta Air Lines, Inc. . . .* The Aircraft shall be sold as a whole lot or together with the Related Claims, subject to the Lease . . . (emphasis added).

11

indicate to the Owner Trustee, to Penta or to a prospective purchaser that the Lease or any proceeds thereunder were being sold.

Nor do the subsequent actions of the parties provide any indication whatsoever that the Lease or any damage claims thereunder were sold at a foreclosure sale. The Lenders made a credit bid of $1,800,000 at the foreclosure sale, and a few days thereafter, sold the Aircraft to a third party for a greater amount. Yet they would have the Court believe that they also obtained all right, title and interest of the Owner to a damages claim against NWA, which the Lenders later filed in the amount of $16,234,238.84 and which the Owner Trustee filed in the amount of $13,415,199. The value of such claim is not established on this record but the parties have stipulated that the projected recovery on the Owner's Claim is alone greater than the outstanding debt. (Stip. of Facts ¶ 27.) If the Lenders' argument were valid, they obtained an Aircraft (which they resold for $2,125,000) *plus* a claim worth at least $4.2 million for a credit bid of $1.8 million.[7] The law does not countenance such chicanery.

Since, as noted above, the Court made a preliminary determination at the September 25, 2007 hearing that the notice of foreclosure sale was not adequate to provide notice to the Owner Trustee or any prospective purchaser that the sale encompassed, in addition to the Aircraft, damages against NWA for breach of the Lease, the Lenders place most of the emphasis in their latest papers on the argument that the Lease was conveyed as a matter of law with the Aircraft. There is no basis to this contention on the facts of this matter.

---

[7] See Ex. Y for the Lenders' calculation of the outstanding debt, including fees and expenses, as of October 20, 2007 (an amount they initially refused to disclose to the Owner on the spurious ground that the request for such calculation was tardy).

12

The Lenders cite the familiar principle that property subject to an outstanding lease (or other encumbrance) is ordinarily conveyed subject to such encumbrance, and that the buyer is entitled to the benefits (and burdens) of the lease unless the parties agree otherwise (and the rights of the lessee are not impaired). *See*, *e.g.*, *U.S. v. Shafto*, 246 F.2d 338, 341 (4th Cir. 1957); *Wells Fargo Northwest Bank, Nat'l Ass'n v. Varig – S.A.*, 2003 WL 21508341 (S.D.N.Y. June 27, 2003); *Southern Associates, Inc. v. United Brands Co.*, 67 A.D.2d 199, 203, 414 N.Y.S.2d 560, 562 (1st Dep't. 1979); *Reltron Corp. v. Voxakis Enterprises, Inc.*, 57 A.D.2d 134, 137-38, 395 N.Y.S.2d 276, 279 (4th Dep't. 1977). However, all of these cases involved leases that were outstanding at the time of the conveyance. Here, NWA had rejected the Lease almost five months before the conveyance and had ceased performing even earlier. The Lease was no longer an encumbrance or attribute to the property. At most it represented a claim for damages against the lessee (NWA) for breach, a claim that had to be filed in the lessee's bankruptcy if it was to have any value.

The Lenders rely heavily on *Feldman v. Philadelphia Nat'l Bank*, 408 F.Supp. 24 (E.D. Pa. 1976), which applied the principle that property is usually conveyed subject to an encumbrance to the lease of an aircraft, but the case is easily distinguishable on its facts. There, a debtor had purchased an aircraft with funds borrowed from a bank, had leased the aircraft to a third party and had assigned the lease and payments thereunder to the bank as collateral on the loan. The debtor's Chapter XI trustee sold the Aircraft for a nominal amount to the lessee and thereafter sought to recover lease payments that the lessee had made to the bank after the sale. The Court held that the Chapter XI trustee was estopped and barred from any

13

recovery for multiple reasons, including the fact that the transfer of the lease to the lessee merged the estates and made the new owner "both lessor and lessee of the Aircraft. The effect of merging those interests was to extinguish the lease." 408 F.Supp at 40. The Court also relied on the rule noted above, that conveyance of property subject to a lease ordinarily also conveys an outstanding lease. By contrast, in this case, the Lease had been extinguished before the conveyance and there was no merger of the interests of the parties.

The Lenders quibble that rejection under § 365 of the Bankruptcy Code does not cancel or terminate a lease, citing, *e.g., Cohen v. Drexel Burnham Lambert Group*, 138 B.R. 687, 708 (Bankr. S.D.N.Y. 1992). That principle has no application here, as rejection coupled with abandonment does constitute termination. *See In re Henderson*, 245 B.R. 449, 453-54 (Bankr. S.D.N.Y. 2000). The Lenders fail to respond to the issue of abandonment, alleging that there is "no support in the record to support this assertion that the Collateral was somehow abandoned." (Supplement, n. 45.) They forget that the Aircraft was expressly abandoned through the Rejection and Abandonment Order.

In addition, if more were needed, the Lease was expressly terminated by the Lenders themselves through the Acceleration Notice, which stated:

> As a result of the Bankruptcy and pursuant to Section 17 of the Lease, the Lease has automatically been deemed to be in default without further act, and as a result of the continuing Events of Default, *the Indenture Trustee, acting upon instructions of the Holders and pursuant to Section 7.01(a) of the Indenture and Section 17(f) of the Lease, hereby terminates the Lease* and reserves all of its rights and remedies under the Operative Documents and applicable law. (emphasis added.)

14

The Owner correctly points out that "termination" equates to "cancellation" under N.Y.U.C.C. § 2A-103(1)(b), which states that "cancellation occurs when either party puts an end to the lease contract for default by the other party." Cancellation of the Lease by the Indenture Trustee discharged all executory obligations under N.Y.U.C.C. § 2A-505(1), which provides: "On cancellation of the lease contract, all obligations that are still executory on both sides are discharged, but any right based on prior default or performance survives, and the canceling party also retains any remedy for default of the whole lease contract or any unperformed balance."

The Lenders also point to the FAA Lease Termination Agreement executed in March 2006 as indicating that the Lease was transferred along with the Aircraft. However, the FAA Agreement stated, "this Lease Termination Agreement is intended only to remove the Lease from the Aircraft Registry of the Federal Aviation Administration so that the Aircraft may be disposed, transferred or conveyed by Lessor or Indenture Trustee free from any encumbrance of the Lease." If anything, this document confirms that the transfer of the Aircraft was free of the Lease. Nor is there any indication in this document that the Lease was still in existence at the time the FAA Lease Termination Agreement became effective.

Finally, the Lenders cite Article 9 of New York's U.C.C. for the proposition that the public sale of the Aircraft, whether or not the Lease had earlier terminated, necessarily encompassed the Lease because the Lease was "proceeds" of the Aircraft. There is no question that the Lenders had a security interest in the Lease, whether or not the Lease should be deemed proceeds of the Aircraft, and there seems no question that the Lenders could have foreclosed on the Claim against NWA. However, the

15

foreclosure sale was limited by the Lenders themselves to the Aircraft, and public notice of the sale did not include reference to claims under a terminated Lease. The Indenture Trustee may have a lien on the proceeds of the Owner's Claim, but the Lenders cannot assert that they already own the entirety of the Claim.

Based on the foregoing, the proof of claim of the Owner Trustee is the appropriate claim to be liquidated based on the current record. This does not, as stated above, eliminate the Lenders' security interest in the Owner's Claim or the proceeds thereof. Nor does it determine the amount of the Claim or many subsidiary issues, such as the extent of the accrual of interest, the rights of the parties with respect to costs and attorneys' fees, and the responsibility of the parties (if any) for losses as a result of the decline in value of a claim against the Debtors since the effective date of their plan of reorganization. These issues will require further exploration in this Court or, as to some of the issues, possibly the State court, if the parties cannot resolve them themselves.[8]

---

[8] There is reference in the record to an agreement between the Debtors and the Indenture Trustee on an amount for the poof of claim. That at least would be a start. All of the Owner's other contentions with respect to the disallowance of accruing monthly interest as contrary to the waterfall distribution in § 5.03 of the Indenture, and the grant of damages or the disallowance of interest or attorneys' fees on account of what the Owner characterizes as the Lenders' lack of good faith, are reserved.

16

**Conclusion**

As between the proofs of claim filed by the Owner Trustee and the Indenture Trustee, the Owner Trustee's Claim is *prima facie* entitled to recovery from the Debtors. The Lenders, the Owner and the Debtors are directed to meet and confer on the amount of the Claim and all other outstanding issues, including the issue of the Indenture Trustee's security interest in such Claim. If an order that effectuates this decision and sets up a schedule for any necessary further proceedings cannot be agreed to, the Owner may settle an order on five days' notice.

Dated: New York, New York
       March 21, 2008

                              */s/ Allan L. Gropper*
                              UNITED STATES BANKRUPTCY JUDGE