**UNITED STATES BANKRUPTCY COURT**  **NOT FOR PUBLICATION**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------------x
In re:

                                         Chapter 11

NORTHWEST AIRLINES CORPORATION, *et al.*,

                                         Case No. 05-17930 (ALG)

                      Reorganized Debtors.

-----------------------------------------------------------------------x

## MEMORANDUM OF DECISION

A P P E A R A N C E S:

CADWALADER, WICKERSHAM & TAFT, LLP
Counsel for the Reorganized Debtors
  By:  Bruce R. Zirinsky, Esq.
        Gregory M. Petrick, Esq.
        Nathan A. Haynes, Esq.
One World Financial Center
New York, New York 10281

  By:  Mark C. Ellenberg, Esq.
1201 F Street N.W., Suite 1100
Washington, D.C. 20004

Jesse Velez, *Pro Se*
12908 Sophiamarie Loop
Orlando, Florida 32828

**ALLAN L. GROPPER**
**UNITED STATES BANKRUPTCY JUDGE**

       Before the Court is the motion by the above-captioned reorganized debtors (collectively, the "Debtors") to estimate and cap proof of claim number 10341 (the "Claim"), filed by Jesse Velez ("Claimant") in the above-referenced cases. For the reasons set forth below, the motion is granted solely to the extent that Claimant's request for punitive and exemplary damages will be subordinated.

**Background**

Claimant is a former employee of Northwest Airlines, Inc. ("Northwest"), one of the Debtors. Claimant began working for Republic Airlines, Inc., a predecessor of Northwest, as a flight attendant in November 1985 and continued his employment with Northwest until his termination on April 22, 2005. Claimant subsequently filed a grievance with his union, the Association of Flight Attendants (the "AFA"), and in the fall of 2005 the dispute went to arbitration before the System Board of Adjustment (the "System Board"). The System Board conducted an evidentiary hearing and briefs were submitted by the parties. On February 24, 2006, the System Board issued an opinion and award denying the grievance.

On August 2, 2006, Claimant brought a *pro se* action (the "Civil Action") against Northwest in the Superior Court of California, Northern District, County of Alameda (the "State Court"). The Civil Action complaint (the "Complaint") alleged violations of the California Fair Employment and Housing Act (Cal. Gov. Code § 12900, *et seq.*) ("FEHA") and Title VII of the Civil Rights Act of 1964, as amended, (42 U.S.C. § 2000e, *et seq.*) ("Title VII") in connection with Claimant's termination.[1]

On August 15, 2006, Claimant filed the Claim, asserting an unsecured non-priority claim in the amount of $4,990,000 for "punitive damages/discrimination," and an unsecured priority claim in the amount of $10,000 for unpaid wages, salary and compensation pursuant to 11 U.S.C. §§ 507(a)(2), (a)(3), (a)(4), (a)(5) and 1113. The Claim attached as supporting documentation, among other things, a copy of the

---

[1] The Debtors assert that the Civil Action was in violation of the automatic stay pursuant to 11 U.S.C. § 362(a) because it was filed after the Debtors' petition date of September 14, 2005. Since it is clear the dispute has to be resolved, the lawsuit will be deemed filed on the date of this order, granting relief from the Plan injunction to permit resolution of the controversy in non-bankruptcy court. *See Sonnax Indus., Inc. v. Tri Component Prod. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1286 (2d Cir. 1990).

2

Complaint and a note indicating that the Claim was also based upon a collective bargaining agreement between the Debtors and the AFA (the "CBA"). The Claim did not offer a further breakdown of damages, although the Complaint demands judgment

> 1) For general compensatory, incidental, and consequential damages, including lost past and future income, and damages for mental and emotional distress, as may be show by proof at the trial of this matter; 2) For costs of suit incurred herein; 3) For punitive and exemplary damages; 4) For reasonable attorney's fees; 5) For Prejudgment interest at the legal rate on the amount of plaintiff's lost wages and employment benefits; and 6) For such other and further relief as the Court deems just and proper. (Complaint, p. 13.)

Pursuant to a prior order of this Court that provides for mandatory alternative dispute resolution procedures (the "ADR Procedures") for certain claims, the Claim was submitted to the ADR Procedures. A non-binding mediation was conducted on April 7, 2008, but was unsuccessful in resolving the Claim. In conjunction with the mediation, Claimant submitted an itemized claim summary, which included (i) Net Current Lost Wages (Back Wages) in the amount of $55,768.51; (ii) Future Lost Wages in the amount of $1,149,500.00; (iii) Retraining Costs in the amount of $240,000.00; (iv) Past and Estimated Future Medical Costs in the amount of $26,719.62; (v) Loans and Sold Property in the amount of $55,000.00; (vi) Legal Fees and Travel Costs in the amount of $195,048.55; and (vii) Punitive and Exemplary Damages in the amount of $3,317,963.02.[2]

## **Discussion**

The Debtors' present motion is not based on the merits of Claimant's allegations. Rather, the Debtors assert that most of the amounts demanded in the Claim must be

---

[2] In his response to the Debtors' motion, Claimant submitted a revised chart, assertedly prepared by counsel who advised Claimant with respect to the mediation but has not appeared. The revised chart divided the damages requested into present and future values for lost income, lost fringe benefits and other costs, including emotional distress and punitive damages.

3

subordinated under the Debtors' plan of reorganization (the "Plan") and that the Claim should therefore be estimated in the maximum amount of $82,488.13 (the "Capped Amount").[3] The Debtors assertedly seek this relief in order to recalculate their distribution reserve, as subordination of most of the Velez Claim would decrease the total reserve and increase the amount of stock now available for distribution to other unsecured creditors.[4]

The Plan subordinates claims for punitive and exemplary damages or "any other amount that does not represent compensation for actual pecuniary loss suffered by the holder of such Claim." The Debtors are on solid ground when they state, correctly, that the punitive damages demanded by Claimant must therefore be subordinated under the Plan. It is less certain on the present record that the Claimant's other alleged damages would not represent "compensation for actual pecuniary loss." The Debtors cite several cases in support of their position that California and federal law equate actual pecuniary loss with actual out-of-pocket economic damages. The Debtors' reasoning is that if amounts requested by Claimant do not constitute out-of-pocket damages as interpreted by the California and federal courts, the amounts must be considered Subordinated Claims

---

[3] The Debtors seek to subordinate all amounts except those requested for net current lost wages and past and estimated future medical costs. Section 1.107 of the Plain defines a Subordinated Claim as:

> any Claim against a Debtor, whether secured or unsecured, for any fine, penalty, forfeiture, attorneys' fees (to the extent that such attorneys' fees are punitive in nature), multiple, exemplary or punitive damages, or for any other amount that does not represent compensation for actual pecuniary loss suffered by the holder of such Claim, and all claims against any of the Debtors of the type described in section 510(b) of the Bankruptcy Code.

[4] The Plan provides that the Court retains jurisdiction "to consider Claims or the allowance, classification, priority, compromise, estimation or payment of any Claim, Administrative Expense Claim, Disputed Claim or Equity Interest . . ." (Plan §13(e).) The Plan also provides that "[t]he Debtors and Reorganized Debtors may at any time request that the Bankruptcy Court estimate any contingent, unliquidated or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code . . . ." (Plan § 7.5.) There is no question that under the Plan, holders of Subordinated Claims will not receive a distribution, as holders of non-subordinated, allowed general unsecured claims will not be paid in full.

4

under the Plan. The cases cited cannot be read as broadly as Debtors contend.[5] In any event, none of the cases cited by Debtors construes the applicable clause in the Plan, and none is determinative of the precise issue they have raised. There is no showing that the Plan language should be read more broadly than the subordination of punitive damage claims provided for in 11 U.S.C. § 726(a)(4). The statutory language there subordinates claims for fines, penalties, forfeitures and punitive damages "to the extent that such fine, penalty, forfeiture, or damages are not compensation for actual pecuniary loss . . ." The statutory language does not invite a wide-ranging inquiry as to whether each element of a creditor's damage represents "actual pecuniary loss".

Accordingly, the Court cannot find on the present record that Claimant's Claim should be subordinated under the Plan, except for that part of the Claim that seeks punitive or exemplary damages. Nor would any such finding be appropriate in light of the status of the litigation, in that any judgment Claimant may obtain will have to be brought back to this Court for allowance, and if there is any remaining dispute over the classification of any part of a damages recovery, if one is obtained, the Court can determine it at the time. As for the Debtors' contention that estimation of this Claim is

---

[5] The cases relate primarily to the proper calculation of compensatory damages as driven by the facts. For instance, *Davis v. Los Angeles Unified School District Personnel Comm'n*, 152 Cal. App. 4th 1122, 1134, 62 Cal. Rptr. 3d 69, 77 (2d Dist. 2007), and *Nishihama v. San Francisco*, 93 Cal. App. 4th 298, 306, 112 Cal. Rptr. 2d 861, 866 (1st Dist. 2001), are cited as supporting the position that California law "equates 'actual pecuniary loss' with actual out of pocket economic damages." (Debtors' Motion, ¶ 22.) However, *Davis* specifically deals with the ability of an employee on disability to recover backpay under Ed. Code § 45307, not FEHA, and the Debtors do not challenge Claimant's right to seek to recover backpay. *Nishihama* discusses treatment of medical expenses in a personal injury action, unrelated to FEHA, and dealing with another category of claim that the Debtors do not challenge. The Title VII cases cited by the Debtors also fail to support their blanket position with respect to both Title VII and FEHA. *Gotthardt v. Nat'l Railroad Passenger Corp.*, 191 F.3d 1148, 1154 (9th Cir. 1999), notes that front pay is treated as equitable relief and need not be capped under 42 U.S.C. § 1981(a); however, the Debtors do not cite authority that front pay must be similarly disallowed under the FEHA. The Debtors also compare 42 U.S.C. § 2000e-5(g)(1) with 42 U.S.C. § 2000e-5(k) as authority that litigation expenses and attorney's fees are not part of damages under Title VII. However, § 2000e-5(g)(1) merely provides for equitable orders and calculation of back pay while § 2000e-5(k) provides for the allowance of attorney's fees and costs.

5

reasonably necessary to limit the litigation reserve, except for the subordination of the punitive damages, the instant Claim has at most an immaterial impact on the overall reserve.

### **Conclusion**

Claimant has leave to prosecute his Claim in the California court to judgment. If Claimant obtains judgment in his favor, Claimant will be entitled to a claim measured by the amount of the judgment. This Court reserves the right to determine the appropriate classification of any part of the judgment but finds at present that the claim for punitive or exemplary damages should be deemed a Subordinated Claim. Debtors' counsel should settle an order on 15 days' notice.

Dated: New York, New York
       July 25, 2008

                                    */s/ Allan L. Gropper*
                                 UNITED STATES BANKRUPTCY JUDGE