| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK | **NOT FOR PUBLICATION** |
| ------------------------------------------------------------------x<br>In re:<br><br>NORTHWEST AIRLINES CORPORATION, *et al.*,<br><br><br>                                        Reorganized Debtors.<br>------------------------------------------------------------------x | Chapter 11<br><br>Case No. 05-17930 (ALG) |

## MEMORANDUM OF DECISION AND ORDER

A P P E A R A N C E S:

CADWALADER, WICKERSHAM & TAFT, LLP
Counsel for the Reorganized Debtors
  By:   Bruce R. Zirinsky, Esq.
         Gregory M. Petrick, Esq.
         Nathan A. Haynes, Esq.
One World Financial Center
New York, New York 10281

  By:   Mark C. Ellenberg, Esq.
1201 F Street N.W., Suite 1100
Washington, D.C. 20004

GAUTHIER LAW OFFICES, P.S.
Counsel for Craig S. Friday
  By:   James A. Gauthier, Esq.
22605 97th Avenue South
Kent, Washington  98031-2444

**ALLAN L. GROPPER
UNITED STATES BANKRUPTCY JUDGE**


       Before the Court is the objection of the above-captioned reorganized debtors

(collectively, the "Debtors") to claim 6335 (the "Claim"), filed by Craig S. Friday ("Claimant"),

a former pilot for Northwest Airlines, Inc. ("Northwest"), one of the Debtors.  Claimant alleges

an unsecured priority claim in the amount of $1,110,256, with three components: 1) $855,788 for

wages due from 1999 to the date of the Claim, less disability payments received; 2) $5,000 as

compensation for the revocation of travel pass benefits; and 3) $249,468 for sick leave pay and vacation pay for time used while Claimant was removed from active flight status pending a fitness-for-duty exam.

The Debtors assert that the Claim should be disallowed and expunged in its entirety because it is barred by prior adjudication and because Claimant has no extant grievance timely-filed under the 1998-2002 Pilots Agreement (the "Pilots Agreement") between Northwest and the Air Line Pilots Association, International ("ALPA"), the union to which Claimant belonged. Claimant contends in response that Northwest has not complied with the Pilots Agreement, and he requests that the Court (i) require the Debtors to arbitrate his grievances, as allegedly required by the Railway Labor Act (45 U.S.C. § 151 *et seq.*) (the "RLA"), and (ii) that it rule on the Claim only if Northwest is found liable and monetary damages are assessed by the arbitration panel.

For the reasons set forth below, the Debtors' objection is sustained and the Claim is disallowed.

## BACKGROUND

The facts on which the Claim is based date back to October 8, 1998, when Northwest informed Claimant that he was being removed from service, pending the outcome of a medical examination, referred to as a "Fitness for Duty Exam," pursuant to the Pilots Agreement. Claimant underwent the examination on October 23, 1998, the results of which were received by Northwest in December 1998, at which time Claimant was placed on sick leave. There followed a vast amount of litigation, including the following:

*The District Court Case*

On May 25, 1999, Claimant and his wife filed a complaint against Northwest in the United States District Court for the Western District of Washington (the "District Court"), captioned *Friday et al., v. Northwest Airlines, Inc.*, Case No. CV-99-00836-JCC. The District Court action asserted claims of wrongful discharge, disability discrimination, age discrimination, retaliation, intentional and negligent infliction of emotional distress on behalf of Claimant's wife, and defamation. The suit was stayed while the parties pursued arbitration, after which by order dated November 2, 2000 (the "District Court Decision"), the District Court granted Northwest summary judgment.[1] With respect to the allegation of wrongful discharge, the District Court found that "[d]uring the proceedings before the arbitrator on December 17, 1999, Friday declared, under oath, his intention to voluntarily terminate his employment due to his disability on December 17, 1999." (District Court Decision, p. 2-3.) The District Court found that at the arbitration proceeding Claimant "also agreed to 'dismiss all grievances associated with [him] that are pending against the company, except for the grievance related to harassment which will be heard either in January or February.'" *Id.*[2] The District Court found that "the date of Friday's termination of employment with Northwest Airlines was December 17, 1999." *Id.*

Claimant appealed the District Court Decision, and on February 20, 2002, the United States Court of Appeals for the Ninth Circuit, reviewing *de novo*, affirmed the District Court. *See Friday v. Northwest Airlines, Inc.*, 31 Fed. Appx. 391 (9th Cir. 2002). The Ninth Circuit held, in part, that Claimant had failed to raise a genuine issue of material fact on his wrongful discharge and federal and state disability discrimination claims because of the prior settlement

---

[1] The District Court Decision, dated November 2, 2000, is attached as Exhibit A to the Debtors' Objection.
[2] The harassment grievance is not identified as part of the Claim, and the record does not indicate that Claimant pursued it further after 1999.

3

agreement wherein Claimant "voluntarily terminated his employment as a pilot at Northwest Airlines after stipulating that he was unfit to fly an airplane." *Id.* at 392.

### *The Department of Labor Cases*

Subsequent to the Federal litigation described above, Claimant began filing a series of over twenty claims with the Occupational Safety and Health Administration ("OSHA") for whistleblower protection under § 519 of the Wendell H. Ford Aviation Investment and Reform Act for the 21st Century ("AIR 21"), 49 U.S.C. § 42121. AIR 21 provides that an air carrier cannot "discharge an employee or otherwise discriminate against an employee with respect to compensation, terms, conditions, or privileges of employment," if the employee discloses to "the employer or Federal Government information relating to any violation or alleged violation of any order, regulation, or standard of the Federal Aviation Administration or any other provision of Federal law relating to air carrier safety . . . ." 49 U.S.C. § 42121(a).

Claimant filed his first complaint with OSHA on April 30, 2002, with a second following on November 18, 2002. Claimant alleged two retaliation claims: (1) Northwest had rescinded Claimant's free travel pass benefits in retaliation for his directing complaints regarding Northwest's safety problems to various government personnel and his allegedly imminent Congressional testimony on the same issue; (2) Northwest had banned Claimant from its property and threatened him with arrest for unlicensed practice of law in retaliation for his serving as a witness in the arbitration case of another Northwest pilot. OSHA dismissed both complaints. Claimant requested *de novo* review before the Office of Administrative Law Judges ("OALJ"). In an order, dated June 27, 2003, Northwest was granted summary judgment on each claim. *See Friday v. Northwest Airlines, Inc.*, Case Nos. 2003-AIR-00019/00020 (Dep't of

Labor June 27, 2003) (the "2003 OALJ Decision").[3] The OALJ held that the travel pass claim was time-barred by AIR 21, because 42 U.S.C. § 42121(b)(1) requires that complaints be filed within 90 days after the date on which the alleged violation occurs. (2003 OALJ Decision at 5.)[4] With respect to the second claim, the OALJ found that Claimant was an employee for purposes of AIR 21.[5] *Id.* at 8. It nevertheless concluded that Claimant could not sustain a whistleblower claim under the circumstances, stating:

> Northwest owes certain duties to Friday as a former employee on disability retirement, primarily paying his pension or other retirement benefits secured by ALPA's Collective Bargaining Agreement . . . As a disabled retiree, Friday continues to accrue seniority and may return to work if his medical disability abates within seven years of his retirement . . . An alteration of these obligations in retaliation for Friday's protected safety activities by Northwest would constitute a retaliatory act related to the employment relationship. Which is to say, Friday must establish that Northwest's actions were in some way related to the 'compensation, terms, conditions, or privileges' which arise from Friday's relationship with Northwest as a medically retired former employee.[6]

*Id.* at 9. The OALJ ruled that Claimant had failed to establish this predicate and had not shown that an adverse personnel action took place. *Id.* at 10-11.

The 2003 OALJ Decision, which decided Claimant's first and second complaint, was appealed and reviewed *de novo* by the Department of Labor Administrative Review Board ("ARB"). The ARB, in an order dated July 29, 2005, adopted the OALJ's opinion and dismissed the complaints. *Friday v. Northwest Airlines, Inc.*, ARB No. 03-132, 1, 3 (July 29, 2005).[7] In its decision, the ARB noted that "[o]n December 17, 1999, Friday agreed to voluntarily terminate

---

[3] A copy of the 2003 OALJ Decision is attached as Exhibit C to the Debtors' Objection.
[4] The OALJ found that Claimant's travel pass was, at the latest, cancelled on June 15, 2000, but that his claim was not filed until April 30, 2002. (2003 OALJ Decision at 6.)
[5] The AIR 21 definition of "employee" includes "an individual presently or formerly working for an air carrier . . . ." 29 C.F.R. § 1979.101.
[6] The ALJ decision notes that "[o]n December 17, 1999, Friday agreed to voluntarily terminate his employment with Northwest, under oath in an arbitration proceeding, in exchange for being offered the benefits of 'Disability Retirement' as defined in the Air Line Pilots Association (ALPA) Collective Bargaining Agreement." (2003 OALJ Decision at 2.)
[7] A copy of the order is attached as Exhibit D to the Debtors' Objection.

5

his employment with Northwest in exchange for Northwest's offer of disability retirement." *Id.* at 2.

There followed twenty filings by Claimant with OSHA between May 22, 2003 and February 29, 2004. Eighteen were initially dismissed by an OSHA Regional Administrator. Claimant requested a review, and Northwest moved for summary judgment before the OALJ, which dealt with all the allegations in one proceeding. The OALJ discussed each allegation in turn, and granted Northwest summary judgment on all allegations. *See Friday v. Northwest Airlines, Inc.*, Case No. 2004-AIR-00016/00017, at 8-16 (Dep't of Labor June 16, 2004) (the "2004 OALJ Decision").[8] After summarizing Claimant's employment and litigation history, the ALJ found that "the Complainant terminated his employment relationship with the Respondent on December 17, 1999, and ceased to be an employee after that date." *Id.* at 7. Noting Claimant's prior litigation, the ALJ held that the "Complainant is bound by the earlier determinations, and even if he were not, there is no basis for disturbing the earlier findings." *Id.*[9] The ALJ found Claimant to be an "employee" for the purposes of AIR 21, but that "the evidence does not support the Complainant's claim that he retains a current employment status with the Respondent or that he was an employee at the time of the various alleged retaliatory actions." *Id.*[10] The ALJ also held that the travel pass allegations were untimely, as had been decided in the prior OALJ proceeding. *Id.* at 12.

---

[8] A copy of the 2004 OALJ Decision is attached as Exhibit E to the Debtors' Objection.
[9] The OALJ noted that "Judge Coughenour, Judge Karst, and even the Ninth Circuit Court of Appeals have found that Complainant voluntarily terminated his employment with Respondent while under oath at his arbitration hearing on December 17, 1999. By presenting his argument that he is still employed, the Respondent refuses to accept the decision by Judge Coughenour, which was affirmed by the Ninth Circuit, and the decision by Judge Karst that he is no longer an employee of the Respondent's. The Complainant is bound by the earlier determinations, and even if he were not, there is no basis for disturbing the earlier findings." (2004 OALJ Decision, at 7.).
[10] The ALJ noted Northwest's argument that "Respondent's Pension Plan for Pilot Employees specifically states that disability retirement, which the Complainant is currently receiving, is only available upon termination of employment from the Respondent, and 'termination of employment' is defined in the Pension Plan as a complete severance of an employee's relationship with the Respondent." (2004 OALJ Decision at 7.)

6

*The Bankruptcy Claim*

On August 4, 2006, Claimant filed the Claim. Soon thereafter Claimant moved for an order from this Court compelling the Debtors to arbitrate his purported grievances. The Court had previously ruled, in other cases, that union grievance proceedings should go forward in the ordinary course of the Debtors' business, and it found, in a brief hearing, no reason why this principle should not apply to Claimant. The Court issued an order on October 10, 2006 (the "2006 Order"), lifting the automatic stay to allow Claimant to pursue grievances.[11] The 2006 Order stated, in part, that Claimant is not:

> precluded as a result of the pendency of these bankruptcy cases from pursuing his grievances, if any . . . in accordance with the grievance procedures provided in the applicable collective bargaining agreement, if there is any further right to pursue such grievances, including, if applicable, pursuing an action in a court of competent jurisdiction to compel the Debtors' compliance with grievance procedures. . . .

The 2006 Order also required that "any such litigation shall be limited solely and exclusively to the Debtors' compliance with the grievance procedure set forth in the applicable collective bargaining agreement. . . ." It further ordered "that any other litigation with respect to purported grievances or other complaints against the Debtors remain barred by section 362 of the Bankruptcy Code . . . ." The 2006 Order did not determine whether Claimant did or did not have a grievance or an entitlement to any grievance procedures.

The Debtors thereafter objected to the Claim. A hearing was held on June 25, 2008 with respect to the Debtors' Objection. One of the issues at the hearing was whether Claimant had, in fact, commenced any new grievance proceedings after the 2006 Order. The Court gave Claimant leave to submit supplemental information demonstrating pursuit of any such grievances. On July 1, 2008, the Court received "Claimant Craig Friday's Supplemental Information as Requested by

---

[11] The 2006 Order also applies to Caleb Sturge, another claimant in the Debtors' bankruptcy cases.

7

Judge Gropper Following June 25, 2008 Motion Hearing Re: Grievances." Exhibit 3, entitled "Grievances re: pension benefits, back pay, passes, etc., filed with Northwest and letters written to Northwest recounting CBA right to file grievances," contains copies of eight letters Claimant wrote between November 22, 2002, and October 3, 2005. Exhibit 6 is a letter from an ALPA union representative, dated June 23, 1997, stating that Claimant's individual grievance would not be changed to a group grievance. All letters were written before the 2006 Order.

On July 18, 2008, subsequent to the record being closed, the Court received "Declaration of Claimant Craig Friday in Response to Northwest Airlines Supplemental Response," containing eleven letters written between August 17, 2006 and June 11, 2008. Three letters address Northwest's alleged non-compliance with grievance procedure; however, specific grievances are not identified.[12] The remaining letters, addressed to the Managing Director, purport to file new grievances or reference grievances unrelated to the Claim. A list of the actual grievances that Claimant has filed has never been provided, and the record remains unclear as to how many grievances were filed and what issues each grievance relates to. The Debtors maintain that "with respect to any purported grievances that may be the subject matter of Claimant's proof of claim, Northwest has consistently denied such grievances in the manner prescribed by the Pilots Agreement." (Response dated July 17, 2008 at 3.)

Claimant also claims in his papers that "[t]he U.S. Department of Labor has just concluded its oversight investigation and has determined that the Department of Labor erred in its findings and conclusions and now agrees that Captain Friday retained his employment status and grievance rights with Northwest as a disabled pilot with seven (7) year return to work

---

[12] The first, dated August 17, 2006, is written to the CEO of Northwest; the second, dated February 13, 2007, is to the Chairman and Board of Directors; and the third, dated January 11, 2008, is to the Managing Director of Northwest Flight Administration. An additional letter to the Chairman and Board of Directors, dated January 16, 2007, concerns safety issues and the facts of Claimant's litigation. An April 11, 2008 letter, regards correspondence, unrelated to this case, with Northwest's counsel.

8

rights." (Claimant's Response to Objection, p. 2.) However, Claimant has submitted no evidence that the Department of Labor is considering reversing its past rulings.[13]

## DISCUSSION

As noted above, the Claim has three elements: 1) $855,788 for wages due from 1999 to the date of the Claim, less disability payments received; 2) $5,000 as compensation for the revocation of travel pass benefits; and 3) $249,468 for sick leave pay and vacation pay for time used while Claimant was removed from active flight status pending a fitness for duty exam.

Claimant has previously disputed the components of this Claim in three ways: filing an action in the Federal District Court in Washington State and an appeal to the Ninth Circuit, filing federal whistleblower retaliation complaints with the Department of Labor and filing grievances with Northwest. Based on the record, it is clear that all elements of the Claim are barred.

*1. Res Judicata*

Claimant has previously litigated his employment status and had the opportunity to litigate his sick leave pay and vacation pay in the same action, and thus is barred from litigating the same issues again by the *res judicata* effect of these earlier rulings. Under the doctrine of *res judicata*, a "final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981); *N.L.R.B. v. United Technologies Corp.*, 706 F.2d 1254, 1259 (2d Cir. 1983). The doctrine is applicable when: "'1) the prior decision was a final judgment on the merits, 2) the litigants were the same parties, 3) the prior court was of competent jurisdiction, and 4) the causes of action were the same.'" *In re Layo*, 460 F.3d 289,

---

[13] The only communication from the Department of Labor that Claimant submitted was Exhibit 11 to Claimant's Response to the Debtors' Objection. The letter, which is stamped with a date of March 24, 2008, is from the Department of Labor and to Congressman David G. Reichert and does not serve as evidence that the Department of Labor has reversed its position, as alleged by Claimant.

9

292 (2d Cir. 2006), quoting *Corbett v. MacDonald Moving Servs., Inc.*, 124 F.3d 82, 87-88 (2d Cir. 1997).

Northwest was granted judgment in all previous litigation. The litigants were the same, Claimant and Northwest, in each case. The courts and agencies deciding those matters were of competent jurisdiction.[14] The decision of the Federal District Court, as affirmed by the Ninth Circuit, obviously has preclusive effect. The administrative agency opinions also have *res judicata* effect, as the ARB and OALJ were acting as judicial bodies and allowed the parties to fully litigate their claims. *Astoria Federal Sav. and Loan Ass'n v. Solimino*, 501 U.S. 104, 107-08 (1991), quoting *U.S. v. Utah Const. & Min. Co.*, 384 U.S. 394, 422 (1966) ("'When an administrative agency is acting in a judicial capacity and resolved disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose.'"); *Bank Saderat Iran, New York Agency v. Moalizadeh*, 1996 WL 487959, at *3 (S.D.N.Y. August 27, 1996).

The final element of *res judicata* requires that "the second action must involve the same 'claim' or 'nucleus of operative fact' as the first." *In re Layo*, 460 F.3d at 292, quoting *Interoceanica Corp. v. Sound Pilots, Inc.,* 107 F.3d 86, 90 (2d Cir. 1997). This determination is made by "examin[ing] whether the same transaction, evidence, and factual issues are involved in both cases." *Corbett v. MacDonald Moving Services, Inc.*, 124 F.3d 82, 89 (2d Cir. 1997); *N.L.R.B. v. United Technologies Corp.*, 706 F.2d at 1260 ("Whether or not the first judgment will have preclusive effect depends in part on whether the same transaction or connected series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first."). Claimant's wage claim is

---

[14] The deciding court and agencies were the United States Court of Appeals for the Ninth Circuit, the United States District Court for the Western District of Washington, the United States Department of Labor Administrative Review Board, and the United States Department of Labor Office of Administrative Law Judges.

10

barred by *res judicata*, as Claimant has previously litigated his employment status before the Ninth Circuit, the District Court, the ARB, and the OALJ. All held that Claimant had terminated his employment in 1999 and therefore he cannot maintain a bankruptcy claim for wages after this date.

Claimant's sick leave pay and vacation pay claim are also barred, as the doctrine "'prevents a party from litigating any issue or defense that could have been raised or decided in a previous suit, even if the issue or defense was not actually raised or decided.'" *Woods v. Dunlop Tire Corp.*, 972 F.2d 36, 38 (2d Cir. 1992), quoting *Clarke v. Frank*, 960 F.2d 1146, 1150 (2d Cir. 1992). These claims are closely connected to his wage claims and depend for resolution on his employment status. In a declaration dated May 27, 2008 which accompanied his response, Claimant states that he filed the District Court case on May 25, 1999 and that his sick leave and vacation pay were not exhausted until August 21, 1999 (¶¶ 26, 31.) However, Claimant's District Court complaint was subsequently amended to include a wrongful discharge action (¶ 32) after August 21, 1999, so it is clear that any claim for sick leave and vacation pay could have and should have been raised in District Court litigation at that time.[15] *See Woods*, 972 F.2d at 38.

*2. Claimant Failed to Use the AIR 21 Appeals Procedure*

Claimant's whistleblower claims are also barred as a consequence of his loss before the Department of Labor, which is final as Claimant did not pursue AIR 21 appeal procedures on his OALJ claims. Once Claimant elected to pursue a whistleblower claim before the Department of

---

[15] Claimant does not state the exact date of filing of his amended complaint. However, it appears after review of the District Court docket that the motion to amend the complaint was not filed until October 4, 1999, of which the Court takes judicial notice. *See Friday et al., v. Northwest Airlines, Inc.*, Case No. CV-99-00836-JCC, Docket # 33; *see also Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) ("[C]ourts routinely take judicial notice of documents filed in other courts, again not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.")

11

Labor, AIR 21 governs the appeals procedure. The only way to appeal is by Circuit Court review, as set forth in 49 U.S.C. § 42121(b)(4)(A):

> Any person adversely affected or aggrieved by an order issued under paragraph (3) may obtain review of the order in the United States Court of Appeals for the circuit in which the violation, with respect to which the order was issued, allegedly occurred or the circuit in which the complainant resided on the date of such violation. The petition for review must be filed not later than 60 days after the date of the issuance of the final order of the Secretary of Labor.

This procedure provides the sole review process: "[a]n order of the Secretary of Labor with respect to which review could have been obtained under subparagraph (A) shall not be subject to judicial review in any criminal or other civil proceeding." 49 U.S.C. § 42121(b)(4)(B); *see Fadaie v. Alaska Airlines, Inc.*, 293 F.Supp.2d 1210, 1220 (W.D. Wash. 2003).

The dismissal of Claimant's AIR 21 complaints is therefore final, action which is particularly applicable as a bar to Claimant's travel pass claim. The facts underlying the revocation of his travel pass form the basis for his claim that he was retaliated against as a whistleblower, and Claimant actually litigated the travel pass retaliation claim under AIR 21.[16] The OALJ also took up and rejected Claimant's argument regarding his flight status.[17] By

---

[16] The events preceding the cancellation were found by the ALJ who decided that Claimant's travel pass was revoked, at the latest, on June 15, 2000: "Northwest avers that Friday's travel pass privileges were taken away as an 'appropriate response' to Friday's letter to President Clinton written about unsafe conditions at Northwest, with copies to a number of news organizations." (2003 OALJ Decision at 5-6 .)  Thus, this claim falls under AIR 21 protections, previously noted, providing that an air carrier cannot "discharge an employee or otherwise discriminate against an employee with respect to compensation, terms, conditions, or privileges of employment," 49 U.S.C. § 42121(a), if the employee discloses to "the employer or Federal Government information relating to any violation or alleged violation of any order, regulation, or standard of the Federal Aviation Administration or any other provision of Federal law relating to air carrier safety . . . ." 49 U.S.C. § 42121 (a) (1). In such a circumstance Claimant was entitled under AIR 21 to file a complaint with OSHA, as set forth in 49 U.S.C. § 42121 (b) (1):
> A person who believes that he or she has been discharged or otherwise discriminated against by any person in violation of subsection (a) may, not later than 90 days after the date on which such violation occurs, file (or have any person file on his or her behalf) a complaint with the Secretary of Labor alleging such discharge or discrimination.

OSHA's adverse action cannot be reviewed in this Court.

[17] With respect to Claimant's allegation that he presented a valid FAA First Class Medical Certificate which Northwest refused to accept, the certificate he has relied on is dated December 18, 1998, a year prior to Claimant's

12

failing to pursue his administrative appeal options for any of his OALJ complaints, which were determined against him, Claimant is barred from making another claim on these facts.

*3. Claimant's Grievances*

The remainder of Claimant's contentions relate to his grievances. Counsel to Claimant states that he has "filed numerous grievances that can be summarized as: (i) Right to return to work/loss of pay; (ii) Loss of flight pass privileges; and (iii) personnel file information violations." (Claimant's Supplemental Information, p. 2-3.) As noted above, these grievances have never been specifically categorized by Claimant as to number filed, type of grievance or date of filing, though Claimant has attached numerous letters addressing the grievances to his pleadings. Even assuming *arguendo* that the grievances were preserved as part of the Claim, on the record before the Court they are untimely.

Under § 20.A of the Pilots Agreement, a grievance must be filed "within 120 days after the pilot reasonably would have had knowledge of the grievance."[18] The oldest letter submitted to this Court concerning grievances, dated June 23, 1997, is not specific as to the grievance involved, but that point is moot as Claimant, in a 1999 settlement agreement, "agreed to 'dismiss

---

agreement during the District Court litigation to terminate his employment as of December 17, 1999 due to his disability. The 2004 OALJ Decision addresses a similar allegation by Claimant:
> The Respondent argues that the Complainant cannot be rehired as a pilot until . . . he secures a first class medical certificate, pointing out that the FAA states that his certificate expired in all classes some time ago . . . The Complainant did not respond to the Respondent's arguments regarding this allegation, but he admitted during a telephone conference call conducted on April 28, 2004, with counsel for both parties that he did not have a first class medical certificate and that such a certificate was a pre-requisite to being rehired as a pilot . . . On August 6, 2003, the FAA informed the Respondent's counsel that the Complainant's medical certification had expired in all classes . . . . Respondent's refusal to grant the Complainant's request was a proper one. (2004 OALJ Decision p. 11-12.)

[18] Both parties point to § 20 of the Pilots Agreement as the source of the required grievance procedure, providing in relevant part,
> Any pilot or group of pilots covered by this Agreement who have a grievance concerning any action of the Company affecting them, except matters involving discipline or dismissal, shall have such grievance considered in accordance with the following procedure:

Section 20.A provides, "Grievances under this section must be filed with the proper officer of the Company within 120 days after the pilot reasonably would have had knowledge of the grievance . . . ."

13

all grievances associated with [him] that are pending against the company, except for the grievance related to harassment . . . .'" (District Court Decision at 3.) As noted above, there is no indication that the harassment claim was ever pursued.

In any event, with respect to his grievances, at the latest Claimant had knowledge that Northwest regarded his active employment status as terminated – so that he would be paid on the basis of a disability medical retirement – on November 2, 2000, the date of the District Court Order granting Northwest summary judgment on Claimant's wrongful discharge action. None of the grievance letters submitted to this Court is dated within 120 days of the District Court Order.[19] Claimant has also stated that his sick leave and vacation accruals ran out on August 21, 1999, putting the grievance claim well beyond the 120-day period. *Declaration of Craig S. Friday in Support of Claim*, ¶ 31 (May 27, 2008).

Claimant's travel pass grievances are also untimely. In the 2003 OALJ Decision, the OALJ held that "no reasonable fact-finder could decide Friday's travel pass were [sic] terminated after June 15, 2000." (2003 OALJ Decision at 6, holding that Claimant's claim was time-barred under AIR 21 because his claim was not filed until April 30, 2002.) The first grievance letter relating to travel pass benefits is dated July 15, 2003. This grievance and all others were filed more than 120 days after June 15, 2000 and thus were untimely. Additionally, while Claimant contends that he has brought additional administrative proceedings to pursue whistleblower claims with the Department of Labor, Claimant never received leave from this Court to do so and the Department of Labor has time and again rejected his claims.

---

[19] The first is Claimant's November 22, 2002, letter requesting that "he be retroactively put back on Company paid business," and requests "all sick leave and vacation pay be restored." An October 3, 2005, letter explicitly makes a wage claim for the difference between Claimant's disability pay and pay at the first officer level.

14

*D. The 2006 Bankruptcy Court Order*

As noted above, the 2006 Order provided that Claimant could pursue his grievances, if any, pursuant to the procedures in the applicable collective bargaining agreement. This included pursuing an action in a court of competent jurisdiction to compel the Debtors' compliance with the grievance procedures. However, such litigation was to be limited to the Debtors' compliance with the grievance procedures, and any other litigation remained barred by the automatic stay. Claimant has also complained about Northwest's alleged failure to respond to his attempts to initiate new grievances. It does not appear that Northwest was required to take any specific action in response to Claimant's letters. Under § 20 of the Pilots Agreement, silence constitutes denial of a grievance.[20]

The Debtors' motion to strike the Claimant's proof of claim does not seek any relief respecting Claimant's filing of continued grievances, and no such relief is granted herein. However, it should be clear that the 2006 Order should not be construed to imply that Claimant has or can properly file endless grievances against the Debtors based on matters dating prior to the date of the Debtors' discharge, May 31, 2007, which was the effective date of the Plan. (See Plan § 11.2; Confirmation Order ¶ 30.)[21] In conclusion, the sentiments expressed by the OALJ in the 2004 OALJ Decision are worth reiterating:

---

[20] Section 20.E provides, "If any decision made by the Company under the provisions of this section *is not appealed by the pilot* affected within the time limit prescribed herein for such appeal, the decision of the Company shall become final and binding. *If any decision required to be made by the Company under the provisions of this section is not announced within the time limit prescribed herein, it will be deemed a denial and, at the option of the Association, the dispute may be submitted to the 'Northwest Airlines Pilots' System Board of Adjustment'* . . . ." (emphasis added.) Claimant has not submitted evidence of an appeal to the System Board or to another court of competent jurisdiction.

[21] Claimant argues that the components of the Claim are minor disputes under the RLA and can only be resolved through arbitration in accordance with Northwest's grievance procedures, though he cites no authority for this position. Under the RLA, the type of dispute involved determines the resolution procedure. Major disputes concern the formation and modification of collective agreements. *See Consol. Rail Corp. v. Ry. Labor Executives Ass'n*, 491 U.S. 299, 302 (1989). In contrast, minor disputes are those "arising or growing 'out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions.'" *Id.* at 303. Minor disputes are "subject to compulsory and binding arbitration," before "an adjustment board established by the airline

> The Complainant's pursuit of many of these allegations is due to the fact that the Complainant refuses to accept the fact that he voluntarily severed his employment with the Respondent in December 1999 and his refusal to accept the fact that reiteration of actions taken before by the Respondent, such as the ban from the Respondent's property and the revocation of his jump seat and travel pass privileges, does not constitute new revocations. His failure to accept these facts, as well as the earlier decisions by Judge Karst, Judge Coughenour, and the Ninth Circuit with regard to some of these claims which he has attempted to pursue in this proceeding before me, has caused the Respondent to expend unnecessary resources responding to his allegations. *This unnecessary expenditure of resources in responding to the Complainant's latest allegations must end.*

(Second OALJ Decision, p. 17) (emphasis added.)

### **Conclusion**

The Claim is disallowed. IT IS SO ORDERED.

Dated: New York, New York
August 25, 2008

                                                    */s/ Allan L. Gropper*
                                                UNITED STATES BANKRUPTCY JUDGE

---

and the unions." *Id.* at 303-304, n.4. They "must be resolved only through the RLA mechanisms, including the carrier's internal dispute-resolution processes and an adjustment board . . . ." *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 253 (1994); *Sullivan v. American Airlines, Inc.*, 424 F.3d 267, 273 (2d Cir. 2005). However, there is no authority that the RLA precludes a bankruptcy court from determining whether Claimant has a claim against a debtor, without deciding the merits of a minor dispute. The "allowance or disallowance of claims against the estate" is a core proceeding, 28 U.S.C. § 157(b)(1)(B), and the Court disallows a claim where "such claim is unenforceable against the debtor . . . under any agreement or applicable law . . . ." 11 U.S.C. § 502(b)(1). In analogous circumstances, the RLA preempts state law "only if a state-law claim is dependent on the interpretation of a CBA," *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 262 (1994), because "'the enactment by Congress of the [RLA] was not a preemption of the field of regulating working conditions themselves . . . .'" *Id.* at 257; *see also Smith v. American Airlines, Inc.*, 414 F.3d 949, 953 (8th Cir. 2005), stating that "[I]n RLA cases, arbitrability determines the adjustment board's jurisdiction and is therefore a question for the court." Bankruptcy is designed to create a fresh start for a debtor, and a fresh start would be impeded if a claimant could pursue new grievances forever based on prepetition matters.

16