**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
In re:

                Chapter 11

NORTHWEST AIRLINES CORPORATION, *et al.*,

                Case No. 05-17930 (ALG)

           Reorganized Debtors.
-------------------------------------------------------------------x

## MEMORANDUM OF OPINION

A P P E A R A N C E S:

CADWALADER, WICKERSHAM & TAFT, LLP
Counsel for the Reorganized Debtors
  By:  Bruce R. Zirinsky, Esq.
       Gregory M. Petrick, Esq.
       Nathan A. Haynes, Esq.
One World Financial Center
New York, New York 10281

  By:  Mark C. Ellenberg, Esq.
1201 F Street N.W., Suite 1100
Washington, D.C. 20004

ZUCKERMAN SPAEDER LLP
Counsel for ALG DC-9 L.L.C.
  By:  Thomas G. Macauley, Esq.
       Virginia Whitehill Guldi, Esq.
919 Market Street, Suite 990
Wilmington, Delaware 19899

  By:  Laura E. Neish, Esq.
1540 Broadway, Suite 1604
New York, New York 10036

**ALLAN L. GROPPER**
**UNITED STATES BANKRUPTCY JUDGE**

      This is an objection by the above-captioned reorganized debtors (the "Debtors") to

proofs of claim (collectively, the "Claims") filed by ALG DC-9 L.L.C. ("ALG"), as lessor of

two McDonnell Douglas DC-9-32 aircraft (collectively, the "Aircraft").  The Claims arise in connection with the Debtors' rejection of the leases.  ALG claims damages of $7.5 million on each lease, relying for its calculation of damages on a liquidated damages clause that bases damages on a fixed Stipulated Loss Value ("SLV") for the planes.  The Debtors have objected to the Claims, and the issue before the Court is whether a damages clause based on a fixed and non-declining SLV is an enforceable liquidated damages provision or whether it is a penalty that is unenforceable under applicable law.  For the reasons set forth below, the Court finds that the clause is unenforceable and sustains the Debtors' objection.

## **Background**

The Debtors first leased the Aircraft in 1987.  In 1996, JetStream II, L.P. ("JetStream") became successor-in-interest to the first owner and executed new leases with one of the Debtors.  The leases, dated September 1, 1996 and August 21, 1996, respectively (collectively, the "Leases"), provided for a $35,000 monthly rent and had an expiration date of January 31, 2007.  It appears that at the time the new Leases were negotiated, the Aircraft had to be upgraded, and the parties agreed that the Debtors would perform this work, estimated to cost $2.95 million per plane.  In return, the Leases contained the rent and term provisions set forth above and, ALG alleges, the following residual sharing provision:  (1) at the expiration of the Leases the Debtors would receive one-half of the value of each Aircraft or one-half of the proceeds of sale, less in each case amounts necessary to cure any default; or (2) if the Leases did not extend to their termination date, one-half SLV.  SLV is a liquidated damages provision common in aircraft leases that sets the amount for which the lessee must insure the plane and is also used to calculate damages after a default.  *See*

2

*In re Delta Air Lines*, 370 B.R. 552, 555 (Bankr. S.D.N.Y. 2007); *see also Mentor Ins. Co. (UK) Ltd. v. Brankasse*, 996 F.2d 506, 507 (2d Cir. 1993); *Interface-Group Nevada, Inc. v. Trans World Airlines, Inc.* (*In re TWA*), 145 F.3d 124, 134 (3d Cir. 1998); *Atel Fin. Corp. v. Quaker Coal Co.*, 132 F.Supp.2d 1233, 1241 (N.D. Cal. 2001); *In re U.S. Airways*, 2002 WL 31829093, at *5 (Bankr. E.D. Va. Dec. 16, 2002).[1] Typically SLV declines over the course of the lease term, recognizing depreciation and the payment of rent over time. *See*, *e.g.*, *In re Grubbs Constr. Co.*, 319 B.R. 698, 708 (Bankr. M.D. Fla. 2005). In this case, it is ALG's contention (which the Debtors do not dispute) that the parties stipulated that SLV would not decline because a static value for the Aircraft of $7.3 million and a residual sharing provision, giving the Debtors half of this value, would permit the Debtors to recover their investment in the cost of the overhaul.[2]

ALG purchased the Aircraft and succeeded to JetStream's interests under the Leases in April, 2000. On September 14, 2005, the Petition Date, the Debtors filed a motion to reject the Leases and abandon the Aircraft. On October 13, 2005, the Court entered an order granting the rejection motion, with an effective rejection date of October 7, 2005, and ALG took possession of the Aircraft. On June 16, 2006, ALG sold the Aircraft for an aggregate of $230,000, or $115,000 for each aircraft.

ALG filed proofs of claim, dated July 31, 2006. Each Claim was for $7,500,000, representing $7.3 million SLV, plus $315,000 in unpaid rent as of June 16, 2006 (the date of

---

[1] In this case the Leases provide that SLV is the amount for which the lessee must insure the equipment (Leases, §§ 11.1, 11.2) and is the amount used to calculate damages after a lease default (Leases, § 14).
[2] The Leases thus provided that the Debtors would be entitled to one-half SLV should the Leases terminate, provided that the Debtors also complied with the lessor's remedies as set forth in § 14 of the Leases (Leases, § 9.24(b).) Pursuant to §§ 14(c) and (d), the lessor could claim either SLV less resale value, or, if the Aircraft had already been sold after an event of default, SLV less the sales price.

3

the foreclosure sale), less $115,000 in sale proceeds.[3] The Debtors objected to ALG's claim on the ground that the total amount payable on the Leases, if they had remained in effect for the remaining 16-½ months of their term, was $1.36 million in face amount (not present-valued) and thus the damages claimed were an unenforceable penalty that was more than 10 times the amount they would have paid under the Leases if they had not been rejected. In the alternative, the Debtors contended that even if the damages clause is enforceable, ALG's claims should be subordinated by the terms of the Debtors' Plan of Reorganization because the damages claimed do not represent actual pecuniary loss. The Court held a hearing on the Objection on July 16, 2008. Neither party requested an evidentiary hearing, and the enforceability of a liquidated damages provision is ordinarily "a legal issue not requiring an evidentiary showing." *Wells Fargo Bank Northwest, N.A. v. Taca Int'l Airlines, S.A.*, 315 F.Supp.2d 347, 350 (S.D.N.Y. 2003).

## **Decision**

The issue before the Court is whether the liquidated damages clauses in the Leases are enforceable. There is no dispute that this question should be decided by reference to Minnesota law, as the Leases provide that the law of Minnesota governs all matters of construction, validity, and performance. (Leases, § 22.5.) Moreover, both parties have cited and relied on general provisions of Minnesota law rather than cases under Article 2A of the Uniform Commercial Code, which applies to "any transaction . . . that creates a lease." Minn. Stat. Ann. § 336.2A-102. Minnesota has adopted Article 2A, but there do not appear

---

[3] There appears to be no dispute that under the liquidated damages clause, ALG would be liable to pay over to the Debtors one-half of SLV, less the resale price, although there is a dispute as to the measure of actual damages should the clause not be enforced. If the liquidated damages clause is not enforceable, ALG asserts that the Debtors are liable for additional damages because they failed to provide adequate records as to the history of the Aircraft and thus the Aircraft were sold for a depressed price on the market.

4

to be any reported Minnesota decisions on the section on liquidated damages, and as will be seen below, this provision basically restates the law on liquidated damages in general terms. Minn. Stat. Ann. § 336.2A-504(1) simply provides that damages "may be liquidated in the lease agreement but only at an amount or by a formula that is reasonable in light of the then anticipated harm caused by the default or other act or omission."

In the leading case on the issue of liquidated damages in Minnesota, the Minnesota Supreme Court held that a liquidated damages clause is enforceable when "(a) the amount so fixed is a reasonable forecast of just compensation for the harm that is caused by the breach, and (b) the harm that is caused by the breach is one that is incapable or very difficult of accurate estimation." *Gorco Constr. Co. v. Stein*, 256 Minn. 476, 482, 99 N.W.2d 69, 74-75 (1959). As the Minnesota Supreme Court held in that case, "the controlling factor, rather than intent, is whether the amount agreed upon is reasonable or unreasonable in the light of the contract as a whole, the nature of the damages contemplated, and the surrounding circumstances." *Id. See also Costello v. Johnson*, 265 Minn. 204, 209-10, 121 N.W.2d 70, 75 (1963) (citing *Gorco*); *Tenant Constr. Inc. v. Mason*, 2008 WL 314515, at *5 (Minn. App. Feb. 5, 2008) (same); *Bellboy Seafood Corp. v. Nathanson*, 410 N.W.2d 349, 352 (Minn. App. 1987) (same). In determining the fundamental issue of reasonableness, Minnesota presumes that a liquidated damages provision is valid unless the party disputing the clause rebuts the presumption. *See*, *e.g.*, *606 Vandalia P'ship v. JLT Mobil Bldg. Ltd. P'ship*, 2000 WL 462988, at * 5 (Minn. App. Apr. 25, 2000).

In this case the Debtors have easily rebutted the presumption of validity. The unreasonable nature of the clause is well illustrated by the fact that the Debtors' cash cost of performing under the Leases would have been $560,000 remaining rent for one plane and

5

$571,667 remaining rent for the other (without even present-valuing those sums). By contrast, the liquidated damages clause in the Leases based damages on a static SLV of $7.3 million. Even one-half of $7.3 million (reflecting the fact that the Debtors are entitled to one-half SLV) bears no relationship to actual damages. This is a principal hallmark of an unreasonable penalty—that the liquidated damages bear no relationship to actual damages.

As the *Gorco* case also holds, "[W]hen the measure of damages is susceptible of definite measurement, we have uniformly held an amount greatly disproportionate to be a penalty." *Gorco*, 256 Minn. at 483, 99 N.W.2d at 75. *See also Western Oil & Food Co. v. Kemp*, 245 F.2d 633, 644-45 (8th Cir. 1957); *606 Vandalia P'ship*, 2000 WL 462988, at * 5. In this case damages were not difficult to calculate when the Leases were entered into. The Debtors calculated the present value of rent payments of $35,000 for ten years at $2.4 million in 1996. (Memo, dated Feb. 5, 1996, ALG's Response, Exh. D.) This is not to state that damages had to be calculated in this fashion. Even if SLV had been used as a template for the calculation of damages, an amount for SLV that declined as the Debtors performed under the Leases and as the value of the Aircraft depreciated would easily have provided a reasonable basis for fixing liquidated damages. In *Wells Fargo Bank Northwest, N.A. v. Taca Int'l Airlines, S.A.*, 315 F.Supp.2d at 349-350, the District Court enforced a liquidated damages provision that set damages as a function of unpaid rent, interest, and the present value of a fair market rental value for each airplane.[4]

---

[4] The *Wells Fargo* Court applied New York law, which is very similar to Minnesota law on liquidated damages. *Compare Truck Rent-A-Center, Inc. v. Puritan Farms 2nd, Inc.*, 41 N.Y.2d 420, 424, 361 N.E.2d 1015, 1018, 393 N.Y.S.2d 365, 369 (1977) ("A clause which provides for an amount plainly disproportionate to real damage is not intended to provide fair compensation but to secure performance by the compulsion of the very disproportion.") *with Gorco*, 256 Minn. at 482, 99 N.W.2d at 74 ("Punishment of a promisor for breach, without regard to the extent of the harm that he has caused, is an unjust and unnecessary remedy and a provision having an impact that is punitive rather than compensatory will not be enforced."). New York has also adopted Article 2A of the Uniform Commercial Code.

6

Here, however, damages never declined at all. The Minnesota courts have held that this is a clear indication that a liquidated damages clause is an unreasonable penalty—where damages are the same whether the obligor misses the last installment payment or whether it fails to make any payment on the entire obligation. *See Goodel v. Accumulative Income Corp.*, 185 Minn. 213, 217, 240 N.W.2d 534, 536 (1932); *Walsh v. Curtis*, 73 Minn. 254, 258-59, 76 N.W. 52, 52-53 (1898). In *Walsh*, for example, the Court found the damages clause to be an unreasonable penalty because "the consequences of default in the payment of one installment vary so much from the consequences of default in the payment of another installment. " *Walsh*, 73 Minn. at 259, 76 N.W. at 53.

As the Minnesota courts also recognize, liquidated damages clauses are most clearly appropriate when actual damages are difficult to calculate in advance, such as damages for lost profits or goodwill. *See Meuwissen v. H.E. Westerman Lumber Co.*, 218 Minn. 477, 484, 16 N.W.2d 546, 550 (1944). There was never a question in this case of calculating lost profits or goodwill. The principal elements of damages in this matter are loss of the value of the Aircraft and loss of a stream of rent payments. The cost of replacing the Aircraft may not have been susceptible to precise measurement in 1996, but it did not remain static, and the payments due under the Leases were easily calculated. "It is well established that when the breached contract involves only the payment of money, the damages are susceptible of definite measurement." *LeFavor v. Steubner*, 2004 WL 2283538, at *2 (Minn. App. Oct. 12, 2004), citing *McGuckin v. Harvey*, 117 Minn. 208, 210, 225 N.W. 19 (1929) and *Maudlin v. Am. Sav. & Loan Ass'n*, 63 Minn. 358, 367, 65 N.W. 645, 649 (1896).

ALG supports the damages clause by stating there was a reason for the unusual and fixed provision—the Debtors insisted that if there were a loss of the Aircraft during the Lease

7

term, the amount of damages should be high enough to reimburse them for the costs of refurbishing the planes. According to ALG, as of 1996 when the Leases were signed, the present value of full performance from 1996 until the termination date was $2.4 million per aircraft. If that amount is added to $1.95 million in refurbishing costs, the total is $3,595,000. (ALG's Response, Exh. E.) Since one-half of the liquidated damages amount was payable to the Debtors, it is ALG's contention that a damages amount fixed at one-half of $7.3 million, or $3,650,000, was a reasonable sum. However, the fact that there is some reason for a damages provision as an initial calculation of damages does not mean it is reasonable to engrave this amount in stone for all time. It is obvious that in setting the liquidated damages provision the parties considered only a total loss of the plane and never contemplated the implications of a lease default much later in the term. That does not, however, make the clause a reasonable one. The Minnesota courts take into account the totality of the circumstances, not just the *ex ante* expectations and calculations of the parties, especially in cases where damages are readily discernable at all times. *Gorco*, 256 Minn. at 483, 99 N.W.2d at 75.

ALG finally argues that the Court should take into account the sophistication of the parties in judging the reasonableness of the liquidated damages clause, implying that a large and sophisticated airline like Northwest should be held to its bargain, no matter how unreasonable. In this case the Debtors have confirmed a Chapter 11 Plan of Reorganization in which all unsecured creditors share in a single recovery, so it is the Debtors' creditors, not the Debtors, who would suffer if ALG's claim is unreasonably large. Beyond that, there is no principle that a sophisticated party should be bound by a patently unreasonable liquidated damages provision. In *In re TWA*, an airline that was as sophisticated (or unsophisticated) as

8

Northwest agreed to a liquidated damages clause that was similar to the one at bar.[5] In that case the lessor of two planes sought to enforce a liquidated damages clause after rejection that awarded a "termination value" of $13,500,000, less either the fair market rental value ($5,314,116) or fair market resale value of each plane ($7,000,000). *TWA*, 145 F.3d at 134. The termination value did not change over the course of the lease, and the Third Circuit found that the liquidated damages clause was an unenforceable penalty that bore little relationship to actual damages (*e.g.*, if TWA breached in the last month of the lease, the lessor could claim damages that were much higher than the approximate $100,000 in monthly rent it lost). The lessor contended that the clause should be enforced because TWA had explicitly warranted that the provision was valid as a liquidated damages amount and because TWA was a sophisticated party with bargaining power equal to that of the lessor. The Circuit Court rejected this argument, noting that the lessor had cited no authority to the effect that the sophistication of a party renders an otherwise unreasonable penalty enforceable. *Id.* at 135.

ALG attempts to distinguish *TWA* on the ground that in that case the parties did not provide an explanation as to why the termination value did not decline over time, whereas in this case a reason has been provided. In fact, the lessor in *TWA* did put forth a reason for the clause—that the constant termination value shifted the risk of a drop in airline resale prices during the lease's term from the lessor to the lessee. *TWA*, 145 F.3d at 135. The existence of a reason did not save that clause, nor does it save the liquidated damages provision in these Leases.

---

[5] The *TWA* contract was governed by New York law, but, as noted above, Minnesota's law on liquidated damages is very similar to New York's.

9

**<u>Conclusion</u>**

In conclusion, the liquidated damages provision in this case constitutes an unreasonable penalty under the applicable law of Minnesota and is unenforceable. ALG's claim must be limited to its reasonable damages. The parties are directed to set the matter down for further proceedings if they cannot agree on a damages amount. In view of the holding herein, the Court need not reach the Debtors' further argument that enforcement of the liquidated damages provision would be considered a penalty under the Debtors' Plan of Reorganization and be subject to subordination as such.

The Debtors are directed to settle an appropriate order on five days' notice.

Dated: New York, New York
       September 5, 2008

                                                          */s/ Allan L. Gropper*
                                                          UNITED STATES BANKRUPTCY JUDGE