UNITED STATES BANKRUPTCY COURT         <u>FOR PUBLICATION</u>
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

In re:                                           :        Chapter 11
                                                 :

NORTHWEST AIRLINES CORPORATION,      :        Case No. 05-17930 (ALG)
*et al.*,                                        :
                                                 :

                        Debtors.      :

-------------------------------------------------------------x

## <u>OPINION, FOLLOWING REMAND, CONSIDERING REQUEST FOR A COMPLETION FEE PURSUANT TO 11 U.S.C. § 330(a)</u>

**<u>A P P E A R A N C E S</u> :**

Alan W. Kornberg, Esq.
Philip G. Barber, Esq.
PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
1285 Avenue of the Americas
New York, New York
*Attorneys for Lazard Frères & Co., LLC,*
*Financial Advisor to the Official*
*Committee of Unsecured Creditors*

Scott L. Hazan, Esq.
John Bougiamas, Esq.
OTTERBOURG, STEINDLER,
HOUSTON & ROSEN, P.C.
230 Park Avenue
New York, New York
*Attorneys for the Official Committee of*
*Unsecured Creditors*

Sean C. Southard, Esq.
KLESTADT & WINTERS, LLP
292 Madison Avenue, 17th Floor
New York, New York
*Attorneys for CarVal Investors, LLC*

Robert S. Clayman, Esq.
GUERRIERI, EDMOND, CLAYMAN &
BARTOS, P.C.
1625 Massachusetts Avenue, N.W.
Washington, DC
*Attorneys for Association of Flight*
*Attendants-CWA, AFL-CIO*

Brian S. Masumoto, Esq.
Linda Riffkin, Esq.
OFFICE OF THE UNITED STATES
TRUSTEE
33 Whitehall Street
New York, New York

**CECELIA G. MORRIS**
**UNITED STATES BANKRUPTCY JUDGE**

On remand from the United States District Court for the Southern District of New York,

this Court has been asked to consider, under the "reasonable" standard pursuant to 11 U.S.C. §

330(a), the request by Lazard Frères & Co., LLC ("<u>Lazard</u>"), one of two financial advisors to the

Official Committee of Unsecured Creditors ("Committee") in this case, for a $3,250,000

"completion fee."

Lazard's previous arguments to this Court primarily concerned whether or not the

completion fee had been preapproved under 11 U.S.C. §328(a).  This position was abandoned on

appeal and argued that the completion fee should have been approved as "reasonable

compensation" under 11 U.S.C. § 330(a).  To facilitate in the preparation of this decision, the

Court asked each of the parties to submit proposed findings of fact and conclusions of law.  The

Court has received and reviewed three sets of proposed findings of fact and conclusions of law:

- The joint submission of Lazard and the Committee [ECF Doc. No. 8548; hereafter, "Lazard FFCL"].
- A joint submission from Carval Investors, LLC ("CarVal") and the Association of Flight Attendants- CWA, AFL-CIO (the "AFA") [ECF Doc. No. 8564; hereafter, "Joint FFCL"].
- The submission of the United States Trustee [ECF Doc. No. 8565; hereafter, "UST FFCL"].

## BACKGROUND

Familiarity with the Court's prior decision, *In re Northwest Airlines Corp.*, 382 B.R. 632

(Bankr. S.D.N.Y. 2008), and the District Court's decision, *In re Northwest Airlines Corp.*, ---

B.R. ----, 2008 WL 4922016 (S.D.N.Y. Nov. 10, 2008), is assumed.  The Court will repeat here

only the facts that are relevant on remand.

On September 14, 2005, Northwest Airlines Corporation and twelve of its direct

and indirect subsidiaries ("Northwest" or "Debtors") filed petitions under chapter 11 of the

Bankruptcy Code, 11 U.S.C. § 1101, *et seq.*  The Bankruptcy Court[1] entered an order directing

the joint administration of the cases on September 14, 2005.

---

[1]    These bankruptcy cases were assigned to Judge Alan Gropper.  After the filing, certain matters were
addressed by Chief Judge Stuart Bernstein.  Judge Cecelia Morris was assigned to decide the current matter.

On September 30, 2005, the United States Trustee appointed the Committee

pursuant to Section 1102(a) of the Bankruptcy Code.  After negotiating with Lazard for several

weeks over the terms of its employment, the Committee filed an application ("Application") to

retain Lazard as one of its two financial advisors on November 8, 2005. [ECF Doc. No. 948].

Under the Application, which memorialized the parties' agreement, the Committee proposed to

retain Lazard on specified, pre-approved terms under 11 U.S.C. § 328(a).*Id*. Specifically, Lazard

agreed to accept a flat "Monthly Advisory Fee" of $275,000 plus expenses, and the Committee

and Lazard agreed to defer consideration of Larzard's "entitlement, if any, to an additional

'success' or 'completion' fee to the latter part of the Debtors' Chapter 11 case . . . ." *Id*. The

Application, at ¶ 18(c), provided:

> (c) Other Fees. It is agreed that all matters relating to Lazard Frères'
> **entitlement, if any**, to an additional "success" or "completion" fee **shall be
> deferred until the latter part of the Company's chapter 11 case**, and that
> Lazard Frères shall be required to comply with the applicable notice
> procedures required by the Court and the Office of the U.S. Trustee.

*Id*. (emphasis added).

On November 29, 2005, the Bankruptcy Court entered an interim order authorizing

the Committee to retain Lazard as a financial advisor, retroactive through October 6, 2005 (the

"Interim Retention Order"). [ECF Doc. 1272].  The Interim Retention Order provided:

> ORDERED that to the extent accrued during this interim retention, Lazard Frères
> shall receive (a) its Monthly Advisory Fees as set forth in the Engagement Letter,
> and (b) reimbursement of Lazard Frères' expenses, which in each case shall not
> hereafter be subject to challenge except under the standard of review set forth in
> section 328(a) of the Bankruptcy Code; and it is further

> ORDERED that, notwithstanding anything to the contrary set forth above, the
> **Office of the United States Trustee retains the right to object to any interim
> or final fee application filed by Lazard Frères** (including any request for the
> reimbursement of expenses) **on any grounds provided for under the
> Bankruptcy Code (including, without limitation, the reasonableness standard
> provided for in section 330 thereof)**, the Bankruptcy Rules, or any Local Rules
> or Orders of this Court; and it is further

> ORDERED that, notwithstanding anything to the contrary in the Bankruptcy
> Code, the Federal Rules of Bankruptcy [Procedure], the Local Rules of this Court,
> any orders of this Court or any guidelines regarding submission and approval of
> fee applications, Lazard Frères and its professionals shall only be required to
> maintain contemporaneous time records for services rendered in half-hour
> increments; . . . .

(emphasis added).  Thus, the Interim Retention Order affirmed Lazard's agreement with the

Committee insofar as it did not pre-approve a completion or success fee.  It authorized Lazard to

be compensated only to the extent of its Monthly Advisory Fee and expenses, subject to

challenge under 11 U.S.C. § 328(a). *Id*. at 2-3.  On July 20, 2006, the Bankruptcy Court entered a

final order (the "Final Retention Order") employing Lazard as a financial advisor to the

Committee. [ECF Doc. No. 3112].  The Final Retention Order incorporated the provisions of the

Interim Retention Order. *Id.*  Neither the Application nor the Interim Retention Order nor the

Final Retention Order defined goals for Lazard, such as a recapitalization, a percentage

repayment for creditors or other "success," which, if met, would entitle it to a bonus. *Id.*  Nothing

negotiated by the parties and approved by the Bankruptcy Court binds the court under 11 U.S.C.

§ 328(a) to a determination that Lazard is entitled to any future completion fee. *Id.*  The Lazard

Final Retention Order did not reference or incorporate by reference any objective guidelines to

determine whether they were entitled to a success or completion fee, much less how much the

fee should be.

On July 30, 2007, Lazard filed a final application for allowance of compensation and for

reimbursement of expenses in the Debtors' cases for the period from October 6, 2005 through

May 31, 2007 (the "Final Fee Application"). The Final Fee Application sought Bankruptcy Court

approval of Lazard's total Monthly Advisory Fees for the twenty month period from October 6,

2005 through May 31, 2007 of $5,455,645, reimbursement of expenses for the same period in the

amount of $167,915.12 and a completion fee (the "Completion Fee Request") in the amount of

$3,250,000 for a total compensation request of $8,873,560.12. [ECF Doc. No. 7431].

According to its Final Fee Application, during the period from October 6, 2007

through May 31, 2007, Lazard rendered 6,227.2 hours of services in connection with the

Debtors' cases. [ECF Doc. No. 7431].  Based upon Lazard's total Monthly Advisory Fee award

of $5,455,645 and the reported 6,227.2 hours of services rendered during the period October 6,

2005 through May 31, 2007, Lazard's average hourly rate for the services it rendered was $876

per hour.   If Lazard's Completion Fee were added to its total Monthly Advisory Fee, its average

hourly rate for the services rendered would be $1,398 per hour.[2]

The United States Trustee filed an objection to Lazard's completion fees on September 4,

2007. [ECF Doc. No. 7558]. The United States Trustee argued *inter alia* that Lazard failed to

justify its entitlement to a completion fee and failed to provide any evidence that its blended

hourly rate of $876 per hour did not fairly compensate Lazard for the services it rendered. *Id.*

The AFA filed an objection to Lazard's Completion Fee on September 4, 2007. [ECF Doc. No.

7566].  The AFA argued *inter alia* that Lazard had not provided any evidence establishing its

entitlement to a fee enhancement. Furthermore, the AFA argued that most of the cost savings in

the bankruptcy cases came from labor concessions in which Lazard had little, or no

involvement.[3]  CarVal filed an objection to Lazard's Completion Fee Request on September 4,

---

[2]      $5,455,645 plus $3,250,000 equals $8,705,645.  $8,705,645 divided by 6,227.2 hours, equals an hourly rate
of $1,398.

[3]      The AFA's objection included the following argument:

[Lazard's] request for a completion fee on top of the millions of dollars in total fees and expenses
it has already requested and received shows a gross disregard for the massive concessions made by
Debtors' employees and shareholders over the course of these bankruptcy proceedings, and
directly contradicts Debtors' insistence that such concessions were absolutely necessary to
Debtors' successful reorganization. With its completion fee request, Applicant seeks an additional
$3.25 million for services for which it has already been fairly compensated. The inequitable nature
of Applicant's request becomes clear when contrasted with the fact that Debtors' employees have

2007. [ECF Doc. No. 7567].  CarVal argued *inter alia* that because no parameters for computing

the success or completion fee were included in its retention application, Lazard failed to meet its

burden of proof under section 328(a) and its request should therefore be denied. *Id.*

On November 19, 2007, this Court conducted a hearing to consider the Completion Fee

Request. [ECF Doc. No. 7857]. At the hearing, Lazard introduced as its sole witness, David S.

Kurtz, the co-head of Lazard's restructuring group. [Transcript of November 19, 2007 hearing,

ECF Doc. No. 7857 (hereafter, "Tr.") at 13:2-20].  After testifying regarding the circumstances

surrounding Lazard's retention by the Committee, as well as the services rendered by Lazard in

the bankruptcy case, Mr. Kurtz testified as to the circumstances surrounding Lazard's request for

a completion fee. Mr. Kurtz testified that approximately fourteen months after the

commencement of the bankruptcy case, he broached the subject of a completion fee with the

chairman of the Committee during late November or early December 2006. [Tr. at 30:12-31:3].

Lazard arrived at its request for a $4 million completion fee with the Committee by preparing a

report [ECF Doc. No. 8154] analyzing the monthly compensation and success fees earned by

financial advisors to creditors committees in other large complex cases of similar size and

magnitude to the Debtors' cases. [Tr. at 31:12-33:20].  During this period in late November to

early December 2006, the Committee, once again, declined to agree on a success fee at that time.

[Tr. at 34:3-5].  After the Debtors' plan of reorganization was confirmed in May 2007, the

Committee considered and accepted Lazard's proposal of a completion fee of $4 million. [Tr. at

34:6-35:15].  Subsequent to the Committee's acceptance of Lazard's proposal of a $4 million

completion fee, Lazard engaged in several negotiations with the Debtors over Lazard's request

---

worked throughout these bankruptcy proceedings to keep Northwest Airlines operational, despite
suffering severe cuts in pay and benefits. These concessions will remain in place until January
2012.

[ECF Doc. No. 7566, p. 2-3].

for a completion fee.  Ultimately, Lazard and the Debtors agreed upon Lazard's request for a

completion fee in the amount of $3,250,000. [Tr. at 35:16-36:16].

## DISCUSSION[4]

As the District Court noted, Lazard abandoned on appeal the main argument that it

originally asserted before this Court, that it was entitled to the Completion Fee through

preapproval under 11 U.S.C. § 328(a). 2008 WL 4922016 at *3.  On appeal, and on remand,

Lazard's sole argument is that its Completion Fee Request is "reasonable" under 11 U.S.C. §

330(a). *Id.*

Section 330(a) of the Bankruptcy Code states in relevant part:

**§ 330. Compensation of officers**

(a)(1) After notice to the parties in interest and the United States Trustee and a
hearing, and subject to sections 326, 328, and 329, the court may award to a
trustee, an examiner, a professional person employed under section 327 or
1103 –

(A) **reasonable compensation** for actual, necessary services rendered by
the trustee, examiner, professional person, or attorney and by any
paraprofessional person employed by any such person; and

(B**)** reimbursement for actual, necessary expenses.

(2) **The court may**, on its own motion or on the motion of the United States
Trustee, the United States Trustee for the District or Region, the trustee for the
estate, or any other party in interest, **award compensation that is less than
the amount of compensation that is requested**.

(3)(A) [sic] **In determining the amount of reasonable compensation** to be
awarded, the court shall consider the nature, the extent, and the value of
such services, **taking into account all relevant factors**, including –

(A) the time spent on such services;

(B) the rates charged for such services;

(C) whether the services were necessary to the administration of, or
beneficial at the time at which the service was rendered toward the
completion of, a case under this title;

---

[4]      This section constitutes the Court's findings of fact and conclusions of law pursuant to Fed. R. Civ. P.
52(a), applicable to this proceeding pursuant to Fed. R. Bankr. P. 7052 and 9014(c).

> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and
>
> (E) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

(emphasis added).[5]

In the discussion that follows, the Court will evaluate Lazard's Completion Fee Request only under the "reasonable" standard in Section 330(a), without reference to a "lodestar" analysis. As such, the Court does not consider Lazard's request for a success or completion fee as a request for a "fee enhancement."

Under Section 330(a), "[t]he applicant bears the burden of proof on its claim for compensation." *In re Keene Corp.*, 205 B.R. 690, 695 (Bankr. S.D.N.Y. 1997). "This burden is not to be taken lightly, especially given that every dollar expended on legal fees results in a dollar less that is available for distribution to the creditors or use by debtor." *In re Pettibone Corp.*, 74 B.R. 293, 299 (Bankr. N.D. Ill. 1987).

Lazard emphasizes that the Second Circuit has adopted a "market-driven" approach in determining reasonableness under Section 330(a), and that: "Without a completion fee, Lazard's compensation for this engagement would not be commensurate with the fees it routinely charges outside of bankruptcy . . . ." Lazard FFCL, p. 17. In reviewing a financial advisor's request for a completion fee or success fee under Section 330(a), a court's function is surely not restricted to the comparison of fees awarded to other financial advisors in comparable cases. Indeed, Section 330(a)(3) specifically instructs the Court to consider "all relevant factors," including the list of factors enumerated in that section.

---

5       This case was filed prior to the effective date of the Bankruptcy Abuse Prevention Consumer Protection Act of 2005.

The U.S. Trustee argues that: "By urging the Court to award it the same compensation that has been awarded to financial advisors in other comparable bankruptcy cases, Lazard ignores the circumstances under which it was retained." [UST FFCL, p. 18].  The AFA and CarVal point out that this is not a typical success or transaction fee scenario in that "Lazard failed to either define the terms of entitlement or method of calculation of any additional back-end fee." Joint FFCL, p. 7-8.  The U.S. Trustee further notes Lazard's concession at the evidentiary hearing, that the Committee was not prepared to retain Lazard on any basis that guaranteed a completion fee to Lazard. [Tr. at 28:9-20]. As the Court noted in its first decision, in every case cited by Lazard to support its request for its Completion Fee, the financial advisor or investment banker had managed to include specific terms establishing an entitlement to a completion fee in their respective retention orders. 382 B.R. at 646-651.  In contrast, as even Lazard conceded at the hearing before the Bankruptcy Court, the Retention Application specifically contemplated the possibility that Lazard might not be entitled to any completion fee at all. [Tr. at 58: 23-25 and 59: 1-3].

Thus, the circumstances surrounding Lazard's retention deviate from the customary terms under which financial advisors are retained and compensated.  This fact is relevant for two related reasons, for purposes of analyzing whether awarding the Completion Fee requested by Lazard under Section 330(a) would be reasonable.  First, it undermines the importance in this case of the factor Lazard relies upon most heavily – the "market-driven" approach – because the terms of Lazard's retention are not comparable to the cases it cites.  Second, although the time spent and rates charged by a financial advisor might not normally be of great relevance in assessing the reasonableness of the amount of a transaction fee or success fee,[6] the hourly rate is

---

[6]     *See, e.g.,* Judge Gonzalez's excellent discussion in *In re XO Communications, Inc.*, 398 B.R. 106, 111, 113 n. 9 (Bankr. S.D.N.Y. 2008).

relevant in this case because, unlike the scheme ordinarily utilized by other financial advisors in

bankruptcy cases, the terms of Lazard's retention are devoid of other specific factors that the

Court can look to in order to assess reasonable compensation.

With the foregoing in mind, the Court turns to the factors set forth in Section 330(a).

***Whether the services were necessary to the administration of, or beneficial at the time
at which the service was rendered toward the completion of, a case under this title. 11
U.S.C. § 330(a)(3)(C).***

In some respects, the terms of Lazard's retention in this case resemble those of Houlihan

Lokey Howard & Zukin Capital ("Houlihan"), retained as restructuring financial advisor to the

debtor in *In re XO Communications, Inc.*, 398 B.R. 106 (Bankr. S.D.N.Y. 2008), a case recently

issued by Bankruptcy Judge Arthur J. Gonzalez on remand from the Second Circuit Court of

Appeals.  Houlihan's retention contemplated a transaction fee that would be awarded depending

upon whether one of two alternative plans (Plan A or Plan B) were implemented.  Houlihan

would receive a transaction fee approved under Section 328 only for Plan A; under Plan B, the

reasonableness of Houlihan's transaction fee would be determined at a later date. *Id.* at 110.

Plan B was ultimately confirmed and consummated, and Judge Gonzalez considered the

transaction fee under Section 330.  In the course of the decision, Judge Gonzalez stated:

> In determining the reasonableness of a transaction or success fee, in the absence
> of an actual determination prior to or at the time that the services were rendered of
> what the marketplace would bear, **the court must look at the nexus between
> what was achieved,** *i.e.,* **the restructuring of the debt, and the impact of the
> advisor's effort in that regard**.

*Id.* at 116 (emphasis added).

To demonstrate this nexus, Lazard claims that it "evaluated the Debtors' restructuring

initiatives, and in certain respects, helped to develop the Debtors' strategy with respect to critical

aspects of their organization," relying almost exclusively upon Mr. Kurtz's testimony at the

November 19, 2007 evidentiary hearing. [Lazard FFCL, p. 5-6].  Mr. Kurtz testified that Lazard

was retained "to perform general financial advisory services with a heavy emphasis on those that

required investment banking expertise." [Tr. at 15:12-17].  Mr. Kurtz testified that Lazard

attended every Committee meeting and advised the Committee "on whatever issue was before

the Committee that day." [Tr. at 15:22-16:2].  Of the Committee's two financial advisors, Lazard

considered itself "the firm that was most responsible for providing general airline industry

guidance and expertise to the committee" [Tr. at 16:9-12] and advising the Committee "with

regard to the creation of the capital structure that it utilized to emerge from bankruptcy . . . ." [Tr.

at 16:23-25].  Lazard also assisted the Debtors in negotiating with parties who expressed an

interest in sponsoring a rights offering intended to raise equity capital for the Debtor. [Tr. at

17:4-18:15].  Although Lazard analyzed the Debtors' efforts to renegotiate leases and financings

for their aircrafts, Lazard did not actually negotiate with the airline lessors. [Tr. at 18:20-19:9].[7]

Lazard analyzed the Debtors' business plans. [Tr. at 19:22-23].  Mr. Kurtz considered Lazard to

be the "primary" advisor to the Committee with respect to valuation issues, but the Committee's

counsel decided not to use the "full-blown valuation" that Lazard prepared for the confirmation

hearing. [Tr. at 20:11-18].  Lazard was also "actively involved in merger analysis and strategy

development, both with the creditors' committee, but also with the company," concerning a

potential merger of Delta Airlines with either U.S. Airways or the Debtors. [Tr. at 20:24-22:8].

---

[7]     Mr. Kurtz's testimony was that Lazard was "very involved . . . in analyzing the company's activities with
respect to renegotiation of leases and financings for their aircraft." [Tr. at 18:20-23]:

> And so we had a process whereby the company, through its financial advisory Seabury, as well as
> members of their – of the Northwest finance group, would interact with, again, primarily our
> airline people, to review the process of those individual negotiations and the status of the deals.

> And, you know, we had front-line input; "front line," in the sense that we were working with the
> committee.  Here, we weren't actually negotiating at the table with airline lessors, but, you know,
> we were very involved in that process, which led to very substantial savings on the part of the
> company with respect to renegotiations of these aircraft financings.

[Tr. at 18:23-19:9].

There is a common thread that runs through each of these descriptions.  In each instance,

the tasks performed by Lazard were remote from the main action or, at best, were carried out in

tandem with other estate professionals.  The direct benefit to the estate appears to have been

realized through the efforts of some other entity or professional.  Lazard performed "general

advisory services" by attending Committee meetings and addressing whatever issues arose.  Of

the Committee's two financial advisors, Lazard was the "most" responsible for providing

"general airline industry guidance and expertise" to the Committee.  Lazard did not develop the

Debtor's capital structure, Lazard *advised* the Committee concerning the Debtors' capital

structure.  With regard to the equity rights offering, Lazard *assisted* the Debtors in negotiating

with the parties interested in actually sponsoring it.  Similarly, Lazard *analyzed* the Debtors'

lease negotiation efforts, but did not actually negotiate; rather, it interacted with the Debtor and

the Debtor's financial advisor and was only on the front line "in the sense that we were working

with the committee." [Tr. at 19:4-5].  Lazard *advised* the Committee on valuation issues, but the

valuation it prepared for the confirmation hearing was not utilized.  Lazard *analyzed* the Debtors'

business plans.  It also analyzed potential mergers and developed strategy, and there is no

testimony that any of the contemplated mergers occurred.

Of course, analysis and advice are critical to the success of any major restructuring.  It

does not necessarily follow, however, that such tasks command a $3.25 million "completion fee"

where the professional has already been well compensated.  While Lazard surely participated in

the reorganization and contributed to it on some level, Lazard made no effort to quantify the

value of its contributions.  Lazard has not shown that it played a vital and indispensable role at

any stage of the reorganization, such as the confirmation of the Debtors' plan.  Under the

circumstances of this case, the nexus between the restructuring in this case and Lazard's efforts

is tenuous.  The Court does not believe that Lazard has carried its burden under this factor for the

support of an additional $3.25 million in compensation.

***Whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed. 11 U.S.C. § 330(a)(3)(D).***

While the record does not reflect that Lazard encountered any novel or extraordinary

issues in this case, the Court takes no exception to the services that Lazard did perform.  The

Court's holding is that Lazard has already been sufficiently compensated for the services it

performed in this case, and that the Completion Fee would result in an excessive (*i.e.*,

unreasonable) award of compensation under the circumstances of this case.

***The time spent on such services and rates charged for such services. 11 U.S.C. § 330(a)(3)(A) and (B).***

For the services performed in this case, Lazard has already received compensation

amounting to a blended rate of $876 per hour.  CarVal and the AFA colorfully illustrate that the

amount already awarded to Lazard is sufficient, and that awarding the Completion Fee would be

unreasonable:

> The Average Hourly Rate paid to Lazard is more than reasonable, when one considers that of the 6,227 hours of work Lazard recorded, 3,656.88 hours or 58.7% was performed by associates and analysts, positions which are held by individuals who have little or no experience. Hearing, Tr. 111:6 – 118:17.

> Other than its statement that investment bankers do not maintain hourly rates, Lazard provided no explanation to justify effectively billing the Debtors' estates for the work of its most junior employees at a blended rate higher than the Debtors' most experienced bankruptcy counsel. The highest hourly billing rate in this case, $850, was charged by three partners of Cadwalader, Wickersham & Taft LLP, who have been practicing between thirty-two and forty years. See Fifth Application for Interim Professional Compensation of Cadwalader, Wickersham & Taft LLP as Attorneys for the Reorganized Debtors (Docket No. 7427).

> If the requested Additional Compensation of $3.25 million is blended into the Average Hourly Rate for all the work Lazard performed, the Average Hourly Rate rises to approximately $1,398 an hour.

- 13 -

> If granted, this Court would effectively approve payment on account of a Lazard associate's or analyst's time as greater than Cadwalader's highest billing rate by approximately 65%.

[Joint FFCL, p. 16-17]. The total compensation paid to Lazard to date is sufficient compensation for Lazard, in the Court's view, based upon the work that Lazard says it performed, and based upon the lack of any direct connection to the success of the Debtor in this case. To increase Lazard's level of compensation by an additional $3.25 million, or $1,398 per hour, would be unreasonable under the facts of this case. Thus, the Court finds that Lazard's compensation, inclusive of the completion fee, would exceed the product of a reasonable billing rate and a reasonable number of hours expended.

***Whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under the Bankruptcy Code. 11 U.S.C. § 330(a)(3)(E).***

As noted above, and in detail in the Court's prior decision, the terms of Lazard's retention in this case differ significantly from those ordinarily utilized by other financial advisors in bankruptcy cases. Lazard is correct that "no one has questioned that Lazard is as skilled as the professionals in *Delta Airlines* and *United Airlines*," that it is "both an airline industry expert and a restructuring expert," and that its team in this case "was comprised of seasoned bankers from the restructuring and airline groups who have worked on large and complex restructurings, specifically in the airline industry." Lazard FFCL, p. 18-19.

The Court does not dispute that Lazard routinely provides sophisticated investment banking services, but the record *in this case* does not reflect that Lazard functioned at this high level. Doubtless, Lazard is a highly skilled practitioner capable of taking a lead role in complex restructuring cases. As discussed at the outset, the compensation for comparably skilled practitioners in other cases is only one of the factors that must be considered under Section 330(a). While Lazard may feel it is under-compensated when compared to the amounts it

- 14 -

routinely receives in other engagements, Lazard has not met its burden of proof that award of the

Completion Fee in this case is reasonable based upon the work Lazard performed and its impact

upon the reorganization.  Thus, the single fact that comparably skilled financial advisors received

"substantially larger fees" in this case and in similar cases does not justify the Completion Fee

requested by Lazard under the totality of the circumstances in this case.

### Conclusion

Upon a review of Lazard's Completion Fee Request under the "reasonable" standard

under 11 U.S.C. § 330(a), including all of the factors set forth in that section, an award of the

Completion Fee would exceed the level of reasonable compensation due to Lazard under the

circumstances of this case, in view of the role that Lazard played in the Debtor's reorganization.

Accordingly, Lazard's Completion Fee Request is denied.


Dated: Poughkeepsie, New York
       February 6, 2009

                                        /s/ Cecelia Morris
                                        CECELIA G. MORRIS
                                        UNITED STATES BANKRUPTCY JUDGE