Bruce R. Zirinsky
Nathan A. Haynes
Denise J. Penn
GREENBERG TRAURIG, LLP
200 Park Avenue
New York, New York 10166
Telephone: (212) 801-9200
Facsimile: (212) 801-6400

Co-Counsel to the Reorganized Debtors

Gregory M. Petrick
CADWALADER, WICKERSHAM & TAFT LLP
One World Financial Center
New York, New York  10281
Telephone:  (212) 504-6000
Facsimile:  (212) 504-6666

- and -

Mark C. Ellenberg
CADWALADER, WICKERSHAM & TAFT LLP
700 Sixth Street, N.W.
Washington, DC 20001
Telephone:  (202) 862-2200
Facsimile:  (202) 862-2400

Co-Counsel to the Reorganized Debtors

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------- x

**In re:**

**NORTHWEST AIRLINES CORPORATION, <u>et al.</u>,**

**Debtors.**

-------------------------------------------------------------- x

: **Chapter 11**

: **Case No. 05-17930 (ALG)**

: **Jointly Administered**

:

:

:

**REORGANIZED DEBTORS' MOTION FOR ORDER PURSUANT
TO SECTIONS 105, 524(a) AND 1141(d) OF THE BANKRUPTCY
CODE AND THE DEBTORS' FIRST AMENDED JOINT AND
CONSOLIDATED PLAN OF REORGANIZATION UNDER CHAPTER 11
OF THE BANKRUPTCY CODE ENFORCING THE PLAN INJUNCTIONS**

Northwest Airlines, Inc. ("Northwest Airlines") and Northwest Airlines Corporation

("NWA Corp.," and, collectively with Northwest Airlines, "Northwest" or the "Reorganized

Debtors"),[1] submit this motion (the "Motion") pursuant to sections 105, 524 and 1141 of chapter

_____

[1] In addition to NWA Corp. and Northwest Airlines, the Reorganized Debtors consist of: NWA Fuel
Services Corporation, Northwest Aerospace Training Corp., MLT Inc., Compass Airlines, Inc. f/k/a
Northwest Airlines Cargo, Inc., NWA Retail Sales Inc., Montana Enterprises, Inc., NW Red Baron LLC,
Aircraft Foreign Sales, Inc., NWA Worldclub, Inc. and NWA Aircraft Finance, Inc.  The preceding
entities, together with Northwest Airlines Holdings Corporation and NWA Inc., were the debtors and

11, title 11, United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"), sections 9014 and 9020 of the Federal Rules of Bankruptcy Procedure, Sections 11.2 and 11.5 of the Debtors' First Amended Joint and Consolidated Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (the "Plan"), and paragraphs 29, 30, 33 and 35 of the order confirming the Plan (the "Confirmation Order") enforcing the Plan injunctions as against Marcia L. Atkins ("Atkins") and Patricia Owolabi ("Owolabi", and collectively, the "Plaintiffs"), who continue to prosecute a discharged action the Plaintiffs commenced against Northwest in the State Court of Fulton County, Georgia (the "State Court"), captioned Atkins, et al. v. Northwest Airlines Corp. et al., Case No. 04-VS-061086G (the "State Court Action").   In support of this Motion, the Reorganized Debtors respectfully represent as follows:

## PRELIMINARY STATEMENT[2]

1.      Pursuant to the Bankruptcy Code, the Reorganized Debtors' Plan and the Confirmation Order, Plaintiffs were permanently enjoined from prosecuting the State Court Action against the Reorganized Debtors, which seeks damages for claims arising prior to the Petition Date.   The claims raised in the State Court Action have been both disallowed and discharged under Orders of this Court and the Plan.   But the Plaintiffs continue to prosecute the State Court Action in willful violation of this Court's Orders.   This Court should not countenance Plaintiffs' open contempt of its Orders, and the Reorganized Debtors respectfully request that this Court levy appropriate sanctions on the Plaintiffs to compel their compliance with such Orders.

---

debtors in possession (the "Debtors") in these cases prior to May 31, 2007, the Effective Date of the Plan. On the Effective Date, Northwest Airlines Holdings Corporation merged into NWA Inc. and thereafter, NWA Inc. merged into Northwest Airlines and went out of existence.

[2] Terms not defined in the Preliminary Statement shall have the meanings ascribed to them below.

## JURISDICTION

2.     This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

3.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## STATEMENT OF FACTS

### The Civil Actions

**A.     The 2002 Lawsuits**

4.     Patricia Owolabi was employed by Northwest as a Work Control Clerk from 1989 until July 9, 1997.  Her employment was administratively terminated on October 13, 1999 after she could not return to work after extensive medical leave.  Marcia L. Atkins was formerly employed by Northwest in a variety of different positions.

5.     Owolabi commenced a civil suit against Northwest in the United States District Court for the Northern District of Georgia (the "District Court") on April 22, 2002, captioned Patricia A. Owolabi v. Northwest Airlines, Inc., Case No. 02-CV-1068 (TWT) (N.D. Ga. April 22, 2002) (the "2002 Owolabi Action").   Similarly, Atkins commenced an action against Northwest in the District Court captioned Marcia L. Atkins v. Northwest Airlines, Inc., Case No. 02-cv-01067 (TWT) (N.D. Ga. April 22, 2002) (the "2002 Atkins Action").

6.     Each action alleged discrimination, hostile environment harassment, and retaliation, purportedly in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, et seq. ("Title VII"), and 42 U.S.C. § 1981, as well as a claim under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, et seq. ("ERISA"), and claims under Georgia law for negligent retention and supervision, and intentional infliction of emotional distress.

7.     With respect to both actions, on September 26, 2003, the District Court entered an Order granting Northwest's motion for summary judgment on the federal claims, and dismissing the state law claims without prejudice.  <u>See</u> Order, Case No. 02-CV-1068 (TWT), Docket No. 26 (N.D. Ga. Sept. 26, 2003), Order, Case No. 02-CV-1067 (TWT), Docket No. 27 (N.D. Ga. September 26, 2003); <u>see</u> <u>also</u> Judgment, Case No. 02-CV-1067 (TWT), Docket No. 28 (N.D. Ga. September 30, 2003).  Neither Atkins nor Owolabi appealed.

**B.     <u>The 2004 Lawsuits</u>**

8.     On January 5, 2004, the Plaintiffs commenced a civil suit as joint plaintiffs against Northwest in the State Court of Fulton County, Georgia (the "2004 State Action"), asserting the identical federal and state law claims against Northwest that each had alleged in their 2002 actions.

9.     On March 25, 2004, Northwest timely removed the 2004 State Action to the District Court (the "2004 Action"), and on December 8, 2004, the District Court entered an Order dismissing, with prejudice, Plaintiffs' Title VII and 42 U.S.C. § 1981 claims on the grounds that Plaintiffs' federal claims were barred by <u>res</u> <u>judicata</u>, and that Plaintiffs' state law claims were time-barred by the applicable state statute of limitations.  <u>See</u> Order, Case No. 1:04-CV-831-TWT, Docket No. 19 (N.D. Ga. December 8, 2004).  Again, neither Plaintiff appealed.

**<u>The Bankruptcy Cases</u>**

10.     On September 14, 2005 (the "Petition Date"), Northwest and certain of its affiliated entities, as debtors and debtors in possession, filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), Case No. 05-17930 (ALG).

11.     On July 28, 2006, in violation of the automatic stay, the Plaintiffs filed a motion to reopen the 2004 Action in the District Court (the "Motion to Reopen"). On August 23, 2006, the District Court entered an Order denying the Plaintiffs' Motion to Reopen.

### A.     The Bankruptcy Claims

12.     On or about August 15, 2006, Atkins filed proof of claim number 9716 (the "Atkins Claim") in the bankruptcy cases asserting an unsecured priority claim against Northwest in the amount of $450,000.

13.     On or about August 16, 2006, Owolabi filed claim numbers 10531 ("Claim 10531"), 10532 ("Claim 10532") and 10533 ("Claim 10533" and, collectively with Claim 10531 and 10532, the "Owolabi Claims", and, collectively with the Atkins Claim, the "Bankruptcy Claims") in the bankruptcy cases asserting unsecured priority claims against Northwest in the following amounts:  $450,000 (Claim 10531); $750,000 (Claim 10532); and $342,000 (Claim 10533).

14.     The Reorganized Debtors objected to each of the Bankruptcy Claims, and on September 12, 2007 and May 28, 2008, the Bankruptcy Court issued memoranda of opinion [Docket Nos. 7602 and 8287],[3] granting the objections to the Bankruptcy Claims on the grounds that the Bankruptcy Claims are (i) barred by res judicata and (ii) time barred.  Owolabi Op. at 3; Atkins Op. at 3-4.  Owolabi thereafter filed two motions to reconsider, each of which was denied by the Bankruptcy Court.  See Docket Nos. 7712 and 7738.[4]

### B.     The Confirmation Order

15.     On May 18, 2007, the Bankruptcy Court entered an order [Docket No. 6944] (the

---

[3] Attached hereto as Exhibit A and Exhibit B, respectively.

[4] Attached hereto as Exhibit C and Exhibit D, respectively.

"Confirmation Order") confirming the Plan. Thereafter, on May 31, 2007, the effective date of the Plan occurred (the "Effective Date").

16.     The Plan is binding on all creditors holding claims against the Reorganized Debtors and establishes injunctions applicable to all creditors, including injunctions implementing sections 524(a)(2) and 1141(d)(1) of the Bankruptcy Code (the "Discharge Injunction") and an injunction against interference with the Plan (the "Interference Injunction", and together with the Discharge Injunction, the "Plan Injunctions"). The Plan and the Confirmation Order establish the Discharge Injunction, which permanently enjoins and forbids the pursuit of claims based upon any acts occurring prior to the Effective Date.[5]

_____

[5] The Plan states:

> [O]n the Effective Date . . . all holders of . . . Claims against any of the Debtors shall be precluded and enjoined from asserting against the Reorganized Debtors, or any of their assets or properties, any other or further . . . Claim against any of the Debtors based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date . . . .

Plan, § 11.2. The Confirmation Order states:

> [A]ll holders of . . . Claims against any of the Debtors shall be precluded and enjoined from asserting against the Reorganized Debtors, or any of their assets or properties, any other or further . . . Claim against any of the Debtors based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such holder has filed a proof of claim or proof of equity interest.

Confirmation Order at ¶ 30. In addition, the Plan and the Confirmation Order establish the Interference Injunction, which permanently enjoins and forbids creditors from taking action to interfere with the Plan. The Plan states:

> Upon the entry of the Confirmation Order with respect to the Plan, all holders of Claims and Equity Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

17.     Each Plaintiff was served with notice of the Plan and Confirmation Order establishing the Plan Injunctions at her last known address.  See Affidavit of Service, at 235, 1977 [Docket No. 7193].

**The Attempted Renewal of the Action**

18.     On March 25, 2009, in violation of the Plan Injunctions, Plaintiffs served notice of jury trial on the Reorganized Debtors, dated February 23, 2009 (the "Jury Trial Request"), requesting that the 2004 Action be placed on the next calendar date available for the Judge in the State Court Action.  Upon information and belief, the Plaintiffs did not serve any complaint or summons on the Reorganized Debtors.[6]

19.     On June 17, 2009, Northwest filed a motion to dismiss the State Court Action arguing, inter alia, that the Bankruptcy Court had discharged the claims, which the State Court converted to a motion for summary judgment on July 27, 2009.  On February 2, 2010, after the State Court denied Northwest's motion based on lack of certification of certain exhibits attached thereto, Northwest re-filed the motion for summary judgment along with certified copies of the relevant documents.

---

Plan, § 11.5.  The Confirmation Order states:

> Pursuant to Section 11.5 of the Plan, upon the entry of the Confirmation Order with respect to the Plan, all holders of Claims and Equity Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

Confirmation Order at ¶ 35.  The Confirmation Order also provides that "[t]he . . . injunction provisions contained in the Plan are fair and equitable, are given for valuable consideration, and are in the best interests of the Debtors and their chapter 11 estates, and such provisions shall be effective and binding upon all persons and entities . . . ."  Confirmation Order at ¶ 33.

[6] In addition, the Plaintiffs have not served Northwest with a number of their filings in the State Court Action, including the Jury Trial Request or a prior jury trial request submitted on December 28, 2009.

20.     On March 3, 2010, Northwest received a notice that a jury trial would be held in the State Court Action on March 22, 2010.  In connection with the impending jury trial, Northwest and the Plaintiffs' deadline to submit a pre-trial order to the State Court is March 11, 2010.

21.     Notwithstanding Northwest's pending motion for summary judgment, based on conversations with the clerk for the Judge presiding over the State Court Action, it is unclear whether the jury trial will be continued to a date after the hearing on Northwest's motion for summary judgment based on the Discharge Injunction.

22.     The Plaintiffs have, on at least three occasions within the past week, called and left voicemails for Northwest, seeking to discuss the impending jury trial and negotiate the pre-trial order.

## BASIS FOR RELIEF REQUESTED

**THIS COURT SHOULD ENFORCE THE PLAN INJUNCTIONS AND COMPEL THE PLAINTIFFS' COMPLIANCE THEREWITH**

23.     This Court has disallowed and discharged the Bankruptcy Claims, and has continuing jurisdiction to enforce the Plan Injunctions with respect to those claims.  The Discharge Injunction and Interference Injunction set forth in the Plan and Confirmation Order both bar the Plaintiffs from pursuing the State Court Action.  The Plaintiffs are violating both Plan Injunctions and this Court should award sanctions against the Plaintiffs to compel their compliance with its Orders.

**A.      The Bankruptcy Court Has Jurisdiction To Enforce Its Orders.**

24.     Bankruptcy courts routinely exercise jurisdiction to interpret and enforce a plan and the order confirming the plan.  See Travelers Indem. Co. v. Bailey, 129 S.Ct. 2195, 2205, 174 L.Ed.2d 99 (U.S. 2009) ("The answer here is easy: as the Second Circuit recognized, and

respondents do not dispute, the Bankruptcy Court plainly had jurisdiction to interpret and enforce its own prior orders. . . . What is more, when the Bankruptcy Court issued the 1986 Orders it explicitly retained jurisdiction to enforce its injunctions.") (citing Local Loan Co. v. Hunt, 292 U.S. 234, 239 (1934) (holding that courts have the jurisdiction to interpret and enforce their own orders)).[7]

25.     This principle applies even after plan confirmation.  See Travelers, 129 S.Ct. at 2205 (upholding bankruptcy court's jurisdiction to interpret and enforce a confirmation order twenty-two years after confirmation); Luan Inv. S.E. v. Franklin 145 Corp. (In re Petrie Retail, Inc.), 304 F.3d 223, 230 (2d Cir. 2002) ("A bankruptcy court retains post-confirmation jurisdiction to interpret and enforce its own orders, particularly when disputes arise over a bankruptcy plan of reorganization.").

26.     Moreover, continuation of a bankruptcy court's jurisdiction post-confirmation is particularly appropriate where the plan and the confirmation order specifically preserve the bankruptcy court's jurisdiction.  LTV Corp. v. Back (In re Chateaugay Corp.), 201 B.R. 48, 64 (Bankr. S.D.N.Y. 1996) aff'd in part, 213 B.R. 633 (S.D.N.Y. 2007).  This Court, in connection with confirmation of the Plan, specifically reserved jurisdiction to, inter alia, issue orders as necessary to enforce the Plan.  See Plan § 13.1.[8]  Accordingly, consistent with applicable law and

---

[7] "[I]t is well settled that the bankruptcy court is undoubtedly the best qualified to interpret and enforce its own orders including those providing for discharge and injunction. . . . " U.S. Home Corp. v. Los Prados Cmty. Assoc., Inc. (In re U.S.H. Corp. of N.Y.), 280 B.R. 330, 335 (Bankr. S.D.N.Y. 2002) (internal quotes omitted) (citing Texaco Inc. v. Sanders (In re Texaco Inc.), 182 B.R. 937, 947 (Bankr. S.D.N.Y. 1995)); see also In re Duplan Corp., 209 B.R. 324, 328 (Bankr. S.D.N.Y. 1997) ("[I]t is well settled, under both the [Bankruptcy] Act and the [Bankruptcy] Code, that bankruptcy courts have inherent or ancillary jurisdiction to interpret and enforce their own orders, whether or not such jurisdiction is expressly reserved.") aff'd in part, vacated in part on other grounds, 212 F.3d 144 (2d Cir. 2000) (internal citations omitted).

[8] Under the Plan, the Court retains jurisdiction:

the terms of the Plan, this Court has jurisdiction to compel Plaintiff's compliance with the Confirmation Order.

**B.  The Discharge Injunction Prohibits the Plaintiffs From Pursuing the State Court Action.**

27.  Claims against the Reorganized Debtors that arose prior to the Effective Date of May 31, 2007 are enjoined by the Discharge Injunction.  The Plaintiffs here allege that the claims asserted in the State Court Action arose in or prior to 2002.  Accordingly, the claims at issue in the State Court Action arose prior to the Effective Date, and are thus barred by the Discharge Injunction.

28.  Under the Bankruptcy Code, the confirmation of a plan of reorganization provides a "discharge" to the debtor.  The discharge extinguishes all debts and claims arising against a debtor that arose prior to confirmation.  Section 1141(d)(1) of the Bankruptcy Code provides that: "the confirmation of a plan . . . discharges the debtor from any debt that arose before the date of such confirmation."  11 U.S.C. § 1141(d)(1).  Concurrently, section 524(a)(2) of the Bankruptcy Code provides that this discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or any act, to collect, recover or offset any such debt . . . ."  11 U.S.C. § 524(a)(2).

---

(g) To issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person with the consummation, implementation or enforcement of the Plan, the Confirmation Order or any other order of the Bankruptcy Court; . . . (j) To hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan, the Confirmation Order, any transactions or payments contemplated hereby, or any agreement, instrument, or other document governing or relating to any of the foregoing; (k) To take any action and issue such orders as may be necessary to construe, enforce, implement, execute and consummate the Plan or to maintain the integrity of the Plan following consummation.

Plan § 13.1.

29.     The bankruptcy discharge operates as an injunction which prohibits creditors from attempting to collect or to recover the debt. <u>Tenn. Student Assistance Corp. v. Hood</u>, 541 U.S. 440, 447 (2004). As such, a discharge precludes the commencement of actions against the debtor as to discharged debts. <u>Kuhl v. U.S.</u>, 467 F.3d 145, 147 (2d Cir. 2006) ("A discharge in bankruptcy operates as an injunction against collection of any discharged debts."); <u>In re Texaco Inc.</u>, 182 B.R. at 949 ("The legislative history of section 524 of the Bankruptcy Code leaves no question as to the finality and sweeping effect of the statutory discharge and permanent injunction . . . ."). "Actions which violate [the] discharge injunction, similar to actions which violate [the] automatic stay, are void <u>ab</u> <u>initio</u>." <u>Stratton v. Mariner Health Care, Inc. (In re Mariner Post-Acute Network, Inc.)</u>, 303 B.R. 42, 47 (Bankr. D. Del. 2003) (internal citations omitted).

30.     The Plan establishes the Discharge Injunction to implement sections 524(a)(2) and 1141(d)(1) of the Bankruptcy Code. In this regard, Section 11.2 provides that all "holders of . . . Claims against any of the Debtors shall be . . . enjoined from asserting against the Reorganized Debtors . . . any other or further . . . Claim against any of the Debtors based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date . . . ." Plan, § 11.2. The Confirmation Order also provides that "holders of . . . Claims against any of the Debtors shall be precluded and enjoined from asserting against the Reorganized Debtors [any] . . . Claim against any of the Debtors based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date . . . ." Confirmation Order at ¶ 30.

31.     The State Court Action alleges claims against Northwest that arose in connection the Plaintiffs' employment with Northwest in or prior to 2002—prior to the Petition Date and prior to the Effective Date of May 31, 2007. Claims against Northwest arising prior to that date

are barred and enjoined by the Discharge Injunction. The State Court Action thus violates the Discharge Injunction, is void ab initio, and the Plaintiffs should be permanently enjoined from pursuing such action, or any similar action plainly barred by the Discharge Injunction.

**C.     The Injunction Against Interference with the Plan Prohibits the Plaintiffs From Continuing the State Court Action.**

32.     The Plan and the Confirmation Order provide that "all holders of Claims  . . . along with their respective present or former employees, agents, officers, directors or principals . . . [are] enjoined from taking any actions to interfere with the implementation or consummation of the Plan. Plan, § 11.5; Confirmation Order at ¶ 35.

33.     The Interference Injunction prohibits interference with the implementation and consummation of the Plan. The State Court Action interferes with the implementation and consummation of the discharge provided by the Plan. To allow jury trials on discharged claims to go forward in various state courts would delay the closing of these cases, thwart the Reorganized Debtors' fresh start, and could result in conflicting decisions with respect to similarly situated claimants. Accordingly, the Interference Injunction should be enforced to bar the Plaintiffs' prosecution of the State Court Action.

**D.     This Court Should Award Sanctions and/or Compensatory and Punitive Damages Due to the Plaintiffs' Intentional and Willful Violation of the Discharge Injunction and the Confirmation Order**

34.     An award of sanctions for contempt is appropriate to remedy violations of a discharge injunction based on the court's power under sections 105 and 524 of the Bankruptcy Code. See In re Cruz, 254 B.R. 801, 816 (Bankr. S.D.N.Y. 2000) ("[B]ankruptcy courts have found that 'violation of the injunction is punishable by contempt [and] . . . under § 105, this Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code. 11 U.S.C. § 105"); see also In re Texaco Inc., 182 B.R. at

945 (Bankr. S.D.N.Y. 1995) ("[A] debtor may enforce a discharge under 11 U.S.C. § 524 by means of a contempt motion") (citations omitted); Torres v. Chase Bank USA, N.A. (In re Torres), 367 B.R. 478, 490 (Bankr. S.D.N.Y. 2007) ("[C]ompensatory damages, in addition to coercive sanctions, may be awarded as a sanction for civil contempt if a party willfully violates a section 524(a)(2) injunction") (citations omitted); Russell v. Chase Bank USA, N.A. (In re Russell), 378 B.R. 735, 744 (Bankr. E.D.N.Y. 2007) ("Punitive damages may also be awarded in cases involving willful violation of the discharge injunction.").

35.     For the Court to find a party in contempt "the burden rests with the movant to show [by clear and convincing evidence] that the offending . . . entity had knowledge [actual or constructive] of the discharge and willfully violated it by continuing with the activity complained of."  In re Torres, 367 B.R. at 490 (brackets in original; citations omitted); see also In re Russell, 378 B.R. at 743-44 (same).

36.     As set forth above, the Plaintiffs received notice of the Discharge Injunction and the Confirmation Order.  In addition, not only has this Court already held that the Plaintiffs' claims are without merit, but it has also denied two requests to reconsider those decisions. Notwithstanding, the Plaintiffs continue to prosecute the State Court Action, demanding payment on discharged claims.  The Plaintiffs' sustained vexatious attempts to relitigate claims that have been denied, discharged and expunged in forum after forum is an enormous waste of time and resources for all parties and every court involved.  This Court should not countenance such a clear violation of the Discharge Injunction provided in section 524(a)(2) of the Bankruptcy Code, the Plan and this Court's Confirmation Order.  This Court should award sanctions against the Plaintiffs in this case in an amount to be determined.  Furthermore, this Court should order that any further attempt by the Plaintiffs to litigate the claims underlying the State Court Action is similarly punishable by sanctions.

## **NOTICE**

37.     Notice of this Motion has been provided to the Plaintiffs, at the addresses listed on the face of their claims or their last known addresses.  In light of the nature of the relief sought, the Reorganized Debtors submit that no other notice need be given.

**CONCLUSION**

For all of the foregoing reasons, the Reorganized Debtors respectfully request that this Court (i) grant the Motion, (ii) direct the Plaintiffs to immediately withdraw or dismiss the State Court Action, (iii) award the Reorganized Debtors sanctions in an amount to be determined for the Plaintiffs' violation of the Discharge Injunction and Interference Injunction, and (iv) grant such other relief as is just.

Dated: March 9, 2010
New York, New York

GREENBERG TRAURIG, LLP

*/s/ Nathan A. Haynes*
Bruce R. Zirinsky
Nathan A. Haynes
Denise J. Penn
200 Park Avenue
New York, New York 10166
Telephone: (212) 801-9200
Facsimile: (212) 801-6400
haynesn@gtlaw.com

Co-Counsel to Reorganized Debtors

Gregory M. Petrick
CADWALADER, WICKERSHAM & TAFT LLP
One World Financial Center
New York, New York  10281
Telephone:  (212) 504-6000
Facsimile:  (212) 504-6666
gregory.petrick@cwt.com

- and -

Mark C. Ellenberg
CADWALADER, WICKERSHAM & TAFT LLP
700 Sixth Street, N.W.
Washington, DC  20001
Telephone:  (202) 862-2200
Facsimile:  (202) 862-2400
mark.ellenberg@cwt.com

Co-Counsel to the Reorganized Debtors

# <u>EXHIBIT A</u>

---------------------------------------------------------------------x
In re:

                              Chapter 11

NORTHWEST AIRLINES CORPORATION, *et al.*,

                              Case No. 05-17930 (ALG)
                    Reorganized Debtors.

---------------------------------------------------------------------x

## MEMORANDUM AND ORDER

On July 6, 2007, the above-captioned reorganized debtors (collectively, the

"Debtors") brought a motion to disallow and expunge claim numbers 10531, 10532 and

10533 (together, the "Claims"), filed by Patricia Owolabi (the "Claimant").[1] The Debtors

assert that the Claims must be disallowed because they: (i) are barred by *res judicata* or

are time-barred under the applicable statute of limitation; or (ii) are duplicative of a claim

filed by the International Association of Machinists and Aerospace Workers, AFL-CIO

(the "IAM").

The facts relating to the Claims are not disputed. Claimant is a former employee

of Northwest Airlines, Inc. ("Northwest"). Her last day in the office was July 9, 1997,

after which she took a medical leave of absence until she was administratively terminated

by Northwest on October 13, 1999. On April 22, 2002, Claimant brought an action

against Northwest (the "2002 Action") in the United States District Court for the

---
[1] Claim number 10531 was filed in the amount of $450,000, with the basis for the claim identified as "vacation, wages, grievance pay, etc.;" claim number 10532 was filed in the amount of $750,000, with the basis for the claim identified as "motion to reopen lawsuit 1:04-CV-831-CAM;" and claim number 10533 was filed in the amount of $342,000 with the basis for the claim identified as "medical." As support for claim numbers 10531 and 10532, Claimant attached copies of the IAM Series C Judgment and her Motion to Reopen (as described below). As support for claim number 10533, Claimant attached these documents, in addition to a medical report, dated January 15, 2000.

Northern District of Georgia (the "District Court").[2]  Northwest filed a motion for

summary judgment on all claims, and on September 26, 2003, the District Court issued

an order granting summary judgment on the Federal Claims and dismissed the State Law

Claims without prejudice.

On January 5, 2004, Claimant and Marcia Atkins, another former employee of

Northwest,[3] brought a civil action (the "State Action") as plaintiffs against Northwest in

the State Court in Fulton County, Georgia (the "State Court").  With respect to

Claimant, the State Action asserted identical Federal and State Law Claims as those

brought in the dismissed 2002 Action.  On March 25, 2004, the State Action was

removed to the District Court (the "2004 Action").  Northwest again sought summary

judgment, on the basis that the Federal Claims were barred by *res judicata* and the State

Law Claims were barred by the applicable statute of limitations.  Plaintiffs filed a motion

to voluntarily dismiss their Title VII and 1981 Claims and to remand the State Law

Claims to the State Court, but failed to respond to the summary judgment motion.  The

Magistrate Judge issued a report recommending that the Title VII and 1981 Claims be

dismissed with prejudice and that the motion to remand the State Law Claims be denied.[4]

The District Court subsequently entered an order dismissing the Title VII and 1981

Claims with prejudice.  The order did not expressly dismiss the ERISA or State Law

---

[2] The 2002 Action charged Northwest with racial discrimination, creating a hostile environment at work,
racial harassment and retaliation on the part of Northwest in violation of Title VII of the Civil Rights Act of
1964 (the "Title VII Claim") and 42 U.S.C. §1981 (the "1981 Claim") and with violation of the Employee
Retirement Income Security Act of 1974 (the "ERISA Claim" and together with the Title VII Claim and the
1981 Claim, the "Federal Claims").  Additionally, Claimant alleged causes of action for negligent retention
and supervision and intentional infliction of emotional distress under Georgia State law (together, the
"State Law Claims").

[3] Ms. Atkins is not involved in the matter before the Court, and this decision does not impact any claims
she may have against the Debtors.

[4] Additionally, the Magistrate's Report provided the plaintiffs with an additional 20 days to respond to the
summary judgment motion; no response was received.

Claims, but the 2004 Action was terminated and closed in December 2004. On September 14, 2005, Northwest filed its Chapter 11 petition. On July 28, 2006, Claimant and Ms. Atkins filed a motion with the District Court seeking to reopen the 2004 Action (the "Motion to Reopen").[5] The Motion to Reopen was denied by the District Court on August 23, 2006.

### (i) The Claims Barred by *Res Judicata* or Time Bar

In both her written response and at a telephonic hearing held on August 15, 2007, Claimant agreed that the Federal Claims had been finally dismissed by the Federal Court and are no longer extant. (Hr'g Tr. 19: 16-17, Aug. 15, 2007). Therefore, the portion of the Claims relating to the Federal Claims is disallowed. As to the State Law Claims, although Claimant contends that the State Law Claims survive, there is no dispute that these are claims for negligent retention and supervision and intentional infliction of emotional distress. It is asserted by the Debtors, and has not been denied by Claimant, that her last day in the workplace was July 9, 1997, and that she was administratively terminated on October 13, 1999. Actions for negligent retention and supervision and for intentional infliction of emotional distress are both governed by § 9-3-33 of the Official Code of Georgia Annotated ("OCGA"), which provides, in part, that "actions for injuries to the person shall be brought within two years after the right of action accrues . . . ." [6] As the latest point any claim could have accrued on behalf of Claimant was October 13, 1999, the date of her termination, and as this date was long after the time Claimant first

---

[5] The Debtors' position is that the Motion to Reopen was filed in violation of the automatic stay.

[6] As to negligent retention and supervision, *see Williams v. Lear Operations Corp.*, 73 F. Supp. 2d 1377, 1380 (N.D. Ga. 1999), citing *Alpharetta First United Methodist Church v. Stewart*, 221 Ga. App. 748, 751, 472 S.E.2d 532 (1996); *Staffing Resources, Inc. v. Nash*, 218 Ga. App. 525, 527, 462 S.E.2d 401 (1995). As to intentional infliction of emotional distress, *see M.H.D. v. Westminster Schools*, 172 F.3d 797, 803 (11th Cir. 1999), citing *Alpharetta First United Methodist Church*, 221 Ga. App. at 751.

complained of physical injury, and as an action against Northwest was not commenced by her until April 22, 2002, the portion of the Claims relating to the State Law Claims is barred by the applicable two-year statute of limitations.

In her response to the Debtors' objection, Claimant alleges that the State cause of action did not accrue until after April 24, 2000, and that the two-year statute of limitation does not bar the litigation. (Response, p. 3.) However, Claimant offers no reason why her claims against Northwest did not accrue until April 24, 2000. In her response, Claimant also contends that her "state law claim of breach of contract is not barred by the six-year statute of limitation applicable to claims for breach of contract." (Response, p. 3.) However, Claimant did not assert a claim for breach of contract in the State Action, and, as noted above, the State Law Claims she has asserted are governed by a two-year statute of limitations. Nor do her proofs of claim identify or provide any basis for a contract claim other than one relating to the claim also filed by the IAM, discussed below.[7]

In her response to the Debtors' objection, Claimant also contends that the District Court order left the State Law Claims unresolved and that the State Action remains open. However, the State Action was removed to the District Court, and the 2004 Action was ultimately closed without a remand. Nor does a cause of action survive under the Georgia savings statute, OCGA § 9-2-61(a), which provides, in part

> When any case has been commenced in either a state or federal court within the applicable statute of limitations and the plaintiff discontinues or dismisses the same, it may be recommenced in a court of this state or in a federal court either within the original applicable period of limitations or within six months after the discontinuance or dismissal, whichever is later, subject to the requirement of payment of costs in the original action as

---

[7] Her proofs of claim refer to vacation, wages, grievance pay, etc. and medical but contain nothing specific to provide any support. Nor does she assert she had a contract of employment.

required by subsection (d) of Code Section 9-11-41; provided, however, if the dismissal or discontinuance occurs after the expiration of the applicable period of limitation, this privilege of renewal shall be exercised only once.

While Claimant brought the State Action within six months of the dismissal of the 2002 Action, OCGA § 9-2-61(a) is inapplicable because, as stated above, the State Law Claims were already barred by the Georgia statute when the 2002 Action was filed.

(ii) The IAM Claims

Claimant, as a former Work Control Clerk for Northwest, was one of hundreds of present or former employees who were prospective beneficiaries of a judgment based on the so-called "Series C Stock" entered against one of the Debtors prepetition. Many employees filed individual proofs of claim based on this judgment, as did Claimant's union, the IAM. The individual claims of the relevant employees were merged into the IAM claim, by order dated May 16, 2007, and the IAM was authorized to administer the distribution of proceeds to its present and former members. Claimant's Claims based on the Series C Judgment are thus duplicative of proof of claim number 8964, filed by the IAM, and she was advised at the hearing to call the contact information line set up by the Debtors with respect to reimbursement by the IAM on account of those portions of her Claims that relate to the Series C Stock. Accordingly, Claimant's rights with respect to the Series C Stock will be satisfied out of the IAM Distribution, and any additional claim is duplicative and disallowed.

As discussed above, Claimant argued in her written response to the Debtors' objection that her "claim for breach of contract is not merged with the IAM Claims" (Response, p. 3), but her proofs of claim do not identify any breach of contract and

5

merely attach a copy of the IAM Series C Judgment as supporting documentation for such a claim.

In conclusion, the Debtors' motion is granted and the Claims are disallowed and expunged.

**IT IS SO ORDERED**.

Dated:  New York, New York
            September 12, 2007

                                    _/s/ Allan L. Gropper_____
                                    UNITED STATES BANKRUPTCY JUDGE

# **EXHIBIT B**

**UNITED STATES BANKRUPTCY COURT**                    NOT FOR PUBLICATION
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x

In re:

                                                       Chapter 11

NORTHWEST AIRLINES CORPORATION, *et al.*,

                                                       Case No. 05-17930 (ALG)

                                  Reorganized Debtors.

-------------------------------------------------------------------x

## MEMORANDUM AND ORDER

        The above-captioned reorganized debtors (collectively, the "Debtors") have

objected to claim 9716 (the "Claim"), filed by Marcia L. Atkins (the "Claimant").[1]  The

Debtors assert that the Claim should be disallowed because it is barred by *res judicata* or

is time-barred under the applicable statute of limitations.  For the reasons set forth below,

the objection is granted and the Claim is disallowed.

        The facts relating to the Claims are not disputed.  Claimant is a former employee

of Northwest Airlines, Inc. ("Northwest").[2]  On April 22, 2002, Claimant brought an

action against Northwest (the "2002 Action") in the United States District Court for the

Northern District of Georgia (the "District Court"), captioned <u>Marcia L. Atkins v.

Northwest Airlines, Inc.</u>, Case No. 02-cv-01067 (TWT).[3]  Northwest filed a motion for

summary judgment on all claims.  On July 3, 2003, a Final Report and Recommendation

---

[1] The Claim was filed in the amount of $450,000.  The basis for the Claim is listed as "Civil Action No: 1:04-cv-0831-CAM", as well as "wages, salaries, and compensation" for services performed from "9-97 to Present."  The date the debt was incurred is stated to be "9-97".

[2] The record does not show the last day of Claimant's employment with the Debtors.

[3] The 2002 Action charged Northwest with racial discrimination, creating a hostile environment at work, racial harassment and retaliation on the part of Northwest in violation of Title VII of the Civil Rights Act of 1964 (the "Title VII Claim") and 42 U.S.C. §1981 (the "1981 Claim") and with violation of the Employee Retirement Income Security Act of 1974 (the "ERISA Claim" and together with the Title VII Claim and the 1981 Claim, the "Federal Claims").  Additionally, Claimant alleged causes of action for negligent retention and supervision and intentional infliction of emotional distress under Georgia State law (together, the "State law claims").

of the United States Magistrate Judge was issued, recommending that summary judgment be granted on all Federal Claims and that Claimant's State law claims be dismissed without prejudice. On September 26, 2003, the District Court issued an order adopting the Final Report, dismissing the Federal Claims and dismissing the State law claims without prejudice.[4]

On January 5, 2004, Claimant and Patricia Owolabi, another former employee of Northwest,[5] jointly filed a civil action (the "State Action") as plaintiffs against Northwest in the State Court in Fulton County, Georgia (the "State Court"). With respect to Claimant, the State Action asserted identical Federal and State law claims as those brought in the dismissed 2002 Action. On March 25, 2004, the State Action was removed to the District Court (the "2004 Action"). Northwest again sought summary judgment, on the basis that the Federal Claims were barred by *res judicata* and the State law claims were barred by the applicable statute of limitations or, in the alternative, that the State law claims failed to state a claim upon which relief could be granted. Claimant filed a motion to amend the complaint or, alternatively, to voluntarily dismiss the Federal Title VII and § 1981 claims and to remand the State law claims to the State Court; however, she failed to respond to Northwest's summary judgment motion. On October 28, 2004, a further Report and Recommendation of United States Magistrate Judge was issued, recommending that the Title VII and § 1981 claims be dismissed with prejudice and that the motion to remand the State law claims be denied. The Report and

---

[4] The Final Report and Recommendation of United States Magistrate Judge, upon which the order of the District Court was based, does not address the ERISA claim, but Northwest asserts it was abandoned by Claimant on the record. In any case, the Final Report specifically recommends that Northwest's motion for summary judgment "be granted as to all federal claims advanced by Plaintiff." (Final Report, p. 62.) This is presumed to include the ERISA claim.
[5] The claims of Ms. Owolabi were previously adjudicated by the Court. *See* Memorandum and Order, dated September 12, 2007.

Recommendation recommended that remand of the State claims be denied because the District Court had diversity jurisdiction over such claims and because the Federal ERISA claim remained pending in the case. (Report at p. 4.) Additionally, the Magistrate's Report provided the plaintiffs with an additional 20 days to respond to Northwest's summary judgment motion; no response was received.

The District Court subsequently entered an order, dated December 8, 2004, granting the motion to dismiss and specifying that the Title VII and § 1981 claims were dismissed with prejudice. The order also denied the motion to remand.

On September 14, 2005, Northwest filed its Chapter 11 petition. On July 28, 2006, Claimant and Ms. Owolabi filed a motion with the District Court seeking to reopen the 2004 Action (the "Motion to Reopen"). The Motion to Reopen was denied by the District Court on August 22, 2006.

### The Claims Are Barred by *Res Judicata* or Time Barred

In her written response to Northwest's Claim Objection, Claimant agreed that the Federal Claims in her lawsuit were dismissed by the Federal Court in 2004. Therefore, the portion of the Claims relating to the Federal Claims is disallowed.

Nevertheless, in her response to the Debtors' objection, Claimant contends that the District Court order left the State law claims unresolved and that the State Action remains open. Claimant also asserted at a hearing held on April 2, 2008, which Claimant attended by telephone, that the claim in the State court in Fulton County, Georgia is still open. There is no question on the written record, however, that the 2004 State Action was removed to the Federal District Court, and that it was dismissed without a remand.

The Federal District Court also subsequently denied Claimant's Motion to Reopen the removed case.

The question is thus whether she has a State law claim which could have been asserted on a timely basis on the date Northwest filed its bankruptcy case, September 14, 2005. The automatic stay went into effect on that date and barred her from filing an action.

Claimant's claims are for negligent retention and supervision and intentional infliction of emotional distress. Actions for negligent retention and supervision and for intentional infliction of emotional distress are governed by § 9-3-33 of the Official Code of Georgia Annotated ("OCGA"), which provides, in relevant part, that "actions for injuries to the person shall be brought within two years after the right of action accrues . . . ." [6] The statute of limitations on the State law claims thus expired at the latest on April 22, 2004. That is two years after the State law claims were asserted by Claimant for the first time in her first lawsuit.

On April 22, 2004, the 2004 Action was pending in Federal Court and, assuming it was timely filed, preserved Claimant's State law claims. However, the 2004 Action was dismissed on December 8, 2004, over two years after the claims were asserted.

Georgia also has a savings statute, OCGA § 9-2-61(a), which provides, in part

When any case has been commenced in either a state or federal court within the applicable statute of limitations and the plaintiff discontinues or dismisses the same, it may be recommenced in a court of this state or in a federal court either within the original applicable period of limitations or within six months after the discontinuance or dismissal, whichever is later,

---

[6] As to negligent retention and supervision, *see Williams v. Lear Operations Corp.*, 73 F. Supp. 2d 1377, 1380 (N.D. Ga. 1999), citing *Alpharetta First United Methodist Church v. Stewart*, 221 Ga. App. 748, 751, 472 S.E.2d 532 (1996); *Staffing Resources, Inc. v. Nash*, 218 Ga. App. 525, 527, 462 S.E.2d 401 (1995). As to intentional infliction of emotional distress, *see M.H.D. v. Westminster Schools*, 172 F.3d 797, 803 (11th Cir. 1999), citing *Alpharetta First United Methodist Church*, 221 Ga. App. at 751.

> subject to the requirement of payment of costs in the original action as
> required by subsection (d) of Code Section 9-11-41; provided, however, if
> the dismissal or discontinuance occurs after the expiration of the
> applicable period of limitation, this privilege of renewal shall be exercised
> only once.

The Georgia state courts have held that OCGA § 9-2-61 applies to both voluntary and involuntary dismissals, where the merits are not adjudicated. *See Swartzel v. Garner*, 193 Ga. App. 267, 268 (Ga. Ct. App. 1989). The Georgia savings statute thus gave Claimant at most six months from dismissal to recommence an action based on her State law claims. That period expired in June 2005, prior to the Debtor's petition under Chapter 11. Her tort claims are therefore time-barred.

Claimant also argues in her written response to the Debtors' objection that she has State law breach of contract claims, and that they are not barred as they have a six-year statute of limitations under Georgia law. Her proof of claim does not identify any breach of contract claim.[7] She asserts in her response, nevertheless, that her "claim for breach of contract is not merged with the IAM Claims" (Response, p. 2), and it appears that her claim, if any, relates to the IAM Series C Judgment. Hundreds of present or former employees were prospective beneficiaries of a judgment based on the so-called "Series C Stock" issued by the Debtors prepetition. Many employees filed individual proofs of claim based on this judgment, as did the IAM, their union.

The individual claims of the employees, however, were merged into the IAM claim, by order dated May 16, 2007, and the IAM was authorized to administer the distribution of proceeds to its present and former members. If Claimant has any rights

---

[7] Claimant's proof of claim refers to wages, salaries, and compensation, but contains nothing specific to provide any support. Nor does she assert she had a contract of employment. As support for her proof of claim, Claimant attaches only (i) the first page of the Debtor's response to Claimant's motion to remand, and (ii) the one-page Motion to Reopen.

relating to the Series C Judgment, her rights are preserved, but only through the IAM claim; by virtue of the merger, no creditor has an independent claim under that judgment.

To the extent Claimant may be entitled to a distribution of the Series C Stock, she is advised to call the contact information line set up by the Debtors with respect to reimbursement by the IAM on account of those portions of claims that relate to the Series C Stock. Any rights that Claimant may have with respect to the Series C Stock will be satisfied out of the IAM Distribution, and any additional claim would be duplicative.

In conclusion, the Debtors' motion is granted and the Claim is disallowed and expunged.

**IT IS SO ORDERED**.

Dated:  New York, New York
          May 28, 2008

                                    */s/ Allan L. Gropper*           
                                    UNITED STATES BANKRUPTCY JUDGE

# **<u>EXHIBIT C</u>**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------------x
In re:

                                                Chapter 11

NORTHWEST AIRLINES CORPORATION, *et al.*,

                                                Case No. 05-17930 (ALG)

                        Reorganized Debtors.
----------------------------------------------------------------------x

# ORDER

      Claimant Patricia Owolabi, having moved for reconsideration of this

Court's order disallowing and expunging claim numbers 10531, 10532, 10533 in

the above-referenced cases, and the Court having concluded that there has not

been "an intervening change of controlling law, the availability of new evidence,

or the need to correct a clear error or prevent manifest injustice," and that the

Court has not "overlooked matters or controlling decisions which might have

materially influenced the earlier decision," *Morales v. Quintiles Transnational

Corp.*, 25 F. Supp. 2d 369, 372 (S.D.N.Y. 1998), it is hereby

      ORDERED that the motion for reconsideration is denied.

Dated: New York, New York
       October 15, 2007


                    */s/ Allan L. Gropper*            
                    UNITED STATES BANKRUPTCY JUDGE

# **EXHIBIT D**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------x
In re:

                               Chapter 11

NORTHWEST AIRLINES CORPORATION, *et al.*,

                               Case No. 05-17930 (ALG)

                        Reorganized Debtors.
------------------------------------------------------------------------x

## ORDER

        Claimant Patricia Owolabi, having filed a second motion for

reconsideration of this Court's order disallowing and expunging claim number

10533, among others, in the above-referenced cases,[1] and the Court having

concluded that no new evidence has been presented and that there are no grounds

for reconsidering the order, it is hereby

        ORDERED that the motion for reconsideration, dated October 24, 2007, is

denied.

Dated: New York, New York
       October 29, 2007


                        */s/ Allan L. Gropper*
                        UNITED STATES BANKRUPTCY JUDGE

---

[1] By order dated October 15, 2007, this Court denied Ms. Owolabi's prior motion for reconsideration, dated September 21, 2007.

# **PROPOSED ORDER**

Bruce R. Zirinsky
Nathan A. Haynes
Denise J. Penn
GREENBERG TRAURIG, LLP
200 Park Avenue
New York, New York 10166
Telephone: (212) 801-9200
Facsimile: (212) 801-6400


Co-Counsel to the Reorganized Debtors

Gregory M. Petrick
CADWALADER, WICKERSHAM & TAFT
LLP
One World Financial Center
New York, New York  10281
Telephone:  (212) 504-6000
Facsimile:  (212) 504-6666

- and -

Mark C. Ellenberg
CADWALADER, WICKERSHAM & TAFT
LLP
700 Sixth Street, N.W.
Washington, DC 20001
Telephone:  (202) 862-2200
Facsimile:  (202) 862-2400

Co-Counsel to the Reorganized Debtors

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------------x
|  |  |
|---|---|
| **In re:** | **Chapter 11** |
|  | **Case No. 05-17930 (ALG)** |
| **NORTHWEST AIRLINES CORPORATION, et al.,** | **Jointly Administered** |
| **Debtors.** |  |

----------------------------------------------------------------------x

**ORDER GRANTING REORGANIZED DEBTORS' MOTION**
**PURSUANT TO SECTIONS 105, 524(a) AND 1141(d)**
**OF THE BANKRUPTCY CODE AND THE DEBTORS'**
**FIRST AMENDED JOINT AND CONSOLIDATED**
**PLAN OF REORGANIZATION UNDER CHAPTER 11**
**OF THE BANKRUPTCY CODE ENFORCING THE PLAN INJUNCTIONS**

Upon consideration of the motion (the "Motion")[1] of Northwest Airlines, Inc.

("Northwest Airlines") and Northwest Airlines Corporation ("NWA Corp.", and collectively,

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

with Northwest Airlines, the "Reorganized Debtors") for Order Pursuant to Sections 105, 524(a) and 1141(d) of the Bankruptcy Code and the Debtors' First Amended Joint and Consolidated Plan of Reorganization Under Chapter 11 of the Bankruptcy Code Enforcing the Plan Injunctions, all as described more fully in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and pursuant to sections 9014 and 9020 of the Federal Rules of Bankruptcy Procedure; and after due deliberation and good and sufficient cause appearing therefor, and due notice of the Motion having been provided to each of the claimants Marcia L. Atkins and Patricia Owolabi (collectively, the "Plaintiffs"); and the Court by Order dated March _____, 2010 having shortened the notice period required pursuant to Bankruptcy Rules 2002; and no timely objections to the Motion having been interposed; and after due deliberation and sufficient cause appearing therefor, it is hereby

ORDERED that the Motion is granted, and it is further

ORDERED that the Plaintiffs are directed to cease and desist from pursuing the action in the State Court of Fulton County, Georgia captioned <u>Atkins, et al. v. Northwest Airlines Corp. et al.</u>, Case No. 04-VS-061086G (the "State Court Action"); and it is further

ORDERED that the Plaintiffs are directed to file a notice of dismissal of the State Court Action; and it is further

ORDERED that the Plaintiffs are in contempt of the Discharge Injunction provided in section 524(a)(2) of the Bankruptcy Code, the Plan and this Court's Confirmation Order and are hereby assessed sanctions in the amount of $_____, payable within thirty (30) days of entry of this Order to counsel for the Reorganized Debtors; and it is further

ORDERED that any further attempt by the Plaintiffs to assert the allegations set forth in the State Court Action in the State Court or any other forum shall result in additional monetary sanctions against the Plaintiffs; and it is further

ORDERED that service of the Motion as provided herein shall be deemed good and sufficient notice of such Motion; and it is further

ORDERED that this Court shall retain jurisdiction with respect to any matters, claims, rights or disputes arising from or related to the implementation of this Order.

Dated: _____, 2010
      New York, New York


_____
      Allan L. Gropper
UNITED STATES BANKRUPTCY JUDGE